IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ROBERT DAVID STEELE   )
-and-          )
EARTH INTELLIGENCE NETWORK )
            )
   Plaintiffs,     )
            )
v.           )   Case 3:17-cv-601-MHL
            )
            )
JASON GOODMAN    )
PATRICIA A. NEGRON   )
-and-          )
"QUEEN TUT"     )
            )
   Defendants.    )
_____)

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT, PATRICIA A. NEGRON'S, RULE 12(b)(6) MOTION TO DISMISS

Plaintiffs, Robert David Steele and Earth Intelligence Network ("Plaintiffs"), by counsel, pursuant to Local Civil Rule 7, respectfully submit this Memorandum in Opposition to the Rule 12(b)(6) motion to dismiss filed by defendant, Patricia A. Negron ("Negron") [*Document 21*].

## I. Introduction

This matter is before the Court on Patricia Negron's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On September 1, 2017, Plaintiffs filed a five-count Complaint, alleging claims of defamation *per se*, insulting words, business conspiracy, common law conspiracy, and tortious interference with contract and

business expectancies against defendants, Jason Goodman,[1] Negron, and an anonymous confederate masquerading as "Queen Tut".[2]   The Complaint alleges that the Defendants, acting together and in concert (and most times together on camera), used social media, including YouTube[3] and Twitter, to publish false and defamatory statements of and concerning the Plaintiffs that caused the Plaintiffs damage.   Paragraph 17 of the Complaint identifies the specific videos published by the Defendants on YouTube and elsewhere on the Internet, together with hyperlinks, and the date of each publication. Paragraph 17 also identifies *in haec verba* – verbatim – the specific words that are false and defamatory and the place (minute:second) in each video where the defamation occurs. *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405 (1939) ("[g]ood pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba* [verbatim].") (quoted in *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134, 575 S.E.2d 858 (2003) (the complaint "gives the exact words allegedly used by Gross, Temple, King, and Terrebone, or those acting at their

---

[1]     On October 6, 2017, Goodman filed an answer to Plaintiffs' Complaint *pro se*. [*Document 14*].

[2]     At the time they filed the Complaint, Plaintiffs believed "Queen Tut" was Carla A. Howell.   Subsequent research revealed, however, that "Queen Tut" is actually Susan A. Lutzke ("Lutzke").   Lutzke was served with process at her home in Fort Collins, Colorado, on October 25, 2017. [*Document 17 – Certificate of Service and Mailing*].

[3]     YouTube is a leading online platform for creating, developing, uploading, searching for, viewing and sharing videos.   YouTube is owned by Google, Inc., an operating segment of Alphabet Inc. (NASDAQ:GOOGL).   YouTube has over 1.3 billion unique users – almost one-third of all people on the Internet – and each day those users watch a billion hours of video, generating billions of views.   Over 300 new hours of video are uploaded to YouTube every minute. *Google v. Hood*, Case 3:14-cv-00981-HTW-LRA (Document 1 – Complaint, ¶ 14); https://www.youtube.com/yt/about/press/; https://www.statisticbrain.com/youtube-statistics/.

direction, i.e., that the doctors [plaintiffs] 'abandoned their patients' and that there were 'concerns about their competence.'"')).

The YouTube videos at issue in this case prominently feature the co-conspirators together and acting in concert to defame Plaintiffs. Negron appears and actively participates with her co-conspirators, Goodman and Queen Tut, in virtually every video:



[*Complaint, ¶ 17 (June 16, 2017, YouTube video entitled, "The Failing New York Times", https://www.youtube.com/watch?v=CS0GZaR6b6U&feature=youtu.be)*];



[*Complaint, ¶ 17 (June 20, 2017, YouTube video entitled, "COG",*
*https://www.youtube.com/watch?v=gaa_XEP4lb4&feature=youtu.be)*];



[*Complaint, ¶ 17 (June 26, 2017, YouTube video entitled, "Queen Tut call re: Robert*
*David Steele #Unrig Fraud Claim",*
*https://www.youtube.com/watch?v=hR6uxM_wyMs)*];



[Complaint, ¶ 17 (*June 29, 2017, YouTube video entitled, "Squidward v. Sponge Rob",*
*https://www.youtube.com/watch?v=Z0Jqux7GQlI&feature=youtu.be)*];



[*Complaint, ¶ 17 (August 7, 2017, YouTube video entitled, "Queen Tut 003", https://www.youtube.com/watch?v=l-wxMiqpc3k)*];



[*Complaint, ¶ 17 (August 13, 2017, YouTube video entitled, "Queen Tut 005 - Damning Evidence of Fraud in the #Unrig Campaign", https://www.youtube.com/watch?v=ZhbeltyhnVk&feature=youtu.be)*];



[*Complaint, ¶ 17 (August 17, 2017, YouTube video entitled, "Parallels to Soros: Micro to Macro", https://www.youtube.com/watch?v=A6lRmZOObAs)*];



[*Complaint, ¶ 17 (August 26, 2017, YouTube video entitled, "Unrig Cynthia McKinney",*

*https://www.youtube.com/watch?v=tSI0ZfIsN_k)*]; and



[*Complaint, ¶ 17 (August 30, 2017, YouTube video entitled, "Je Suis Queen Tut - Is Robert David Steele Running an Op Against George Webb & CSTT?", https://www.youtube.com/watch?v=vIfBVDtCNlg*)].

