IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT DAVID STEELE *et al.*,

    Plaintiffs,

v.                                                                 Civil Action No. 3:17cv601

JASON GOODMAN *et al.*,

    Defendants.

### DEFENDANT PATRICIA A. NEGRON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Defendant, Patricia A. Negron ("Ms. Negron" or "Defendant"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(6), for her Reply Memorandum of Law in Support of her Motion to Dismiss the Complaint filed by the Plaintiffs, Robert David Steele ("Mr. Steele") and the Earth Intelligence Network ("EIN," together the "Plaintiffs"), states as follows:

### INTRODUCTION

This is a defamation case, with counts for conspiracy and tortious interference tacked on as ancillary to the alleged defamation, which forms the core tort that the Plaintiffs claim damaged them. Despite its length, the Plaintiffs' opposition brief fails to rebut Ms. Negron's arguments for dismissal. In short, the claims against Ms. Negron should be dismissed because they either fail to identify any defamatory statements by her, fail to allege facts sufficient to show actual malice (which is necessary because Plaintiffs are public figures), or otherwise fail to state proper claims.

Specifically, the defamation claim against Ms. Negron fails for three reasons: (a) the actual statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's or EIN's reputations; (b) the Plaintiffs are "public figures" and they fail to allege malice in non-conclusory terms; and (c) Ms. Negron cannot be liable for the

publication of any statements that were not actually spoken by her without a showing of actual malice on her part.

Further, the Plaintiffs fail to state a claim for insulting words in Count II because Ms. Negron's statements do not tend toward violence or breach of the peace. The Plaintiffs fail to state a conspiracy claim in Counts III and IV because no underlying tort exists. Finally, the Plaintiffs fail to state a tortious interference claim in Count V because they make no effort to specify what business relationships or expectancy was interfered with.

For the these reasons, the Court should grant Ms. Negron's Motion to Dismiss and dismiss all claims against her with prejudice.

## ARGUMENT

The Court should grant Ms. Negron's Motion to Dismiss for the following reasons: (i) the Plaintiffs fail to state a claim for defamation in Count I for multiple reasons; (ii) the Plaintiffs fail to state a claim for insulting words in Count II because Ms. Negron's statements do not tend toward violence or breach of the peace; (iii) the Plaintiffs fail to state a conspiracy claim in Counts III and IV because no underlying tort exists; and (iv) the Plaintiffs fail to state a tortious interference claim in Count V because they make no effort to specify what expectancy was interfered with.

I.  **The Plaintiffs Fail to State a Claim for Defamation in Count I for Multiple Reasons.**

The Plaintiffs fail to rebut Ms. Negron's arguments for dismissal of Count I. To state a claim for defamation, the Plaintiffs must show (1) publication, (2) an actionable statement, and (3) the requisite intent. *Echtenkamp v. Loudoun County Pub. Schs.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003). Words that are "merely offensive or unpleasant statements" are not defamatory. *Id.* To be defamatory, the words must make the plaintiff appear "odious, infamous, or ridiculous." *Id.* Moreover, statements of opinion are not actionable – the statements must be false statements of

fact, which is to say that they must "contain a provably false connotation." *Id.* Mere statements regarding a plaintiff's job performance or manner, "even if clearly damaging to the plaintiff's interests," are not considered defamatory. *Id.*

The defamation claim against Ms. Negron fails for three reasons: (a) the specific statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's reputation; (b) the Plaintiffs are "public figures" and they fail to allege malice in non-conclusory terms; and (c) Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her.

### A. The specific statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's reputation.

The specific statements made by Ms. Negron on page 24 of the Complaint are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's reputation (the remaining statements also fail without the requisite malice, as set forth below). Each of the statements on page 24 are mere opinion or are not defamatory. "'Statements that express only the speaker's opinion and not matters of fact are not actionable as defamation because such statements cannot be shown to be false.'" *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 509-10 (E.D. Va. 2016) (quoting *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 40, 624 S.E.2d 63 (2006)). Statements that are relative and depend on the speaker's viewpoint are expressions of opinion. *Id.* (quoting *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132, 575 S.E.2d 858 (2003)).

Ms. Negron is alleged to have said that Mr. Steele's body language was "deeply disturbing," to her and suggested "a lot of maybe ulterior motives." These statements are not false statements of fact that harm Mr. Steele's reputation and are merely statements about Mr. Steele's

"manner," which are not defamatory. She is alleged to have said that Mr. Steele is "predatory in nature." This is an opinion and not defamatory. She is alleged to have stated that the CIA "probably told Robert he could keep whatever money he raised." This is not definitive statement and also not defamatory.

