IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ROBERT DAVID STEELE** *et al.***,**

      **Plaintiffs,**

**v.**                                           **Civil Action No. 3:17cv601**

**JASON GOODMAN** *et al.***,**

      **Defendants.**

**DEFENDANT PATRICIA A. NEGRON'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

      NOW COMES Defendant, Patricia A. Negron ("Ms. Negron" or "Defendant"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for her Memorandum of Law in Support of her Motion to Dismiss the Amended Complaint filed by the Plaintiffs, Robert David Steele ("Steele") and the Earth Intelligence Network ("EIN," together the "Plaintiffs"), states as follows:

## I.    <u>INTRODUCTION</u>

      Despite weighing in at almost 100 pages in length, Plaintiffs' Amended Complaint still fails to state a valid claim against Ms. Negron.  In an attempt to conceal the lack of actionable conduct, Plaintiffs bury the few actual statements made by Ms. Negron in countless pages of extraneous transcription of online video posts, most of which have nothing to do with Ms. Negron, and which do not come close to comprising any valid claim against her.  Plaintiffs appear unable to draw any distinction between mere criticisms and legitimately actionable conduct.  Plaintiffs present the Court with dozens and dozens of pages extensively quoting all comments made about them, and yet the Amended Complaint cites only five actual statements in total made by Ms.

Negron.  As set forth below, none of these statements can form the basis of any valid right of action.

In contrast to the verbose descriptions of the parties' online commentary, Plaintiffs' actual legal counts fall woefully short.  They offer no attempt to demonstrate a connection between their avalanche of allegations and the actual legal elements required, leaving Ms. Negron and the Court to guess what conduct the Plaintiffs claim satisfies the elements required for a particular count.  Much less, Plaintiffs make no effort to point to the conduct of Ms. Negron, specifically, that could satisfy the necessary legal requirements for a single claim.  Despite these failures, Plaintiffs nonetheless argue that Ms. Negron should be forced to pay a stunning $18 million in damages.

Specifically, each of Plaintiffs' nine counts fails to state a claim against Ms. Negron.  First, Plaintiffs' defamation count fails for three reasons: (a) the actual statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Steele's or EIN's reputations; (b) Plaintiffs are "public figures" and they fail to allege malice in non-conclusory terms; and (c) Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her without a showing of actual malice on her part.

Plaintiffs' second count for insulting words fails as none of the demure statements made by Ms. Negron tend toward violence or breach of the peace.  Plaintiffs' conspiracy claims in Counts Three and Four fail because there is no underlying tort and Plaintiffs do not satisfy minimal pleading standards.  Plaintiffs fail to state a claim for tortious interference in Count Five because they do not allege any legitimate expectancy and again fail to satisfy minimal pleading standards.  Plaintiffs similarly fail to state sufficient damages or conduct for a claim for intentional infliction of emotional distress in Count Six.  Plaintiffs cannot state a claim for personal trespass and computer harassment against Ms. Negron as no physical injury and no obscene statement occurred.

2

In their last substantive count, Plaintiffs fail to state a claim under Virginia Code Ann. § 8.01-40 for unauthorized use of name and image against Ms. Negron, as she made no advertisement or use in trade. Finally, Plaintiffs do not state facts warranting issuance of a permanent injunction.

At its heart, this action involves the intersection between actual defamatory conduct and online criticism in the age of social media. The parties to this proceeding operate in a world of cover-ups and conspiracies. Plaintiff Steele placed himself and EIN into this arena through numerous websites, publications, and speeches, advocating for open source and anti-"deep state" government.[1] In addition, Plaintiff Steele has made or at least been attributed with numerous more eccentric claims through appearances on conspiracy programs and through his own published articles and commentary on internet blogs.[2] Plaintiffs should experience no surprise when some individuals disagree with their beliefs. Ms. Negron did so in five comments and Plaintiffs responded by suing her for eight figures in damages. Given this outlandish demand, Plaintiffs' garrulous allegations, the bevy of new meritless counts, and the failure to cite any actionable conduct she partook in, Ms. Negron is left to conclude that this action is nothing more than an attempt to stifle her criticisms of Plaintiffs. Accordingly, Ms. Negron should be awarded her fees and costs being forced to defend this action under Virginia Code Ann. § 8.01-223.2.

For these reasons, the Court should grant Ms. Negron's Motion to Dismiss and dismiss all claims against her in the Amended Complaint with prejudice.

---

[1] *See* Robert D. Steele, Articles, robertdavidsteele.com (last visited May 9, 2018), http://robertdavidsteele.com/publications/articles-2/.

[2] For example, on a widely known conspiracy show, Plaintiff Steele appears to state that there is a colony on Mars populated by children kidnapped by NASA, among other even more sinister claims. *See* The Alex Jones Channel, *CIA Insider: Pedophilia Is Only the Gateway, Vampirism Is The Destination,* YouTube.com (Jun. 29, 2017), https://www.youtube.com/watch?v=f9cgm1B7Rew.

## II.   **FACTUAL BACKGROUND/PROCEDURAL HISTORY**

There are very few allegations in the Amended Complaint specific to Ms. Negron's actions. The material allegations specific to her are summarized here:

1.    Plaintiffs allege that Defendant Jason Goodman ("Goodman") is the person who "owns, maintains, and operates" the YouTube channel where the videos containing the allegedly defamatory statements were published.  (Am. Compl. ¶ 6, ECF No. 39.)

2.    Plaintiffs claim that Ms. Negron acted with Goodman in YouTube channel videos "[p]rior to the commencement of this action on September 1, 2017." (*Id.* ¶ 8.) Plaintiffs admit that after this action was filed, "Negron never again appeared in a YouTube video with Goodman." (*Id.*) In fact, the only actions taken by Negron after the filing of this suit cited by Plaintiffs is that she retweeted and commented on three tweets from Defendant Susan A. Lutzke a/k/a "Queen Tut" ("Lutzke").[3] (*Id.* ¶ 8.)

3.    Plaintiffs make the conclusory and unsupported allegation that Ms. Negron "publish[ed] the following false, defamatory and actionable statements of and concerning Plaintiffs," even though with only a tiny handful of exceptions all of the "following actionable statements" were actually made by either Goodman or "Queen Tut." *See* (*id.* ¶ 19.)

