IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT DAVID STEELE  )
-and-  )
EARTH INTELLIGENCE NETWORK )
  )
  Plaintiffs,  )
  )
v.  )  Case 3:17-cv-601-MHL
  )
  )
JASON GOODMAN  )
PATRICIA A. NEGRON  )
  )
-and-  )
  )
SUSAN A. LUTZKE a/k/a  )
  "QUEEN TUT"  )
  )
  Defendants.  )
  )

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT, JASON GOODMAN'S, "ANTI-SLAPP STATUTE MOTION TO DISMISS"

Plaintiffs, Robert David Steele and Earth Intelligence Network ("Plaintiffs"), by counsel, pursuant to Local Civil Rule 7, respectfully submit this Memorandum in Opposition to the "special motion to dismiss the complaint under the VA anti-slapp statute motion to dismiss" [*ECF No. 45*] filed by *pro se* defendant, Jason Goodman ("Goodman").

## I.  Repetition and Republication – ACTUAL MALICE

Repetition and republication is a hallmark of actual malice. *See, e.g., Snyder v. Fatherly*, 158 Va. 335, 354, 163 S.E. 358 (1932) ("'As a general rule it is considered

competent for the plaintiff to show, as evidence of malice, that since the speaking or publication of the slander or libel … the defendant has repeated or republished the same, even though such repetition or republication has taken place since the commencement of the action'") (quotation omitted); *Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472, 474 (1912) ("Any other words written or spoken by the defendant of the plaintiff, either before or after those sued on, or even after the commencement of the action, are admissible to show the animus of the defendant, and for this purpose it makes no difference whether the words tendered in evidence are themselves actionable or not, or whether they be addressed to the same party or to some one else … The more the evidence approaches proof of a systematic practice of libeling or slandering the plaintiff, the more convincing it will be.") (quotations and citations omitted).

> **This case involves a systematic and <u>unceasing</u> practice of defamation**.

After Plaintiffs filed this action on September 1, 2017, Goodman and his confederates doubled-down on the publication of false, defamatory, derogatory, disparaging and insulting statements about Plaintiffs.

Between September 6, 2017 and March 25, 2018,[1] Goodman produced and published at least ***fifteen (15) additional*** YouTube videos in which he gratuitously made, repeated and republished defamatory statements and insulting words. [*ECF No. 39 ("Amended Complaint"), ¶¶ 21, 22, 28*].

Despite the filing of the amended complaint, Goodman ***<u>continues</u>*** to repeat and republish defamatory statements about the Plaintiffs.  In fact, Goodman's crusade has gotten much, much worse.  Between March 25, 2018 and the present day, Goodman

---

[1]     On March 25, 2018, Plaintiffs filed a motion for leave to file an amended complaint. [*ECF No. 36*].

produced and uploaded ***eighteen (18) more videos*** to YouTube,[2] in which he makes, repeats and republishes numerous defamatory and insulting statements about the Plaintiffs:

https://www.youtube.com/watch?v=B13BQQyl18I
("Field McConnell Live from the UK – SES Kristine Marcy Phone Call Gold Backed $ Bibi Hospitalized" – March 27, 2018)

https://www.youtube.com/watch?v=wvWCR_Z6wWk
("Anatomy of a PsyOp Vol 1 – White Hats, Black Hats & Ass Hats (Fake Thomas Paine Threatens Jason" – March 28, 2018)

https://www.youtube.com/watch?v=CaVv7_ZFNcs
("The Real Thomas Paine of True Pundit Speak Out" – March 28, 2018)

https://www.youtube.com/watch?v=9bdRP7L-0ZE
("Is Steemit a Revolution in Social Media or a Ponzi Scheme House of Cards About to Crumble?" – March 29, 2018)

https://www.youtube.com/watch?v=lUT8hMfzus0
("The Anonymous DarkNet Cult of Michael" – March 29, 2018)

https://www.youtube.com/watch?v=xrM-szx0AJ8
("Andrew McCabe – GO FUND YOURSELF!" – April 1, 2018)

https://www.youtube.com/watch?v=8syPt8oHCr8
("The Sinister Psychological Operation of George Webb Sweigert" – April 5, 2018)

https://www.youtube.com/watch?v=1cQUkgWo7Nw
("Impromptu Interview with Lift The Veil LTV" – April 6, 2018)

https://www.youtube.com/watch?v=gMpH7ev28Sg
("Sunday with Charles – The PO Box Always Rings Twice" – April 8, 2018)

https://www.youtube.com/watch?v=ov2R3BvD-aI
("Harmon Wilfred: America's First Refugee – Wilfred v The CIA, Clintons' 'Enforcer'" – April 9, 2018)

---

[2]   Incredibly, Goodman is now employing four (4) different YouTube channels to publish videos, including channels identified as "***Jason Goodman***", "***Crowdsource The Truth 2***", "***21c3D***" and "***Crazy Dave's Insane-a-torium***".

