IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT DAVID STEELE          )
-and-                        )
EARTH INTELLIGENCE NETWORK   )
                             )
    Plaintiffs,            )
                             )
v.                           )          Case 3:17-cv-601-MHL
                             )
                             )
JASON GOODMAN                )
PATRICIA A. NEGRON           )
                             )
-and-                        )
                             )
SUSAN A. LUTZKE a/k/a        )
    "QUEEN TUT"            )
                             )
    Defendants.            )
_____)

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT, PATRICIA NEGRON'S, MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs, Robert David Steele and Earth Intelligence Network ("Plaintiffs"), by counsel, pursuant to Local Civil Rule 7, respectfully submit this Memorandum in Opposition to the motion to dismiss [*ECF No. 47*] filed by defendant, Patricia Negron ("Negron").

## I.  NEGRON'S ROLE IN THE CONSPIRACY AND DEFAMATION

Patricia Negron played multiple critical roles in the enterprise that defamed and injured Plaintiffs between June 15, 2017 and September 1, 2017.  She served as researcher, analyst, commentator, lead correspondent and co-producer of more than fifty

videos posted to the YouTube channel, "*Jason Goodman*".  She traveled with Goodman to foreign locations, including London, England, where she interviewed subjects and served as the "anchor" for numerous videos.  A cursory review of the videos posted to the *Jason Goodman* YouTube channel [*see link at ECF No. 39 ("Amended Complaint"), ¶ 6*] demonstrates that Negron prominently participated in almost every video. *See, e.g.*:



With her established business background [https://www.linkedin.com/in/negronpatricia/] and large social media following,[1] Negron was one of the well-known hosts and anchors of  "Crowdsource The Truth". *See, e.g.*:

---

[1]        Negron had 24,300 followers on Twitter as of March 23, 2018.  As alleged in the amended complaint [*ECF No. 39, ¶ 8*], Negron used Twitter to defame Plaintiffs.



Patricia "Trish the Dish" Negron Interviews Charles Ortel

12,738 views

556   13   Share   Download   Add to

Jason Goodman
58,749 subscribers

▶ SUBSCRIBE

Published on Aug 5, 2017

Negron was Goodman's "virtual supporting actress" in almost every video. *See, e.g.*:



Trish Dishes on the Rabbit Files (originally recorded on 6/18/2017)

Negron attracted viewers, subscribers, patrons and disciples. Negron was not an innocent bystander. She was a full partner. Her dedicated participation in the lengthy videos, her repeated appearances in video after video after video, her tacit agreement with and adoption of the false statements made by Goodman and Lutzke,[2] and her publication and repetition of false and defamatory statements all demonstrates that Negron prominently participated in a concerted effort to defame Plaintiffs. **Negron's active involvement in the months-long defamation campaign cannot be denied. As a co-conspirator of Goodman and Lutzke, Negron is liable for _their_ false statements as well as her own.**

Negron concedes – as she must – that she made and published multiple statements of and concerning Plaintiffs. In her memorandum, p. 1, Negron unsuccessfully attempts to dismiss these statements as "mere criticisms". Far from it. The amended complaint confirms that Negron personally made seven (7) false and defamatory statements:

1.    "On June 20, 2017, Goodman and Negron produced and published a video on YouTube entitled, 'COG' … Beginning at 25:26 of the video, Goodman states **Trish – I'm glad you mentioned stealing**, because you've just reminded  me of something – particularly the robber David Steele … Many of our viewers have expressed real anger at feeling tricked by the campaign from Robert David Steele. And I assure you, we were tricked by him as well'").

In "COG", and almost every other video, Negron appears together with her confederate, Goodman, and they speak jointly about Robert. The amended complaint provides screenshots of the joint action. *See, e.g.*:

---

[2]    Negron voluntarily appeared on camera with Goodman and Lutzke. She knew the subject matter and substance of what Goodman and Lutzke were going to say ahead of time. [*Amended Complaint, ¶ 19(c)*]. She heard the false and defamatory statements being made about Plaintiffs. She nodded in agreement. She smiled. She laughed on queue. She made her own false statements that mirrored and echoed those of her co-conspirators. They worked jointly as a group. Negron made no attempt to correct, contradict or distance herself from Goodman or Lutzke. [*id., ¶ 19(d)*]. By her actions and silence, Negron actually and/or tacitly adopted the statements made by Goodman and Lutzke. *See Federal Rules of Evidence 801(d)(2)(B) (a statement that an opposing party "party manifested that it adopted or believed to be true" is not hearsay).*



Negron's statement about "stealing" must be viewed in the context of Goodman's statements about Plaintiffs.  At 1:13:55 of the video, Goodman and Negron address Robert directly. Goodman again calls Robert the "robber David who Steals from our audience ... and puts out false information".  And, at 1:17:21, Goodman, for a third time in a single video, falsely accuses Robert of stealing from the CSTT audience.

<u>Amended Complaint, ¶ 19(d)</u> (emphasis added)

**Theft is a crime.  To accuse a person of "stealing" is defamatory.**
*See, e.g., Stamathis v. Flying J, Inc.*, 389 F.3d 429 (4th Cir. 2004);
*Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 49-50, 147 S.E.2d 710 (1966);
*Snyder v. Fatherly*, 158 Va. 335, 341, 163 S.E. 358 (1932).

