

FEB 1 9 2018
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND VIRGINIA**

| |
|---|
| ROBERT DAVID STEELE, |
| Plaintiff, |
| -against- |
| JASON GOODMAN, |
| Defendant. |

**17-CV-00601-MHL**

**MOTION TO INTERVENE BY**
**INTERVENOR-APPLICANT**
**SWEIGERT**

## MOTION TO INTERVENE BY INTERVENOR-APPLICANT SWEIGERT

### PROCEDURAL STATEMENT

1.      **NOTICE SHOULD BE TAKEN BY THE CLERK OF THE COURT AND ALL**

**PARTIES** that the interested party known as D. GEORGE SWEIGERT is seeking the LEAVE

OF THE COURT TO INTERVENE into this instant lawsuit pursuant to Fed. R. Civ. Proc. Rule

24(a) and Virginia Supreme Court Rule 3:14 (Rule 3:14 provides that "[a] new party may by

leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or

defense germane to the subject matter of the proceeding.").

2.      The interested party (intervenor-applicant) D. George Sweigert purposes to intervene as a

**PLAINTIFF**. As sworn below, Sweigert has an interest identical to the Plaintiff (Robert David

Steele) in these proceedings and maintains an interest in their outcome.

3.      As no discovery has taken place and these proceedings are in the pleading stages, this

MOTION appears timely and does not present a prejudicial burden to any party.

1

## PRELIMINARY STATEMENT

1.      At the outset, the undersigned apologies for the length of the following preliminary

statement; however, it is required to demonstrate the same nucleus of facts that form a nexus

between Defendant Goodman's conduct, the undersigned and this Court.

2.      *Background.* As a leading *alt-right* media star and all-purpose public figure, Defendant

(herein Def) operates CrowdSource The Truth (CSTT) on several social media platforms.  CSTT

claims to be a news service, but operates akin to a methodology used in nation state cyber

conflict known as "Information Operations [Info Ops]".  The Def's proficiency at sowing

deceptive falsehoods, mixed with a few grains of truth, into CSTT *news* podcasts accomplishes

the Info Ops objectives of disempowerment, disruption, degrading and de-personage of a target

(like the undersigned).  Innocent parties (collateral damage) become CSTT on-line punching

bags to increase Def's personal profits while he recklessly deflects blame, ownership and

responsibility of his acts onto these innocents (see Port of Charleston dirty bomb hoax supervised

by the Def on June 14, 2017 via CSTT poscasts).

3.      Purportedly over 1,111 dubious paying "patrons" (*Patreon.Com*) transmit via the global

payment system between $10K and $15K monthly to fund the Def and CSTT *investigation*

*podcasts* – which can be categorically characterized as false, distortions of reality, deceptive and

often resembling screaming "fire" in a crowded theater (Port dirty bomb hoax).  In these pay-for-

view podcasts deceptive and defamatory statements are made continuously by the Def in his

private social media war against CSTT enemies.  This includes Def's perverted insinuations the

that undersigned is (1) protecting pedophiles, (2) practicing ritualistic satanic torture, (3) stalking

CSTT reporters with death squads, (4) was a planner of the Port hoax and (5) is a drug smuggler.

Def insists that all of these slurs are based on the *evidence* that *resulted* from CSTT

*investigations.* This explains why it is, and was, so damaging and dangerous, when Def defames and incites on-line calls to violence and intimidation and CSTT targets (like the undersigned).

4.      *Defendant's incitement of violence against undersigned.* The Def has broadcast *investigation results* to accuse the undersigned of murdering hitchhikers as part of witchcraft practices, protecting pedophiles, coordinating satanic ritualistic abuse on victims, etc. These deceptive and vile accusations were passed off as the *results of investigative research* for the purpose of inciting a digital lynch mob to harm the undersigned. Defaming and inciting violence against the undersigned was not done in the public's interest. In fact, none of Def's infringing content has been removed (nearly 14 months later and counting), and remains available to the public worldwide. "[I]ncitement creates a risk that third parties will inflict violence on the victim, whereas threats engender fear and intimidation that usually reach the victim directly." *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013). [emphasis added] "It rarely has been suggested that the constitution freedom for speech … extends immunity to speech or writing used as an integral part of conduct in violation of a valid … statute." *United States v. Rowlee II*, 899 F.2d 1275, 1278 (2d Cir. 1990).

