

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND VIRGINIA

| ROBERT DAVID STEELE, | 17-CV-00601-MHL |
|---|---|
| Plaintiff, | |
| -against- | MEMORANDUM OF LAW TO SUPPORT INTERVENOR APPLICANT'S AMENDED MOTION TO INTERVENE |
| JASON GOODMAN, | |
| Defendant. | |

## MEMORANDUM OF LAW TO SUPPORT INTERVENOR APPLICANT'S AMENDED MOTION TO INTERVENE

1. **NOTICE SHOULD BE TAKEN BY THE CLERK OF THE COURT AND ALL PARTIES** that the interested party known as D. GEORGE SWEIGERT is seeking the LEAVE OF THE COURT TO INTERVENE into this instant lawsuit pursuant to Fed. R. Civ. Proc. Rule 24(a) and Virginia Supreme Court Rule 3:14 (Rule 3:14 provides that "[a] new party may by leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or defense germane to the subject matter of the proceeding.").

2. The interested party (intervenor-applicant) D. George Sweigert purposes to intervene as a **PLAINTIFF**. As sworn below, Sweigert has an interest identical to the Plaintiff (Robert David Steele) in these proceedings and maintains an interest in their outcome.

3. As no discovery has taken place and these proceedings are in the pleading stages, this **MOTION** appears timely and does not present a prejudicial burden to any party.

## PRELIMINARY STATEMENT

1. At the outset, the undersigned apologies for the length of the following preliminary statement; however, it is required to demonstrate the same nucleus of facts that form a nexus between Defendant Goodman's conduct, the undersigned and this Court.

2. *Background.* As a leading *alt-right* media star and <u>all-purpose public figure</u>, Defendant (herein Def) operates CrowdSource The Truth (CSTT) on several social media platforms. CSTT claims to be a news service, but operates akin to a methodology used in nation state cyber conflict known as "Information Operations [Info Ops]". The Def's proficiency at sowing deceptive falsehoods, mixed with a few grains of truth, into CSTT *news* podcasts accomplishes the Info Ops objectives of disempowerment, disruption, degrading and de-personage of a target (like the undersigned). Innocent parties (collateral damage) become CSTT on-line punching bags to increase Def's personal profits while he recklessly deflects blame, ownership and responsibility of his acts onto these innocents (see Port of Charleston dirty bomb hoax supervised by the Def on June 14, 2017 via CSTT podcasts).

3. Purportedly over 1,111 dubious paying "patrons" (*Patreon.Com*) transmit via the global payment system between $10K and $15K monthly to fund the Def and CSTT *investigation podcasts* – which can be categorically characterized as false, distortions of reality, deceptive and often resembling screaming "fire" in a crowded theater (Port dirty bomb hoax). In these pay-for-view podcasts deceptive and defamatory statements are made continuously by the Def in his private social media war against CSTT enemies. This includes Def's perverted insinuations the that undersigned is (1) protecting pedophiles, (2) practicing ritualistic satanic torture, (3) stalking CSTT reporters with death squads, (4) was a planner of the Port hoax and (5) is a drug smuggler. Def insists that all of these slurs are based on the *evidence* that *resulted* from CSTT

*investigations*. This explains why it is, and was, so damaging and dangerous, when Def defames and incites on-line calls to violence and intimidation and CSTT targets (like the undersigned).

## ARGUMENT

4. *General Background.* The undersigned (Sweigert) has moved in a timely manner considering this instant litigation is still presently in the pleading stages. There has been no discovery. The undersigned has also demonstrated Article III standing injuries caused by Defendant (Def). The intervenor-applicant (undersigned) has demonstrated that he as independent Article III injury standing. Additionally, as this matter involved the intimidation of a witness to this litigation the Court may also rely on its inherent powers.

5. *Intervenor Applicant Article III injuries.* In context of only the Port of Charleston dirty bomb incident (hoax of June 14, 2017) debate, the undersigned is at most a limited public figure and more probably a private citizen that was involuntarily drug into this ugly situation and is acting in self-defense against the Def. Even if this Court finds the undersigned as a limited public figure, the Def's speech would have to be necessarily limited to the scope of that public controversy (Port hoax incident). *Gertz v. Welch, Inc.* 418 U.S. 323, 345. The Def would be prohibited from the broadcast of extraneous attacks and unfounded accusations of criminal conduct (implied defamation and slander per se). A person acts with <u>malice</u> if the publication was made with knowledge that the statement was false or with reckless disregard for its truth. *Gertz v. Welch, Inc.,* 418 U.S. 323. This demonstrates injury and Article III standing of the undersigned by meeting the "plausibility test" created by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6. Plaintiff has met the injuries-in-fact requirement as to the constitutional component of Article III of the U.S. Constitution as discussed in the MOTION. *Warth v. Seldin*, 422 U.S. 490,

498 (1975); see also *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). At a constitutional minimum, standing only requires a plaintiff to show that he has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. V. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Plaintiff's (1) "injuries-in-fact", are (2) "fairly traceable" to the actions of the Defendant, and (3) these injuries are likely to be "redressed by a favorable decision" of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) at 560-61.