Negron, who is referenced eighty-six (86) times in the Plaintiffs' Complaint, is at the forefront of the defamation campaign with Goodman and Queen Tut. Negron is Goodman and Queen Tut's full partner. She appears in the videos as the "financial expert", [*Complaint, ¶ 17 (June 16, 2017 YouTube Video "The Failing New York Times", https://www.youtube.com/watch?v=CS0GZaR6b6U&feature=youtu.be (at 33:18)*], and is referred to as the "star". [*Complaint, ¶ 17 (June 29, 2017 YouTube Video "Squidward v. Sponge Rob", https://www.youtube.com/watch?v=Z0Jqux7GQlI&feature=youtu.be (at 0:14)*]. One of the defamatory videos was even filmed at "casa de Trish", Negron's

home in Massachusetts. [*Complaint, ¶ 17 (August 17, 2017 "Parallels to Soros: Micro to Macro", https://www.youtube.com/watch?v=A6lRmZOObAs (at 0:31)*].

Goodman, Negron and Queen Tut's false and defamatory statements devastated Robert and crippled the business of the Earth Intelligence Network. As a non-profit reliant on donations, the reputation of Earth Intelligence Network was (and is) its single most valuable asset. Negron, in full partnership with Goodman and Queen Tut, persistently and repeatedly defamed Plaintiffs over a period of three (3) months. At a financial level, Plaintiffs have been forced to refund donations based upon false claims of "stealing" and "fraud". The financial damage caused by Negron and her confederates was immediate and substantial: Whereas, the #UNRIG campaign was at one point raising $1,000 to $2,000 a day in donations for its business, those donations, because of the Defendants' defamation, were down to around $50 a day at the time Plaintiffs commenced this action. [*Complaint, ¶ 19*].

Negron does not dispute that Plaintiffs have adequately alleged loss of business and actual and presumed damages because of the defamation and insulting words.

Plaintiffs identify and quote each defamatory statement made by Negron and each defamatory statement made by her co-conspirators in furtherance of the conspiracy to injure Plaintiffs. [*See, e.g., Complaint, ¶ 17* ("On June 20, 2017, Goodman and Negron published a video on YouTube entitled, 'COG' … Beginning at 25:26 of the video, Goodman states '**Trish – I'm glad you mentioned stealing**, because you've just reminded me of something – particularly the robber David Steele … Many of our viewers have expressed real anger at feeling tricked by the campaign from Robert David Steele. And I assure you, we were tricked by him as well'") (emphasis added); *Complaint, ¶ 17*

("On August 13, 2017, Goodman, Negron and Queen Tut published a video on YouTube entitled, 'Queen Tut 005 - Damning Evidence of Fraud in the #Unrig Campaign' … At 1:27 of the video, Goodman states '**I really want Trish and you and I to really collaborate on this going forward**'.   At 2:39, Negron states 'You know Queen Tut, I had seen an interview on Infowars when they were talking about the UNRIG campaign and just all the body language coming from RDS was just deeply disturbing to me and suggested, you know, a lot of maybe **ulterior motives**' … At 5:08, Negron states that Robert is '**predatory in nature**'… At 14:52, Goodman states that the objective of the UNRIG campaign is to 'get money' for Robert.   At 15:06, Queen Tut states that 'absolutely … the bottom line is money for Robert David Steele.'   At 16:18, Negron states that **the CIA 'probably told Robert he could keep whatever money he raised**', to which Goodman comments, 'exactly, exactly') (emphasis added); *Complaint, ¶ 17*

("On August 17, 2017, Goodman, Negron and Queen Tut published a video on YouTube entitled, 'Parallels to Soros: Micro to Macro' … At 24:26 of the 'Parallel to Soros" video, Queen Tut states that "this kind of person [referring to Robert] is a danger to the alternative news community and he has been operating for way to long … **We want him to be gone now**".   At 29:24, Queen Tut states that Robert's interviews reveal his "schizoid and abusive behavior."   **At 40:18, Goodman, Negron *and* Queen Tut laugh derisively about Robert.**   Queen Tut repeats and republishes many of the statements made in prior videos, including Queen Tut 005.") (emphasis added);[4] *Complaint, ¶ 17*

("On August 26, 2017, Goodman, Negron and Queen Tut published a video on YouTube entitled, 'Unrig Cynthia McKinney' … At 15:41, Goodman states 'Now I want to clarify

---

[4]        The Court will take note that Goodman, Negron and Queen Tut use the plural term, "we", throughout the videos in which they appear together.

something because we're not doing this to be vindictive, we're not doing this because we dislike Robert David Steele, although I personally do.   We're doing this because [laughter] … [Goodman changes the subject]' … At 19:06, Queen Tut states 'And this is the nail in the coffin for Robert David Steele's platform for being the Open Source guy. He is not the open source guy, he never has been … He's created a scam for many many years and he's been defrauding people for a very long time.' … At 21:32, Negron states "**No, he's a serious con man, but I mean the bigger point being, you know that this is a serious fraud.  I mean that it is a fraud.  No question.**' … At 28:05, Queen Tut states 'Cynthia McKinney is also a fraud too.   [Goodman interjects 'oh'].   She is willing to associate with Robert David Steele'.   At 36:48, Negron states '**Which would explain her being susceptible to this fraud by Robert David Steele**'") (emphasis added).