The Plaintiffs cannot explain how statements regarding Mr. Steele being predatory or having ulterior motives provide any factual basis upon which to base a claim. *See* (Opp'n Mem. 17-18.) These claims necessarily are subjective and incapable of definitively being proven false. *See, e.g., Dragulescu*, 223 F. Supp. 3d at 509-10 ("The statements that Dragulescu spoke 'disparagingly,' had a 'meltdown' or 'temper tantrum,' or did not 'properly contribute to the HBCU mission' are statements that are relative in nature and depend largely upon the speaker's viewpoint. Therefore they 'are expressions of opinion' and not actionable in a defamation suit. Virginia precedent makes this clear." (internal marks omitted)); *Gibson v. BSA*, 360 F. Supp. 2d 776, 781 (E.D. Va. 2005) ("The Court holds that the statement that Mr. Gibson was 'unfit to be a Scoutmaster and in Scouts' does not contain a provably false factual connotation."). These statements cannot form the basis of a claim.

**B. The Plaintiffs are "public figures" and they fail to allege malice in non-conclusory terms.**

The Plaintiffs only provide a cursory rebuttal of Mr. Steele's status a public figure,[1] arguing that "Negron makes no attempt to rebut the presumption that Robert is a private individual." (Opp'n Mem. 19 n.6.) This contention is inaccurate, as Ms. Negron flatly stated in her prior memorandum that "the Plaintiffs are indisputably public figures." (Mem. in Supp. Mot. to Dismiss

---

[1] The Plaintiffs do not appear to contest that EIN constitutes a public figure for the purpose of a defamation analysis. Regardless, the argument set forth herein applies equally to both the Plaintiffs Steele and EIN.

2.) With respect to the burden referenced by the Plaintiffs regarding proving them public figures (*see* Opp'n Mem. 19 n.6), the Court can make this determination as a matter of law on the pleadings.

The *Foretich v. Capital Cities/ABC* opinion cited by the Plaintiffs provides that the issue of public versus private figures is one that can be decided as a matter of law: "the question of whether a defamation plaintiff is a 'limited-purpose public figure' is an issue of law." 37 F.3d 1541, 1551 (4th Cir. 1994). Accordingly, a court can make a public figure determination based on the pleadings when reviewing a motion to dismiss. In *Chapin*, for example, the Eastern District of Virginia found that the record presented for review on a motion to dismiss under Rule 12(b)(6) was likely sufficient for the plaintiffs to be considered public figures, thereby requiring a showing of actual malice for any defamation claim. *Chapin v. Greve*, 787 F. Supp. 557, 568 n.21 (E.D. Va. 1992). While the *Chapin* already dismissed the defamation complaint on other grounds, it nonetheless provided as follows:

> The Court does not decide, nor need it decide, the similar but separate question whether plaintiffs are public, limited public, or private figures for purposes of determining whether negligence or actual malice is the requisite intent. *See Milkovich*, ____ U.S. at ____, 110 S. Ct. at 2703-07; *Gertz*, 418 U.S. at 342-48; *Blue Ridge Bank*, 866 F.2d at 686-89. <u>Even so, it is worth noting that the limited record developed thus far strongly suggests that plaintiffs are at least limited public figures required to show actual malice.</u>

*Id.* (emphasis added); *see also Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 230 (E.D. Va. 1990) (granting a motion to dismiss under Rule 12(b)(6) after noting that a finding of "[w]hether and to what extent a person is a public figure is a matter for the court to decide").

The Plaintiffs' allegations easily satisfy the five requirements for a public figure. *Foretich*, 37 F.3d at 1553 (providing the following five requirements: "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special

5

prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation"). The Complaint sets forth that Mr. Steele dedicated himself to teaching individuals and organizations about his open source theories; that he maintains a public website to promote his ideas; he has been "universally commended" for his work; and that he founded EIN to teach individuals regarding his open source governmental theories, among numerous other references. (Compl. ¶¶ 1-2, *passim*.)