4.    For twenty-eight pages, the Plaintiffs then extensively quote excerpts from online videos in an attempt to paint every statement that could possibility be construed to show Plaintiffs

---

[3] By referencing Co-Defendant Lutzke as such, Negron does so only for consistency purposes with the Amended Complaint and takes no position regarding whether "Queen Tut" and Ms. Lutzke are the same individual.

in a negative light as defamation. *See (id.* at 20-48.) The only quotes that are attributed to Negron are as follows:[4]

- "You know Queen Tut, I had seen an interview on Infowars when they were talking about the UNRIG [campaign] and just all the body language coming from RDS was just deeply disturbing to me and suggested, you know, a lot of maybe ulterior motives [or I'm not sure what's going on there.]" (*Id.* ¶ 19(v).)

- She allegedly stated that Plaintiff Steele is "predatory in nature."[5]  (*Id.*)

- She allegedly stated that the CIA "probably told Robert he could keep whatever money he raised [or something as part of the deal]." (*Id.*)

- "No, he's a serious con man, but I mean the bigger point being, you know that this is a serious fraud. I mean [] it is a fraud. No question." (*Id.* ¶ 19(y).)

- "Which would explain her being susceptible to this fraud by Robert David Steele." (*Id.*)

5.      Based on these allegations alone, Plaintiffs claim that Ms. Negron is liable for over $18 million in damages.

6.      On September 9, 2017, Plaintiffs then filed a 37-page Complaint against Ms. Negron, Goodman, and "Queen Tut," setting forth five counts as follows: (1) defamation *per se*;

---

[4] Throughout the Amended Complaint, Plaintiffs attempt to remedy their lack of substantive allegations against Ms. Negron by providing that she co-produced Goodman's videos based solely on her appearance in some of them and because she "ma[de] no attempt to correct, contract or distance herself from Goodman." *See, e.g.*, (Am. Compl. ¶ 19(c).) These conclusory allegations simply cannot withstand this motion. Merely being in the presence of someone making allegedly defamatory comments surely does not impute them to yourself, and further the YouTube channel in question was operated exclusively by Goodman, with Negron only appearing as a guest. *See (id.* ¶ 6.)

[5] Belying their own allegations that such phrases constitute defamation, Plaintiffs stunningly use identical language to describe the Defendants, asserting that they "are social media predators." (Am. Compl. at 2.)

(2) insulting words; (3) business conspiracy; (4) common law conspiracy; and (5) tortious interference." (Compl. *passim.*)  Plaintiffs demanded $15 million in three-fold damages, and $350,000 in punitive damages.

7.      On March 25, 2018, Plaintiffs moved to amend their Complaint (ECF Nos. 36, 37), which the Court allowed on April 11, 2018 (ECF No. 38).

8.      On April 13, 2018, the Plaintiffs filed a 97-page Amended Complaint, which included four new counts against all Defendants for intentional infliction of emotion distress (Count Six); personal trespass and computer harassment (Count Seven); unauthorized use of name and picture (Count Eight); and for a permanent injunction (Count Nine).  Plaintiffs now seek over $18 million in damages.[6]

## III.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . [and] a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff." *Starks v. Abbasi*, No. 3:08cv110, 2009 U.S. Dist. LEXIS 83929, at *1 (E.D. Va. Sept. 15, 2009) (quoting *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  This principle only applies to "factual allegations . . . and a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

---

[6] Ms. Negron notes that Plaintiffs' only attempt to actually specify damages is an allegation that the fundraising for the "#UNRIG" campaign dwindled from "$29,200 to $200 per month."  (Am. Compl. ¶ 31.)  Even accepting these allegations as true, Plaintiffs do not come close to justifying their groundless demand of over $18 million in damages.  Further, as noted below, Plaintiff Steele has actually contradicted this claim in his own online postings.  *See infra* n.9.

assumption of truth." *Id.*, 2009 U.S. Dist. LEXIS 83929, at *2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009) (internal quotations omitted)).

A complaint must be dismissed if it does not allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Further, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Pleading in the form of legal conclusions, therefore, is insufficient and courts are not bound to accept conclusory allegations without more. *Townsend v. Fannie Mae*, 923 F. Supp. 2d 828, 832 (W.D. Va. 2013); *Marks v. Crawford*, 882 F. Supp. 530, 532 (E.D. Va. 1993).

## IV.    <u>ARGUMENT</u>

Ms. Negron respectfully requests that the Court grant her Motion to Dismiss her from this action for the following reasons: (a) Plaintiffs fail to state a claim for defamation against Ms. Negron in Count One; (b) Plaintiffs fail to state a claim for insulting words in Count Two because Ms. Negron's statements do not tend toward violence or breach of the peace; (c) Plaintiffs fail to state conspiracy claims in Counts Three and Four because there is no underlying tort; (d) Plaintiffs fail to state a claim for tortious interference in Count Five because they do not allege any legitimate expectancy; (e) Plaintiffs fail to state sufficient damages or conduct for a claim for intentional infliction of emotional distress in Count Six; (f) Plaintiffs cannot state a claim for personal trespass and computer harassment against Ms. Negron as no physical injury and no obscene statement occurred; (g) Plaintiffs fail to state a claim under Virginia Code Ann. § 8.01-40 for unauthorized use of name and picture against Ms. Negron as she made no advertisement or use in trade; (h)

Plaintiffs do not state facts warranting issuance of a permanent injunction; and (i) Ms. Negron should be awarded fees and costs being forced to defend this action under Virginia Code Ann. § 8.01-223.2.

A.    **Plaintiffs fail to state a claim for defamation against Ms. Negron in Count One.**

The Court should dismiss Count One because the statements that she is personally alleged to have made are not defamatory on their face, and there are no facts pleaded to establish anything other than that Ms. Negron believed the truth of her statements; the Plaintiffs are public figures are do not sufficiently plead malice; and Ms. Negron is not liable for any publication of any statements by any other persons.

To state a claim for defamation, the Plaintiffs must show (1) publication, (2) an actionable statement, and (3) the requisite intent. *Echtenkamp v. Loudoun County Pub. Schs.*, 263 F. Supp. 2d 1043, (E.D. Va. 2003).[7] Words that are "merely offensive or unpleasant statements" are not defamatory. *Id.* To be defamatory, the words must make the plaintiff appear "odious, infamous, or ridiculous." *Id.* Moreover, statements of opinion are not actionable – the statements must be false statements of fact, which is to say that they must "contain a provably false connotation." *Id.* Mere statements regarding a plaintiff's job performance or manner, "even if clearly damaging to the plaintiff's interests," are not considered defamatory. *Id.*

---

[7] To the extent the Court determines that the alleged wrongs occurred outside of the Commonwealth, defamation law of other potentially relevant states is sufficiently uniform that the present analysis is unaffected. *See Kylin Network (Beijing) Movie & Culture Media Co. v. Fidlow*, No. 3:16CV999-HEH, 2017 U.S. Dist. LEXIS 84349, at *8 n.2 (E.D. Va. June 1, 2017) (noting that while "Virginia applies the doctrine of *lex loci delicti*, meaning the law of the place of the wrong governs all matters related to the basis of the right of action," "it is far from clear whether a Virginia court would apply Virginia's substantive defamation law for a statement published" outside of the Commonwealth).