https://www.youtube.com/watch?v=0O1CzBogcZo
("The People Strike Back Anti Slap Suit Filed Against Georgetown University" –
   April 10, 2018)[3]

https://www.youtube.com/watch?v=TPc3eHCX-eU
("Harmon Wilfred: America's First Refugee – Wilfred v The CIA, Clintons'
'Enforcer'" – April 10, 2018)

https://www.youtube.com/watch?v=h0Pfw_uy9bI
("The Insidious #Fakenews Campaign of Queen Tut (aka Susan Holmes aka
Susan Lutzke aka Pat) Vol" – April 11, 2018)

https://www.youtube.com/watch?v=e80kNgunjJM
("Field and David of Abel Danger On Novichok vs BZ" – April 15, 2018)

https://www.youtube.com/watch?v=3c7zNENIOd4
("Sunday with Charles – A Conversation with Lee Stranahan (Dr. She's Got to Go
Supplement)" – April 15, 2018)

https://www.youtube.com/watch?v=Ft63km5_74g
("Tea Party in Teaneck Take Two" – April 17, 2018)

https://www.youtube.com/watch?v=F59KWYUjqkk
("Scott Bennett's Stunning SHELL GAME Report" – April 27, 2018)

https://www.youtube.com/watch?v=Dc4blrDmrhA
("The Webb of Lies and the Lying Liars Who Weave It...." – May 9, 2018)

The two (2) most insidious, defamatory and insulting YouTube videos published

by Goodman since March 25, 2018 are "***Tea Party in Teaneck Take Two***" and ***The***

***Webb of Lies and the Lying Liars Who Weave It***".

In ***Tea Party in Teaneck***, Goodman goes to great lengths to defame the Plaintiffs.

Goodman actually travels to Teaneck, New Jersey, to address a small room of elderly

people who obviously have no interest in this action:

---

[3]      Goodman got the idea for his "anti-slapp" motion from Alex Jones and
Infowars, whose videos are the subject of a defamation action currently pending in the
United States District Court for the Western District of Virginia. [*Gilmore v. Jones*, Case
3:18-cv-00017-GEC (W.D. Va.) (ECF No. 16 – Defendants' Memorandum in Support of
Motion to Dismiss, pp. 19-22)].



Goodman uses the occasion as a fundraiser to discuss this case and to publicly rail on Robert David Steele:



The video is damning evidence of Goodman's spite, ill-will and actual malice towards

Plaintiffs.  In *Tea Party in Teaneck*, Goodman publishes the following statements:

> ● [Video at 37.30] – "Robert David Steele came on my program.  In
> the course of about an hour or two, our audience raised $15,000[4] for this
> charitable organization [Earth Intelligence Network] a 501c3, tax exempt charity.
> Now there's a lot of laws that govern the operations of these 501c3s … and in

---

[4]      This is a false statement.  On June 13, 2017, Goodman and Negron conducted a live-stream interview of Robert David Steele.  Goodman published the video on YouTube:  [https://www.youtube.com/watch?v=hMJoAO5OZY8&feature=youtu.be].  The total length of the live-stream is 51 minutes, 30 seconds.  Prior to June 13, 2017, Robert had never heard of Goodman, Patricia Negron or Crowdsource The Truth.  Robert agreed to be interviewed by George Webb ("Webb").  On June 13, 2017, Robert met Webb at the Kob Kun Thai restaurant in Oakton, Virginia, to do the interview.  Plaintiffs have no agents or employees, no professional fundraisers, no fund-raising counsel, no office or mailing address in New York, and do not solicit donations from residents of New York by telephone, over the Internet, by direct mail or otherwise.  Other than one speaking engagement, which took place at the Cosmopolitan Club in New York City on May 18, 2017, https://www.youtube.com/watch?v=DV3hhpWVn-s&feature=youtu.be, Robert was never physically present in New York in 2017 for any reason.  Prior to the interview with Webb on June 13, 2017, Robert did not know what subject matters would be covered or what questions would be asked; did not know the interview would be live-streamed; and did not know that Goodman or Negron would be involved.  During the live-stream, Robert shared his views on 9/11, pedophilia and the purpose of #UNRIG.  In truth, during the live-stream ***Goodman*** **NOT Robert, voluntarily solicited donations to help with the #UNRIG campaign**. [*See, e.g.,* Video at 10:14 – "We would love to help you with that"; *id.*, Video at 13:47 – "I want everybody to retweet that #UNRIG"; *id.*, Video at 37:19 – "for people who are just joining, I'm going to include in the comments again the URL for the UNRIG Indiegogo"; *id.*, Video at 38:33 – "if every one of our thousand-plus viewers will donate $25, we can really move the needle on this thing"; *id.*, Video at 50:44 – "Everyone should still keep going [to] that URL to get involved with the movement and donate to the Indiegogo campaign"].  On June 13, 2017, Earth Intelligence Network received a total of $9,827.01 in donations from 175 donors.  There is no way of knowing who, if anyone, donated money because of the Goodman's live-stream.  Only *one (1)* person who donated to Earth Intelligence Network on June 13, 2017 identified themself as living in New York.  That person donated $50.  There is no dispute that in 2017 Earth Intelligence Network's gross contributions from persons living in New York were less than $25,000 per year.  In fact, in 2017 total donations from persons known to reside in New York were only $2,751.  **Goodman, Negron and Lutzke had absolutely no evidence and no good faith basis for any belief that Plaintiffs committed "felony charity fraud".  The Defendants acted with reckless disregard for the truth**.

addition to being registered as a tax-exempt organization, these types of charities need to be specifically registered in each state they operate in.  You can't just go around soliciting funds in New York without being registered with the New York State Bureau of Charities".