2.      "On August 13, 2017, Goodman, Negron and Lutzke published a video on YouTube entitled, 'Queen Tut 005 - Damning Evidence of Fraud in the #Unrig Campaign' … At 2:39 of the video, Negron states 'You know Queen Tut, I had seen an interview on Infowars when they were talking about the UNRIG campaign and just all the body language coming from RDS was just deeply disturbing to me and suggested, you know, a lot of maybe **ulterior motives**' … At 5:08, Negron states that Robert is '**predatory in nature**'… At 14:52, Goodman states that the objective of the UNRIG campaign is to 'get money' for Robert.  At 15:06, Queen Tut states that 'absolutely … the bottom line is money for Robert David Steele.'  At 16:18, Negron states that **the CIA 'probably told Robert he could keep whatever money he raised**', to which Goodman comments, 'exactly, exactly') (emphasis added).

Goodman, Lutzke and Negron again appear together on camera:



Queen Tut 005 - Damning Evidence of Fraud in the #Unrig Campaign

*Amended Complaint, ¶ 19(v)* (emphasis added)

"Queen 005" is described as a video about Robert David Steele's "fraudulent activities". Lutzke states that Robert is "abusive" to women; that UNRIG is a "total scam"; and that Robert "consistently lies".

Negron's statements, read in context with the accompanying statements made by her co-conspirators, falsely imply and insinuate that Robert is dishonest, deceitful, and deceptive, that he preys on women, and that he is fraudulently using the non-profit UNRIG campaign to "get money" for himself. The statement about the CIA – which is a total fabrication – implies knowledge on Negron's part that Robert is acting upon instructions or with consent from the CIA in defrauding donors.

3.  "On August 17, 2017, Goodman, Negron and Lutzke published a video on YouTube entitled, 'Parallels to Soros: Micro to Macro' … At 24:26 of the 'Parallel to Soros' video, Lutzke states that "this kind of person [referring to Robert] is a danger to the alternative news community and he has been operating for way to long … ___**We want him to be gone now**___".[3]

---

[3]     Throughout the videos in which they appear, Goodman, Negron and Lutzke use the plural term, "we". Negron ___**never**___ denied she was acting in concert with Goodman and Lutzke or that "we" accurately described the combined effort in which she was a participant. Negron never once said, "speak for yourselves".

At 29:24, Queen Tut states that Robert's interviews reveal his "schizoid and abusive behavior."  At 40:18, **Goodman, Negron *and* Queen Tut laugh derisively about Robert**:



*Amended Complaint, ¶ 19(x)*

Significantly, "Parallels to Soros" was filmed at Negron's home in Massachusetts, again demonstrating that she was acting in concert with Goodman and Lutzke to produce and publish defamatory videos.

4.    "On August 26, 2017, Goodman, Negron and Lutzke published a video on YouTube entitled, 'Unrig Cynthia McKinney' … At 15:41, Goodman states 'Now I want to clarify something because we're not doing this to be vindictive, we're not doing this because we dislike Robert David Steele, although I personally do.  We're doing this because [laughter] … [Goodman changes the subject]' … At 19:06, Lutzke states 'And this is the nail in the coffin for Robert David Steele's platform for being the Open Source guy.  He is not the open source guy, he never has been … He's created a scam for many many years and he's been defrauding people for a very long time.'"

At 21:32 of the video, Negron states "**No, he's a serious con man, but I mean the bigger point being, you know that this is a serious fraud.  I mean that it is a fraud.  No question.**' … At 28:05, Queen Tut states 'Cynthia McKinney is also a fraud too.  [Goodman interjects 'oh'].  She is willing to associate with Robert David Steele'.  At 36:48, Negron states '**Which would explain her being susceptible to this fraud by Robert David Steele**'") (emphasis added).

*Amended Complaint, ¶ 19(y)* (emphasis added).

Negron's false statements that Robert is a "serious con man", that "this is a serious fraud … it is a fraud … [n]o question" and that Congresswoman McKinney was susceptible to "this fraud" by Robert are each clearly defamatory.[4]

**Fraud is a very serious crime**, which is *exactly* the message that Negron and her co-conspirators intended to convey to the hundreds of viewers watching the video live on August 26, 2017 and the 11,281+ who had watched it as of March 23, 2018.

As with other videos at issue in this action, Negron appears on screen together with her co-conspirators.  *UNRIG Cynthia McKinney* was a group grope with a common goal:

---

[4]       *See, e.g., JTH Tax, Inc. v. Grabert*, 8 F.Supp.3d 731, 741 (E.D. Va. 2014) ("the Court concludes that Liberty has presented sufficient facts to demonstrate that portions of Grabert's internet postings constitute defamation *per se*.  Grabert's defamatory statements include false factual assertions that prejudice Liberty in its profession or trade.  Specifically, Grabert's internet postings include assertions that: … Liberty's system is 'a scam, a scheme, a con'; … Liberty 'steal[s]' stores from franchisees and pays nothing for them … These statements impute a lack of integrity to Liberty, prejudice Liberty in its profession or trade, and cast aspersions on Liberty's honesty, efficiency, prestige, and standing in its field of business."); *see also RKM Intern. Ltd. v. Fujita*, 2015 WL 2451187, at * 6 (D. Haw. 2015) ("The Court finds that Plaintiff has sufficiently pled defamation per se because the statements made by Defendant concern Plaintiff's ability to conduct its business.  Specifically, Defendant stated that Plaintiff is an 'unscrupulous scam operation'); *Shadle v. Nexstar Broadcasting Group, Inc.*, 2014 WL 3590003, at * 5 (M.D. Pa. 2014) ("Here, Nexstar's alleged statements are capable of a defamatory meaning … The word 'scam' is defined as 'a fraudulent or deceptive act or operation.'"); *Wyndham Vacation Resorts, Inc. v. Wesley Financial Group, LLC*, 2013 WL 785938, at * 8 (M.D. Tenn. 2013) ("Both the letter and email [calling defendants a 'scam'] reflect some suggestions that the Defendants may be involved in improper and possibly criminal activities as well as deceptive and fraudulent business practices.  The Court concludes that the statements included in the Wyndham's letter and email are capable of defamatory meanings.  Accordingly, the Court concludes that Defendants sufficiently state a counterclaim for defamation."); *Kumaran v. Brotman*, 247 Ill.App.3d 216, 617 N.E.2d 191, 198 (1993) ("In this case, we believe that plaintiff can plead a cause of action for defamation *per se* based upon the Tribune article.  In analyzing this matter, we will focus upon the article's explicit remarks that plaintiff was 'working a scam' by filing numerous lawsuits to extract monetary settlements on a full-time basis.  The word 'scam' has been defined as '[a] fraudulent business scheme; swindle' (The American Heritage Dictionary, (2d College ed. 1985) and as the same as a 'confidence game,' *i.e.,* 'a swindle effected by gaining the confidence of the victim' (Webster's New World Dictionary 297 (2d College ed. 1982)).