5.      *Defendant is a Public Figure while Undersigned is not.* In *New York Times Co. v. Sullivan,* the Supreme Court defined rules of defamatory publication that apply not only to public officials but to any public figure (like the Def). *Gertz v. Welch, Inc.* 418 U.S. 323, 342. Def is clearly a public figure who has inserted himself into major national political controversies with his *right-wing* sidekicks like Jerome Corsi, Larry Klayman and Laura Loomer (all of whom are monitored and watched by the Southern Poverty Law Center (S.P.L.C.) for hate speech). Mr. Klayman, esq. represents both Loomer and Corsi in outlandish lawsuits (*Loomer vs. Twitter.Com* and *Corsi vs. Robert S. Mueller, III, Office of the Special Counsel*) which are extensively

promoted by the Def with a constant stream of anti-government chatter to *echo chamber* these *lawsuits* with presumed *evidence*.

6.     The undersigned arguably is not such a public figure. The undersigned had only used a stage name ("Dave Acton") to create educational videos on a YouTube channel that catered to disaster preparedness and medical first-aid as a licensed Emergency Medical Technician. The undersigned became a tangential unwitting participant in the acrimonious feud between Def and his former room-mate and sidekick George Webb Sweigert (undersigned's brother). Plaintiff was dragged (some say drug) into this controversy and is only defending himself against the Def who drew first blood.

7.     In context of only the Port dirty bomb incident (hoax) debate, the undersigned is at most a limited public figure and more probably a private citizen that was involuntarily drug into this ugly situation and is acting in self-defense against the Def. Even if this Court finds the undersigned as a limited public figure, the Def's speech would have to be necessarily limited to the scope of that public controversy (Port hoax incident). *Gertz v. Welch, Inc.* 418 U.S. 323, 345. The Def would be prohibited from the broadcast of extraneous attacks and unfounded accusations of criminal conduct (implied defamation and slander per se). A person acts with malice if the publication was made with knowledge that the statement was false or with reckless disregard for its truth. *Gertz v. Welch, Inc.,* 418 U.S. 323. This demonstrates injury and Article III standing of the undersigned by meeting the "plausibility test" created by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ALLEGATIONS

## COUNT ONE: VIOLATION OF 42 U.S.C. 1985

8.     Paragraphs 1 thru 7 are hereby cited as if fully restated and realleged.

9.     This Court is in the strongest position to evaluate the actions of the Def regarding

violations of the anti-conspiracy sections of 42 U.S.C. § 1985(2) (Obstructing justice;

intimidating party, witness, or juror) and § 1985(3) (Depriving persons of rights or privileges)

concerning retaliatory conduct directed at a witness of this instant lawsuit.

10.     It is alleged that after the undersigned filed documents and declarations in this Court (Dkt

Nos: 51, 54, 55, 56, 58, 59 & 60 [herein cited as if fully restated) and then Def used his CSTT

social media empire to intimidate, humiliate, threaten and cause the undersigned to live in fear.

Def retaliated against the undersigned with public calls to violence, broadcast of trade libel,

widely distributed slander, defamation and various invasions of privacy.

11.     The Def's attacks on a witness to this instant lawsuit is an attack on the very integrity of

this Court.  Several circuits have found that the main purpose of 42 U.S.C. § 1985(2) is to protect

the integrity of the court itself.  *Rutledge v. Arizona Bd. Of Regents*, 660 F.2d 1345, 1354-55 (9th

Cir. 1981); *McCord v. Nailey,* 636 F.2 606, 617 (D.C. Cir. 1980) *cert. denied.*  The Rutledge

court reasoned that there was a congressional desire to protect the integrity of the federal

judiciary.  636 F.2d at 615.

12.     The malevolent conduct is clearly depicted in the attached Exhibit which is a simple

search of "JASON GOODMAN SWEIGERT" on the YouTube.Com platform which returns

video content of more than a dozen (+12) video productions distributed in a widely pervasive

manner via the Internet to an audience of thousands worldwide. A sample appears as EXHIBITS (attached).

13.     It has long been settled that the federal courts retain their inherited judicial power to compel the behavior of parties to litigation and to compel orders to cease the type of misconduct described above (Fed. R. Civ. Proc. Rule 16). The federal Courts can exercise their inherent power in an independent manner to support judicial efficiency and the expeditious flow of litigation. *Link v. Wabash R.R. Co.,* 370 U.S. 626 (1962).