7. As relevant here, an injury-in-fact is one which stems from a "legally protected interest" and is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61. To satisfy the injury-in-fact requirement, the harm must be an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." [emphasis added] *Lujan*, 504 U.S. at 560-61.

8. "The hallmark of property, the Court emphasized, is an individual entitlement grounded in state law," [emphasis added] *Logan v. Zimmerman Brush Co.*, 455 US 422, 430 (1982). It is instructive to note the wisdom of *Milens of California v. Richmond Redevelopment Agency*, 665 F2d 906, 909 (9th Cir 1982) ("We look to local state law to determine what property rights exist and who is entitled to recovery for a taking"). [emphasis added].

9. In this context, the undersigned's right to access the federal courts without fear of retaliation and intimidation has been grossly violated by the Def. This Def's conduct of intimidation, humiliation, accusations of crimes, trade libel, slander, impleaded defamation, etc. directly parallels the allegations of the original plaintiff (Robert David Steele [RDS]).

10. *Injury-in-fact example No. 1.* As alleged in the MOTION, the Def used the CSTT enterprise to tarnish the Plaintiff with public disgrace, ill fame and public opprobrium, when the undersigned became a witness in federal litigation. These CSTT smear campaigns (attempts at corrupted persuasion) were conducted in violation of 42 U.S.C. § 1985(2) clause one (i), which allows a civil remedy under § 1985(3) clause three (iii). The direct attack on the property interests of the Plaintiff is an invasion of an individual right and is an actionable federal tort. *Haddle v. Garrison*, 525 U.S. 121.

11. The Def and his sidekicks <u>targeted</u> the undersigned for public disgrace, ill fame and public opprobrium to create economic injury to the undersigned by severely damaging his public reputation as a critical infrastructure protection (CIP) consultant. These allegations against the Def are nearly identical to the foundational allegations presented by the Plaintiff (RDS).

12. The undersigned's injuries (invasion of state protected property rights) were the direct and proximate cause of the CSTT continuous open-ended deceptive smear campaign over the interstate wires.

13. The character of such direct injuries sustained by undersigned remain consistent with an act that is analogous to an "ac[t] of a tortious character," see 4 Restatement (Second) of Torts § 876, Comment b, meaning an act that is independently wrongful under RICO. *Beck v. Prupis* (98-1480) 529 U.S. 494 (2000).

14. *Injury-in-fact example No. 2.* An example of the literally hundreds of predicate unlawful acts perpetrated on the intervenor-applicant (undersigned) by the Def can be found in the video production "The Trolls of Mt. Shasta" (Internet URL: https://www.youtube.com/watch?v=qyg9YejHy0k) (May 5, 2018). This video includes the Defendant and three (3) CSTT fake news sidekicks.

15. Def speaks, "[w]e are going to start to **assemble the evidence that we have. Evidence that is going to link Dave and George and <u>Robert David Steele</u> and Manual Chavez** " (time mark @**10:32**, Jason Goodman). At time @**14:11** Defendant states, "But the point is Dave, you behavior is unacceptable and I do believe it has risen to the **level of criminality**. Making false statements to the authorities, and sending reports to senators, and all the things that you are doing. **And publishing a book, filled with these false statements**." Defendant has no such evidence in his possession and his statements to the contrary are deceitful and based in fraud.

16. The published "book" referred to by Defendant above is the Plaintiff's technical report entitled "Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability", April 14, 2018, ISBN-10: 9781717056795, Amazon.Com. Dozens of copies of this published work were sent to U.S. Coast Guard authorities, subcommittees of Congress, South Carolina –based federal law enforcement authorities, etc.

17. It was observed in *People v. Fort,* 138 Mich. App. 322 (Mich. Ct. App. 1984) that the elements of extortion are: Communication; Threatening accusation of any crime or offense or any injury to the person or property; With intent to extort money or <u>pecuniary advantage</u> as to compel the person so threatened to do or refrain from doing an act against his/her will. [emphasis added].