The words published in the videos by Negron and Goodman and Queen Tut are actionable defamation *per se*.   For the reasons stated below, the Court should deny Negron's motion to dismiss.

## II.  Standard of Review

In *Madison v. Bobst North America, Inc.*, this Court ruled:

"The standard in the Fourth Circuit is well-settled.  'A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Federal Rules of Civil Procedure 'require[] only '"a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert 'detailed factual allegations,' but must contain 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.' *Twombly*, 550 U.S. at 555 (citations omitted).  The '[f]actual allegations must be enough to raise a right to relief above the speculative level,' *id.* (citation omitted), to one that is 'plausible on its face.' *Id.* at 570.

> To survive Rule 12(b)(6) scrutiny, a complaint only need contain 'enough facts to state a claim to relief that is plausible on its face.' *Id.* A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires 'the reviewing court to draw on its judicial experience and common sense.' *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)."

2015 WL 5123594, at * 2 (E.D. Va. 2015). The Court further observed that:

> "In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted)."

*Id.*

## III.  <u>Argument</u>

In Virginia, as in other states, the law of defamation protects a basic constitutional interest:  the individual's right to personal security and the uninterrupted entitlement to enjoyment of his reputation. *Gazette, Inc. v. Harris,* 229 Va. 1, 7, 325 S.E.2d 713 (1985) (citation omitted).  In *Rosenblatt v. Baer*, Mr. Justice Stewart emphasized that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.'  The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole   society."

383 U.S. 75, 92-93 (1966).

A.     *Count I – Defamation Per Se*

The elements of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013).

At common law, words that are actionable as defamation *per se* include (1) those which impute to a person the commission of a crime involving moral turpitude or which is punishable by imprisonment in a state of federal institution, (2) those which impute to a person an "unfitness to perform the duties of a job or a lack of integrity in the performance of the duties", and (3) those which prejudice a person in his profession or trade. *Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d 447 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632 (1981)); *James v. Powell*, 154 Va. 96, 106-107, 152 S.E. 539 (1930) ("To say that a man committed a felony which he did not commit, is a libel, and this is true even though he had, in fact, committed another felony of the same general character.").

Where, as here, the defamatory statements are understood to mean that the plaintiff has committed or would commit crimes involving moral turpitude or that plaintiff is unfit to perform the duties of his employment or the effect of the words are prejudicial to plaintiff in his work, "injury to plaintiff's personal and business reputation, humiliation, and embarrassment is presumed." *Virginia Model Jury Instruction No. 37.105 (citations omitted)*; *Askew v. Collins*, 283 Va. 482, 486, 722 S.E.2d 249 (2012) (defendant, who told reporters that plaintiff was "institutionalized—that's the only way you qualify for family leave", "knew her statement was false, or at a minimum … lacked reasonable grounds for this belief or otherwise negligently failed to ascertain facts in

support of the defamatory statement … Thus, as a matter of law, the jury needed no proof of damages suffered by Collins on which to predicate its compensatory award based upon the per se defamation negligently published by Askew.   The reputational damage to Collins resulting from Askew's statement was properly presumed, and the jury's award of compensatory damages to Collins [$350,000.00] was appropriate under established common law principles for per se defamation.   Accordingly, the trial court did not err in refusing to set aside the verdict.").

False statements of criminal or illegal conduct, mismanagement, unethical and unprofessional practices, moral delinquency and mental incompetence are universally found to be actionable as defamation *per se*. *See, e.g., Choi v. Kyu Chui Lee*, 2009 WL 434861, at * 1 (4th Cir. 2009) (Defendant described plaintiff as a "thug" and a "gangster" and alleged "that Choi improperly titled a building in the name of a corporation he controlled even though the building was bought with Federation funds"); *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 439 (4th Cir. 2004) (truck driver accused of stealing gasoline from corporate merchant – $250,000 compensatory damage and $450,000 punitive damage award upheld on appeal); *Goulmamine v. CVS Pharmacy, Inc.*, 2015 WL 5920009, at * 3-4 (E.D. Va. 2015) ("Both murder and 'a charge of aiding and abetting in the possession of narcotics' are crimes of moral turpitude which qualify as defamatory *per se*.   CVS's statements regarding Goulmamine causing overdoses, construed in their plain and popular sense, thus impugn to Goulmamine a crime of moral turpitude.   With regard to impugning fitness for one's trade, an 'implication ... that the plaintiff is guilty of unethical and unprofessional conduct ... for which conduct the defendant suggests ... that the plaintiff could and should be subjected to disbarment proceedings' is defamatory *per*