Accordingly, the Complaint readily evidences that Plaintiffs utilized access to channels of communication (through the website, online channels, and Mr. Steele's numerous media efforts to promote his ideals); the Plaintiffs voluntarily took up their cause through promoting Mr. Steele's ideas in an endeavor to influence others; the purported controversy existed prior to the alleged defamation; and Plaintiffs maintained the same status when the allegedly defamatory statements were made. Accordingly, Plaintiffs are public figures and are required to show the statements by Ms. Negron were made with *New York Times* malice, in other words that the statements were made with actual knowledge of their falsity or reckless disregard as to whether they were true. *Key v. Robertson*, 626 F. Supp. 2d 566, 582-83 (E.D. Va. 2009).[2]

Here, there are no factual allegations to support that Ms. Negron had "obvious reasons to doubt the veracity" of the statements she made, that her statements regarding the fraud were the

---

[2] As recognized by the Supreme Court of Virginia, to establish reckless disregard the Plaintiffs must show more than simply "a departure from reasonably prudent conduct." *Jordan v. Kollman*, 612 S.E.2d 203, 208-10 (Va. 2005). Instead, a public figure plaintiff must show by clear and convincing evidence that there were "obvious reasons to doubt the veracity" of the information, the information was the "product of the [defendant's] imagination," or the information was "fabricated" by the defendant. *Id.*

6

"product of her imagination," or that she fabricated them. Indeed, the statements involving fraud on pages 27 and 28 of the Complaint are referring specifically to Mr. Steele's involvement with something called the Election Reform Act and on their face reflect merely Ms. Negron's opinion regarding Mr. Steele's efforts in connection with that Act in a colloquial manner. In the opposition, the Plaintiffs merely string cite general citations and then point to their conclusory allegations that "Defendants 'lacked reasonable grounds for any belief in the truth of their statements, and acted negligently in failing to determine the true facts,'" without any actual underlying factual support to buttress these claims. *See* (Opp'n Mem. 20) (quoting Compl. ¶ 26).[3]

For these reasons, the Court should dismiss Count I as against Ms. Negron.

C.   **Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her.**

The Court should dismiss Count I because Ms. Negron is not liable for the publication of statements by any other persons not actually spoken by her through any co-conspirator theory of liability. In *Hackman v. Wilson* for example, the court dismissed both Virginia statutory and common law business claims, finding that "the Plaintiffs' position is not consistent with the requirement that the actor must have had legal malice in order to be liable as a co-conspirator." 534 B.R. 867, 881 (Bankr. E.D. Va. 2015) (emphasis added). The *Hackman* court went on to provide that "in order to be held liable as a co-conspirator under Va. Code § 18.2-499 [(the court

---

[3] Finally, the Plaintiffs' claim that whether an alleged defamer acted with malice "is a question of fact for a jury to decide," (Opp'n Mem 22), while the general rule, is not absolute. The Plaintiff must provide more than conclusory allegations and must in fact present some indicia of malice at the initial pleading stage. *See, e.g., Skinner v. Loudoun Cty. Dep't of Mgmt. & Fin. Servs.*, No. 1:14-cv-6, 2014 U.S. Dist. LEXIS 188298, at *14-15 (E.D. Va. Apr. 2, 2014) ("As Larimore shows, Skinner can proceed on his defamation claim only if he alleged malice. Skinner has presented no evidence of malice. Subsequently, his defamation *per se* claim fails as a matter of law." (emphasis added)). The Plaintiffs fail to do so here.

also was analyzing a common law conspiracy claim)], the defendant must have acted with legal malice, and there are no facts plead[ed] that could plausibly support that conclusion with respect to [a particular defendant] in th[at] case." *Id.* ("To say that a defendant can be a completely innocent party and still be liable as a co-conspirator is inconsistent with the requirement that the parties must act in concert to establish a conspiracy."). The Plaintiffs must show that Ms. Negron acted with malice with respect to her statements, and they have come nowhere close to doing so, providing only conclusory allegations to that effect.

In their opposition brief, the Plaintiffs spend numerous pages citing Ms. Negron's purported general appearances in YouTube videos. *See* (Opp'n Mem. 3-7.) Yet, they themselves plead that Defendant Goodman "owns, maintains, and operates" the YouTube channel on which the allegedly defamatory statements appeared. (Compl. ¶ 4.) There are no facts, only conclusory statements, regarding Ms. Negron's responsibility for statements published on Mr. Goodman's YouTube channel. In the absence of any such factual allegations or evidence (indeed, because there is none), Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her, and therefore any such claims against Ms. Negron for alleged publications of the statements of others must be dismissed.