The defamation claim against Ms. Negron fails for three reasons: (1) the specific statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's reputation; (2) the Plaintiffs are "public figures" and they fail to allege malice in non-conclusory terms; and (3) Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her.

1.      **The specific statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's reputation.**

The specific statements made by Ms. Negron are not defamatory, either because they are opinion or are simply not statements that impugn Mr. Steele's reputation. Each of the alleged statements were made in the spirit of perceived legitimate criticism, were mere opinion, and are not defamatory. "'Statements that express only the speaker's opinion and not matters of fact are not actionable as defamation because such statements cannot be shown to be false.'" *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 509-10 (E.D. Va. 2016) (quoting *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 40, 624 S.E.2d 63 (2006)). Statements that are relative and depend on the speaker's viewpoint are expressions of opinion. *Id.* (quoting *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132, 575 S.E.2d 858 (2003)).

As in their initial pleading, Plaintiffs assert dozens of pages of transcription of online videos in their Amended Complaint without attempting to describe what conduct falls within the actual counts asserted, which are pleaded only in a conclusory fashion. Ms. Negron is left to scour the hundred pages of pleadings in order to discern what conduct Plaintiffs could potentially claim as actionable. In total, Plaintiffs only provide five statements attributable to Ms. Negron:

> • "You know Queen Tut, I had seen an interview on Infowars when they were talking about the UNRIG [campaign] and just all the body language coming from RDS was just deeply disturbing to me and suggested, you know, a lot of maybe

ulterior motives [or I'm not sure what's going on there.]" (Am. Compl. ¶ 19(v).)

- She allegedly stated that Plaintiff Steele is "predatory in nature." (*Id.*)

- She allegedly stated that the CIA "probably told Robert he could keep whatever money he raised [or something as part of the deal]." (*Id.*)

- "No, he's a serious con man, but I mean the bigger point being, you know that this is a serious fraud. I mean [] it is a fraud. No question." (*Id.* ¶ 19(y).)

- "Which would explain her being susceptible to this fraud by Robert David Steele." (*Id.*)

Not one of these statements constitutes defamation.

First, Plaintiffs cannot seriously argue that Ms. Negron's statement that Steele's body language was disturbing and suggested ulterior motives constitutes defamation. These statements are not false statements of fact that harm Mr. Steele's reputation and are merely statements about Mr. Steele's "manner," which are not defamatory. The next statement is that Steele is "predatory in nature." This is an general opinion and not defamatory. Indeed, Plaintiffs stunningly use identical language to describe the Defendants in their Amended Complaint no less, providing that they "are social media predators." (Am. Compl. at 2.) To the extent Plaintiffs actually believe this statement is actionable, then they concede a counterclaim may be warranted. In addition, Ms. Negron is also alleged to have stated that the CIA "probably told Robert he could keep whatever money he raised." This is not a statement about Plaintiffs at all and also is not defamatory. Finally,

Ms. Negron states that Steele is a con man and that fraud exists. These are general claims of Ms.

Negron's opinion and not asserted as a definitive statement of fact or in a legal sense.[8]

In short, these claims necessarily are subjective and incapable of definitively being proven

false. *See, e.g., Dragulescu*, 223 F. Supp. 3d at 509-10 ("The statements that Dragulescu spoke

'disparagingly,' had a 'meltdown' or 'temper tantrum,' or did not 'properly contribute to the

HBCU mission' are statements that are relative in nature and depend largely upon the speaker's

viewpoint. Therefore they 'are expressions of opinion' and not actionable in a defamation suit.

Virginia precedent makes this clear." (internal marks omitted)); *Gibson v. BSA*, 360 F. Supp. 2d

776, 781 (E.D. Va. 2005) ("The Court holds that the statement that Mr. Gibson was 'unfit to be a

Scoutmaster and in Scouts' does not contain a provably false factual connotation."). As the Fourth

Circuit has noted, the First Amendment specifically protects against statements falling under the

category of "rhetorical hyperbole, a vigorous epithet" and "loose, figurative, or hyperbolic

language." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293-94 (4th Cir. 2008) ("Whether

a statement can reasonably be interpreted as stating facts about an individual -- whether it is

---

[8] To the extent Plaintiffs claim that Ms. Negron's alleged re-tweeting of Queen Tut's articles constitute defamation, such a claim also fails. The only action taken by Negron after the filing of this suit cited by Plaintiffs is that she retweeted and commented on three tweets from Defendant Lutzke. (Am Compl. ¶ 8.) In the first post, she merely comments "What's up with Robert David Steele," in response to a post that Steele published a claimed list of crowd stalkers, which he did in       fact       publish       and       can       be       located       at https://medium.com/@robert.david.steele.vivas/googlegestapo-censorship-crowd-stalking-made-easy-2a87fdd934aa. The second post involved an alleged re-tweet of any apparent opinion article regarding the "#UNRIG" campaign, without any indication what specific statements were defamatory. Finally, a third post is just another comment on an article that provides Steele "inject[ed] false material on the internet," and used "social sciences to manipulate online discourse." Once again, these are clear opinion statements that cannot serve as the basis for defamation.

rhetorical hyperbole, for example -- is a question of law."); *Schnare v. Ziessow*, 104 F. App'x 847, 851 (4th Cir. 2004).

These statements cannot form the basis of a claim for defamation, and thus the Court should dismiss Count One.[9]

### 2.   Plaintiffs are "public figures" and they fail to allege malice in non-conclusory terms.

To the extent any statements attributed to Ms. Negron are deemed potentially defamation, Plaintiffs are "public figures" for the purpose of a defamation analysis, and therefore they must allege actual malice in non-conclusory terms, which they fail to do.