- [Video at 40:59] – "Robert David Steele crafted this narrative that I had created a bomb hoax, which I certainly did not".[5]

- [Video at 44:00] – "This Susan Lutzke is a very deceptive individual who has been lying about many things, who has submitted fraudulent documents to the court, and who I now believe was inserted into my sphere of crowdsource the truth and this lawsuit specifically as an agent of deception and almost as a lawsuit double agent.  I know it sounds crazy, but this person [Lutzke] is a co-defendant who I believe is working with the plaintiff to frame me in this lawsuit."

- [Video at 45:23] – "I have evidence that this person's 501c3 organization is operating fraudulently in the state of New York.[6]  The lack of registration with the New York State Bureau of Charities indicates that the solicitation of two hundred and fifty thousand dollars in the state of New York over the Internet is felony charity fraud".

The video ***Webb of Lies and the Lying Liars*** begins with the following insulting image:

---

[5]     This is a false statement.  Goodman ***did*** call in the fake dirty bomb threat to the Port Authority. [*See, e.g.,* https://www.bitchute.com/video/veLftJ6FZohE/].

[6]     This is a false statement.  Goodman has never had any such "evidence" because none exists.



Goodman takes great pains to ridicule and threaten the Plaintiffs and others:



At 5:55 of the video Goodman refers to Robert as "a robber" who "likes to steal". At 9:25, Goodman repeats that Robert "committed felony charity fraud" and represents that Robert "stole money from our people". Beginning at 9:45 of the video, Goodman

repeatedly accuses Robert of "stealing".   Goodman's statements and his threats – all captured by his own videos – demonstrate actual malice:  that is, spite, ill-will and a desire to hurt Plaintiffs.

Most recently, Goodman has taken to Twitter to defame Plaintiffs, following the lead of Negron and Lutzke.  On May 9, 2018, Goodman tweeted the following injurious and defamatory statements about Plaintiffs to his 23,000 followers on Twitter:



**CrowdsourcetheTruth**
@csthetruth

Great article from @CharlesOrtel HRC cooking up anything she can to attempt to obstruct Justice.  NY needs an AG who will take charity fraud seriously #EarthIntelligenceNetwork #FelonyFraud #LockUpRDS

> **Charles Ortel** @CharlesOrtel
> Latest just out in @LifeZette echoing that Professor in "Paper Chase", I say @HillaryClinton can tell her team and the world she will NEVER be @NewYorkStateAG @csthetruth @seanhannity @Judgenap lifezette.com/polizette/make...

2:16 PM · May 9, 2018

**The evidence of actual malice in this unprecedented case is overwhelming**.  *Compare, e.g., Daniczek v. Spencer*, 156 F.Supp.3d 739, 756 (E.D. Va. 2016) ("Spencer neglects that malice may be inferred under aggravating circumstances, including disregard for communications by others and the appearance of reprisal."); *Crawford & Co. v. Graves*, 199 Va. 495, 499, 100 S.E.2d 714 (1957) ("Strong and violent language or insinuations disproportionate to the occasion may raise an inference of malice") (quoting *Aylor v. Gibbs*, 143 Va. 644, 648, 129 S.E. 696 (1925) ("considering all the evidence as

to the subsequent acts and utterances of the defendant, we are satisfied that the court should not have taken the case away from the jury")); *Kroger Grocery and Baking Co. v. Rosenbaum*, 171 Va. 158, 161-163, 198 S.E. 461 (1938) ("the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself"); *see also PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 345, 576 S.E.2d 438 (2003) ("Proof of actual malice is not necessary.  Malice may be inferred from circumstances.") (quoting *Baker v. Marcus*, 201 Va. 905, 909-910, 114 S.E.2d 617 (1960)).[7]

## II.  Goodman's Anti-Slapp Motion Should Be Denied

This matter is before the Court on Goodman's "special motion to dismiss the complaint [sic] under the VA anti-slapp statute". [*ECF No. 45*].

The Court should deny the motion for the following reasons:

### A.  *Rule 12 FRCP*

On April 30, 2018, Goodman filed an answer to Plaintiffs' amended complaint in accordance with Rule 12(a). [*ECF No. 44 ("Goodman Answer")*].  Goodman continues to choose to proceed *pro se*.  Although he acts as his own legal counsel, Goodman is expected to know the rules of Court and the rules of procedure.  Goodman failed to

---

[7]     In this case, Robert availed himself of the benefit of YouTube's Privacy Guidelines. https://www.youtube.com/static?template=privacy_guidelines.  In June 2017, he filed complaints against the Defendants and sought removal of the offending videos. Defendants disregarded Robert's communications, mocked him, and continued to publish false and defamatory statements.  In the June 29, 2017 YouTube video entitled, "*Squidward v. Sponge Bob*", for instance, at 19:10 of the video, Goodman states 'What Google helped him do was to file privacy complaints [Goodman indicating quote/unquote 'privacy complaints' on video] for videos that we have that include evidence of Robert David Steele committing fraud, and he'll now make a privacy complaint about this….'" [*Amended Complaint, ¶ 19(i)*].  Despite Robert's communications, including the filing of an amended complaint, Goodman continues to repeat and republish defamation and insulting words about Plaintiffs.  This is evidence of actual malice.