5.     On February 24, 2018, Negron tweeted the following:



*Amended Complaint, ¶ 8*

These statements are defamatory because they accuse Robert of conduct
that is dishonest, deceptive, harassing, abusive and criminal.  Each and
every factual underpinning of Negron's tweet is false.  First, Robert is not
a covert agent of any Government.  Second, Robert never hacked or
injected any false material onto the Internet.  Third, Robert never did
anything to destroy the reputation of anyone and he has never used any
technique to manipulate discourse on the Internet.  Negron's tweet is a
compendium of lies.

6.    On March 19, 2018, Negron intentionally retweeted (republished) to her 24,300 followers on Twitter an article published by Lutzke on Steemit.  In the article, Lutzke falsely accused Robert of being a "double agent" and an "Islamic asset".[5]

The Steemit article begins with the following shocking statement about UNRIG and its core member, Congresswoman Cynthia McKinney:



The Steemit article republished by Negron makes the following egregiously false statements about Robert:

---

    [5]    In the intelligence community, "assets" are persons within organizations or countries being spied upon who provide information for an outside spy.  They are sometimes referred to as agents, and in law enforcement parlance, as confidential informants, or "CIs" for short.

> Robert David Steele, a supposed intel operative from the CIA could not have been ignorant of Cynthia McKinney's background or current commitment to revolutionary Islamic positions. In my opinion, RDS has been and is still actively working with foreign nationals to subvert the stability of US government and the American people.

[https://steemit.com/news/@queentut/unrig-american-revolution-or-islamic-influence-campaign]

> *Amended Complaint, ¶ 8*
>
> Negron's republication falsely accuses Robert of the crime of espionage or treason and of associating with Congresswoman Cynthia McKinney, who is plainly identified as an "UNRIG **traitor**".[6]

7.      On March 23, 2018, Negron tweeted "What's up with Robert David Steele?"  As part of her tweet, Negron republished a February 21, 2018 tweet by Lutzke.  Lutzke's tweet states or implies that Robert employs "NAZI/STASI" tactics to expand his presence on the internet.  "Disturbing!!".[7]

> *Amended Complaint, ¶ 8*

---

[6]      Allegations of "illegal" conduct are clearly actionable because an accusation that a person's conduct is "illegal" is objectively provable.  Couching such an unequivocal statement as "opinion" does not change the analysis. *Harrell v. Colonial Holding, Inc.*, 923 F.Supp.2d 813, 824 (E.D. Va. 2013).

[7]      Lutzke chose her words carefully.  The word "NAZI" refers to one who is likened to a German Nazi: a harshly domineering, dictatorial, or intolerant person.  https://www.merriam-webster.com/dictionary/Nazi].  The term "Stasi" is an abbreviation for "Staatssicherheit" (state security).  That is what the East Germans called the Ministry of State Security, which was officially abbreviated "MfS".  The Stasi had two functions:  It worked as both a secret service and a secret police.  Many countries have a secret service agency.  They are responsible for detecting threats to the country from abroad.  Secret police usually only exist in dictatorships.  They have the task of controlling their own citizens and eliminating any danger to the ruling regime.  They are accountable only to the rulers and circumvent the laws that normal police must obey.  https://www.bstu.bund.de/EN/PublicEducation/SchoolEducation/WhatWasTheStasi/_node.html].  The Stasi was one of the most hated and feared institutions of the East German communist government. [https://www.britannica.com/topic/Stasi].

> Given Robert's status as a retired CIA officer and a current author and advocate of open source intelligence [*Amended Complaint, ¶¶ 1-2*], to suggest that Robert would use tactics employed by the NAZI/STASI regimes is defamatory and insulting.  These statements impute to Robert untrustworthiness and they prejudice Robert in his profession or trade.

The words published by Negron in the videos and in her tweets and retweets are actionable defamation *per se*.  The words impute to Plaintiffs unfitness to perform the duties of a job, dishonesty, untrustworthiness and want of integrity in the performance of the duties.  The words prejudice Plaintiffs in their profession or trade.

For the reasons stated below, the Court should deny Negron's motion to dismiss.[8]

## II.  STANDARD OF REVIEW

In *Madison v. Bobst North America, Inc.*, this Court ruled that:

---

[8]     Plaintiffs filed their motion for leave to amend on March 25, 2018.  Plaintiffs sought leave to amend because the Defendants doubled-down with additional false accusations of criminal conduct and wrongdoing.  Negron's tweets and retweets, for instance, all came ***after*** Plaintiffs originally filed suit in September 2017.  Sometime after Plaintiffs sought leave to amend, Negron's Twitter account – and all the defamatory tweets about Plaintiffs – disappeared.    Negron started a new Twitter account, **@trishadishes2**.  Negron's new home page states as follows:



"The standard in the Fourth Circuit is well-settled. 'A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure 'require[] only '"a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert 'detailed factual allegations,' but must contain 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.' *Twombly*, 550 U.S. at 555 (citations omitted). The '[f]actual allegations must be enough to raise a right to relief above the speculative level,' *id.* (citation omitted), to one that is 'plausible on its face.' *Id.* at 570.