## LEGAL ARGUMENT

14.     *Def's intimidation of Undersigned for his status as a witness to this lawsuit.* Between May – June 2017 Plaintiff seven (7) declarations in this instant lawsuit. In open defiance of 42 U.S.C. §§ 1985(2) clause one the Def calculated to economically injure, intimidate, coerce and humiliate the undersigned to dampen, obstruct and/or retaliate against the undersigned for the submission of documents to this Court. The bright line threshold of § 1985(2) (clause one) was crossed by the Defendant's continuing malevolent acts which allows for a private remedy under Section 1985(3)(clause iii).

15.     These malevolent smear campaigns invade undersigned's <u>liberty interest in a good reputation</u> and future employment, and thus created an actionable federal offense. "Such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an <u>independent source such as state law</u>." [emphasis added] Footnote 75, *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir.)

16.     In *Farese v. Scherer* [342 F.3d 1223, 1229 (11th Cir. 2003)], the court noted that § 1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits. The statute proscribes "conspiracies that interfere with * * * the administration of justice in federal courts".

17.    A *per se* violation of § 1985(2) (clause one/i) ("Obstructing Justice; Intimidating Party, Witness, or Juror") exists when two or more persons (the Def and his numerous sidekicks) conspire to deter, by force, intimidation, or threat any party or witness in any court of the United States from attending to the matters of the court.

18.    Section 1985(3)(clause iii) provides a remedy for damages to anyone "injured in his person or property" or deprived of a federal right or privilege as a result of a conspiracy proscribed by Section 1985(2) (clause i).

19.    In *Haddle v. Garrison*, 525 U.S. 121, the Supreme Court held that tort injuries (similar to the undersigned's described in the foregoing) are cognizable under § 1985(3)(clause iii).  See to "injure [petitioner] in his person or property".  Further, "[t]he statute provides that if one or more persons engaged in such a conspiracy 'do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property', . . . the party so injured ... may have an action for the recovery of damages occasioned by such injury ... against any one or more of the conspirators. § 1985(3)."  See footnote no. 2: "Section 1985(3) contains the remedial provision granting a cause of action for damages to those harmed by any of the conspiracies prohibited in §1985. See *Kush* v. *Rutledge* , 460 U. S. at 724-725 (listing the various conspiracies that §1985 prohibits).

20.    It is instructive to note the U.S. Department of Justice Amicus Brief (1998), submitted to the *Haddle v. Garrison* court, which summarizes the property issues under consideration by the Court, "[t]he statute provides a remedy in <u>damages to anyone who is injured in his person or property</u> or deprived of a federal right or privilege as a result of an act in <u>furtherance of a conspiracy prohibited under any part of Section 1985</u>, including clause one of Section 1985(2) emphasis added] [Internet URL:  <u>https://www.justice.gov/osg/brief/haddle-v-garrison-amicus-</u>

merits ]. To summarize, § 1985(3) class-based animus limitations cannot be used to narrow the scope of a § 1985(2) (clause one) claim.

21.     "*Held:* No allegations of racial or class-based invidiously discriminatory animus are required to establish a cause of action under the first part of § 1985(2). The statutory provisions now codified at § 1985 were originally enacted as § 2 of the Civil Rights Act of 1871, and the substantive meaning of the 1871 Act has not been changed.

22.     "The provisions relating to institutions and processes of the Federal Government (including the <u>first part</u> (clause one) of § 1985(2)) ... contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws. Thus, the reasoning of *Griffin* is not applicable here, and, given the structure of § 2 of the 1871 Act, it is clear." *Kush v. Rutledge*, 460 U.S. 719 (1983).

23.     *The Def is not prejudiced by this action.*  The Def would not be prejudiced by allowing the undersigned to intervene in this action. There has been no (1) undue delay in filing the motion to intervene, (2) the adverse party has been noticed, (3) the undersigned is acting in good faith without a dilatory motive, (4) it is not a failure to cure deficiencies of previous pleadings, (5) there is no undue prejudice to the Def, and (6) the proposed intervention is not futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

## REQUEST FOR RELIEF

24.     As the foregoing indicates, the time is ripe for this Court to curtail Def's out-of-control retaliation and vindictive attacks on the undersigned.