18. The "Trolls of Mount Shasta" video is just one example of corrupt persuasion designed to intimidate the undersigned in violation of 42 U.S.C. § 1985(2). Here the injury is damage to a professional reputation by the widely disseminated deceptive claim that "evidence" was in the possession of the Def to justify the CSTT false statements and smear campaigns, as no such evidence exists. This is the very definition of fake news cited by the FTC in *FTC v. Clickbooth.com, LLC et al* and *FTC v. World Patent Marketing.*

19. The Def's claim to have so-called "evidence" (fraudulent deception) was also used for the initiation of baseless and groundless investigations with the N.Y.P.D. and/or F.B.I., exactly like conduct in *FTC v. World Patent Marketing*. Further, Def Goodman personally contacted ambulance services in the undersigned's home community to report that the F.B.I. was seeking the undersigned (note: Sweigert is a California licensed Emergency Medical Technician). Def could foresee the future economic harm that would be visited upon the undersigned and future employment opportunities for the "reporting" of such deceitful and derogatory information to small hometown potential employers. See *Brandt v. Board of Cooperative Education Services*, 820 F.2d 41, 44 (2d Cir. 1987). These types of malevolent deceptive schemes, engineered by the Def for his profit via the CSTT fake news cartel, engineered to deprive the undersigned of his property rights, have consistently relied upon the use of the interstate wires and are in violation of 42 USC § 1985(2).

20. The undersigned has pled in the MOTION that the Def deprived him of his property interests in good business relations, a good reputation and career potential etc. using deception and deceit.

21. "While property interests are constitutionally protected, they are not generally constitutionally established; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, only where a plaintiff can demonstrate that state law confers "a legitimate claim of entitlement" to a particular position will a property interest in that position arise." [emphasis added] See *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005).

**22.** The identical legal rights conferred upon the Plaintiff (RDS) also protect the undersigned. The issues articulated by the undersigned are identical to the issues alleged by the Plaintiff (RDS).

*23. Defendant's incitement of violence against undersigned.* The Def has broadcast *investigation results* to accuse the undersigned of murdering hitchhikers as part of witchcraft practices, protecting pedophiles, coordinating satanic ritualistic abuse on victims, etc. These deceptive and vile accusations were passed off as the *results of investigative research* for the purpose of inciting a digital lynch mob to harm the undersigned. Defaming and inciting violence against the undersigned was not done in the public's interest. In fact, none of Def's infringing content has been removed (nearly 14 months later and counting), and remains available to the public worldwide. "[I]ncitement creates a risk that third parties will inflict violence on the victim, whereas threats engender fear and intimidation that usually reach the victim directly." *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013). [emphasis added] "It rarely has been suggested that the constitution freedom for speech … extends immunity to speech or writing used as an integral part of conduct in violation of a valid … statute." *United States v. Rowlee II*, 899 F.2d 1275, 1278 (2d Cir. 1990).

24. *Defendant is a Public Figure while Undersigned is not.* In *New York Times Co. v. Sullivan,* the Supreme Court defined rules of defamatory publication that apply not only to public officials but to any public figure (like the Def). *Gertz v. Welch, Inc.* 418 U.S. 323, 342. Def is clearly a public figure who has inserted himself into major national political controversies with his *right-wing* sidekicks like Jerome Corsi, Larry Klayman and Laura Loomer (all of whom are monitored and watched by the Southern Poverty Law Center (S.P.L.C.) for hate speech). Mr. Klayman, esq. represents both Loomer and Corsi in outlandish lawsuits (*Loomer vs. Twitter.Com*

8

and *Corsi vs. Robert S. Mueller, III, Office of the Special Counsel*) which are extensively promoted by the Def with a constant stream of anti-government chatter to *echo chamber* these *lawsuits* with presumed *evidence*.

25. The undersigned arguably is not such a public figure. The undersigned had only used a stage name ("Dave Acton") to create educational videos on a YouTube channel that catered to disaster preparedness and medical first-aid as a licensed Emergency Medical Technician. The undersigned became a tangential unwitting participant in the acrimonious feud between Def and his former room-mate and sidekick George Webb Sweigert (undersigned's brother). Plaintiff was dragged (some say drug) into this controversy and is only defending himself against the Def who drew first blood.