*se,* because it "impute[s] conduct tending to injure him in his profession."  Stating that a

physician has committed misconduct worthy of losing his license to practice medicine or

dispense controlled substances is sufficiently similar to suggesting an attorney has

committed conduct worthy of disbarment, such that several CVS statements qualify as

defamation *per se*.") (citations omitted); *Rodarte v. Wal-Mart Stores, Inc.*, 2013 WL

1898999, at * 4 (W.D. Va. 2013) ("Plaintiff alleges that Wal–Mart falsely told the police

she was engaging in embezzlement.  Such a statement is per se defamatory both because

it 'impute[s] to a person the commission of some criminal offense involving moral

turpitude, for which the party, if the charge is true, may be indicted and punished' and

because it imputes an 'unfitness to perform the duties of an office or employment of

profit, or want of integrity in the discharge of the duties of such an office or

employment.'"); *Harrell v. Colonial Holdings, Inc.*, 2013 WL 550424, at * 7 (E.D. Va.

2013) ("Allegations of 'illegal' conduct are … clearly actionable, because an accusation

that a person's conduct is 'illegal' is objectively provable.  Couching such an unequivocal

statement as "legal opinion" does not change the analysis."); *Graham v. Oppenheimer*,

2000 WL 33381418, at * 1 (E.D. Va. 2000) (upholding jury verdict of compensatory and

punitive damages in the sum of $750,000, where the defendant stated "Sam Graham,

M.D. [plaintiff] used to be the department chair of urology at Emory Clinic in Atlantic.

UroCor decided to underbid the Emory pathology department for pathology services and

give Graham a cut of the money it got from doing the pathology.  This worked well until

the poor SOB got caught with his hand in the cookie jar.  Poor guy had to resign his

prestigious position."); *Isle of Wight v. Nogiec*, 281 Va. 140, 144-146, 704 S.E.2d 83

(2011) (jury verdict for defamation affirmed where defendant stated that plaintiff, a

previous Parks & Recreation director, "suppressed" information about flood damage to the County's museum); *Tronfeld*, 272 Va. at 713, 636 S.E.2d at 451 (insurance adjuster's statements that attorney "just takes people's money" and clients received less for their claims because of attorney's services were not opinion, but capable of being proven true or false and, thus, were actionable in claim for defamation per se); *Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 40, 624 S.E.2d 63 (2006) (statement that former CEO's mismanagement caused former employer to lose money was actionable defamation); *Lindeman v. Lesnick*, 268 Va. 532, 535, 604 S.E.2d 55 (2004) (Defendant's memorandum contained a statement that Dr. Mathews had said that "Dr. Lesnick was 'about to go under' with his medical practice because he can't get any patients [and] Lesnick was 'undereducated' and ... didn't have enough training prior to starting to perform this type of fusion [surgery]."   Another memorandum contained statements attributed to Dr. Mathews that "it is 'a crime' for Dr. Lesnick" not to admit the failure of the spinal fusion surgery performed on Lindeman, that "Dr. Lesnick decided to ignore the facts and just send Gregg back to work because [Dr. Lesnick] was instructed to do so" by Lindeman's employer and its insurance company, and that Dr. Lesnick "appear[s] to be 'in the pocket' of employers and Workman's Comp carriers for the purpose of returning employees to work"); *Poulston v. Rock*, 251 Va. 254, 467 S.E.2d 479 (1996) (defendant told plaintiff's employer that plaintiff "had stolen some nuts and bolts from DuPont's inventory and had given them to [Defendant] for use in assembling a motorcycle."); *Food Lion v. Melton*, 250 Va. 144, 458 S.E.2d 580 (1995) ("Don't you have some meat that belongs to us? … I'm talking about that meat that you have in your purse" – statement was actionable); *Schnupp v. Smith*, 249 Va. 353, 359-360, 457 S.E.2d 42 (1995) (false

statement which imputed to plaintiff the commission of aiding and abetting illegal drug activity was actionable *per se*); *Oberbroeckling v. Lyle*, 234 Va. 373, 379-380, 362 S.E.2d 682 (1987) (jury properly found that statement in memorandum, accusing plaintiff of "mismanagement of funds", was defamatory because, according to the language of the pertinent instruction, the words "in their normal usage would be construed to mean that [the plaintiff] was unfit to perform the duties of his employment" or "lacked integrity" or "was dishonest in performing the duties of his employment"); *compare id.*, *Kuley v. Fayez*, 2014 WL 10190138, at * 6-8 (Fairfax Cir. 2014) ("When Plaintiff tried to remind Fayez of the multiple discussions in the past regarding Plaintiff working late, Fayez allegedly responded: 'That's not true. We've never had that discussion.' … This is a factual statement by Fayez that Plaintiff is not telling the truth. Because this statement was made at a formal reprimand meeting, Fayez's claim was a particularly damning accusation. The Court must accept as true Plaintiff's claim as to this statement's falsity. **This statement is actionable.**" … In sum, the Court finds the following statements to be sufficiently pleaded: 1) Fayez's statement that Plaintiff was given a direct order to follow county and Department overtime policy; 2) Fayez's oral assertion that it was not true that she and Plaintiff had discussions on multiple occasions regarding Plaintiff working late; 3) Barrett's assertion that plaintiff had been spreading false rumors and innuendos about previous supervisors; 4) Barrett's assertion that Plaintiff "eavesdropped on a private conversation" between her coworkers; and 5) Any and all statements that Plaintiff engaged in a "pattern" of filing grievances against her superiors) (emphasis in original); *Butler v. N.E.W. Customer Services Companies, Inc.*, 2007 WL 5282007, at * 2 (Fairfax Cir. 2007) ("The first statement submitted to the jury in this case was that Plaintiff "had