In an attempt to combat this result, the Plaintiffs point to their conclusory conspiracy claims, arguing that "Negron conspired with Goodman and Queen Tut to publicize false and defamatory statements."[4] (Opp'n Mem. 22.) They go on to once again string cite general law

---

[4] The Plaintiffs' characterization that "Negron concedes that Plaintiffs have alleged a conspiracy amongst the Defendants," is inaccurate. In her Memorandum in Support of her Motion to Dismiss (ECF No. 22), Ms. Negron repeatedly denies that she is liable for the alleged statements of her co-Defendants, which encompasses any conclusory conspiracy allegations. (Mem. in Supp. Mot. to Dismiss *passim*.) Further, Ms. Negron specifically provides that the conspiracy claim fails because of the failure of the defamation and insulting words claims. (*Id.* 8.)

regarding the existence of a cause of action for conspiring to defame without any real application. (*Id.* 22-24.) In fact, none of the Plaintiffs' cited opinions perform a defamation analysis in the context of public figures, which is the case here. The malice standard required for defamation against public figures simply cannot be attributed to Ms. Negron without any facts showing malice on her part. *See Hackman*, 534 B.R. at 881. The Plaintiffs' blanket claim that another alleged co-conspirator's malice can be attributed to Ms. Negron therefore is misguided.

## II. The Plaintiffs Fail to State a Claim for Insulting Words in Count II Because Ms. Negron's Statements Do Not Tend Toward Violence or Breach of the Peace.

To state a claim for insulting words, the Plaintiffs must be able to show that the words used literally tended to "violence and breach of the peace." *Allen & Rocks, Inc. v. Dowell*, 477 S.E.2d 741 (Va. 1996). First, the Plaintiffs argue that a determination on whether a statement meets this standard is one for the jury, citing a 1946 opinion. This is no longer the current state of the law:

> As pointed out in *Darnell v. Davis*, 190 Va. 701, 706, 58 S.E.2d 68 (1950), the question whether the words used was for the jury because the statute in place then said this was a matter for jury determination. <u>Now, in its present form, the statute makes no reference to such issues being matters for the jury</u>. The Court finds that although the words alleged may be capable of defamatory meaning, they are not, at the same time, ones that tend to violence and breach of peace because in and of themselves they are not disgusting, abusive, or repulsive, as a matter of law. *Crawford v. United Steel Workers, AFL-CIO*, 230 Va. 217, 335 S.E.2d 828 (1985). Under the insulting words statute, the test is objective, not subjective, because the Court can conclude whether the words used are insulting under a reasonable man standard, which is not dependent on peculiar sensibilities of an individual plaintiff.

*Garraghty v. Commonwealth*, 52 Va. Cir. 529, 531 (Richmond 1994); *see also Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 671 (E.D. Va. 2015) (granting a motion to dismiss in part, finding that "Exhibit 1, therefore, cannot form the basis of an insulting words claim, because

the letter does not tend to violence or breach of the peace"). Accordingly, the Court can dismiss Count II as a matter of law.

Substantively, the Plaintiffs then argue (based on a stock attachment of over 30 case summaries, again without any application to this matter) that "[j]ury verdicts were upheld in cases where defendants made much, much *less* egregious statements[] than Defendants made in this case." (Opp'n Mem. 26) (emphasis in original). Plaintiffs do not bother to analyze the actual statements made by Ms. Negron. Indeed, the only words alleged to have been spoken by Ms. Negron are not those that would tend toward violence or breach of the peace and do not in any way suggest violence or breach of the peace. Her statements are not defamatory *per se*, as set forth above, and therefore are not insulting *per se*, much less sufficient to cite violence and breach of the peace. Indeed, Ms. Negron only makes general comments about Mr. Steele's manner (*e.g.*, allegedly calling him disturbing, predatory, and stating he had ulterior motives).

As noted by Plaintiffs, the Virginia Supreme Court has found that certain statements regarding one's professional failures do not qualify as insulting words, as they do not incite violence. *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 440-41, 477 S.E.2d 741, 741 (1996) (analyzing the following allegations: "Rocks stated that Dowell's accomplishments and interpersonal skills with management were unsatisfactory; that Dowell did not communicate well with Rocks; that Dowell had been discharged because of his performance; and that Rocks, were he in the shoes of a potential employer, would not hire Dowell"); *see also Donner v. Rubin*, 77 Va. Cir. 309, 318 (Chesapeake 2008) (sustaining a demurrer with prejudice with respect to allegations that a lawyer engaged in deceptive acts before the Commonwealth; that a bar complaint should be filed; and of other unprofessional conduct); *Goulmamine*, 138 F. Supp. 3d at 671.