The Fourth Circuit has noted that the issue of public versus private figures is one that can be decided as a matter of law: "the question of whether a defamation plaintiff is a 'limited-purpose public figure' is an issue of law." *Foretich v. Capital Cities/ABC*, 37 F.3d 1541, 1551 (4th Cir. 1994). Accordingly, a court can make a public figure determination based on the pleadings when reviewing a motion to dismiss. In *Chapin*, for example, the Eastern District of Virginia found that the record presented for review on a motion to dismiss under Rule 12(b)(6) was likely sufficient for the plaintiffs to be considered public figures, thereby requiring a showing of actual malice for any defamation claim. *Chapin v. Greve*, 787 F. Supp. 557, 568 n.21 (E.D. Va. 1992). While the

---

[9] Further, Ms. Negron notes that Plaintiffs actually contradict their own allegations of damages in relation to all counts with respect to fundraising, as the website cited in the Amended Complaint with respect to the "#UNRIG" campaign in Paragraph 37(b) explicitly provides that "[i]n part because Cynthia McKinney could not leave her job in Bangladesh" and "in part because of a major Deep State/Zionist-led attack on #UNRIG (six ways, ninety days), our funding collapsed . . ." Steele, #UNRIG Phase II Mission, Vision, Concept, unrig.net (Dec. 7, 2017), https://www.unrig.net/ (noting that Plaintiff Steele seeks the proceeds he expects to receive from this action "for non-profit educational operations in 2018"). No mention is made of Ms. Negron's conduct at all. In addition, Plaintiffs' defamation claim against Negron fails under Virginia's Anti-SLAPP statute described below, *infra* Section IV(I).

*Chapin* court already dismissed the defamation complaint on other grounds, it nonetheless provided as follows:

> The Court does not decide, nor need it decide, the similar but separate question whether plaintiffs are public, limited public, or private figures for purposes of determining whether negligence or actual malice is the requisite intent. *See Milkovich*, _____ U.S. at _____, 110 S. Ct. at 2703-07; *Gertz*, 418 U.S. at 342-48; *Blue Ridge Bank*, 866 F.2d at 686-89. <u>Even so, it is worth noting that the limited record developed thus far strongly suggests that plaintiffs are at least limited public figures required to show actual malice.</u>

*Id.* (emphasis added); *see also Freedlander v. Edens Broad., Inc.*, 734 F. Supp. 221, 230 (E.D. Va. 1990) (granting a motion to dismiss under Rule 12(b)(6) after noting that a finding of "[w]hether and to what extent a person is a public figure is a matter for the court to decide").

Plaintiffs' allegations easily satisfy the five requirements for a public figure. *Foretich*, 37 F.3d at 1553 (providing the following five requirements: "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation"). The Amended Complaint sets forth that Mr. Steele dedicated himself to teaching individuals and organizations about his open source theories; that he maintains a public website to promote his ideas; he has been commended for his work; and that he founded EIN to teach individuals regarding his open source governmental theories, among numerous other references. (Am. Compl. ¶¶ 1-4, *passim*.) A brief perusal of the many websites operated by Plaintiff Steele, most of which are cited in the Amended Complaint, only further verify his self-promotion in the public eye.

Accordingly, the Amended Complaint readily evidences that Plaintiffs utilized access to channels of communication (through the website, online channels, and Mr. Steele's numerous

media efforts to promote his ideals); the Plaintiffs voluntarily took up their cause through promoting Mr. Steele's ideas in an endeavor to influence others; the purported controversy existed prior to the alleged defamation; and Plaintiffs maintained the same status when the allegedly defamatory statements were made.

As public figures, Plaintiffs must show that the statements by Ms. Negron were made with *New York Times* malice, or that the statements were made with actual knowledge of their falsity or reckless disregard as to whether they were true. *Key v. Robertson*, 626 F. Supp. 2d 566, 582-83 (E.D. Va. 2009). As recognized by the Supreme Court of Virginia, to establish reckless disregard the Plaintiffs must show more than simply "a departure from reasonably prudent conduct." *Jordan v. Kollman*, 612 S.E.2d 203, 208-10 (Va. 2005). Instead, a public figure plaintiff must show by clear and convincing evidence that there were "obvious reasons to doubt the veracity" of the information, the information was the "product of the [defendant's] imagination," or the information was "fabricated" by the defendant. *Id.*

Here, there are no factual allegations to support that Ms. Negron had "obvious reasons to doubt the veracity" of the statements she made, that her statements regarding the fraud were the "product of her imagination," or that she fabricated them. Indeed, the statements involving fraud are referring specifically to Steele's involvement with the Election Reform Act and on their face reflect merely Ms. Negron's opinion regarding Mr. Steele's efforts in connection with that Act in a colloquial manner. Plaintiffs must provide more than conclusory allegations and must in fact present some indicia of malice at the initial pleading stage. *See, e.g., Skinner v. Loudoun Cty. Dep't of Mgmt. & Fin. Servs.*, No. 1:14-cv-6, 2014 U.S. Dist. LEXIS 188298, at *14-15 (E.D. Va. Apr. 2, 2014) ("As Larimore shows, Skinner can proceed on his defamation claim only if he alleged malice. Skinner has presented no evidence of malice. Subsequently, his defamation *per se*

claim fails <u>as a matter of law</u>." (emphasis added)).  They fail to do so here.  Therefore, even if some of Ms. Negron's statements could be construed defamatory, Plaintiffs claim still fails.

    **3.**    **Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her.**

The Court should dismiss Count One because Ms. Negron is not liable for the publication of statements by any other persons not actually spoken by her through any co-conspirator theory of liability.  In *Hackman v. Wilson* for example, the court dismissed both Virginia statutory and common law business claims, finding that "the Plaintiffs' position is not consistent with the requirement that <u>the actor must have had legal malice in order to be liable as a co-conspirator</u>." 534 B.R. 867, 881 (Bankr. E.D. Va. 2015) (emphasis added).  The *Hackman* court went on to provide that "in order to be held liable as a co-conspirator under Va. Code § 18.2-499 [(the court also was analyzing a common law conspiracy claim)], the defendant must have acted with legal malice, and there are no facts plead[ed] that could plausibly support that conclusion with respect to [a particular defendant] in th[at] case." *Id.* ("To say that a defendant can be a completely innocent party and still be liable as a co-conspirator is inconsistent with the requirement that the parties must act in concert to establish a conspiracy.").  Plaintiffs must show that Ms. Negron acted with malice with respect to her statements, and they have come nowhere close to doing so, providing only conclusory allegations to that effect.