respond to the allegations in paragraph 13 of the amended complaint, and, accordingly, those allegations are admitted. *Rule 8(b)(6) FRCP*. Goodman also admits the allegations in paragraph 27 of Plaintiffs' amended complaint:

> 27.    On December 25, 2017 at 9:46 p.m., Lutzke created a Twitter account, "@Queentutnairobi". [https://twitter.com/queentutnairobi?lang=en]. Lutzke now uses Twitter to publish false and defamatory statements about Plaintiffs. Lutzke also used the anonymous "Hoax Wars" YouTube channel, before it was terminated by YouTube, https://www.youtube.com/channel/UCf9d5SjqW_ARQeT96AH4RSQ, to make and publish false and defamatory statements about the Plaintiffs.

With regard to the YouTube videos produced and published after September 1, 2017 and his relationship with defendant, Lutzke, Goodman claims that he "lacks knowledge". [*Goodman Answer, ¶¶ 22-26, 28*]. Goodman also claims he does not know (a) whether he published and republished false factual statements about the Plaintiffs, or (b) whether the statements alleged in the amended complaint accuse Plaintiffs of crimes, impute unfitness or prejudice Plaintiffs. [*Goodman Answer, ¶¶ 33, 35*]. How could he lack knowledge of these matters? Significantly, Goodman also contends that he "lacks knowledge or information sufficient to form a belief" as to whether he "acted with actual malice and reckless disregard for the truth". [*Goodman Answer, ¶ 37*]. These are not good faith responses, and they will, no doubt, multiply these proceedings, as Plaintiffs are forced to prove the obvious.

**In particular, Goodman's response to paragraph 37 of the amended complaint should preclude him from asserting any "anti-slapp" defense. How can Goodman claim he does not know if he acted with actual malice and reckless**

**disregard for the truth, and then rely on the immunity provided by § 8.01-223.2 of the Virginia Code?**[8]

Goodman's "special motion to dismiss under VA code § 8.01-223.2" is procedurally improper.  This "special motion" is either an affirmative defense, which should have been included in Goodman's answer, or it is a premature motion for summary judgment unsupported by evidence.[9]

Goodman's "special motion" should be dismissed without more.

**B.** ***Goodman Failed To Comply With Local Civil Rule 7***

Local Civil Rule 7(F) required Goodman to file a "written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies."

Goodman did not file a brief.  Even if the Court considers his motion to be a motion *and* a brief, the pleading is almost entirely argumentative.  It does not contain a concise statement of the "facts".  It is not confined to the four-corners of the amended complaint.  Indeed, Goodman interjects alleged "facts" outside of the complaint, "facts" that are, in any case, expressly denied by Plaintiffs.  Goodman's "special motion" is all over the board.  It should be stricken.

---

[8]     Section 8.01-223.2 very clearly provides that "[t]he immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false."

[9]     A motion asserting any of the defenses enumerated in Rule 12(b) "must be made before pleading if a responsive pleading is allowed."  Goodman does not move to dismiss under Rule 12(b)(6) (failure to state a claim upon which relief can be granted), and, in any case, he could not assert such a motion because he has already answered the amended complaint.

**C.**   ***Counts II, IV, VI, VII, VIII and IX of the Amended Complaint***

Consistent with the desire to protect a person's recognized liberty and property interest in his name and reputation, *Rosenblatt v. Baer*, 383 U.S. 75, 92-93 (1966); *Gazette, Inc. v. Harris,* 229 Va. 1, 7, 325 S.E.2d 713 (1985), the Virginia General Assembly intentionally limited the scope of immunity granted by § 8.01-223.2 of the Code.

Section 8.01-223.2, in pertinent part, provides that a person "shall be immune from civil liability for a violation of § 18.2-499, a claim of tortious interference with an existing contract or a business or contractual expectancy, or a claim of defamation based solely on statements … regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party".[10]

---

[10]   Publication is not necessary in order to entitle a plaintiff to recover for insulting words under § 8.01-45 of the Virginia Code. *Hines v. Gravins*, 136 Va. 313, 112 S.E. 869, 870-871 (1922) (citation omitted) ("The design of the statute is to prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment therefor, and by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury. The purpose of the statute would be in a measure defeated, and breaches of the peace would be encouraged rather than discouraged, by holding that no action would lie thereunder for insults privately given. The statute is peculiar, as we believe, to Virginia and Mississippi, and, while most of the rules applicable to common-law slander are now applicable to this action, the rule requiring publication is not applicable."). **Section 8.01-223.2 does not expressly refer to § 8.01-45 of the Virginia Code; nor does the phrase "insulting words" appear anywhere in the statute. On its face, § 8.01-223.2 provides no immunity from civil liability for a claim of insulting words. Further, because § 8.01-223.2 provides immunity from civil liability for "defamation based solely on statements … that are <u>communicated to a third party</u>" (emphasis added), the statute would not apply to actions for insulting words because such actions do not require publication to a third party.**

Goodman's "special motion" does not identify the specific counts in the amended complaint for which he claims immunity.