To survive Rule 12(b)(6) scrutiny, a complaint only need contain 'enough facts to state a claim to relief that is plausible on its face.' *Id.* A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires 'the reviewing court to draw on its judicial experience and common sense.' *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)."

2015 WL 5123594, at * 2 (E.D. Va. 2015). The Court further observed that:

"In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted)."

*Id.*[9]

### III.  ARGUMENT

In Virginia, as in other states, the law of defamation protects a basic constitutional interest:  the individual's right to personal security and the uninterrupted entitlement to

---

[9]    In her memorandum in support [*ECF No. 48*], Negron refers to numerous matters outside the four corners of the amended complaint.  Footnote 2, for instance, is extraneous.  The reference on p. 22 to an article on www.unrig.net is also outside the pleadings.  Plaintiffs dispute the allegations.  The fact that Negron is forced to resort to extraneous matters proves that her motion to dismiss is meritless.

enjoyment of his reputation. *Gazette, Inc. v. Harris,* 229 Va. 1, 7, 325 S.E.2d 713 (1985)

(citation omitted).  In *Rosenblatt v. Baer*, Mr. Justice Stewart emphasized that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.'  The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole society."

383 U.S. 75, 92-93 (1966).

## A.    *Count I – Defamation Per Se*

The elements of defamation are "(1) publication of (2) an actionable statement

with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892

(2013).

At common law, words that are actionable as defamation *per se* include (1) those

which impute to a person the commission of a crime involving moral turpitude or which

is punishable by imprisonment in a state of federal institution, (2) those which impute to a

person an "unfitness to perform the duties of a job or a lack of integrity in the

performance of the duties", and (3) those which prejudice a person in his profession or

trade. *Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d

447 (2006).  Where, as here, the defamatory statements are understood to mean that the

plaintiff has committed or would commit crimes involving moral turpitude or that

plaintiff is unfit to perform the duties of his employment or the effect of the words are

prejudicial to plaintiff in his work, "injury to plaintiff's personal and business reputation,

humiliation, and embarrassment is presumed." *Virginia Model Jury Instruction No.*

*37.105 (citations omitted)*; *Askew v. Collins*, 283 Va. 482, 486, 722 S.E.2d 249 (2012) (defendant, who told reporters that plaintiff was "institutionalized—that's the only way you qualify for family leave", "knew her statement was false, or at a minimum … lacked reasonable grounds for this belief or otherwise negligently failed to ascertain facts in support of the defamatory statement … Thus, as a matter of law, the jury needed no proof of damages suffered by Collins on which to predicate its compensatory award based upon the per se defamation negligently published by Askew.  The reputational damage to Collins resulting from Askew's statement was properly presumed").

### 1. *Words That Are Defamatory Per Se*

False statements of criminal or illegal conduct, mismanagement, unethical and unprofessional practices, moral delinquency and mental incompetence are universally found to be actionable as defamation *per se*. *See, e.g., Choi v. Kyu Chui Lee*, 2009 WL 434861, at * 1 (4th Cir. 2009) (Defendant described plaintiff as a "thug" and a "gangster" and alleged "that Choi improperly titled a building in the name of a corporation he controlled even though the building was bought with Federation funds"); *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 439 (4th Cir. 2004) (truck driver accused of stealing gasoline from corporate merchant – $250,000 compensatory damage and $450,000 punitive damage award upheld on appeal); *Rodarte v. Wal-Mart Stores, Inc.*, 2013 WL 1898999, at * 4 (W.D. Va. 2013) ("Plaintiff alleges that Wal–Mart falsely told the police she was engaging in embezzlement.  Such a statement is per se defamatory"); *Graham v. Oppenheimer*, 2000 WL 33381418, at * 1 (E.D. Va. 2000) (upholding jury verdict of compensatory and punitive damages in the sum of $750,000, where the defendant stated "Sam Graham, M.D. [plaintiff] used to be the department chair of urology at Emory

Clinic in Atlantic.  UroCor decided to underbid the Emory pathology department for pathology services and give Graham a cut of the money it got from doing the pathology. This worked well until the poor SOB got caught with his hand in the cookie jar.  Poor guy had to resign his prestigious position."); *Isle of Wight v. Nogiec*, 281 Va. 140, 144-146, 704 S.E.2d 83 (2011) (jury verdict for defamation affirmed where defendant stated that plaintiff, a previous Parks & Recreation director, "suppressed" information about flood damage to the County's museum); *Tronfeld*, 272 Va. at 713, 636 S.E.2d at 451 (insurance adjuster's statements that attorney "just takes people's money" and clients received less for their claims because of attorney's services were not opinion, but capable of being proven true or false and, thus, were actionable in claim for defamation per se); *Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 40, 624 S.E.2d 63 (2006) (statement that former CEO's mismanagement caused former employer to lose money was actionable defamation); *Lindeman v. Lesnick*, 268 Va. 532, 535, 604 S.E.2d 55 (2004) (Defendant's memorandum contained a statement that Dr. Mathews had said that "Dr. Lesnick was 'about to go under' with his medical practice because he can't get any patients [and] Lesnick was 'undereducated' and ... didn't have enough training prior to starting to perform this type of fusion [surgery]."   Another memorandum contained statements attributed to Dr. Mathews that "it is 'a crime' for Dr. Lesnick" not to admit the failure of the spinal fusion surgery performed on Lindeman, that "Dr. Lesnick decided to ignore the facts and just send Gregg back to work because [Dr. Lesnick] was instructed to do so" by Lindeman's employer and its insurance company, and that Dr. Lesnick "appear[s] to be 'in the pocket' of employers and Workman's Comp carriers for the purpose of returning employees to work"); *Poulston v. Rock*, 251 Va. 254, 467 S.E.2d