## CONCLUSION

25.     Plaintiff's pleading burden has not only met, but, has exceeded the pleadings threshold, particularly as no discovery has occurred, and he has established standing.  Thereby, it would be premature to dismiss any causes of this motion.

I hereby certify that the foregoing information and attached exhibits are truthful and correct under penalties of perjury.

Signed:        2/14/19

                                                    Respectfully submitted,

                                                    D. George Sweigert, *pro se*

I hereby certify that the foregoing information and attached exhibits are truthful and correct under penalties of perjury.

Signed: 2/14/19

Respectfully submitted,

D. George Swygert, *pro se*

# EXHIBITS TO ACCOMPANY

# MOTION TO INTERVENE



## Jason Goodman

Home     Videos     Playlists     Community     Channels     About          sweigert



**Was Sweigert the EVL BAT CAVE Custodian or Key Holder for BAE Bit-Spread Pentagon Bomb**
Jason Goodman
23 hours ago • 4,119 views
David continues to explore the possibilities of 9/11 simulations in the University of Chicago's EVL BAT CAVE. Sweigert sends mail.          ...



**Did SERCO's Patented EVL Bat CAVE Entrust Pentagon Attack Simulation to Sweigert?**
Jason Goodman
1 week ago • 4,129 views
With his extensive credentials and experience Sweigert is uniquely suited to overseeing sophisticated simulations that could be viewed in the EVL CAVE.          ...



**Did Sweigert Hack the EVL BAT CAVE & Switch Pentagon Attack Simulation to Live Fire? David Hawkins**
Jason Goodman
5 days ago • 4,709 views
There has been no more aggressive opponent to Reverse CSI research than David George Sweigert. He's literally written the book on ethical hacking, but the question is, who          ...



**Red Line Death in Zulu Time Did Ramsey Use George Sweigert Patent to Call Police with David Hawkins**
Jason Goodman
3 weeks ago • 3,989 views
David continues his deep dive into the patent office. Did George Henry Sweigert"s patented tech play a role in the Jon Bennet Ramsey murder or subsequent call to Boulder, CO police'...



**Question for Legal Experts – Has D. George Sweigert Committed Mail Fraud?**
Jason Goodman
1 month ago • 2,767 views
D. George Sweigert has brought a civil suit against Jason Goodman based on fraudulent claims. Sweigert has changed his address three times since initiating the suit. His current   ...



**Hack to the Future – Exploring the Sweigert, Hearst, Buffett Time Phones with Quinn Michaels**
Jason Goodman
9 months ago • 1,428 views
"Originally posted April 7, 2018

12

**Was Sweigert the EVL BAT CAVE Custodian or Key Holder for BAE Bit-Spread Pentagon Bomb**

Jason Goodman

23 hours ago • 4,119 views

David continues to explore the possibilities of 9/11 simulations in the University of Chicago's EVL BAT CAVE. Sweigert sends mail.

⋮



**Did SERCO's Patented EVL Bat CAVE Entrust Pentagon Attack Simulation to Sweigert?**

Jason Goodman

1 week ago • 4,129 views

With his extensive credentials and experience Sweigert is uniquely suited to overseeing sophisticated simulations that could be viewed in the EVL CAVE.

⋮

**Did Sweigert Hack the EVL BAT CAVE & Switch Pentagon Attack Simulation to Live Fire? David Hawkins**

Jason Goodman

5 days ago • 4,709 views

There has been no more aggressive opponent to Reverse CSI research than David George Sweigert. He's literally written the book on ethical hacking, but the question is, who

⋮



13

Red Line Death in Zulu Time Did Ramsey Use George Sweigert Patent to Call Police with David Hawkins

Jason Goodman

3 weeks ago • 3,989 views

David continues his deep dive into the patent office. Did George Henry Sweigert's patented tech play a role in the Jon Bennet Ramsey murder or subsequent call to Boulder, CO police'...



Question for Legal Experts – Has D. George Sweigert Committed Mail Fraud?

Jason Goodman

1 month ago • 2,767 views

D. George Sweigert has brought a civil suit against Jason Goodman based on fraudulent claims. Sweigert has changed his address three times since initiating the suit. His current ...



Hack to the Future – Exploring the Sweigert, Hearst, Buffett Time Phones with Quinn Michaels

Jason Goodman

9 months ago • 1,428 views

*Originally posted April 7, 2018



14