26. In context of only the Port dirty bomb incident (hoax) debate, the undersigned is at most a limited public figure and more probably a private citizen that was involuntarily drug into this ugly situation and is acting in self-defense against the Def. Even if this Court finds the undersigned as a limited public figure, the Def's speech would have to be necessarily limited to the scope of that public controversy (Port hoax incident). *Gertz v. Welch, Inc.* 418 U.S. 323, 345. The Def would be prohibited from the broadcast of extraneous attacks and unfounded accusations of criminal conduct (implied defamation and slander per se). A person acts with <u>malice</u> if the publication was made with knowledge that the statement was false or with reckless disregard for its truth. *Gertz v. Welch, Inc.*, 418 U.S. 323. This demonstrates injury and Article III standing of the undersigned by meeting the "plausibility test" created by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## LEGAL ARGUMENT

27. *Def's intimidation of Undersigned for his status as a witness to this lawsuit.* Between May – June 2017 Plaintiff seven (7) declarations in this instant lawsuit. In open defiance of 42 U.S.C. §§ 1985(2) clause one the Def calculated to economically injure, intimidate, coerce and humiliate the undersigned to dampen, obstruct and/or retaliate against the undersigned for the submission of documents to this Court. The bright line threshold of § 1985(2) (clause one) was crossed by the Defendant's continuing malevolent acts which allows for a private remedy under Section 1985(3)(clause iii).

28. These malevolent smear campaigns invade undersigned's liberty interest in a good reputation and future employment, and thus created an actionable federal offense. "Such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." [emphasis added] Footnote 75, *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir.)

29. In *Farese v. Scherer* [342 F.3d 1223, 1229 (11th Cir. 2003)], the court noted that § 1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits. The statute proscribes "conspiracies that interfere with * * * the administration of justice in federal courts".

30. A *per se* violation of § 1985(2) (clause one/i) ("Obstructing Justice; Intimidating Party, Witness, or Juror") exists when two or more persons (the Def and his numerous sidekicks) conspire to deter, by force, intimidation, or threat any party or witness in any court of the United States from attending to the matters of the court.

31.     Section 1985(3)(clause iii) provides a remedy for damages to anyone "injured in his person or property" or deprived of a federal right or privilege as a result of a conspiracy proscribed by Section 1985(2) (clause i).

32.     In *Haddle v. Garrison*, 525 U.S. 121, the Supreme Court held that tort injuries (similar to the undersigned's described in the foregoing) are cognizable under § 1985(3)(clause iii). See to "injure [petitioner] in his person or property". Further, "[t]he statute provides that if one or more persons engaged in such a conspiracy 'do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property', . . . the party so injured ... may have an action for the recovery of damages occasioned by such injury ... against any one or more of the conspirators. § 1985(3)." See footnote no. 2: "Section 1985(3) contains the remedial provision granting a cause of action for damages to those harmed by any of the conspiracies prohibited in §1985. See *Kush v. Rutledge*, 460 U. S. at 724-725 (listing the various conspiracies that §1985 prohibits).

33.     It is instructive to note the U.S. Department of Justice Amicus Brief (1998), submitted to the *Haddle v. Garrison* court, which summarizes the property issues under consideration by the Court, "[t]he statute provides a remedy in <u>damages to anyone who is injured in his person or property</u> or deprived of a federal right or privilege as a result of an act in <u>furtherance of a conspiracy prohibited under any part of Section 1985</u>, including clause one of Section 1985(2) emphasis added] [Internet URL: https://www.justice.gov/osg/brief/haddle-v-garrison-amicus-merits ]. To summarize, § 1985(3) class-based animus limitations cannot be used to narrow the scope of a § 1985(2) (clause one) claim.

34.     "*Held:* No allegations of racial or class-based invidiously discriminatory animus are required to establish a cause of action under the first part of § 1985(2). The statutory provisions

11

now codified at § 1985 were originally enacted as § 2 of the Civil Rights Act of 1871, and the substantive meaning of the 1871 Act has not been changed.

35. "The provisions relating to institutions and processes of the Federal Government (including the first part (clause one) of § 1985(2)) ... contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws. Thus, the reasoning of *Griffin* is not applicable here, and, given the structure of § 2 of the 1871 Act, it is clear." *Kush v. Rutledge*, 460 U.S. 719 (1983).

36. *The Def is not prejudiced by this action.* The Def would not be prejudiced by allowing the undersigned to intervene in this action. There has been no (1) undue delay in filing the motion to intervene, (2) the adverse party has been noticed, (3) the undersigned is acting in good faith without a dilatory motive, (4) it is not a failure to cure deficiencies of previous pleadings, (5) there is no undue prejudice to the Def, and (6) the proposed intervention is not futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

## REQUEST FOR RELIEF

37. As the foregoing indicates, the time is ripe for this Court to curtail Def's out-of-control retaliation and vindictive attacks on the undersigned.

## CONCLUSION

38. Plaintiff's pleading burden has not only met, but, has exceeded the pleadings threshold, particularly as no discovery has occurred, and he has established standing. Thereby, it would be premature to dismiss any causes of this motion.

I hereby certify that the foregoing information and attached exhibits are truthful and correct under penalties of perjury.

Signed:                                                                   Respectfully submitted,

                                                                            D. George Sweigert, *pro se*

                                                                            3/27/19