some conflicts with her co-workers because she was not always to work on time and her work style was different from her co-workers."  The first clause is actionable.  Whether or not Plaintiff had conflicts with co-workers does not depend upon the speaker's viewpoint and is a statement of fact."); *Lamb v. Weiss*, 2003 WL 23162338, at * 6 (Winchester Cir. 2003) (statement that plaintiff had "not properly managed his advertising budget and had "misspent the [advertising] funds" was actionable); *Stanley v. Storck*, 2003 WL 22387076, at * 3 (Norfolk Cir. 2003) ("Defendants request a ruling from the Court that Plaintiff may only proceed on statements that the Plaintiff has set forth verbatim … These statements are: (1) "We are talking with the IRS;" (2) "They're aware of the thievery," (3) He "did not know how much money the workers took but it is in the thousands of dollars not millions;" (4) "The police are investigating;" and (5) That "three former employees and their families stole tens of thousands of dollars from his firm." … The Court finds that each of these statements is sufficient to create a question for the jury."); *Assaid v. Beaver*, 2000 WL 33340705, at * 1 (Roanoke City Cir. 2000) (defendant, a business competitor, defamed plaintiff by telling certain of plaintiff's customers or potential customers that plaintiff was "a thief, a crook, and a thieving son of a bitch" … as alleged, the language connotes that the Plaintiff lacks integrity; that he is dishonest; that he engages in larceny; that he is unfair in his business dealings; and that he has in the past, and may again in the future, steal from his customers and business associates" – demurrer overruled).

1.    *Negron's Actionable Statements*

Negron repeatedly accused Plaintiffs of serious crimes and unethical behavior. When Negron's statements are viewed together as a whole and in the context of the

videos in which they appear, *see Reynolds v. Pionear, LLC*, 2016 WL 1248866, at * 5

(E.D. Va. 2016) ("in assessing the defamatory nature of Pionear's statements regarding

Reynold's 'unfavorable employment' and her 'inappropriate conduct,' the Court must

also consider Pionear's third statement: that Reynolds had spoken 'rudely and with

profanity' to her co-worker"), Negron's false accusations of "stealing", "fraud", that

Robert had "ulterior motives", that Robert is "predatory in nature", that the CIA

"probably told Robert he could keep whatever money he raised", that Robert is a "serious

con man",[5] that "this is a serious fraud … [n]o question", and that Congresswoman Dr.

---

[5]     *See, e.g., JTH Tax, Inc. v. Grabert*, 8 F.Supp.3d 731, 741 (E.D. Va. 2014)
("the Court concludes that Liberty has presented sufficient facts to demonstrate that
portions of Grabert's internet postings constitute defamation *per se*.    Grabert's
defamatory statements include false factual assertions that prejudice Liberty in its
profession or trade.   Specifically, Grabert's internet postings include assertions that: …
Liberty's system is 'a scam, a scheme, a con'; … Liberty 'steal[s]' stores from
franchisees and pays nothing for them … These statements impute a lack of integrity to
Liberty, prejudice Liberty in its profession or trade, and cast aspersions on Liberty's
honesty, efficiency, prestige, and standing in its field of business."); *see also RKM Intern.
Ltd. v. Fujita*, 2015 WL 2451187, at * 6 (D. Haw. 2015) ("The Court finds that Plaintiff
has sufficiently pled defamation per se because the statements made by Defendant
concern Plaintiff's ability to conduct its business.   Specifically, Defendant stated that
Plaintiff is an 'unscrupulous scam operation'); *Shadle v. Nexstar Broadcasting Group,
Inc.*, 2014 WL 3590003, at * 5 (M.D. Pa. 2014) ("Here, Nexstar's alleged statements are
capable of a defamatory meaning … The word 'scam' is defined as 'a fraudulent or
deceptive act or operation.'"); *Wyndham Vacation Resorts, Inc. v. Wesley Financial
Group, LLC*, 2013 WL 785938, at * 8 (M.D. Tenn. 2013) ("Both the letter and email
[calling defendants a 'scam'] reflect some suggestions that the Defendants may be
involved in improper and possibly criminal activities as well as deceptive and fraudulent
business practices.   The Court concludes that the statements included in the Wyndham's
letter and email are capable of defamatory meanings.   Accordingly, the Court concludes
that Defendants sufficiently state a counterclaim for defamation."); *Kumaran v. Brotman*,
247 Ill.App.3d 216, 617 N.E.2d 191, 198 (1993) ("In this case, we believe that plaintiff
can plead a cause of action for defamation *per se* based upon the Tribune article.   In
analyzing this matter, we will focus upon the article's explicit remarks that plaintiff was
'working a scam' by filing numerous lawsuits to extract monetary settlements on a full-
time basis.   The word 'scam' has been defined as '[a] fraudulent business scheme;
swindle' (The American Heritage Dictionary, (2d College ed. 1985) and as the same as a
'confidence game,' *i.e.,* 'a swindle effected by gaining the confidence of the victim'
(Webster's New World Dictionary 297 (2d College ed. 1982)).