For these reasons, the Court should dismiss Count II.

### III. The Plaintiffs Fail to State Conspiracy Claims in Counts III and IV Because There Is No Underlying Tort.

Without an underlying tort, the conspiracy claims must be dismissed. Virginia law mandates that "there can be no conspiracy to do an act the law allows." *Hechler Chevrolet v. Gen. Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985); *Almy v. Grisham*, 273 Va. 68, 80-81, 639 S.E.2d 182, 188-89 (2007) (conspiracy claims require "proof that the underlying tort was committed"). Without a defamation or insulting words claim, the Plaintiffs have no claims for conspiracy. Further, Ms. Negron addresses *supra* why she cannot be liable for any alleged statement of a purported co-conspirator.

### IV. The Plaintiffs Fail to State a Tortious Interference Claim in Count V Because They Make No Effort to Specify What Expectancy Was Interfered With.

The Plaintiffs cannot claim tortious interference damages based on a general, unspecified loss of customers or viewers. Their opposition brief fails to demonstrate why the Court should not therefore dismiss their claim for this reason.

In Count V, Plaintiffs attempt to construct a tortious interference claim by asserting that Defendants intentionally interfered with business expectancies based on EIN's "valid and reasonable contracts and business expectancy in its relationships with donors." (Compl. ¶ 42.) These claims of harm to nondescript donors or subscribers are far from the *specific*, existing business expectancies necessary to support a claim for tortious interference.

"The purpose of laws against tortious interference is not to protect consumers or the operation of the marketplace generally," but "[r]ather, these causes of action provide a legal remedy where a particular party's specific, existing contract or business expectancy or opportunity has been interfered with in a tortious manner." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

11

> To successfully claim tortious interference with prospective economic advantage, a party must (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference.

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001); *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216, 754 S.E.2d 313, 318 (2014). The "first element that a party claiming under . . . these torts must prove is the existence of some specific contract or relationship. Failure to allege any specific, existing economic interest is fatal to the claim." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003). "Under Virginia law, 'the expectancy of remaining in business is too general to support a tortious interference claim.'" *Id.* at 710 (quoting *Levine v. McLeskey*, 881 F. Supp. 1030, 1057 (E.D. Va. 1995), *aff'd in part, vacated in part*, 164 F.3d 210 (4th Cir. 1998)). "Failure to allege any specific, existing economic interest is fatal to the claim." *Id.* at 709.

For example, in *Masco*, this Court found that no "business expectancy" was alleged where a plaintiff claimed that the defendant "coerced suppliers and consumers generally." *Id.* ("The only 'business expectancy' reasonably inferred from its allegations is the general expectancy to remain in business. As stated above, proof of interference with this general expectancy would not be sufficient to succeed on a claim of tortious interference."). Similarly, in *Advanfort Co. v. International Registries, Inc.* this Court found that a plaintiff's allegations failed to state a claim when it asserted that the defendant interfered with "contractual relationships with various customers" and "contractual relationships with their employees and contractors who worked in service of those contracts." *Advanfort Co. v. Int'l Registries, Inc.*, No. 1:15-cv-220, 2015 U.S. Dist. LEXIS 62125, at *11 (E.D. Va. May 12, 2015) ("They have therefore failed to allege facts

sufficient to satisfy the first element . . .—the existence of a valid contractual relationship or business expectancy."); *see also Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) ("Virginia law requires that a plaintiff plead a specific prospective economic advantage or business expectancy, and that a general expectancy that consumers will purchase insurance from the GEICO Website, which is all that plaintiff has alleged, does not suffice."); *Eurotech, Inc. v. Cosmos European Travelers Aktiengesellschaft*, 189 F. Supp. 2d 385, 390 (E.D. Va. 2002) (granting motion to dismiss and observing that "plaintiffs assert only generally that defendant's [actions] prevented plaintiffs from establishing business relationships with third parties regarding the cosmos.com website. This is inadequate."); *Concordia Pharm., Inc. v. Method Pharm., LLC*, No. 3:14CV00016, 2016 U.S. Dist. LEXIS 41904, at *50 (W.D. Va. Mar. 29, 2016) ("Instead, relying on an affidavit from . . . the company's vice president of business development, Concordia argues that it has business and contractual relationships with unidentified 'wholesalers and repackagers,' and that it 'expects to maintain continuing profits from these wholesalers and repackagers.' The court agrees with Method that such evidence is insufficient to establish the type of specific, existing contractual relationship or business expectancy required to sustain a claim for tortious inference.").