The Amended Complaint goes to great lengths to remedy the dearth of conduct by Ms. Negron, attributing to her actions she never took and the conduct of the other Co-Defendants under a nebulous conspiracy theory. *See* (Am. Compl. *passim*.)  The only actual facts pleaded by Plaintiffs regarding Ms. Negron's association with Goodman are a few appearances on his YouTube channel.  Yet, the Plaintiffs plead that Goodman is the person who "owns, maintains, and operates" the YouTube channel where the videos containing the allegedly defamatory

statements were published. (*Id.* ¶ 6.) There are no facts, only conclusory statements, regarding Ms. Negron's responsibility for statements published on Mr. Goodman's YouTube channel. In the absence of any such factual allegations Ms. Negron cannot be liable for the publication of any statements that were not actually spoken by her, and therefore any such claims against Ms. Negron for alleged publications of the statements of others must be dismissed.

Plaintiffs simply do not plead sufficient facts to show a conspiracy based on a few public videos in which Ms. Negron criticizes Plaintiffs in agreement with Co-Defendants. Indeed, as noted below, Plaintiffs' conspiracy claims also fail. The malice standard required for defamation against public figures simply cannot be attributed to Ms. Negron without any facts showing malice on her part. *See Hackman*, 534 B.R. at 881. The Plaintiffs' blanket claim that another alleged co-conspirator's malice can be attributed to Ms. Negron therefore is misguided.

**B.**     **Plaintiffs fail to state a claim for insulting words in Count Two because Ms. Negron's statements do not tend toward violence or breach of the peace.**

To state a claim for insulting words, Plaintiffs must be able to show that the words used literally tended to "violence and breach of the peace." *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 442, 477 S.E.2d 741, 742 (1996); *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 667 (E.D. Va. 2015).

As a preliminary note, in Count Two, Plaintiffs again do not specify what words spoken by Ms. Negron constitute actionable conduct under this count, *see* (Am. Compl. ¶¶ 41-43), which this Court could construe as dispositive. *See Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 670 (E.D. Va. 2015).

16

Assuming Plaintiffs refer to the comments discussed above, these statements do not in any way incite violence or a breach of the peace.[10] Her statements are not defamatory *per se*, as set forth above, and therefore are not insulting *per se*, much less sufficient to cite violence and breach of the peace. *See Kylin Network*, No. 3:16cv999-HEH, 2017 U.S. Dist. LEXIS 84349, at *10 ("[D]efamation claims and insulting words claims 'must ineluctably rise or fall together' . . . ."). Indeed, Ms. Negron only makes general comments about Mr. Steele's manner (*e.g.*, allegedly calling him disturbing, predatory, and stating he had ulterior motives). A general insult is not sufficient.

As noted by Plaintiffs, the Supreme Court of Virginia has found that certain statements regarding one's professional failures do not qualify as insulting words, as they do not incite violence. *Dowell*, 252 Va. at 440-41, 477 S.E.2d at 741 (analyzing the following allegations: "Rocks stated that Dowell's accomplishments and interpersonal skills with management were unsatisfactory; that Dowell did not communicate well with Rocks; that Dowell had been discharged because of his performance; and that Rocks, were he in the shoes of a potential employer, would not hire Dowell"); *see also Donner v. Rubin*, 77 Va. Cir. 309, 318 (Chesapeake 2008) (sustaining a demurrer with prejudice with respect to allegations that a lawyer engaged in deceptive acts before the Commonwealth; that a bar complaint should be filed; and of other unprofessional conduct); *Goulmamine*, 138 F. Supp. 3d at 671.

**C.**     **Plaintiffs fail to state conspiracy claims in Counts Three and Four because there is no underlying tort.**

Without an underlying tort, the Plaintiffs' conspiracy claims must also be dismissed. Virginia law mandates that "there can be no conspiracy to do an act the law allows." *Hechler*

---

[10] In addition this claim fails under Virginia's Anti-SLAPP statute described below, *infra* Section IV(I).

*Chevrolet v. Gen. Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985); *Almy v. Grisham*, 273 Va. 68, 80-81, 639 S.E.2d 182, 188-89 (2007) (conspiracy claims require "proof that the underlying tort was committed").   Without a defamation or insulting words claim, the Plaintiffs have no claims for conspiracy.

Moreover, like much of the Amended Complaint, Plaintiffs fail to state the elements for conspiracy claims in non-conclusory terms, despite the heightened pleading standard.   "To ultimately prevail under the Virginia conspiracy statute, a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and (3) causally related injury." *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007) (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn*, 144 F. Supp. 2d 558, 601 (W.D. Va. 2001)).   Similarly, common law conspiracy requires "an agreement between two or more persons;" "to participate in an unlawful act, or a lawful act in an unlawful manner;" "an injury caused by an unlawful overt act performed by one of the parties to the agreement;" and "that the overt act was done pursuant to and in furtherance of the common scheme." *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009) (quoting *Flexible Benefits Council v. Feltman*, No. 08-371, 2008 U.S. Dist. LEXIS 46626, at *26 (E.D. Va. June 16, 2008)).

The Amended Complaint provides no substantive allegations regarding a conspiracy between Co-Defendants and Ms. Negron outside of her appearance on Goodman's video.   Merely because the three individuals at one time expressed a mutual dislike for Plaintiffs, does not require that they acted on some preconceived plan with requisite legal malice.   This conduct does not come close to the particularity required. *See, e.g., Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 329 (W.D. Va. 2007) ("And if all this were not enough, Plaintiff must plead business conspiracy

with particularity, which he has failed to do here."); *Mansfield v. Anesthesia Assocs.*, No. 1:07cv941 (JCC), 2008 U.S. Dist. LEXIS 34732, at *11-13 (E.D. Va. Apr. 28, 2008).

For these reasons, the Court should dismiss Counts Three and Four.

**D.** **Plaintiffs fail to state a claim for tortious interference in Count Five because they do not allege any legitimate expectancy.**

Plaintiffs cannot claim tortious interference damages based on a general, unspecified loss of customers or viewers. In Count Five, Plaintiffs attempt to construct a tortious interference claim by asserting that Defendants intentionally interfered with business expectancies based on EIN's "valid and reasonable contracts and business expectancies in its relationships with donors." (Am. Compl. ¶ 54.) These claims of harm to nondescript donors or subscribers are far from the *specific*, existing business expectancies necessary to support a claim for tortious interference.

"The purpose of laws against tortious interference is not to protect consumers or the operation of the marketplace generally," but "[r]ather, these causes of action provide a legal remedy where a particular party's specific, existing contract or business expectancy or opportunity has been interfered with in a tortious manner." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

> To successfully claim tortious interference with prospective economic advantage, a party must (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference.