Based on the plain and unambiguous language in the statute, however, it is obvious that § 8.01-223.2 does ***not*** apply to Counts II, IV, VI, VII, VIII and IX of the amended complaint.

To the extent that Goodman seeks dismissal of Counts II, IV, VII, VIII and/or IX, his "special motion" should be denied.

**D.     *Counts I, III and V***

In Counts I, III and V of the amended complaint, Plaintiffs state claims against Goodman for defamation (Count I), business conspiracy in violation of § 18.2-499 (Count III), and tortious interference with an existing contract or a business or contractual expectancy (Count V).

Goodman is not immune from civil liability because the claims asserted in Counts I, III and V are not based "***solely***" on statements regarding "matters of public concern[11] that would be protected under the First Amendment". (Emphasis).   Rather, the claims in Counts I, III and V are based, in part, on statements made by Goodman about Robert's

---

[11]     The Virginia General Assembly did not define "public concern".  The United States Supreme Court has noted that matters of "public concern" can "be fairly considered as relating to any matter of political, social, or other concern to the community". *Snyder v. Phelps*, 131 S.Ct. 1207, 1216 (2011).  The United States Court of Appeals for the Fourth Circuit has held that speech involves a "matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004); *compare Stroman v. Colleton Cty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) ("Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee.")).  "[W]hether speech addresses a matter of public concern must be determined by the expression's content, form, and context as revealed by the whole record." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985).

private character, honesty and trustworthiness.  Goodman's repeated personal attacks traverse the public domain.  Goodman savages ***all*** aspects of Plaintiffs' name and reputation, *not solely* Plaintiffs' position on matters of public interest.

In his "special motion", Goodman claims that he is a "journalist" and that this legal action – which Goodman publicly ridicules as a "**#fakelawsuit**" by a "real idiot" [*Amended Complaint, ¶ 22(f)*] – is an effort to prevent Goodman's "journalistic endeavors and internet broadcasts of information".  Goodman is ***not*** a journalist.  He is a wealthy and experienced movie producer with sophisticated audio/visual equipment[12]

---

[12]    Goodman owns and operates a company called 21st Century 3D. [http://www.21stcentury3d.com/].  According to Goodman, 21st Century 3D "has created award winning 3D productions including feature films, IMAX, television, advertisements, location-based entertainment and industrials for Fortune 500 clients all over the world.  21st Century 3D is a leader in 3D content creation and a highly innovative developer of exclusive 3D and Virtual Reality technologies … Goodman founded the company in 1993.  Goodman and 21st Century 3D are internationally recognized for innovation in production techniques and stereoscopic 3D technology development … [Goodman] is one of the few stereographers in the world with over 25 years of hands-on experience in shooting stereoscopic 3D." [http://www.21stcentury3d.com/about-us/].  Goodman's purported success as a movie producer is highlighted on 21st Century 3D's website:



and enough time on his hands to produce over ***forty-nine (49) one-hour YouTube videos*** about this lawsuit and that defame the Plaintiffs. [*Amended Complaint, ¶ 6*].

Even if the Court accepts that Goodman is a "journalist", it is well-established that "the press has no exclusive privilege." *Williams Printing Co. v. Saunders*, 73 S.E. at 477-479 ("the press enjoys no special privilege or immunity, but stands in all respects before the law upon the same footing as the great body of citizens.") (citations and quotations omitted).  In *Williams Printing Co.*, the Virginia Supreme Court emphasized that:

> "Liberty of the press is not license, and newspapers have no privilege to publish falsehoods or to defame under the guise of giving the news.  It is held that the press occupies no better position than private persons publishing the same matter; that it is subject to the law, and if it defames it must answer for it."

*Id.* at 477 (quoting Cooley on Torts (3rd Ed.) 443).  Thus, it should be observed as a preliminary matter that Goodman enjoys no privilege – qualified or absolute – to defame Plaintiffs or to tortiously interfere with their business.

The plaintiff in *Williams Printing Co.* was a "candidate for public office".  The Virginia Supreme Court observed that a candidate for office is "considered as putting his character in issue, so far as with respect to his fitness or qualification for the office he seeks". *Id.* at 476.   The Court held, however, that a candidate for public office or a public figure "does not surrender his private character to the public, and he has the same remedy for defamation as before; and publication of false and defamatory statements concerning him, whether relating to his private character or public acts, is not privileged." *Id.* at 477. In terms of comment on matters of public concern, the Supreme Court observed:

"A fair and bona fide comment on a matter of public interest is an excuse of what would otherwise be a defamatory publication.  The statement of this rule assumes the matters of fact commented upon to be somehow ascertained.  It does not mean that a man may invent facts, and comment on the facts so invented in what would be a fair and bona fide manner on the supposition that the facts were true.  If the facts, as a comment upon which the publication is sought to be excused, do not exist, the foundation fails.  There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public.  But the distinction cannot be too clearly borne in mind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed, or discreditable language used.  It is one thing to comment upon or criticise, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct.  To state matters which are libelous is not comment or criticism."