479 (1996) (defendant told plaintiff's employer that plaintiff "had stolen some nuts and bolts from DuPont's inventory and had given them to [Defendant] for use in assembling a motorcycle."); *Food Lion v. Melton*, 250 Va. 144, 458 S.E.2d 580 (1995) ("Don't you have some meat that belongs to us? ... I'm talking about that meat that you have in your purse" – statement was actionable); *Oberbroeckling v. Lyle*, 234 Va. 373, 379-380, 362 S.E.2d 682 (1987) (jury properly found that statement in memorandum, accusing plaintiff of "mismanagement of funds", was defamatory because, according to the language of the pertinent instruction, the words "in their normal usage would be construed to mean that [the plaintiff] was unfit to perform the duties of his employment" or "lacked integrity" or "was dishonest in performing the duties of his employment"); *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 282-283, 362 S.E.2d 32 (1987) (statements characterizing plaintiff as "disorganized, erratic, forgetful, and unfair" were actionable as defamation *per se*);  *compare id.*, *Kuley v. Fayez*, 2014 WL 10190138, at * 6-8 (Fairfax Cir. 2014) ("In sum, the Court finds the following statements to be sufficiently pleaded: 1) Fayez's statement that Plaintiff was given a direct order to follow county and Department overtime policy; 2) Fayez's oral assertion that it was not true that she and Plaintiff had discussions on multiple occasions regarding Plaintiff working late; 3) Barrett's assertion that plaintiff had been spreading false rumors and innuendos about previous supervisors; 4) Barrett's assertion that Plaintiff "eavesdropped on a private conversation" between her coworkers; and 5) Any and all statements that Plaintiff engaged in a "pattern" of filing grievances against her superiors) (emphasis in original); *Butler v. N.E.W. Customer Services Companies, Inc.*, 2007 WL 5282007, at * 2 (Fairfax Cir. 2007) ("The first statement submitted to the jury in this case was that Plaintiff "had some conflicts with her

co-workers because she was not always to work on time and her work style was different from her co-workers."   The first clause is actionable.   Whether or not Plaintiff had conflicts with co-workers does not depend upon the speaker's viewpoint and is a statement of fact."); *Stanley v. Storck*, 2003 WL 22387076, at * 3 (Norfolk Cir. 2003) ("(1) "We are talking with the IRS;" (2) "They're aware of the thievery," (3) He "did not know how much money the workers took but it is in the thousands of dollars not millions;" (4) "The police are investigating;" and (5) That "three former employees and their families stole tens of thousands of dollars from his firm." … The Court finds that each of these statements is sufficient to create a question for the jury."); *Assaid v. Beaver*, 2000 WL 33340705, at * 1 (Roanoke City Cir. 2000) (defendant called plaintiff "a thief, a crook, and a thieving son of a bitch" – "the language connotes that the Plaintiff lacks integrity; that he is dishonest; that he engages in larceny; that he is unfair in his business dealings; and that he has in the past, and may again in the future, steal from his customers and business associates" – demurrer overruled).[10]

---

[10]     Contrary to Negron's assertion [*ECF No. 39, p. 8*] false statements regarding a person's job performance are actionable. *Raytheon v. Hyland*, 273 Va. 292, 304-305, 641 S.E.2d 84 (2007) (**statement in employment performance review**, that business unit missed its goals by certain stated percentages, and statement implying that employee was responsible for "visible losses" that adversely affected the company could form the basis of defamation claim).   Judge Doumar's recent unreported decision in *McCray v. Infused Solutions, LLC*, Case 4:14-cv-00158-RGD-LRL (E.D. Va. – Norfolk Division) (Document 41), a copy of which is attached as *Exhibit "A"*, illustrates the kinds of statements that Courts routinely find to be actionable.   The plaintiff was a general clerk.   She received a warning notice that stated that "[e]mployee is extremely confrontational and exhibiting constant insubordinate behavior towards individuals at her work location."   The notice further stated that the plaintiff's alleged behavior "has been an issue for over 90 days and appears to be getting significantly worse instead of improving."   In overruling the defendant's Rule 12(b)(6) motion to dismiss, Judge Doumar held that "[t]hese statements clearly (1) could prejudice Plaintiff in the practice of her profession as a clerk and (2) contain factual connotations that could be proved false."

2.    _**Defamation by Implication**_

It is not necessary that a defamatory statement be made in direct terms.   A statement that is not directly defamatory or that is literally true may nonetheless suggest a defamatory meaning in an indirect way, that is, by inference, implication or insinuation.  The implication alleged must be reasonably drawn from the words actually used.   The implication must appear from the ordinary and common meaning of the words spoken by the defendant.   In determining whether a defendant's statement expresses a defamatory meaning by implication, the Court considers the words themselves and all circumstances surrounding the making and publication of the statement which would reasonably cause the statement to convey a defamatory meaning to its recipient. _Pendleton v. Newsome_, 290 Va. 162, 172, 772 S.E.2d 759 (2015) ("Assuming, as we must, the truth of all the facts properly pleaded by the plaintiff, and giving her the benefit of all facts implied and fairly and justly inferred from them, we conclude that in the context set forth in the complaint, the words ascribed to the defendants, given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which the plaintiff complains.") (citing _Webb v. Virginian-Pilot Media Companies, LLC_, 287 Va. 84, 89, 752 S.E.2d 808 (2014) ("Where, as here, a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used. _Chapin v. Knight–Ridder, Inc.,_ 993 F.2d 1087, 1092–93 (4th Cir.1993); _see also Carwile v. Richmond,_ 196 Va. 1, 8-9, 82 S.E.2d 588, 592 (1954) ("In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings

must be resolved in the plaintiff's favor.   However, the meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation … While the defamatory language does not in express terms charge the plaintiff with a breach of his professional honor, yet, when aided by the innuendo, operating within the scope of its legitimate functions, it does impute conduct tending to injure him in his profession.   Consequently, we hold that the plaintiff's motion for judgment states a cause of action and that a material fact is genuinely in dispute, and therefore summary judgment should not have been awarded the defendant.").