Cynthia McKinney is "susceptible to this fraud by Robert David Steele" – all these statements are defamatory *per se*. They are not opinions. Negron's statements are indisputably capable of being proven false. The statements can be disproved by evidence, if adduced, that Robert David Steele did not steal from anyone and did not defraud anyone. Negron's statements are all "tied to a 'provably false' factual underpinning." *Reynolds*, 2016 WL 1248866 at * 7; *Goulmamine*, 138 F.Supp.3d at 660 (First, "statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false.". Second, a statement of opinion may be actionable when it "reasonably can be construed as a statement of fact" because "it is 'laden with factual content' and the underlying facts are allegedly false.") (citations and quotations omitted).

### 2.   *Plaintiffs Allege The Requisite Intent*

Private individuals, like Plaintiffs,[6] asserting claims of defamation must show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation. The plaintiff also must show that the defendant knew that the statement was false or, believing that the statement was true, lacked a reasonable basis for

---

[6]   Plaintiffs do not allege or admit that Robert David Steele is a public figure. The presumption is that the plaintiff is a private individual, subject to the Defendant's burden of proving that the plaintiff is a public figure. *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1533 (4th Cir. 1994). Negron makes no attempt to rebut the presumption that Robert is a private individual. *See, e.g., Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 3 (W.D. Va. 2016) ("To determine whether a plaintiff is a private person or a limited-purpose public figure in relation to a particular public controversy, defendants must prove the following: (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation.") (quoting *Fitzgerald v. Penthouse Int'l*, 691 F.2d 666, 668 (4th Cir. 1982)).

such belief, or acted negligently in failing to determine the facts on which the publication was based.  When a plaintiff asserts that the defendant acted negligently, the plaintiff further must prove that the defamatory statement made apparent a substantial danger to the plaintiff's reputation. *Hyland v. Raytheon Technical Services Co.*, 277 Va. 40, 46, 670 S.E.2d 746 (2009) (numerous citations omitted) (cited in *Lewis v. Kei*, 281 Va. 715, 725-726, 708 S.E.2d 884 (2011) ("The amended complaint … alleges that [the defendant] knew that the statements he made were false, that he acted recklessly in making the statements, that he lacked any good faith basis for the statements, and that [the defendant] knew the statements made on the County website would be re-published by the news organizations" – order sustaining demurrer to defamation claim reversed).

Plaintiffs' Complaint alleges that the Defendants "lacked reasonable grounds for any belief in the truth of their statements, and acted negligently in failing to determine the true facts." [*Complaint, ¶ 26*].  Paragraph 25 of Plaintiffs' Complaint further states that the Defendants "acted with actual malice and reckless disregard for the truth", and offers numerous facts in support.

As a matter of law, "actual malice" may be shown by direct proof or as an inference either from the Defendants' statements, from the Defendant's conduct, or from other aggravating circumstances, including disregard for communications by others[7] and

---

[7]    In this case, Robert availed himself of the benefit of YouTube's Privacy Guidelines. https://www.youtube.com/static?template=privacy_guidelines.  In June 2017, he filed complaints against the Defendants and sought removal of the offending videos. Defendants disregarded Robert's communications, mocked him, and continued to publish false and defamatory statements.   In the June 29, 2017 YouTube video entitled, "Squidward v. Sponge Bob", for instance, at 19:10 of the video, Goodman states 'What Google helped him do was to file privacy complaints [Goodman indicating quote/unquote 'privacy complaints' on video] for videos that we have that include evidence of Robert David Steele committing fraud, and he'll now make a privacy complaint about this…." [*Complaint, ¶ 17*].

the appearance of reprisal. *See, e.g., Daniczek v. Spencer*, 2016 WL 153086, at * 12 (E.D. Va. 2016) ("Spencer neglects that malice may be inferred under aggravating circumstances, including disregard for communications by others and the appearance of reprisal."); *PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 345, 576 S.E.2d 438 (2003) ("Proof of actual malice is not necessary.  Malice may be inferred from circumstances.") (quoting *Baker v. Marcus*, 201 Va. 905, 909-910, 114 S.E.2d 617 (1960)); *Crawford & Co. v. Graves*, 199 Va. 495, 499, 100 S.E.2d 714 (1957) ("Strong and violent language or insinuations disproportionate to the occasion may raise an inference of malice") (quoting *Aylor v. Gibbs*, 143 Va. 644, 648, 129 S.E. 696 (1925) ("considering the fact that the connecting of the plaintiff with the theft grew out of a comparatively trivial circumstance and considering all the evidence as to the subsequent acts and utterances of the defendant, we are satisfied that the court should not have taken the case away from the jury")); *Kroger Grocery and Baking Co. v. Rosenbaum*, 171 Va. 158, 161-163, 198 S.E. 461 (1938) ("the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself");  *Snyder v. Fatherly*, 158 Va. 335, 354, 163 S.E. 358 (1932) ("'As a general rule it is considered competent for the plaintiff to show, as evidence of malice, that since the speaking or publication of the slander or libel … the defendant has repeated or republished the same, even though such repetition or republication has taken place since the commencement of the action, and the operation of this rule is not confined merely to a repetition or republication of the same words as those which are the basis of the action, but extends to the speaking or publication of words having the same import or conveying the same charge.'") (quotation omitted).