The Complaint's tortious interference claim fails for the same reason as those in *Masco* and *Advanfort*. Plaintiffs claim that Defendants intentionally interfered with business expectancies based on Earth Intelligence Network's "valid and reasonable contracts and business expectancy in its relationships with donors." (Compl. ¶ 42.) The Plaintiffs then assert conclusory damages based on purported "injury to [Earth Intelligence Network's] property and business, loss of donations, financial loss, damage to reputation, court costs, and other damages." (*Id.* ¶ 45.)

13

Just as in *Masco* and *Advanfort*, the Plaintiffs make no effort to specify what specific expectancy was interfered with, outside of the ambiguous "contracts and business expectancy in its relationships with donors," and "loss of donations." As set forth above, these are exactly the sort of vague, generalized claims that this Court has dismissed time and again. *See Gov't Emples. Ins. Co.*, 330 F. Supp. 2d at 705; *Masco*, 279 F. Supp. 2d at 709; *Eurotech, Inc.* 189 F. Supp. 2d at 390; *Concordia*, 2016 U.S. Dist. LEXIS 41904, at *50; *Advanfort*, 2015 U.S. Dist. LEXIS 62125, at *11. In their opposition, the Plaintiffs make no real effort to rebut these claims failing to provide a single case supporting their allegations. The Plaintiffs' allegation of unidentified donors, which are only hinted at in passing the Complaint, "is insufficient to establish the type of specific, existing contractual relationship or business expectancy required to sustain a claim for tortious inference." *Concordia Pharm., Inc*, 2016 U.S. Dist. LEXIS 41904, at *50.

The Plaintiffs' failure to provide a specific expectancy that Defendants supposedly interfered with is "is fatal to the claim," and therefore the Court should dismiss Count V.

## CONCLUSION

For the reasons set forth above and in her prior memorandum, Defendant, Patricia A. Negron, respectfully requests that the Court enter an order: (1) granting her Motion to Dismiss; (2) dismissing the Complaint with prejudice; (3) awarding Defendant her costs and expenses incurred herein, and (4) awarding such further and other relief as this Court deems appropriate.

Dated: December 8, 2017	Respectfully submitted,

                                                  **PATRICIA A. NEGRON**

                                            By: ____/s/ Terry C. Frank_____

R. Johan Conrod, Jr. (VSB No. 46765)
E-mail: rjconrod@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone: (757) 624-3000
Fax: (888) 360-9092

Terry C. Frank, Esq. (VSB No. 74890)
E-mail: tcfrank@kaufcan.com
Benjamin A. Wills, Esq. (VSB No. 88109)
E-mail: bawills@kaufcan.com
KAUFMAN & CANOLES, P.C.
1021 E. Cary Street, Suite 1400
Richmond, Virginia 23219
Phone: (804) 771-5700
Fax: (888) 360-9092

*Counsel for Defendant Patricia A. Negron*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December, 2017, a true copy of the foregoing is being electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Steven S. Biss (VSB No. 32972)
> E-mail: stevenbiss@earthlink.net
> 300 West Main Street, Suite 102
> Charlottesville, Virginia 22903
> Phone: (804) 501-8272
> Fax: (202) 318-4098
> *Counsel for Plaintiffs*

And sent via first-class mail, postage prepaid, to:

> Jason Goodman, *Pro Se*
> 252 7th Avenue, Apt. 6S
> New York, NY 10001
>
> "Queen Tut"
> a/k/a Susan A. Lutzke, *Pro Se*
> 1221 University Ave., Unit D202
> Fort Collins, CO 80521

>  /s/ Terry C. Frank
> R. Johan Conrod, Jr. (VSB No. 46765)
> E-mail: rjconrod@kaufcan.com
> KAUFMAN & CANOLES, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, VA 23510
> Phone: (757) 624-3000
> Fax: (888) 360-9092
>
> Terry C. Frank, Esq. (VSB No. 74890)
> E-mail: tcfrank@kaufcan.com
> Kaufman & Canoles, P.C.
> 1021 E. Cary Street, 14th Floor
> Richmond, Virginia 23219
> Phone: (804) 771-5700
> Fax: (888) 360-9092
> *Counsel for Defendant Patricia A. Negron*

16114953v1