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001); *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216, 754 S.E.2d 313, 318 (2014). The "first element that a party claiming under . . . these torts must prove is the existence of some

specific contract or relationship. Failure to allege any specific, existing economic interest is fatal to the claim." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

"Under Virginia law, 'the expectancy of remaining in business is too general to support a tortious interference claim.'" *Id.* at 710 (quoting *Levine v. McLeskey*, 881 F. Supp. 1030, 1057 (E.D. Va. 1995), *aff'd in part, vacated in part*, 164 F.3d 210 (4th Cir. 1998)). "Failure to allege any specific, existing economic interest is fatal to the claim." *Id.* at 709. For example, in *Masco*, this Court found that no "business expectancy" was alleged where a plaintiff claimed that the defendant "coerced suppliers and consumers generally." *Id.* ("The only 'business expectancy' reasonably inferred from its allegations is the general expectancy to remain in business. As stated above, proof of interference with this general expectancy would not be sufficient to succeed on a claim of tortious interference."). Similarly, in *Advanfort Co. v. International Registries, Inc.* this Court found that a plaintiff's allegations failed to state a claim when it asserted that the defendant interfered with "contractual relationships with various customers" and "contractual relationships with their employees and contractors who worked in service of those contracts. " *Advanfort Co. v. Int'l Registries, Inc.*, No. 1:15-cv-220, 2015 U.S. Dist. LEXIS 62125, at *11 (E.D. Va. May 12, 2015) ("They have therefore failed to allege facts sufficient to satisfy the first element . . .—the existence of a valid contractual relationship or business expectancy."); *see also Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) ("Virginia law requires that a plaintiff plead a specific prospective economic advantage or business expectancy, and that a general expectancy that consumers will purchase insurance from the GEICO Website, which is all that plaintiff has alleged, does not suffice."); *Eurotech, Inc. v. Cosmos European Travelers Aktiengesellschaft*, 189 F. Supp. 2d 385, 390 (E.D. Va. 2002) (granting motion to dismiss and

observing that "plaintiffs assert only generally that defendant's [actions] prevented plaintiffs from establishing business relationships with third parties regarding the cosmos.com website. This is inadequate."); *Concordia Pharm., Inc. v. Method Pharm., LLC*, No. 3:14CV00016, 2016 U.S. Dist. LEXIS 41904, at *50 (W.D. Va. Mar. 29, 2016) ("Instead, relying on an affidavit from . . . the company's vice president of business development, Concordia argues that it has business and contractual relationships with unidentified 'wholesalers and repackagers,' and that it 'expects to maintain continuing profits from these wholesalers and repackagers.' The court agrees with Method that such evidence is insufficient to establish the type of specific, existing contractual relationship or business expectancy required to sustain a claim for tortious inference.").

The Amended Complaint's tortious interference claim fails for the same reason as those in *Masco* and *Advanfort*. Plaintiffs claim that Defendants intentionally interfered with business expectancies based on EIN's "valid and reasonable contracts and business expectancy in its relationships with donors." (Am. Compl. ¶ 54.) They then assert conclusory damages based on purported "injury to [Earth Intelligence Network's] property and business, loss of donations, financial loss, damage to reputation, court costs, and other damages." (*Id.* ¶ 45.)

Just as in *Masco* and *Advanfort*, Plaintiffs make no effort to specify what specific expectancy was interfered with, outside of the ambiguous "contracts and business expectancy in its relationships with donors," and "loss of donations." As set forth above, these are exactly the sort of vague, generalized claims that this Court has dismissed time and again. *See Gov't Emples. Ins. Co.*, 330 F. Supp. 2d at 705; *Masco*, 279 F. Supp. 2d at 709; *Eurotech, Inc.* 189 F. Supp. 2d at 390; *Concordia*, 2016 U.S. Dist. LEXIS 41904, at *50; *Advanfort*, 2015 U.S. Dist. LEXIS 62125, at *11.

Moreover, Plaintiffs' tortious interference claim fails as it is again supported only by the most conclusory statements of required elements, with no specification with respect to the specific conduct of Ms. Negron.  Further, the damages specified in the Amended Complaint based on the alleged interference, presumably the loss of donations to "#UNRIG," was publicly attributed to other sources by Plaintiff Steele himself.  Robert D. Steele, #UNRIG Phase II Mission, Vision, Concept, unrig.net (Dec. 7, 2017),  https://www.unrig.net/ (noting that "#UNRIG" funding collapsed based on (1) partner Cynthia McKinney not being able to leave her job in Bangladesh, and (2) a major Deep State/Zionist-led attack, with no mention of Ms. Negron's conduct).  In addition, this claim fails under Virginia Code Ann. § 8.01-223.2, as set forth *infra* Section IV(I).

The Plaintiffs fail to plead sufficient facts to support a tortious interference count against Ms. Negron and therefore the Court should dismiss Count Five.

**E.**     **Plaintiffs fail to state sufficient damages or conduct for a claim for intentional infliction of emotional distress in Count Six.**

In their first new count, Plaintiffs attempt to tack on an intentional infliction of emotional distress claim in Count Six.  (Am. Compl. ¶¶ 58-63.)  Plaintiffs only assert a few conclusory allegations that Defendants' actions "offend against generally accepted standards of decency and morality," are gross violations of social media platforms, and "are atrocious and utterly intolerable."  (Id. ¶ 60.)  Based on these claims, Plaintiffs assert that Defendants "caused Robert to suffer severe emotion [sic] distress, extreme fear and panic."  (Id. ¶ 61.) These sparse allegations fall well short of that required for the tort of intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress is "not favored in the law." *Crittendon v. Arai Ams., Inc.*, No. 2:13-CV-567, 2014 U.S. Dist. LEXIS 576, at *11 (E.D. Va. Jan. 2, 2014).  In order to state a claim, a plaintiff must allege four elements:

> First, Defendants' conduct must have been intentional or reckless,
> meaning Defendants had the specific purpose of inflicting emotional

22

distress or intended their specific conduct and knew or should have known that emotional distress would likely result. Second, Defendants' conduct must have been outrageous and intolerable in that it offends against generally accepted standards of decency and morality; claims involving mere bad manners and hurt feelings are insufficient. Third, there must be a causal connection between Defendants' conduct and Plaintiff's emotional distress. And fourth, Plaintiff's emotional distress must be severe.