*Id.* at 477 (quoting Newell on Slander and Libel, p. 568).

"A line must be drawn between criticism upon public conduct and the imputation of motives by which that conduct may be supposed to be actuated; one man has no right to impute to another, whose conduct may be fairly open to ridicule or disapprobation, base, sordid, and wicked motives, unless there is so much ground for the imputation that a jury shall find, not only that he had an honest belief in the truth of his statements, but that his belief was not without foundation.  As the privilege with respect to the criticism of public officers, or candidates for public office, does not extend to the imputation of moral delinquency with reference to their private character, such imputations are libelous, and the party making them may be held liable therefor in a suit for slander, unless he can prove the charges to be true … From the publication of such libelous charges, the law implies malice, as well as damages to the plaintiff; and the jury may, therefore, on proof of the publication, only render a verdict for substantial damages."

73 S.E. at 477 (quoting Newell on Slander and Libel, p. 572).  In *Williams Printing Co.*, the Virginia Supreme Court made clear that "journalists" have no right to make statements that impute "moral delinquency" and he who attacks the private character of a public figure "and attributes to them moral turpitude must stand prepared to prove the truth of his statement … otherwise the presumption is that the defamatory language, written or spoken, is false and will, without more, support a verdict for substantial damages." *Id.* at 478.

17

As the amended complaint illustrates in graphic detail, most of the false and defamatory statements made by Goodman do *not* involve matters of public concern. Rather, they are repeated *ad hominem* personal attacks on Robert's private character and reputation. Goodman repeatedly insults Robert by calling him the "robber David who steals". **The list of false, defamatory, derogatory, disparaging and insulting statements pulled from Goodman's videos and alleged in the amended complaint is long**. Goodman states that Robert is "just a cheap con man"; "there's a possibility that a Rico charge could be involved"; "he's … defrauding people across state lines"; "he is doing things that are very criminally actionable"; "I'm obviously not a mental health professional but it certainly seems he's got some kind of schizophrenic behavior there"; "he's a con man"; Robert is a "loser"; a "lying moron"; a "total moron"; "Mr. Stupid"; Robert nominated "himself" for the Nobel Peace Prize; Robert "committed interstate wire fraud"; Robert "deceived" Dr. McKinney; "[h]opefully, the FTC or some other law enforcement body will, can take this over and prosecute him [referring to Robert] with criminal charges"; Plaintiffs engaged in "disingenuous behavior"; Robert is a "scam artist"; a "complete psychopath"; a "fraud"; Robert "willfully defrauded" people; Robert leads a life of "fraudulent crime"; "I find it really difficult to believe that he was ever in the CIA because he just seems so fucking stupid … he's engaged in an operation to compromise Cynthia McKinney and basically co-opt her credibility and … destroy her reputation"; #UNRIG is a "scam"; Robert has "repeatedly made ignorant and even racist comments, has defrauded my audience of money"; Robert engaged in "fraudulent activities with regard to the #Unrig campaign"; the objective of the UNRIG campaign is to "get money" for Robert; the CIA "probably told Robert he could keep whatever money

he raised"; "it keeps getting stronger and stronger the evidence of fraud"; "Robert David Steele's behavior represents the exact same type of fraud that sucks out money from the population.  He's lying"; "This is Queen Tut talking about the uh fraud that is UNRIG and what we have just heard from the Queen is that Cynthia McKinney by remaining complicit in this fraud herself"; Robert is an "appartchik"[13] of the deep state, subverting the United States; Robert is engaged in a "Ponzi scheme"; UNRIG is engaged in "espionage" and "treason"; Robert is "charlatan" that is taking "advantage of the various loopholes" to "just you know straight out commit fraud with" Earth Intelligence Network; "Robert David Steele is constantly lying about the facts of everything that's gone on from the time that he met us until today";  Robert is engaged in a "conspiracy to suppress free speech"; Robert is "a deceptive fraudster allegedly who wants to trick people into thinking he's running a 501c3 that's going to create election reform when in fact all he's doing is trying to raise money so he can buy RVs, so he can crash them and buy soft drinks and give gifts"; "this is the Earth Intelligence Network, Robert David Steele's highly unintelligent business organization"; "he's a moron … It's not a crime to be a moron, but it is a sad condition unfortunately [that] Robert David Steele suffers from"; Robert "is a sociopath"; Robert is "taking a page right out of the book of all the crooks and criminals that we are trying to expose, whether it's the Clinton Foundation and all of their felonious activity … or you know the very activities of Robert David Steele himself"; Earth Intelligence Network is a "fraudulent 501c3"; "we're going to detail this hashtag fake lawsuit of the fraudulent Robert David Steele"; Plaintiffs have

---

[13]         "Apparatchik" is a derogatory term that means "a blindly devoted official, follower, or member of an organization". [https://www.merriam-webster.com/dictionary/apparatchik].