3.   ***Negron's Statements Must Be Viewed As A Whole And In Context***

In *Reynolds v. Pionear, LLC*, this Court recently considered whether multiple statements made by a defendant were defamatory.   There were three (3) statements at issue in *Reynolds*.   First, the plaintiff, Reynolds, alleged that defendant, Pionear, defamed her when the company reported to a federal investigator "that Reynolds was discharged … for 'unfavorable employment' or 'conduct' at Bank of America." 2016 WL 1248866, at * 5.   The Court ruled that "[i]n isolation, a characterization of Reynolds's employment as 'unfavorable' constitutes an expression of opinion that wholly rests on Pionear's perspective as to what "unfavorable" means."   The Court also held that plaintiff's second statement – "that [Reynolds] had engaged in 'inappropriate conduct' with a co-worker" – when unaccompanied by context, also reflected an "opinion that entirely depends on Pionear's viewpoint.   What is 'inappropriate' to one speaker may differ completely if analyzed from the viewpoint of another.   Thus, in a vacuum, the first two statements are not 'provably false facts or factual connotation[s].'" 2016 WL 1248866, at * 5.   The Court's analysis with respect to the first two statements did not end there.   Analyzing the

context and general tenor of the statements required the Court to review "the entirety of the alleged conversation between Pionear and the federal investigator." 2016 WL 1248866, at * 5 (citing *Hyland*, 670 S.E.2d at 751 ("In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement")). Thus, in assessing the defamatory nature of Pionear's statements regarding Reynold's "unfavorable employment" and her "inappropriate conduct," the Court considered Pionear's third statement: that Reynolds "had spoken 'rudely and with profanity' to her co-worker." The Court found that "Pionear's statement that Reynolds spoke 'with profanity' constitutes an actionable statement." 2016 WL 1248866, at * 6.

> "By stating that Reynolds spoke 'with profanity,' Pionear has implied that Reynolds uttered actual profane words, the specifics of which were not divulged in the allegedly defamatory statement … At this early stage of litigation, in light of its finding that Pionear's third statement constitutes a 'provably false' actionable statement, the Court finds that the first two statements are likewise actionable … The Court now concludes that the otherwise subjective first and second statements are 'laden with factual content' supporting a claim for defamation. *See Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 43 n.8 (Va. 1987) (citation omitted). Coupled with Pionear's third statement, comments regarding Reynolds's 'unfavorable employment' and 'inappropriate conduct' are now, at least on the record before the Court, tied to a 'provably false' factual underpinning. To the extent they relate to Reynolds's purported use of 'profanity,' Pionear's first two statements constitute actionable statements that survive Rule 12(b)(6) scrutiny.

2016 WL 1248866, at * 7.

### 4.   *Negron's Words Are Defamatory*

Negron repeatedly accused Plaintiffs of serious crimes, dishonesty and unethical behavior. When Negron's statements are viewed together as a whole and in the context of the videos in which they appear, Negron's false accusations of "stealing", "fraud", that Robert had "ulterior motives", that Robert is "predatory in nature", that the CIA

"probably told Robert he could keep whatever money he raised", that Robert is a "serious con man", that "this is a serious fraud … [n]o question", and that Congresswoman Dr. Cynthia McKinney is "susceptible to this fraud by Robert David Steele" – all these statements are defamatory *per se*.  They are not opinions.  Negron's statements are indisputably capable of being proven false.  The statements can be disproved by evidence, if adduced, that Plaintiffs did not steal from anyone, including any member of the Crowdsource The Truth "audience", and did not defraud anyone.  Even if the statements contain hints of "opinion" – which they do not – Negron's statements are all "tied to a 'provably false' factual underpinning." *Reynolds*, 2016 WL 1248866 at * 7; *Goulmamine*, 138 F.Supp.3d at 660 (First, "statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false.".  Second, a statement of opinion may be actionable when it "reasonably can be construed as a statement of fact" because "it is 'laden with factual content' and the underlying facts are allegedly false.") (citations and quotations omitted).

### 5. *Plaintiffs Allege Actual Malice*

Plaintiffs also allege actual malice. [*Amended Complaint, ¶¶ 19(y), 37*].  Here, actual malice may be inferred (a) from Negron's strong and violent words ("serious con man", "serious fraud", etc.) and from the insulting words of her co-conspirators, including multiple false accusations of very serious crimes (theft, fraud, etc.), (b) from the repetition of the false statements, including Negron's tweets after this action was filed, (c) from the utter disdain and reckless disregard of Robert's privacy complaints to YouTube, and (d) from the appearance of reprisal.  After the dirty bomb hoax and Robert's refusal to be interviewed by Negron and Goodman [*Amended Complaint, ¶ 17*],