In this case, even assuming Plaintiffs were public figures – which they are not – Plaintiffs have alleged sufficient facts to show that the Defendants acted with reckless disregard for the truth in publishing video after video after video in which they repeated and escalated the malicious attacks on Plaintiffs.  Whether the Defendants were "actuated by malice" is a ***question of fact for a jury*** to decide. *See, e.g., Cashion v. Smith*, 286 Va. 327, 338, 749 S.E.2d 526 (2013) ("the issue of whether there was malice is a question of fact for the jury, and a showing of pre-existing personal spite or ill will is only one of several ways in which a privilege can be lost"); *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134-135, 575 S.E.2d 858 (2003) (same); *Harrington v. Sprint Nextel Corp.*, 2008 WL 2228524, at * 6 ("[T]he question whether a defendant was actuated by malice, and has abused the occasion and exceeded the privilege is a question of fact for a jury" rather than one for the Court to determine") (quotations omitted).

### 3.  *Negron Is Liable For Gooodman and Queen Tut's Defamation*

Contrary to her counsel's suggestion, Negron is liable for Goodman and Queen Tut's defamation, even though she did not speak or even appear in all the offending videos.

Plaintiffs allege – and Negron does not dispute – that Negron conspired with Goodman and Queen Tut to publish false and defamatory statements.[8]

**It is well-established in Virginia that acts of defamation may constitute the requisite "unlawful" act to support a claim of civil conspiracy**.  *See, e.g., Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts

---

[8]      Negron's sole objection to Counts III and IV (Business Conspiracy and Common Law Conspiracy) is her claim that the Plaintiffs have failed to allege an "underlying tort".  Negron does not dispute that she conspired with Goodman and Queen Tut to injure Plaintiffs in their business and reputations.

supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications. The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1 (Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession. Plaintiffs allege that this was done via a defamatory television advertisement broadcast into West Virginia and Virginia, a defamatory press release, and subsequently published articles containing that press release. The substance of the defamatory statements is that Plaintiffs were responsible for contaminating West Virginia drinking water and unfairly terminating the employment and benefits of West Virginia miners."); *Cobbs v. Commonwealth*, 2001 WL 322728, at * 4-5 (Chesterfield Cir. 2001) (overruling demurrer); *Carolinas Cement Co. v. Riverton Inv. Co.*, 2000 WL 33340623, at * 6 (Frederick Cir. 2000) ("the Demurrer is overruled to the extent that the conspiracy is based on the defamation of the plaintiff"); *id. Pheils v. Palmer*, 2009 WL 4448504, at * 8 (Ohio App. 2009) (evidence sufficient to uphold verdict in case of civil conspiracy to defame); *Murphy v. City of Aventura*, 2008 WL 4540055, at * 7 (S.D. Fla. 2008) (plaintiff sufficiently stated a claim for conspiracy to defame); *Seachange Intern., Inc. v. Putterman*, 79 Ark.App. 223, 228-229, 86 S.W.2d 25, 28 (Ark. App. 2002) ("We believe that the pleadings, depositions, exhibits, and affidavits demonstrated the existence of a genuine issue of material fact as to whether Concurrent participated in a conspiracy with Putterman to defame SeaChange.").

So long as a conspiracy continues, each co-conspirator is liable for the tortious acts of the other committed in furtherance of the unlawful project.  As the United States Supreme Court held in *Pinkerton v. United States*:

> "the partners act for each other in carrying it forward.  It is settled that 'an overt act of one partner may be the act of all without any new agreement specifically directed to that act.' … Motive or intent may be proved by the acts or declarations of some of the conspirators in furtherance of the common objective.  A scheme to use the mails to defraud, which is joined in by more than one person, is a conspiracy.  Yet all members are responsible, though only one did the mailing. The governing principle is the same when the substantive offense is committed by one of the conspirators in furtherance of the unlawful project … The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle.  That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all.  An overt act is an essential ingredient of the crime of conspiracy … If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."

*Pinkerton v. United States*, 328 U.S. 640, 646-647 1946).

Because Negron concedes that Plaintiffs have alleged a conspiracy amongst the Defendants, Negron is liable for Goodman and Queen Tut's actions in furtherance of the conspiracy to injure Plaintiffs through publication of the false and defamatory videos.

**B.**     ***COUNT II – Insulting Words***

Section 8.01-45 of the Virginia Code (1950), as amended, provides that "[a]ll[9] words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace."

---

[9]     The word "all" is a term of exceptional breadth. *Turner v. Reed*, 258 Va. 406, 409, 518 S.E.2d 832 (1999) ("The word 'all' means: 'The whole number or sum [when] used collectively with a plural noun or pronoun expressing an aggregate.' Black's Law Dictionary 74 (6th ed. 1990)).  The Virginia Supreme Court has not minced words: "A more comprehensive word than 'all' cannot be found in the English language". *Moore v. Va. Fire & Marine Ins. Co.*, 69 Va. (28 Gratt.) 508, 516 (1877).  "All words", thus, includes both written and verbal words.