*Id.*, 2014 U.S. Dist. LEXIS 576, at *10-11 (citing *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974)).

While the Fourth Circuit has noted that specific allegations are not required to state an emotional distress claim at the motion to dismiss stage, *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005), a plaintiff still must state sufficiently outrageous conduct to state a claim. As one court has noted, where a party fails to sufficiently state a claim for defamation, it likely will fail to state a claim for intentional infliction of emotional distress. *See Watkins v. Wash. Post*, No. PWG-17-818, 2018 U.S. Dist. LEXIS 21649, at *22 (D. Md. Feb. 9, 2018) ("Ms. Watkins's allegations, which fail to plead plausibly her claims for false light and defamation, do not rise to the level of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress."); *see also Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 326 (4th Cir. 2008).

In this case, Plaintiff Steele fails to state actionable conduct against Ms. Negron, and accordingly his piggyback emotional distress claim cannot succeed. *See Hatfill*, 532 F.3d 312, 326; *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 646 (W.D. Va. 2016) ("These allegations simply do not rise to the level required to support an intentional infliction of emotional distress claim, and thus leave to amend to add this claim against either Picerno or Lynn will be denied as futile."); *Watkins*, 2018 U.S. Dist. LEXIS 21649, at *22;

Further, Steele provides no actual allegations demonstrating the severity of his emotional distress is sufficient, outside of the most basic conclusory language, which is also dispositive.

23

*Verrett v. GM Auto. Grp.*, No. 3:15CV416-HEH, 2016 U.S. Dist. LEXIS 115099, at *11 (E.D. Va. Aug. 26, 2016); *Cadmus v. Williamson*, No. 5:15-cv-00045, 2016 U.S. Dist. LEXIS 11145, at *45-46 (W.D. Va. Feb. 1, 2016); *Boyce v. Bennett*, No. 2:14cv249, 2014 U.S. Dist. LEXIS 190446, at *20-22 (E.D. Va. Oct. 30, 2014); *Zaklit v. Glob. Linguist Sols., LLC*, No. 1:14cv314 (JCC/JFA), 2014 U.S. Dist. LEXIS 92623, at *48 (E.D. Va. July 8, 2014) (granting a motion to dismiss where the plaintiffs only alleged "severe emotional distress, anxiety, pain and suffering, inconvenience, physical injuries, [and] physical sickness"); *Crittendon*, 2014 U.S. Dist. LEXIS 576, at *13-14. Further, Steele again makes no attempt to distinguish how Ms. Negron's specific alleged conduct damaged him at all, painting his claim in only the broadest of strokes.

The Court should reject Plaintiff Steele's attempt to tack on yet another baseless claim.

**F.**    **Plaintiffs cannot state a claim for personal trespass and computer harassment against Ms. Negron as no physical injury and no obscene statement occurred.**

In their next new count, Plaintiffs assert claims against Defendants under the Virginia Computer Crimes Act ("CCA"), Virginia Code Ann. § 18.2-152.1 *et seq.* They claim that Ms. Negron should be liable for $6,000,000 under the act, presumably based on the five statements set forth above, again setting forth the most conclusory allegations of wrongdoing. Once again, Plaintiffs attempt to assert another baseless claim in a continuance of their scattershot approach to pleading.

The CCA provides for civil liability where "[a]ny person whose property or person is injured by reason of a violation of any provision of this article." Va. Code Ann. § 18.2-152.12(A). Specifically, Plaintiffs claim violations under § 18.2-152.7 (personal trespass) and § 18.2-152.7:1 (computer harassment). In order to state a claim for personal trespass by computer, a plaintiff must show that the defendant "use[d] a computer or computer network to cause physical injury to an individual." Va. Code Ann. § 18.2-152.7(A). In order to state a claim for harassment by

computer, a plaintiff must show that the defendant "used a computer or computer network to communicate obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act."

Plaintiffs do not even attempt to state allegations to demonstrate how Ms. Negron's conduct could conceivably satisfy these requirements. There is no attempt to explain how the five demure statements made by Ms. Negron caused Plaintiff Steele any physical injury, nor could Plaintiffs possibly demonstrate how Ms. Negron's conduct constituted obscene language or an obscene proposal. The CCA is aimed at preventing hacking and improper salacious solicitation, not criticism of a public individual on a public forum. *See, e.g., Moter v. Commonwealth*, 61 Va. App. 471, 478, 737 S.E.2d 538, 541 (2013) ("The Virginia Supreme Court held in *Barson v. Commonwealth*, 284 Va. 67, 726 S.E.2d 292 (2012), that the first disjunctive element — an 'obscene, vulgar, profane, lewd, lascivious, or indecent' communication — really means only an obscene communication. Merely vulgar, profane, lewd, or lascivious communications, *Barson* held, do not violate Code § 18.2-152.7:1, thereby effectively excising those terms from the statute.").

The alleged conduct at issue here is a far cry from that the CCA seeks to curtail. Count Seven fails to satisfy minimal pleading standards under Rule 8 outright and the Court should dismiss it with prejudice.

**G.    Plaintiffs fail to state a claim under Virginia Code Ann. § 8.01-40 for unauthorized use of name and picture against Ms. Negron as she made no advertisement or use in trade.**

In their next misplaced count, Plaintiffs attempt to claim that Negron somehow improperly used their names and pictures without consent for advertising purposes and for the purposes of trade. (Am. Compl. ¶ 70.) Once again, Plaintiffs make no effort to specify what conduct of Negron violated this statute.

25

Section 8.01-40(A) provides as follows regarding unauthorized use of name or picture:

> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. And if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award punitive damages.

In order to state a claim showing use for advertisement, a plaintiff must demonstrate his or her name "appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service." *Town & Country Props. v. Riggins*, 249 Va. 387, 395, 457 S.E.2d 356, 362 (1995) (quotation omitted). Demonstrating use for the purposes of trade is even more stringent. *See* (*id.*)

Once again, Plaintiffs do not attempt to tie their conclusory count allegations to the actions described in their 100-page Amended Complaint, and Ms. Negron is forced to sift through pages of meritless allegations to speculate what conduct Plaintiffs refer to. The verbosity of Plaintiffs' pleading cannot hide, however, that the Amended Complaint contains no allegations showing that Negron used Plaintiffs' names for the purposes of advertisement or trade, only in exercising her free speech right of criticism. *See* (Am. Compl. *passim.*) Under Plaintiffs' presumed theory, which they do not clearly allege, any instance of criticism on a public forum could be construed as unauthorized use, which cannot be correct. Further, the Amended Complaint contains no allegations that Negron used Plaintiffs' image at all. *See* (*id.*) Thus, the new count again fails outright to satisfy minimal pleading standards.