engaged in "charity fraud" and "tax fraud"; "Robert David Steele, you're a dumb guy"; this action is "a hashtag fake lawsuit from a hashtag real idiot"; Robert "did a bunch of things that were dishonest"; "Robert David Steele had a pattern and practice of committing fraud"; Goodman states that it is his First Amendment right to "express my opinion that a Robber Who Steals is a [sic] IDIOT, such a dummy, such a loser, and you know what, losers lose, that's what they do"; "we do know someone … who is a Marine, don't we [referring to Robert], or he was a Marine at some point. I think his current occupation is, um, idiot, if I'm not mistaken"; "well I certainly can't immediately think of anyone like that who might be lying about things constantly and you know spreading disinformation"; "We've seen buffoons like Robert David Steele, who people tell me actually did work for the CIA, but he seems to be running a number of frauds.  I've pointed to evidence where he's doing charity fraud.  How do we know when someone's being honest about their clandestine background versus remaining a part of clandestine operations"; "Robert David Steele is a fraud I say that because I have evidence that he's committed charity fraud … Have I fabricated this information with the specific intent of defaming this robber who steals?  This fraud [pointing directly at screen and referring to Robert]"; "this tiny man who goes on the Internet and deliberately lies, okay.  Robert David Steele is also fundamentally a fraud because he behaves in a consistently fraudulent way"; Robert a "lying miscreant"; "this guy's a liar [again points to Robert on screen in background]". [*Amended Complaint, ¶¶ 19(d), 19(e), 19(h), 19(i), 19(k), 19(l), 19(m), 19(n), 19(p), 19(q), 19(s), 19(t), 19(v), 19(y), 22(a), 22(b), 22(d), 22(e), 22(f), 22(g), 22(h), 28(a), 28(c), 28(e), 28(f)*].

Through the YouTube videos documented in the amended complaint, Goodman broadly impugns Plaintiffs' private character, honesty, trustworthiness and imputes to Plaintiffs moral delinquency.  Goodman's statements do not relate "*__solely__*" to matters of public concern.  Accordingly, Goodman is not immune from civil liability for Counts I, III and V.[14]

### E.      *Actual Malice and Reckless Disregard For The Truth*

Even assuming that Goodman's horrific, months' long personal attacks upon Plaintiffs were "solely" matters of "public concern" – which they are not – the immunity provided by § 8.01-223.2 "shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false."

Goodman knew or should have known – from open sources on the Internet, from information published on Robert's websites, and from materials sent to Goodman by Robert – that his statements about Plaintiffs were false. [*Amended Complaint, ¶¶ 1, 2, 3, 4, 5, 37(b)*].  **Paragraph 37(b) presents a detailed and uncontradicted statement of the reasons why Goodman's statements were knowingly false and made with reckless disregard for the truth**.

---

[14]      Goodman's "special motion" is based entirely on his own inadmissible opinions, speculation and self-serving, conclusory statements without *__any__* factual foundation.  Goodman's "Statement of Facts" is completely unsupported by any evidence and must be rejected.  With regard to his spurious and defamatory claim of "felony charity fraud", Plaintiffs will introduce expert testimony under Rule 702 of the Federal Rules of Evidence that Earth Intelligence Network was never required to register in the State of New York, was exempt from registration, and did not otherwise ever commit felony charity fraud upon anyone.

Goodman's answer reveals that he "lacks knowledge or information" sufficient to dispute Plaintiffs' allegations in paragraph 37(b). Goodman's admission dooms his "special motion".

Plaintiffs have alleged sufficient facts to show that Goodman acted with actual malice and reckless disregard for the truth. From the vicious words Goodman employed, from the appearance of reprisal [*see Amended Complaint, ¶¶ 13-18*], from the repetition and republication of video after video after video in which Goodman escalates the malicious attacks on Plaintiffs, and from the unprecedented continuation of the defamation to the present day, the Jury could easily find malice and reckless disregard sufficient to support an award of punitive damages and certainly to negate any immunity under § 8.01-223.2.

Whether Goodman was "actuated by malice" is a ***question of fact for a jury*** to decide. *See, e.g., Cashion v. Smith*, 286 Va. 327, 338, 749 S.E.2d 526 (2013) ("the issue of whether there was malice is a question of fact for the jury, and a showing of pre-existing personal spite or ill will is only one of several ways in which a privilege can be lost"); *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134-135, 575 S.E.2d 858 (2003) (same); *Harrington v. Sprint Nextel Corp.*, 2008 WL 2228524, at * 6 ("[T]he question whether a defendant was actuated by malice, and has abused the occasion and exceeded the privilege is a question of fact for a jury" rather than one for the Court to determine") (quotations omitted).

**F.      *Virginia Law Governs This Dispute***

In tort actions, it is well-settled that Virginia applies the rule of *lex loci delicti* or the law of the place of the wrong. *Jones v. R.S. Jones & Assoc.,* 246 Va. 3, 5, 431 S.E.2d

33 (1993) (affirming that Virginia's choice-of law rule in tort actions remains the law of the place of the wrong); *Ford Motor Co. v. National Indem. Co.*, 972 F.Supp.2d 850, 856 (E.D. Va. 2013) ("Claims for tortious interference with contract and for violation of the Virginia Business Conspiracy Statute … are properly characterized as intentional torts. Virginia 'applies the *lex loci delicti,* the law of the place of the wrong, to tort actions.'").