there is no question that Negron and Goodman retaliated. [*Id., ¶ 18*]; *see, e.g., Daniczek v. Spencer*, 156 F.Supp.3d 739, 756 (E.D. Va. 2016) ("Spencer neglects that malice may be inferred under aggravating circumstances, including disregard for communications by others and the appearance of reprisal."); *Crawford & Co. v. Graves*, 199 Va. 495, 499, 100 S.E.2d 714 (1957) ("Strong and violent language or insinuations disproportionate to the occasion may raise an inference of malice") (quoting *Aylor v. Gibbs*, 143 Va. 644, 648, 129 S.E. 696 (1925) ("considering all the evidence as to the subsequent acts and utterances of the defendant, we are satisfied that the court should not have taken the case away from the jury")); *Kroger Grocery and Baking Co. v. Rosenbaum*, 171 Va. 158, 161-163, 198 S.E. 461 (1938) ("the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself"); *Snyder v. Fatherly*, 158 Va. 335, 354, 163 S.E. 358 (1932) ("'As a general rule it is considered competent for the plaintiff to show, as evidence of malice, that since the speaking or publication of the slander or libel … the defendant has repeated or republished the same, even though such repetition or republication has taken place since the commencement of the action'") (quotation omitted); *Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472, 474 (1912) ("Any other words written or spoken by the defendant of the plaintiff, either before or after those sued on, or even after the commencement of the action, are admissible to show the animus of the defendant, and for this purpose it makes no difference whether the words tendered in evidence are themselves actionable or not, or whether they be addressed to the same party or to some one else … The more the evidence approaches proof of a systematic practice of libeling or slandering the plaintiff, the more convincing it will be.") (quotations and citations

omitted); *see also PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 345, 576 S.E.2d 438

(2003) ("Proof of actual malice is not necessary.  Malice may be inferred from

circumstances.") (quoting *Baker v. Marcus*, 201 Va. 905, 909-910, 114 S.E.2d 617

(1960)).[11]

### 6.    *Negron's Counsel Argues Disputed Facts*

In an effort to avoid the express allegations in the amended complaint, Negron's

lawyers resort to disputing those allegations.  This violates the standard of review under

Rule 12(b)(6).  Issues of fact are for juries to decide.

For instance, on page 15 of Negron's memorandum in support, counsel argues

that the amended complaint attributes to Negron "actions she never took".  Negron most

certainly took the actions alleged in the amended complaint, and *much more* that will be

revealed in discovery when the emails, text messages, and Skype transmissions between

and among Negron, Goodman and Lutzke are produced.

---

[11]    The presumption is that a plaintiff is a private individual, subject to the
Defendant's burden of proving that the plaintiff is a public figure. *Foretich v. Capital
Cities/ABC, Inc.*, 37 F.3d 1541, 1533 (4th Cir. 1994).  Plaintiffs are not public figures and
certainly not *__in relation to any particular public controversy at issue in this case__*.  The
fact that someone has a website, writes articles about matters of public concern and
generally appears in some videos on YouTube does not make them a public figure.
Plaintiffs have the same access to the Internet that everyone has.  They have the ability to
create and maintain a website, to publish articles themselves using *Medium* and to submit
articles to others for publication.  This does not make them a public figure.  Plaintiffs did
not voluntarily assume a role of special prominence in this public controversy.  They did
***nothing*** to provoke the Defendants' attacks.  On June 15, 2017, the Defendants started to
defame Plaintiffs and, thereafter, escalated the defamation.  The "controversy" – which is
really a private issue that Defendants chose to make public using social media – did not
exist prior to the publication of the Defendants' defamatory statements.

### 7.    *Negron IS Liable For The Statements Of Her Co-Conspirators*

It is hornbook law that so long as a conspiracy continues, each co-conspirator is liable for the tortious acts of the other committed in furtherance of the unlawful project.

As the United States Supreme Court held in *Pinkerton v. United States*:

> "the partners act for each other in carrying it forward.  It is settled that 'an overt act of one partner may be the act of all without any new agreement specifically directed to that act.' … Motive or intent may be proved by the acts or declarations of some of the conspirators in furtherance of the common objective.  A scheme to use the mails to defraud, which is joined in by more than one person, is a conspiracy.  Yet all members are responsible, though only one did the mailing. The governing principle is the same when the substantive offense is committed by one of the conspirators in furtherance of the unlawful project … The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle.  That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all.  An overt act is an essential ingredient of the crime of conspiracy … If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."

*Pinkerton v. United States*, 328 U.S. 640, 646-647 1946).

Negron does not seriously contest that Plaintiffs have alleged a conspiracy amongst the Defendants.   Plaintiffs allege with specificity all the elements of a conspiracy, including the identity of the participants (who), the acts of defamation and insulting words in furtherance of the conspiracy (what), the specific dates of all acts (when), the specific media used and locations of the defamation (where and how), and the motive (why).  In her memorandum [*ECF No. 48, p. 18*], Negron even admits that the three Defendants "at one time expressed a **mutual** dislike for Plaintiffs". (Emphasis added).   Negron is liable for Goodman and Lutzke's tortious acts committed in furtherance of the conspiracy to injure Plaintiffs and while Negron was a participant.

**B.**     *COUNT II – Insulting Words*

Section 8.01-45 of the Virginia Code (1950), as amended, provides that "[a]ll[12] words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace."

"**Whether or not the words used are insulting is a jury question**, depending on whether from 'their usual construction and common acceptation' they may be 'construed as insults, and tend to violence and breach of the peace.'  The motive which actuated the person using the words is not material, except upon the questions of malice and the measure of damages." *Cook v. Patterson Drug Co.*, 185 Va. 516, 521, 39 S.E.2d 304 (1946) (emphasis added).

Negron's words – detailed above – including her accusations of criminal conduct, her description of Robert as "predatory in nature" and a "serious con man" and her statement that Robert committed "fraud" on his #UNRIG partner, Congresswomen Cynthia McKinney [*Amended Complaint, ¶ 5*], are insults and they tend to violence and breach of the peace.