"The design of the statute is to prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment therefor, and by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury." *Hines v. Gravins*, 136 Va. 313, 112 S.E. 869, 870-871 (1926).

**"Whether or not the words used are insulting is a jury question**, depending on whether from 'their usual construction and common acceptation' they may be 'construed as insults, and tend to violence and breach of the peace.' The motive which actuated the person using the words is not material, except upon the questions of malice and the measure of damages." *Cook v. Patterson Drug Co.*, 185 Va. 516, 521, 39 S.E.2d 304 (1946) (emphasis added). In *Allen & Rocks, Inc. v. Dowell*, the Virginia Supreme Court held that § 8.01-45 "plainly requires that the words used must not only be insults, but they must also 'tend to violence and breach of the peace.'" 252 Va. 439, 441, 477 S.E.2d 741 (1996). The defendant (Rocks) made the following statements about the plaintiff (Dowell):

> "Rocks stated that Dowell's accomplishments and interpersonal skills with management were unsatisfactory; that Dowell did not communicate well with Rocks; that Dowell had been discharged because of his performance; and that Rocks, were he in the shoes of a potential employer, would not hire Dowell."

The Supreme Court ruled that these words were not such "as tended to violence or breach of the peace." 252 Va. at 443, 477 S.E.2d at 743; *compare Jennings v. Jones*, 2005 WL 4827429, at * 1, 3 (Petersburg Cir. 2005) ("insinuating to the Plaintiffs either the incompetent or illegal performance of their duties, were such as may have provoked reasonable persons to breaches of the peace, and the Plaintiffs have so alleged in their

Motions for Judgment" … [T]he alleged statements are actionable under the 'fighting words' statute, Va. Code § 8.01-45.  They meet all the requirements of common-law defamation, and it is possible that a reasonable jury might find that the statements were such as might fairly be expected by reasonable people to tend towards violence or a breach of the peace.").

Attached hereto as *Exhibit "A"* is a Summary of reported decisions over the last 100+ years, in which the Virginia Supreme Court, Virginia Circuit Courts, and Virginia Federal Courts have affirmed and reversed Jury verdicts and overruled demurrers to insulting words claims.  Jury verdicts were upheld in cases where defendants made much, much *less* egregious statements, than Defendants made in this case.

One thing is clear from the reported decisions:  statements that are defamatory *per se* are insulting *per se*. *Goulmamine v. CVS Pharmacy, Inc.*, 2015 WL 59200009 at * 12 ("Statements that are defamatory *per se* are insulting *per se;* thus, defamatory *per se* statements necessarily meet the "insulting" requirement of the two-part insulting words test.").

Measured by the controlling cases cited, there is no question that Plaintiffs state a viable insulting words claim upon which relief can be granted.

**C.**     *Count V – Tortious Interference With Contract*

The necessary elements to establish a prima facie case of tortious interference with contract are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy

has been disrupted." *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216, 754 S.E.2d 313 (2014) (quoting) (*Chaves v. Johnson,* 230 Va. 112, 120, 335 S.E.2d 97 (1985)).

The contracts and business expectancies at issue in this action are Plaintiff, Earth Intelligence Network's, donor relationships. [*Complaint, ¶ 42*].  The donors are specific individuals, some of whom were subscribers to Goodman's YouTube channel, *Crowdsource The Truth*, who were encouraged to terminate their relationship with #UNRIG and request a refund due to "fraud" perpetrated by Plaintiffs. [*Id., ¶¶ 43-44*].

This is not a case like *Masco*.  Here, Plaintiffs allege that the Defendants intentionally interfered with specific, existing donors. [*Complaint, ¶ 17* (In the June 16, 2017 video, "The Failing New York Times", Goodman states "I want to invite our friend, Robert David Steele, to uh give back the money to all the people that we raised money for his organization the other day.  We have been getting so many emails from people who are angry and I don't want to tell everybody to demand their money back because Robert David Steele has specifically told me I had better not do that, so I'm inviting him to graciously refund it to anyone who is angry again, and there are a lot of people" … Goodman further states "So I'm making an open call right now.  Everyone should just go directly to their credit card company and cancel the charge").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request the Court to deny Negron's motion to dismiss.


DATED:        November 20, 2017

ROBERT DAVID STEELE
EARTH INTELLIGENCE NETWORK


By:   */s/Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:   (804) 501-8272
        Facsimile:   (202) 318-4098
        Email:   **stevenbiss@earthlink.net**

        *Counsel for the Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2017 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for Defendant, Patricia A. Negron, and all interested parties receiving notices via CM/ECF.  I also certify that a copy of this pleading was emailed in PDF to Defendants, Goodman and Queen Tut a/k/a Susan Lutzke


By:   */s/Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:   (804) 501-8272
        Facsimile:   (202) 318-4098
        Email:   **stevenbiss@earthlink.net**

        *Counsel for the Plaintiffs*