26

In addition, courts have specifically recognized that purported "false light" uses of personage do not fall within the limited purview of Virginia Code Ann. § 8.01-40. *See, e.g., Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981) (Plaintiff's claim for 'false light' invasion of privacy must be dismissed as a matter of law. The courts of Virginia simply do not recognize such a common law cause of action. Indeed, Virginia recognizes no right of privacy other than that specifically conferred by Virginia Code Ann. § 8.01-40, a legislative enactment in derogation of the common law."); *see also Booker v. Dominion Va. Power*, No. 3:09cv759, 2010 U.S. Dist. LEXIS 44960, at *13-14 (E.D. Va. May 7, 2010). Allowing such a claim to proceed "would represent a radical departure from the law as it presently exists in Virginia." *Falwell*, 521 F. Supp. at 1207. Accordingly, the Court should dismiss Count Eight with prejudice.

**H.    Plaintiffs do not state facts warranting issuance of a permanent injunction.**

In their final new count, Plaintiffs request a permanent injunction, which they base exclusively on the unauthorized use of Plaintiffs' name and likeness. (Am. Compl. ¶¶ 74-75.) The four factors required for issuance of a permanent injunction are as follows:

> (1) [T]hat [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Appalachian Power Co. v. Nissen, No. 7:14-cv-000535, 2015 U.S. Dist. LEXIS 169339, at *32 (W.D. Va. Dec. 18, 2015) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)); see, e.g., Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-13 (1982); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987).

As noted above, Plaintiffs do not come close to stating a valid claim against Ms. Negron for unauthorized use under Virginia Code Ann. § 8.01-40 and thus the Court should award no injunction against her. Plaintiffs also make no attempt to satisfy the necessary elements for a permanent injunction, outside of the most conclusory allegations. They provide no demonstration that the damage to Plaintiffs' credibility is irreparable, they clearly seek remedies at law given their eight-figure demand, and make no showing that the stifling of criticism will serve the public interest. Further, Plaintiffs even plead that "Negron never again appeared in a YouTube video with Goodman" after this action was filed, belying their contention that permanent equitable relief is warranted. (*Id.* ¶ 8.) Simply put, Plaintiffs should be awarded no relief at all from Negron.

I. **Ms. Negron should receive fees and costs for being forced to defend this action under Virginia Code Ann. § 8.01-223.2.**

Ms. Negron should be awarded her costs and fees for being forced to defend this action based on her protected speech regarding matters of public concern under the Commonwealth's so-called "Anti-SLAPP" statute.[11] Virginia Code Ann. § 8.01-223.2(A) provides as follows:

> A person shall be immune from civil liability for a violation of § 18.2-499, a claim of tortious interference with an existing contract or a business or contractual expectancy, or a claim of defamation based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party or (ii) made at a public hearing before the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body. The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

---

[11] The "SLAPP" moniker stands for a "strategic lawsuit against public participation." Should the Court grant Ms. Negron's Motion to Dismiss based in part on the immunity provided in this section, she will file a separate motion for fees and costs for the Court's consideration.

28

The section also provides that "[a]ny person who has a suit against him dismissed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Va. Code Ann. § 8.01-223.2(B).

In this action, despite one hundred pages of claims, Plaintiffs' only actual allegations against Ms. Negron distill into a few short statements of general criticism regarding his public campaigns and positions. They fail to state a claim for tortious interference or defamation against Ms. Negron as set forth above and in addition because her statements are protected under the First Amendment regarding matters of public concern. Virginia Code Ann. § 8.01-223.2 is designed to shelter public critics from being forced to defend against actions exactly like the sort at bar. Plaintiffs' goal in this litigation is evidenced by the very pleadings they have filed, including a panoply of new counts clearly inapplicable to the conduct at issue. Indeed, their now $18 million demand abandons all appearances of reasonableness. Ms. Negron requests that should the Court grant her Motion to Dismiss, that it award her fees and costs in being forced to defend this action.

## V.   CONCLUSION

For the reasons set forth above, and in prior memoranda, Defendant, Patricia A. Negron, respectfully requests that the Court enter an order:   (1) granting her Motion to Dismiss the Amended Complaint; (2) dismissing her from the Amended Complaint with prejudice given Plaintiffs have already received an opportunity to amend; (3) awarding Defendant her costs and expenses incurred herein for being forced to defend this action under Virginia's Anti-SLAPP statute; and (4) awarding such further and other relief as this Court deems appropriate.

Dated:  May 11, 2018

Respectfully submitted,

**PATRICIA A. NEGRON**


By:  ____/s/ Terry C. Frank_____
R. Johan Conrod, Jr. (VSB No. 46765)
E-mail:  rjconrod@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone:  (757) 624-3000
Fax:      (888) 360-9092

Terry C. Frank, Esq. (VSB No. 74890)
E-mail:  tcfrank@kaufcan.com
Benjamin A. Wills, Esq. (VSB No. 88109)
E-mail:  bawills@kaufcan.com
KAUFMAN & CANOLES, P.C.
1021 E. Cary Street, Suite 1400
Richmond, Virginia  23219
Phone:  (804) 771-5700
Fax:      (888) 360-9092

*Counsel for Defendant Patricia A. Negron*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2018, a true copy of the foregoing is being electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Steven S. Biss (VSB No. 32972)
E-mail: stevenbiss@earthlink.net
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Phone: (804) 501-8272
Fax:    (202) 318-4098
*Counsel for Plaintiffs*

And sent via first-class mail, postage prepaid, to:

Jason Goodman, *Pro Se*
252 7th Avenue, Apt. 6S
New York, NY  10001

"Queen Tut"
a/k/a Susan A. Lutzke
1221 University Ave., Unit D202
Fort Collins, CO  80521

_____/s/ Terry C. Frank_____
R. Johan Conrod, Jr. (VSB No. 46765)
E-mail: rjconrod@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone: (757) 624-3000
Fax:    (888) 360-9092

Terry C. Frank, Esq. (VSB No. 74890)
E-mail: tcfrank@kaufcan.com
Kaufman & Canoles, P.C.
1021 E. Cary Street, 14th Floor
Richmond, Virginia 23219
Phone: (804) 771-5700
Fax:    (888) 360-9092
*Counsel for Defendant Patricia A. Negron*

31