In *Jones*, the Virginia Supreme Court explained:

> "In *McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979), we declined an invitation to adopt the so-called 'most significant relationship' test, recommended by *Restatement (Second) of Conflicts of Laws* §§ 145, 146 (1971), for resolving conflicts of laws arising in multistate tort actions. 219 Va. at 1129, 253 S.E.2d at 663.  We said that we would adhere to the lex loci delicti, or place of the wrong, standard that had been 'the settled rule in Virginia.' *Id.* at 1128, 253 S.E.2d at 663.  According to the settled rule, "the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy." *Maryland v. Coard,* 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940) (quoting 5 R.C.L. 917 (1914)).
> …
>
> In other words, in this case, we apply the substantive law of Florida, the place of the wrong, and the procedural law of Virginia."

*Jones v. R.S. Jones & Assoc.,* 246 Va. 3, 5, 431 S.E.2d 33 (1993).

## 1.     *The Place of the Wrong*

Under Virginia law, the "place of the wrong" is "the place 'the last event necessary to make an [actor] liable for an alleged tort takes place.'" *General Assur. of America, Inc. v. Overby–Seawell,* 533 Fed.Appx. 200, 206 (4th Cir. 2013) (quoting *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir.1986)).

In this case, the place of the wrong is Virginia, where Plaintiffs, Virginia citizens, suffered damage. *See, e.g., Opportunities Development Group, LLC v. Andruss*, 2015 WL 2089841, at * 9 (E.D. Va. 2015) ("In evaluating Plaintiff's conversion claim, this Court applies the law of the District of Columbia.  Virginia's choice of law rules dictate that a

tort claim is governed by the 'law of the place of the wrong,' the *lex loci delicti* … Here, Plaintiff appears to have sustained the loss of its money in the District of Columbia. Therefore, the undersigned applies District of Columbia law to Plaintiff's conversion count."); *St. Paul Fire and Marine Ins. Co. v. Hoskins*, 2012 WL 748574, at * 4 (W.D. Va. 2012) ("As the loss was sustained in Virginia, the court will apply Virginia law to the state claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, common law conspiracy, and violation of the state business conspiracy statute."); *Ford Motor Co.*, 972 F.Supp.2d at 857-858 ("even within the universe of tortious interference claims, there are significant factual variations that can affect the *lex loci delicti* analysis. That is because the nature of the injury induced by the interfering defendant is important in determining the 'last event necessary' to create the injury to the plaintiff caused by the tortious interference … For a claim of tortious interference, the last event necessary is a legal injury or damage to the plaintiff caused by the wrongful interference … The action that harmed Ford was the non-delivery of the contractually owed insurance payment to Ford's designated account in Michigan"); *id. Jordan v. Shaw Industries, Inc.*, 131 F.3d 134 (Table), at * 3 (4th Cir. 1997) ("When a person sustains loss by fraud, the place of the wrong is where the loss is sustained, not where fraudulent representations are made … Thus, the district court did not err in choosing, as the law governing the fraud claims, the law of the State in which each plaintiff respectively was headquartered and received defendant's various reassurances of continued employment.") (quotation and citation omitted).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court to deny Goodman's "special motion".[15]


DATED:        May 14, 2018


ROBERT DAVID STEELE
EARTH INTELLIGENCE NETWORK


By:    */s/Steven S. Biss*
           Steven S. Biss (VSB # 32972)
           300 West Main Street, Suite 102
           Charlottesville, Virginia 22903
           Telephone:     (804) 501-8272
           Facsimile:     (202) 318-4098
           Email:          **stevenbiss@earthlink.net**

           *Counsel for the Plaintiffs*

---

[15]        Plaintiffs do not allege or admit that Robert David Steele is a public figure.  The presumption is that the plaintiff is a private individual, subject to the Goodman's burden of proving that the plaintiff is a public figure. *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1533 (4th Cir. 1994).  In his "special motion", Goodman attempts to interject facts without evidentiary support.  Goodman attempts to argue that Robert David Steele is a "limited purpose public figure".  Goodman claims that "Plaintiff has appearing [sic] in numerous internet, television and radio broadcasts garnering millions of views worldwide." These uncorroborated statements are not evidence. Goodman fails to rebut the presumption that Robert is a private individual. *See, e.g., Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 3 (W.D. Va. 2016) ("To determine whether a plaintiff is a private person or a limited-purpose public figure in relation to a particular public controversy, defendants must prove the following: (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation.") (quoting *Fitzgerald v. Penthouse Int'l*, 691 F.2d 666, 668 (4th Cir. 1982)).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2018 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for Defendant, Patricia A. Negron, and all interested parties receiving notices via CM/ECF.  I also certify that a copy of this pleading was emailed in PDF to Defendants, Goodman and Lutzke

By:   */s/Steven S. Biss*
     Steven S. Biss (VSB # 32972)
     300 West Main Street, Suite 102
     Charlottesville, Virginia 22903
     Telephone:    (804) 501-8272
     Facsimile:    (202) 318-4098
     Email:        **stevenbiss@earthlink.net**

     *Counsel for the Plaintiffs*