Attached hereto as *Exhibit "B"* is a Summary of reported decisions over the last 100+ years, in which the Virginia Supreme Court, Virginia Circuit Courts, and Virginia Federal Courts have affirmed and reversed Jury verdicts and overruled motions to dismiss and demurrers to insulting words claims.   Jury verdicts were upheld in cases where

---

[12]     The word "all" is a term of exceptional breadth. *Turner v. Reed*, 258 Va. 406, 409, 518 S.E.2d 832 (1999) ("The word 'all' means: 'The whole number or sum [when] used collectively with a plural noun or pronoun expressing an aggregate.' Black's Law Dictionary 74 (6th ed. 1990)).  The Virginia Supreme Court has not minced words: "A more comprehensive word than 'all' cannot be found in the English language". *Moore v. Va. Fire & Marine Ins. Co.*, 69 Va. (28 Gratt.) 508, 516 (1877).  "All words", thus, includes both written and verbal words.

defendants made much, much _**less**_ egregious statements, than Defendants made in this case.

One thing is clear from the reported decisions:  statements that are defamatory *per se* are insulting *per se. Goulmamine v. CVS Pharmacy, Inc.*, 2015 WL 59200009 at * 12 ("Statements that are defamatory *per se* are insulting *per se;* thus, defamatory *per se* statements necessarily meet the "insulting" requirement of the two-part insulting words test.").

Measured by the controlling cases cited, there is no question that Plaintiffs state a viable insulting words claim against Negron upon which relief can be granted.

**C.** _**Count V – Tortious Interference With Contract**_

The necessary elements to establish a prima facie case of tortious interference with contract are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216, 754 S.E.2d 313 (2014) (quoting) (*Chaves v. Johnson,* 230 Va. 112, 120, 335 S.E.2d 97 (1985)).

The contracts and business expectancies at issue in this action are Plaintiff, Earth Intelligence Network's, donor relationships. [*Amended Complaint, ¶ 54*].  The donors are specific individuals, some of whom were subscribers to the *Jason Goodman* YouTube channel, who were encouraged to terminate their relationship with #UNRIG and request a refund due to "fraud" perpetrated by Plaintiffs. [*Amended Complaint., ¶¶ 19(a-c), 56*].

This is not a case like *Masco*.   Here, Plaintiffs allege that the Defendants intentionally interfered with specific, existing donors.  [*Amended Complaint, ¶ 19(c)* (In the June 16, 2017 video, "The Failing New York Times", Goodman states "I want to invite our friend, Robert David Steele, to uh give back the money to all the people that we raised money for his organization the other day.   We have been getting so many emails from people who are angry and I don't want to tell everybody to demand their money back because Robert David Steele has specifically told me I had better not do that, so I'm inviting him to graciously refund it to anyone who is angry again, and there are a lot of people" … Goodman further states "So I'm making an open call right now. Everyone should just go directly to their credit card company and cancel the charge").

Plaintiffs clearly allege that Negron actively participated in the tortious interference with Goodman, including production and publication of *The Failing New York Times*:



The Failing New York Times

**D.**   ***Counts VI – Intentional Infliction of Emotional Distress***

Contrary to Negron's argument, the amended complaint describes a persistent course of conduct by the Defendants that is extreme and outrageous.   Robert suffered severe emotional trauma as a result of the near daily publication of defamatory statements. [*Amended Complaint, ¶¶ 31, 63 (describing Robert's injuries)*].

Defendants' conduct is atrocious and utterly intolerable in a civilized society.

Because Plaintiffs allege facts to support each of the elements of their claim, Negron's motion to dismiss Count VI should be denied. *See, e.g., Magallon v. Wireless Unlimited, Inc.*, 2012 WL 9385999, at * 7 (Fairfax Cir. 2012) ("Mr. Chaudhary made, what the Court considers, wildly harassing and harmful comments about Ms. Magallon to her fellow employees and supervisors at Wireless Unlimited.   When Ms. Magallon confronted Mr. Chaudhary about the comments he made, Mr. Chaudhary angrily screamed at Ms. Magallon, threatening violence against her, while profanely disparaging her character.   The Court believes Mr. Chaudhary's alleged behavior, deemed true for purposes of the Demurrer, extends far beyond poor manners.").

**E.**   ***Counts VII, VIII and IX***

Plaintiffs will withdraw Count VII – Computer Trespass and Harrassment, Count VIII (Unauthorized Use of Name and Picture) and Count IX (Permanent Injunction) against Negron.

These Counts are more properly directed to Goodman and Lutzke.

Goodman, for instance, has used Robert's name and picture to solicit money, sell merchandise and promote his YouTube channels. [*See, e.g., Amended Complaint, ¶ 22(i)*].  Goodman is even using this action to solicit money via PayPal and Patreon:



[https://www.youtube.com/watch?v=A2YL-tWqvsU].

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request the Court to deny Negron's motion to dismiss.


DATED:          May 25, 2018


        ROBERT DAVID STEELE
        EARTH INTELLIGENCE NETWORK


        By:    */s/Steven S. Biss*
           Steven S. Biss (VSB # 32972)
           300 West Main Street, Suite 102
           Charlottesville, Virginia 22903
           Telephone:   (804) 501-8272
           Facsimile:   (202) 318-4098
           Email:      **stevenbiss@earthlink.net**

           *Counsel for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2018 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for Defendant, Patricia A. Negron, and all interested parties receiving notices via CM/ECF.  I also certify that a copy of this pleading was emailed in PDF to Defendants, Goodman and Lutzke

By:____*/s/Steven S. Biss*_____
       Steven S. Biss (VSB # 32972)
       300 West Main Street, Suite 102
       Charlottesville, Virginia 22903
       Telephone:    (804) 501-8272
       Facsimile:    (202) 318-4098
       Email:     **stevenbiss@earthlink.net**

       *Counsel for the Plaintiffs*