# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND VIRGINIA

| | |
|---|---|
| ROBERT DAVID STEELE,<br><br>                Plaintiff,<br><br>    -against-<br><br>JASON GOODMAN,<br><br>                Defendant. | **17-CV-00601-MHL**<br><br>**MEMORANDUM OF LAW TO SUPPORT INTERVENOR APPLICANT'S AMENDED MOTION TO INTERVENE** |

## <u>MEMORANDUM OF LAW TO SUPPORT INTERVENOR APPLICANT'S AMENDED MOTION TO INTERVENE</u>

D. GEORGE SWEIGERT is seeking the LEAVE OF THE COURT TO INTERVENE into this instant lawsuit as a PLAINTIFF pursuant to (1) Fed. R. Civ. Proc. Rule 24(a), (2) Virginia Supreme Court Rule 3:14 and (3) the Memorandum and Opinion and ORDERs of this Court (ECF.nos. 85, 86 and 90 respectively).

Pursuant to Local Rule 83.1(M) I swear that no attorney assisted in the preparation of the attached materials.

Respectfully submitted,

*Pro Se Party* D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85211
Spoliation-notice@mailbox.org

4/9/19

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................................3

PRELIMINARY STATEMENT........................................................................................................6

ARGUMENT .....................................................................................................................................9

REQUEST FOR RELIEF ...............................................................................................................25

CONCLUSION................................................................................................................................25

## TABLE OF AUTHORITIES

*Cases*

*Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa, 923 A.2d 389, 395 (Pa.2007)* .................. *19*

*Angela Horne v. WTVR, LLC, 17-1483 (4th Cir. 2018)* ................................................... *17, 20, 21*

*Arctic Company, Ltd. V. Loudoun Times Mirror, 624 F.2d 518, 522 (4th Cir. 1980)* ................. *19*

*Beck v. Prupis (98-1480) 529 U.S. 494 (2000)* .......................................................................... *11*

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)* ............................................................... *21*

*Brandt v. Board of Cooperative Education Services, 820 F.2d 41, 44 (2d Cir. 1987)* ................ *23*

*Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 179-180 (2d Cir. 2000)* ..................... *6*

*Curtis Publ'g Co. v. Butts, 388 U.S. 130, 134 (1967)* ............................................................... *20*

*Eramo v. Rolling Stone LLC et al, VA Cir. No. 3:15-cv-00023, United States District Court, N.D. Virginia, Charlottesville Division* ............................................................................................... *6*

*Farese v. Scherer [342 F.3d 1223, 1229 (11th Cir. 2003)]* ........................................................ *13*

*Foretich v. capital Cities/ABC, Inc., 37 F.3d 1541, 1552 (4th Cir. !994)* .................................. *20*

*FTC v. Clickbooth.com, LLC et al, 12-cv-9087, U.S.D.C. Northern Dist. Of Illinois, Eastern Division* ..................................................................................................................................... *22*

*Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974)* .............................................................. *19*

*Gertz v. Welch, Inc. 418 U.S. 323, 342* ...................................................................................... *22*

*Gertz v. Welch, Inc. 418 U.S. 323, 345* ...................................................................................... *19*

*Gertz v. Welch, Inc., 418 U.S. 323* ............................................................................................. *21*

*Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 685 (1989)* .................................. *21*

*Jenoff v. Hearst Corp, 644 F.2d 1004, 1006 (4th Cir. 1981)* ....................................................... *17*

*Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005)* ..................................................................... 21

*Kush v. Rutledge , 460 U. S. at 724-725* .................................................................................... 14

*Kush v. Rutledge, 460 U.S. 719 (1983)* ...................................................................................... 16

*Logan v. Zimmerman Brush Co., 455 US 422, 430 (1982)* ......................................................... 15

*Lujan, 504 U.S. at 560-61* ............................................................................................................ 9

*Milens of California v. Richmond Redevelopment Agency, 665 F2d 906, 909 (9th Cir 1982)* ..... 15

*Pender v. Bank of Am. Corp., 788 F.3d 354 (4th Cir. 2015)* ........................................................ 8

*People v. Fort, 138 Mich. App. 322 (Mich. Ct. App. 1984)* ......................................................... 12

*Valley Forge Christian Coll. V. Ams. United for Separation of Church and State, Inc., 454 U.S.*

    *464, 472 (1982)* ..................................................................................................................... 9

*Velez v. Levy, 401 F.3d 75 (2d Cir. 2005)* ................................................................................. 16

*Warth v. Seldin, 422 U.S. 490, 498 (1975)* ................................................................................. 9

*Yeagle v. Collegiate Times, 497 S.E.2d 136, 138 n.2 (Va.1998) (citing Fleming, 275 S.E.2d at*

    *635)* ......................................................................................................................................... 21

## Statutes

*42 U.S.C. § 1985(2)* .............................................................................................................. 13, 14

*42 U.S.C. §§ 1985(2)* .................................................................................................................. 13

*42 USC § 1985(2)* ....................................................................................................................... 23

*Article III (U.S.C.A. Const. Art. 3, § 2, cl. 1.) test of the U.S. Constitution* .................................. 8

*Civil Rights Act of 1871* ............................................................................................................. 16

*Virginia Code Ann. § 18.2-152.7* ........................................................................................... 10, 15

*Virginia Code Ann. § 8.01-45* ................................................................................................ 10, 15

*Virginia Code Ann. §§ 18.2-499 and 18.2-500* ........................................................................ *10, 15*

*Rules*

*Fed. R. Civ. Proc. Rule 24* ............................................................................................................ *8*

*Rule 24 (1)(A)* ............................................................................................................................. *8*

*Treatises*

*4 Restatement (Second) of Torts § 876* ....................................................................................... *11*

*Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability", April 14, 2018,*

  *ISBN-10: 9781717056795* ...................................................................................................... *12*

*U.S. Department of Justice Amicus Brief (1998)* ........................................................................ *14*

## PRELIMINARY STATEMENT

1.    *Summary.*    Simply stated (and as publicly broadcast), the Defendant (Def) believes

the federal courts are a joke, lawsuits are fake, that this lawsuit is "fraudulent" (see "fake

lawsuits" comments), that he should not be "bothered" with such nonsense, etc.  Rather than

argue his position in a federal court, the Def prefers to use his industrial-grade digital

assassination network (CrowdSource The Truth [CSTT]) to destroy any individual that questions

the Def's superiority to the unwashed masses like the undersigned.

2.    As the Court will learn, the Defendant (Def) and his confederation of CSTT side-kicks

are fond of deceiving the public with fake bona fides (e.g. "Cambridge educated forensic

economist") for the purposes of inciting hatred, disgrace, ill fame and public opprobrium against

innocents (like the undersigned and the Plaintiff [Robert David Steele, aka **RDS**]).  Def and his

CSTT side-kicks are purportedly *investigative journalists, experts, authors* and *forensic

economists* – they are not.  The Def and his side-kicks claim they have high-level government

"insider sources" and provide news that the "corrupt" mainstream press will not.  Make no

mistake, Def claims CSTT is a news source, an alternative to the mainstream news media.  The

CSTT confederation is an echo chamber, repeating each other's slanderous and libelous social

media claims to create the appearance of consensus-based vetting and fact discovery ("echo

chamber") to defraud the public and destroy reputations for profit.  The Def thru his CSTT social

media empires calls this process a "**fact checking truth engine**".

3.    Although the Def claims to operate CSTT as a news service (as an alternative to the

corrupt mass media), CSTT operates akin to a methodology used in nation state cyber conflict

known as "Information Operations [Info Ops]" – a type of war propaganda.  Def and his side-

kicks are nothing more than sincere sounding, dangerous liars that create real world

consequences from their fabrications.  Such consequences include the closure of the nation's

eighth largest seaport (Port of Charleston, S.C.) with a dirty bomb hoax on June 14, 2017.

4.      The Def has intentionally, willfully and with actual malice used his CSTT side-kicks to

distribute, in a widely pervasive manner, heinous statements (labeled as *research* and

*investigations*) about the undersigned to irreparably harm his reputation for the rest of his life,

which has damaged the undersigned personally and professionally, and which was designed by

the Def to deter third parties from associating or dealing with the undersigned.

5.      These false statements are not privileged, and were distributed with actual malice upon

the loyal and trusting CSTT audience for the purposes of poisoning Google and meta-data search

engines with toxic references to the undersigned's name and occupation, resulting in both actual

monetary damages ("the loss of something having economic or pecuniary value") and an injury

that "impugns the basic integrity or creditworthiness of a business." *Celle v. Filipino Reporter*

*Enterprises Inc.,* 209 F.3d 163, 179-180 (2d Cir. 2000).

6.      No First Amendment immunity exists for this misconduct and a jury can award damages.

See generally *Eramo v. Rolling Stone LLC et al,* VA Cir. No. 3:15-cv-00023 U.S. (jury found

defendants guilty of defamation with actual malice and awarded $3 million.).

7.      The Def's proficiency at sowing deceptive falsehoods, mixed with a few grains of truth,

into CSTT sham *news* podcasts accomplishes the Info Ops war propaganda objectives of

disempowerment, disruption, degrading and de-personage of a target (like the undersigned).

Innocent parties (collateral damage) become CSTT on-line punching bags to increase Def's

personal profits while he recklessly deflects blame, ownership and responsibility of his acts onto

these innocents (see Port of Charleston dirty bomb hoax supervised by the Def on June 14, 2017 via CSTT podcasts).

8.      Purportedly over 1,111 dubious paying "patrons" (*Patreon.Com*) transmit via the global payment system between $10K and $15K monthly to fund the Def and CSTT *investigation reports* – which can be categorically characterized as false, distortions of reality, deceptive and often resembling screaming "fire" in a crowded theater (Port dirty bomb hoax).  In these pay-for-view podcasts deceptive and defamatory statements are made continuously by the Def in his private social media war against CSTT enemies.

9.      This includes Def's perverted insinuations the that undersigned (1) aided and abetted the murder of Capt. Gerald DeConto, USN, (2) practices ritualistic satanic torture, (3) aided and abetted the murder of first nation prostitutes n Vancouver, British Columbia in the infamous Pinkton Pig Farm murders (1996 to 2004), is stalking CSTT *reporters* with death squads (see Michael Barden of Avondale, Arizona), (4) was a planner of the Port dirty bomb hoax and (5) is, or was, a drug smuggler for the C.I.A. in Latin America, etc.  Each week finds a new set of fantastical allegations on CSTT podcasts; to include the undersigned hacking into military war game simulations to enable the death of 3,000 Americans on 9/11 at the World Trade Center (WTC), breaking the encryption of Motorola public service radios so that New York City fire fighters would die in the WTC South Tower, etc., etc.  Def insists that these slurs are based on the *evidence* that *resulted* from CSTT *investigations*.  This explains why it is, and was, so damaging and dangerous, when Def defames and incites on-line calls to violence and intimidation and CSTT targets (like the undersigned).

10.     In sum, the Def and his CSTT side-kicks distribute sham *investigations* via social media that are frivolous, unreasonable and are completely without foundation.  The CSTT network

(supervised by the Def) males use of "experts" with fake bona fides and fraudulent backgrounds. These sham investigations have caused the undersigned to expend hundreds – if not thousands – of hours in administrative, investigative and judicial activities to halt, or at least slow down, the wide distribution of the heinous lies of the Def and his CSTT side-kicks.  CSTT is a social media network designed to incite violence against targets and not much more.

## ARGUMENT

*11.*     *Establishing Standing.*   The undersigned (Sweigert) has demonstrated standing in the AMENDED MOTION (that accompanies this instant pleading) via (1) statutory standing (42 U.S.C. § 1985) and (2) Article III (U.S.C.A. Const. Art. 3, § 2, cl. 1) injuries caused by Def that has created an independent Article III injury.  Additionally, as this matter involved the intimidation of a witness to this litigation the Court may also rely on its inherent powers to discipline the reckless behavior of the Def.  Various state laws of the Commonwealth of Virginia also provide standing.

*12.*     To establish status as an intervenor in this Circuit, the undersigned must meet the criteria articulated in (1) Fed. R. Civ. Proc. Rule 24 and (2) Article III of the U.S. Constitution.  In *Pender v. Bank of Am. Corp.*, 788 F.3d 354 (4th Cir. 2015), the *Pender* court reasoned that a (1) statutory right and (2) Article III standing may be required to establish the right of intervenor. The undersigned has met both of these tests.

*13.*     Per Rule 24 (1)(A) and *Pender*, the Court will learn that the intervenor-applicant claims statutory standing pursuant to the conspiracy and retaliation provisions of 42 U.S.C. § 1985 (Anti-Ku Klux Klan [KKK] Act) and various state laws.

*14.*     It is also instructive to note that the U.S. Supreme Court has determined that if the relief requested from the intervenor-plaintiff is different from the original plaintiff, then Article III

standing may be required. *Laroe Estates, Inc. v. Town of Chester,* (2017) No. 16-605 Argued:

April 17, 2017 see also No. 15-1086 (2d Cir. Jul. 06, 2016). The undersigned has requested

relief almost identical to the Plaintiff and has met this burden. *Warth v. Seldin*, 422 U.S. 490,

498 (1975); see also *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983).

15.     The three requirements for Article III standing are an injury in fact, causation, and

redressability. The intevenor-applicant's (1) "injuries-in-fact", are (2) "fairly traceable" to the

actions of the Defendant, and (3) these injuries are likely to be "redressed by a favorable

decision" of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) at 560-61.

16.     Presented herein will be a discussion of the (1) concrete and particularized invasion of the

undersigned's legally protected rights, (2) the traceable causation of this invasion to the Def and

his CSTT side-kicks, and (3) the redressability and remedies afforded by this court.

17.     At a constitutional minimum, standing only requires a plaintiff to show that he has

"suffered some actual or threatened injury as a result of the putatively illegal conduct of the

defendant, and that the injury can be traced to the challenged action and is likely to be redressed

by a favorable decision." *Valley Forge Christian Coll. V. Ams. United for Separation of Church

and State, Inc.,* 454 U.S. 464, 472 (1982).

18.     As relevant here, an injury-in-fact is one which stems from a "legally protected interest"

and is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560-61. To satisfy the injury-in-fact requirement, the harm

must be an "invasion of a legally protected interest which is (a) concrete and particularized and

(b) actual or imminent, not conjectural or hypothetical." [emphasis added] *Lujan*, 504 U.S. at

560-61.

19.	The accompanying AMENDED MOTION has articulated several Commonwealth of Virginia laws that provide the undersigned with legally protected interests; such as protection from insulting words like "clown" (in violation of Virginia Code Ann. § 8.01-45), business conspiracy (in violation of Virginia Code Ann. §§ 18.2-499 and 18.2-500), common law conspiracy, intentional infliction of emotional distress, personal trespass by computer (in violation of Virginia Code Ann. § 18.2-152.7) and computer harassment (in violation of Virginia Code Ann. § 18.2-152.7:1) [herein damages to the undersigned].

20.	*Injury-in-fact example No. 1.*  As alleged in the accompanying AMENDED MOTION, the Def used the CSTT enterprise to denigrate the intervenor-applicant with public disgrace, ill fame and public opprobrium, when the undersigned became a witness in this federal litigation (via declarations filed between May and June 2018, ECF Nos: 51, 54, 55, 56, 58, 59 & 60 [incorporated as if fully restated herein]).  The non-stop and open-ended continuous CSTT smear campaign (corrupted persuasion) was and is presently conducted in violation of 42 U.S.C. § 1985(2) clause one (i), which allows a civil remedy under § 1985(3) clause three (iii).  The direct attack on the property interests of the intervenor-applicant is an invasion of an individual right and is an actionable federal tort.  *Haddle v. Garrison*, 525 U.S. 121.

21.	In *Haddle* the court reasoned that the sort of the harm (injury) alleged by petitioner, essentially third-party interference with at-will employment relationships, stated a claim for relief under 42 U.S.C. § 1985(2) (note: the Anti-KKK Act (42 U.S.C. § 1985(2)) is presented here to understand the Article III injury.  The statutory standing provided by the Anti-KKK Act will provided in the next section).

22.	The *Haddle* court found that even though a person's employment contract was at will, he had a valuable contract right.  The fact that employment at will is not "property" for purposes of

11

the Due Process Clause, does not mean that loss of at-will employment may not "injure

[petitioner] in his person or property" for § 1985(2)'s purposes.  Such harm has long been, and

remains, a compensable injury under tort law, and there is no reason to ignore this tradition with

the petitioner.  To the extent that the terms "injured in his person or property" refer to such tort

principles, there is ample support for the Court's holding.  (see

https://www.lexisnexis.com/lawschool/resources/p/casebrief-haddle-v-garrison-525-u-s-121-

1998.aspx ).

23.     The Def and his sidekicks <u>targeted</u> the undersigned for public disgrace, ill fame and

public opprobrium with actual malice to create economic injury to the undersigned by severely

damaging his public reputation as a Critical Infrastructure Protection (CIP) consultant

(undersigned is Certified Homeland Protection Associate- III issued by the Homeland Protection

Professional Certification Board), defense contractor, technical author and holder of a U.S.

Government security clearance and his reputation as a Certified Ethical Hacker for the

undersigned's participation in the federal judicial process.

24.     The undersigned's injuries (invasion of state protected property rights) were the direct

and proximate cause of the CSTT continuous open-ended deceptive smear campaign over the

interstate wires.

25.     The character of such direct injuries sustained by undersigned remain consistent with an

act that is analogous to an "ac[t] of a tortious character," see 4 Restatement (Second) of Torts §

876, Comment b, meaning an act that is independently wrongful under RICO.  *Beck v. Prupis*

(98-1480) 529 U.S. 494 (2000).

26.     *Injury-in-fact example No. 2.*  A representative example of the actual malice that

motivated literally hundreds of vicious attack video podcasts feauturing the intervenor-applicant

as a criminal by the Def can be found in the video production "The Trolls of Mt. Shasta"

(Internet URL: https://www.youtube.com/watch?v=qyg9YejHy0k) (May 5, 2018).  This video

includes the Defendant and three (3) CSTT fake news sidekicks.

27.     Def speaks, "[w]e are going to start to **assemble the evidence that we have.  Evidence**

**that is going to link Dave and George and <u>Robert David Steele</u> and Manual Chavez** " (time

mark **@10:32,** Jason Goodman).  At time **@14:11** Defendant states, "But the point is Dave, you

behavior is unacceptable and I do believe it has risen to the **level of criminality.  Making false**

**statements to the authorities, and sending reports to <u>senators</u>**, and all the things that you are

doing.  **And publishing a book, filled with these false statements**."

28.     The published "book" referred to by Defendant above is the Plaintiff's technical report

entitled "Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability", April

14, 2018, ISBN-10: 9781717056795, Amazon.Com.  Dozens of copies of this published work

were sent by the undersigned to the U.S. Coast Guard, maritime authorities, subcommittees of

Congress, and other federal agencies.

29.     The witness intimidation and retaliation recklessly displayed in the video "Trolls of

Mount Shasta" demonstrates the Def's attempt at corrupt persuasion (to include co-conspirator

Joe Napoli of San Diego, California) designed to intimidate the undersigned in violation of

witness tampering (18 U.S.C. 1512), witness retaliation (18 U.S.C. 1513), and obstruction of

congressional or administrative proceedings (18 U.S.C. 1505).  This stunning intimidation was a

pre-cursor to the filing of the declarations by the undersigned in this Court (May/June, 2018,

ECF Nos: 51, 54, 55, 56, 58, 59 & 60).

30.     It is instructive to note that it was observed in *People v. Fort,* 138 Mich. App. 322 (Mich.

Ct. App. 1984) that the elements of <u>extortion</u> are: Communication; Threatening accusation of

Case 3:17-cv-00601-MHL   Document 94   Filed 04/11/19   Page 15 of 27 PageID# 1481

any crime or offense or any injury to the person or property; With intent to extort money or

pecuniary advantage as to compel the person so threatened to do or refrain from doing an act

against his/her will. [emphasis added]. The stunning intimidation of the undersigned by the Def

to terminate mailings of the Port of Charleston dirty box hoax technical report to federal officials

smacks of extortion (exceeding the undersigned's burden to demonstrate intimidation and

retaliation).

31.     The Def crossed the bright-line of 42 U.S.C. § 1985(2) when he continued the

intimidation and retaliation of the undersigned when the Def became aware of the undersigned's

declarations and continued the smear campaign.

32.     *Def's intimidation of Undersigned for his status as a witness to this lawsuit.*  In open

defiance of 42 U.S.C. §§ 1985(2) clause one the Def calculated to economically injure,

intimidate, coerce and humiliate the undersigned to dampen, obstruct and/or retaliate against the

undersigned for the submission of documents to this Court. The statutory standing provided by §

1985(2) (clause one) was granted by the Def's malevolent acts ("Trolls of Mount Shasta" video),

which allows for a private remedy under Section 1985(3) clause three.

33.     These malevolent smear campaigns invaded and continue to invade the undersigned's

liberty interest in a good reputation and future employment, and thus Def created an actionable

federal offense. "Such property interests are "created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law.""

[emphasis added] Footnote 75, *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir.)

34.     In *Farese v. Scherer* [342 F.3d 1223, 1229 (11th Cir. 2003)], the court noted that §

1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits. The statute

proscribes "conspiracies that interfere with * * * the administration of justice in federal courts".

35.     A *per se* violation of § 1985(2) (clause one/i) ("*Obstructing Justice; Intimidating Party, Witness, or Juror*") exists when two or more persons (the Def and his numerous sidekicks) conspire to deter, by force, intimidation, or threat any party or witness in any court of the United States from attending to the matters of the court.

36.     Section 1985(3)(clause three/iii) provides a remedy for damages to anyone "injured in his person or property" or deprived of a federal right or privilege as a result of a conspiracy proscribed by Section 1985(2) (clause i).

37.     *Invasion of Undersigned's Property Rights by Def.*   The undersigned has pled in the accompanying AMENDED MOTION that the Def deprived him of his property interests in good business relations, a good reputation and career potential etc. using defaming words, trade libel insulting words, slander, deception and deceit.

38.     The *Haddle* Court held that tort injuries (just as the undersigned's described in the accompanying AMENDED MOTION) are cognizable under § 1985(3)(clause three/iii).  See to "injure [petitioner] in his person or property".

39.     Further, "[t]he statute provides that if one or more persons engaged in such a conspiracy 'do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property', . . . the party so injured ... may have an action for the recovery of damages occasioned by such injury ... against any one or more of the conspirators. § 1985(3)."  See footnote no. 2: "Section 1985(3) contains the remedial provision granting a cause of action for damages to those harmed by any of the conspiracies prohibited in §1985. See *Kush* v. *Rutledge* , 460 U. S. at 724-725 (listing the various conspiracies that §1985 prohibits).

40.     It is instructive to note the U.S. Department of Justice Amicus Brief (1998), submitted to the *Haddle* court, which summarizes the property issues under consideration by the Court, "[t]he

statute provides a remedy in <u>damages to anyone who is injured in his person or property</u> or deprived of a federal right or privilege as a result of an act in <u>furtherance of a conspiracy prohibited under any part of Section 1985</u>, including clause one of Section 1985(2) emphasis added] [Internet URL:  <u>https://www.justice.gov/osg/brief/haddle-v-garrison-amicus-merits</u> ].  To summarize, § 1985(3) class-based animus limitations cannot be used to narrow the scope of a § 1985(2) (clause one) claim.

41.   "<u>The hallmark of property</u>, the Court emphasized, is an individual entitlement grounded in state law," [emphasis added]  *Logan v. Zimmerman Brush Co.*, 455 US 422, 430 (1982).  It is instructive to note the wisdom of *Milens of California v. Richmond Redevelopment Agency,* 665 F2d 906, 909 (9th Cir 1982) ("<u>We look to local state law to determine what property rights exist</u> and who is entitled to recovery for a taking"). [emphasis added].

42.   Def Goodman and the proposed defendant co-conspirator David Charles Hawkins of Cloverdale, British Columbia willfully with malicious intent entered into a civil conspiracy for the purposes of generally destroying the personage and professional technical career of the undersigned by using the tactics of defamation *per se*, insulting words like "clown" (in violation of Virginia Code Ann. § 8.01-45), business conspiracy (in violation of Virginia Code Ann. §§ 18.2-499 and 18.2-500), common law conspiracy, intentional infliction of emotional distress, personal trespass by computer (in violation of Virginia Code Ann. § 18.2-152.7) and computer harassment (in violation of Virginia Code Ann. § 18.2-152.7:1) [herein damages to the undersigned].

43.   In this context, the undersigned's right to access the federal courts without fear of retaliation and intimidation (see Anti-KKK Act) has been grossly violated by the Def and his CSTT side-kicks (to include Hawkins and Michael Barden of Avondale, Arizona).  The Def's

misconduct of intimidation, humiliation, accusations of crimes, trade libel, slander, defamation by insinuation, etc. have been directed squarely at a federal witness.  No matter, Def believes this is a "fake lawsuit".

44.     *No requirement for class-based discrimination*.  "*Held:* No allegations of racial or class-based invidiously discriminatory animus are required to establish a cause of action under the first part of § 1985(2). The statutory provisions now codified at § 1985 were originally enacted as § 2 of the Civil Rights Act of 1871, and the substantive meaning of the 1871 Act has not been changed.

45.     "The provisions relating to institutions and processes of the Federal Government (including the first part (clause one) of § 1985(2)) … contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws. Thus, the reasoning of *Griffin* is not applicable here, and, given the structure of § 2 of the 1871 Act, it is clear." *Kush v. Rutledge*, 460 U.S. 719 (1983).

**46.**     "While property interests are constitutionally protected, they are not generally constitutionally established;  rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).   Thus, only where a plaintiff can demonstrate that state law confers "a legitimate claim of entitlement" to a particular position will a property interest in that position arise." [emphasis added]  See *Velez v. Levy,* 401 F.3d 75 (2d Cir. 2005).

**47.**     The identical state-created (Commonwealth) legal rights conferred upon the Plaintiff

(RDS) also protect the undersigned (defamation, trade libel, defamation by insinuation, slander,

etc.).

*48.*     *Defendant's incitement of violence against undersigned.*  The Def has broadcast

*investigation results* to accuse the undersigned of aiding and abetting the murder of Capt. Gerald

DeConto, USN and first nation prostitutes of Vancouver, British as part of witchcraft practices,

protecting pedophiles, coordinating satanic ritualistic abuse on victims, etc.  These deceptive and

vile accusations were passed off as the *results of investigative research* for the purpose of

inciting a digital lynch mob to harm the undersigned.  The CSTT so-called research is David

Hawkins (British Columbia) who passes himself off with fake bona fides and fraudulent

credentials (see "Cambridge educated forensic economist").  Defaming and inciting violence

against the undersigned was not done in the public's interest.  It is instructive to note that

"incitement creates a risk that <u>third parties</u> will inflict violence on the victim, whereas threats

engender fear and intimidation that usually reach the victim directly."  *United States v. Turner*,

720 F.3d 411 (2d Cir. 2013).  [emphasis added]  "It rarely has been suggested that the

constitution freedom for speech … extends immunity to speech or writing used as an integral

part of conduct in violation of a valid … statute."  *United States v. Rowlee II*, 899 F.2d 1275,

1278 (2d Cir. 1990).

**49.**     *Actual Malice of the Def and his CSTT side-kicks.*  Intervenor-applicant is not a public

figure as he is not employed by the government in any capacity and provides no guidance or

influence over government operations.  See *Jenoff v. Hearst Corp*, 644 F.2d 1004, 1006 (4th Cir.

1981) which relied upon *Angela Horne v. WTVR, LLC*, 17-1483 (4th Cir. 2018).

**50.**     The intervenor-applicant has no substantial responsibility (as a private citizen or as in any

other capacity) in ANY of the events in which he is continuously linked to by the Def and his

fake expert David Hawkins; such as the 9/11 World Trade Center attacks, network computer

operations at the University of Chicago, war games and simulations, the construction of the

database for the National Center for Missing and Exploited Children (NCMEC), etc.

**51.**     The Def seems to believe that if the undersigned worked with a company (Entrust

Technologies in 2001) that was a federal defense contractor this creates some type of public

figure status – it does not.  Other perverted supporting rationale pushed by the Def and the fake

David Hawkins to attempt to label the undersigned as a public figure includes other such

irrelevances; such as: the undersigned published a book on ethical hacking.  See *Certified Ethical*

*Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH*

*FOG series) (Volume 1)* Paperback – February 17, 2016.  The descry[ption for this book is

quoted in relevant part:

> This is a technical work that addresses issues related to penetration testing (or pen-
>
> testing). Pen-testing describes a methodology used by ethical hackers to exploit
>
> vulnerabilities in cooperative computer enterprises that have been identified for
>
> vulnerability testing. Also known as "white hat hacking", the processes described herein
>
> are used by security professionals.

**52.**     The U.S. Department of Defense (DoD) recognizes the undersigned's **Certified Ethical**

**Hacker (CEH)** certification for the cyber defense of America's critical infrastructure.  **DoD**

**Directive 8570** requires computer network defenders (CND) to meet certain requirements.  CEH

is one of those CND requirements, required by the DoD.  Using the Def's logic almost CEH

working on a DoD computer system is a suitable target for defamation, slander, trade libel and

the target of malicious deception.  Such a rationale would cause chaos to the critical infrastructure protection of the cyber defenses of the United States.  However, because the undersigned holds the CEH credential and wrote an instruction study manual he is deemed a public figure by the Def and his fake sidekick Hawkins ("Cambridge educated forensic economist").

**53.**     The sway of influence of the undersigned in these hacking stories – and other conspiracy theory scenarios such as the federal PKI [Public Key Infrastructure] bridge  – promoted by the Def and his side-kicks is ZERO.  *Arctic Company, Ltd. V. Loudoun Times Mirror*, 624 F.2d 518, 522 (4th Cir. 1980).

54.     "We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes.  Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life", *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa*, 923 A.2d 389, 395 (Pa.2007) (additional citation omitted), citing, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974).  In contrast, Def and Hawkins ("Cambridge educated forensic economist") are general purpose public figures.

**55.**     Conceivably in context of only the Port of Charleston dirty bomb hoax technical report, the undersigned is at most a limited public figure and more probably a private citizen that was involuntarily drug into this ugly situation and is acting in self-defense against the Def.  Even if this Court finds the undersigned as a limited public figure, the Def's speech would have to be necessarily limited to the scope of that controversy (Port hoax technical report).  *Gertz v. Welch, Inc.* 418 U.S. 323, 345.  The opposite is true, Def feels entitled to the wholesale destruction of

the undersigned's technical reputation in matters so remote to public policy concerns as to be considered inconceivable.

56.    The public has no interest in the ridiculous conspiracy theories distributed in a pervasive manner on social media by the Def and Hawkins.  For over a decade Hawkins has been pushing theories (1) about the death of Jon Benet Ramsey (Boulder, Colorado) which occurred over twenty years ago, (2) the Pinkton Pig farm murders in British Columbia (trial concluded in 2004), (3) the death of Capt. Gerald DeConto, USN attributed to the 9/11 Pentagon attack, (4) the so-called use of the federal PKI bridge as a "murder for hire" network that can be used to hack into the cockpit of a Boeing 737, (5) the allegations that the sister (Kristine Marcy) of fellow conspiracy theorist Field McConnell is a lesbian, (6) that Kristine Marcy allegedly was a charter member of the Senior executive Service in 1979, (7) that Motorola public safety radios used by New York City firefighters on 9/11 had the encryption function hindered or disrupted – when evidence indicated the encryption function was banned by the Fire Department of New York several months prior to 9/11, etc.

57.    It is now the burden of the Def to demonstrate that he is "involved in issues which the public has a justified and important interest", *Curtis Publ'g Co. v. Butts,* 388 U.S. 130, 134 (1967).  The Def must also demonstrate how the undersigned inserted himself into these controversaries. *Foretich v. capital Cities/ABC, Inc.,* 37 F.3d 1541, 1552 (4th Cir. !994).  Both of these cases were relied upon by the court in *Angela Horne v. WTVR, LLC*, 17-1483 (4th Cir. 2018) (see footnote 5).

58.    Leading journalistic norms would normally prohibit the Def from the broadcast of extraneous attacks and unfounded accusations of criminal conduct (implied defamation, trade libel, invasion of privacy and slander per se, etc.).  A person acts with <u>actual malice</u> if the

publication was made with knowledge that the statement was false or with reckless disregard for its truth. *Gertz v. Welch, Inc.,* 418 U.S. 323. See also *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 685 (1989) relied upon by the court in *Angela Horne v. WTVR, LLC*, 17-1483 (4th Cir. 2018).

**59.**    The Def's continuous malicious public attacks demonstrates an <u>actual malice</u> injury and Article III standing of the undersigned by meeting the "plausibility test" created by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court will note that even up to the present time the Def repeats slurs, slander, defamation abd libel about the undersigned which has long been addressed in the Court docket, ECF Nos: 51, 54, 55, 56, 58, 59 & 60 [herein incorporated as if fully restated].

60.    As noted in the Court's memorandum and Opinion [**ECF.no.85.pg.20**] "[i]n Virginia, a plaintiff claiming defamation must allege the "(1) publication (2) of an actionable statement with (3) requisite intent." *Jordan v. Kollman,* 612 S.E.2d 203, 206 (Va. 2005)".  The intervenor-applicant has met this burden in the accompanying AMENDED MOTION.

61.    Particularly relevant here are the statements made by Hawkins/Goodman concerning the professional qualifications of the undersigned (see "ethical hacker" insinuations and statements). To this point this Court has observed "[a] statement is defamatory per se if, among other circumstances not pertinent here, it 'imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of duties' or 'prejudices the party in [his or] her profession or trade.' *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 n.2 (Va.1998) (citing Fleming, 275 S.E.2d at 635)." [**ECF.no.85, pgs.21**].  Examples include:

>    2/27/2019 Jason Goodman channel video: *Does Sweigert's Social Engineering Spin the Bit Spread Spy in the Padlocked Bag with David Hawkins,*

62.    _Defendant is a Public Figure while Undersigned is not_.  In _New York Times Co. v._

_Sullivan,_ the Supreme Court defined rules of defamatory publication that apply not only to public

officials but to any public figure (like the Def).  _Gertz v. Welch, Inc._ 418 U.S. 323, 342.  Def is

clearly a public figure who has inserted himself into major national political controversies with

his _right-wing_ sidekicks like Jerome Corsi, Larry Klayman and Laura Loomer (all of whom are

monitored and watched by the Southern Poverty Law Center (S.P.L.C.) for hate speech).

63.    The undersigned arguably is not such a public figure.  The undersigned had only used a

stage name ("Dave Acton") to create educational videos on a YouTube channel that catered to

disaster preparedness and medical first-aid as a licensed Emergency Medical Technician.  The

undersigned became a tangential unwitting participant in the acrimonious feud between Def and

his former room-mate and sidekick George Webb Sweigert (undersigned's brother).  Plaintiff

was dragged (some say drug) into this controversy and is only defending himself against the

Def who drew first blood.

64.    _Public policy considerations._  The Def's sham CSTT podcasts are the very definition of

fake news as cited by the U.S. Federal Trade Commission (FTC) in _FTC v. Clickbooth.com, LLC_

_et al,_ 12-cv-9087, U.S.D.C. Northern Dist. Of Illinois, Eastern Division (Final Judgement and

ORDER, 11/28/2012 see: https://www.ftc.gov/enforcement/cases-

proceedings/1023158/clickboothcom-llc-et-al ) and _FTC v. World Patent Marketing,_ 1:17-cv-

20848, U.S.D.C. Southern District of Florida (Stipulated Order for Permanent Injunction ,

5/16/2018 see: https://www.ftc.gov/enforcement/cases-proceedings/172-3010/world-patent-

marketing ).

65.    The Def's claim to have so-called "evidence" (fraudulent deception) was also used for

the initiation of baseless and groundless investigations with the N.Y.P.D. and/or F.B.I., exactly

like conduct in *FTC v. World Patent Marketing*.  Further, Def Goodman personally contacted ambulance services in the undersigned's home community to report that the F.B.I. was seeking the undersigned (note: Sweigert is a California licensed Emergency Medical Technician).  Def could foresee the future economic harm that would be visited upon the undersigned and future employment opportunities for the "reporting" of such deceitful and derogatory information to small hometown potential employers.  See *Brandt v. Board of Cooperative Education Services,* 820 F.2d 41, 44 (2d Cir. 1987). These types of malevolent deceptive schemes, engineered by the Def for his profit via the CSTT fake news cartel, engineered to deprive the undersigned of his property rights, have consistently relied upon the use of the interstate wires and are in violation of 42 USC § 1985(2).

66.     *The Def is not prejudiced by this action.*  The Def would not be prejudiced by allowing the undersigned to intervene in this action.  There has been no (1) undue delay in filing the motion to intervene, (2) the adverse party has been noticed, (3) the undersigned is acting in good faith without a dilatory motive, (4) it is not a failure to cure deficiencies of previous pleadings, (5) there is no undue prejudice to the Def, and (6) the proposed intervention is not futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

67.     *On-going Tortious Conduct by Def.*  The Court should consider that the Def's conduct is on-going, open ended and tortious.  Def has used fake experts with fraudulent bona fides (David Hawkins, British Columbia) to amplify a sense of credibility and accuracy.  This is a deception pushed upon the public.  The Def and his sidekicks continue to accuse the undersigned of criminal conduct, unethical activities and other purported activities that would discredit his performance as a CEH for the DoD.

68.     The Def is allegedly causing the intentional infliction of emotional distress with such on-

going tortious conduct (see online podcasts of the CSTT social media empire).  The undersigned

is well within his legal rights to demand that such tortious activity immediately stop.  Otherwise

the Def's tortious online schemes will cause irreparably damage to the intervenor-applicant for

the rest of his life.

## REQUEST FOR RELIEF

69.     As the foregoing indicates, the time is ripe for this Court to curtail Def's out-of-control

retaliation and vindictive attacks on the undersigned.  The AMENDED COMPLAINT that

accompanies this instant pleading address proposed relief.

## CONCLUSION

70.     Plaintiff's pleading burden has not only met, but, has exceeded the pleadings threshold,

particularly as no discovery has occurred, and he has established standing.  Thereby, it would be

premature to dismiss any causes of this motion.

I hereby certify that the foregoing information and attached exhibits are truthful and correct

under penalties of perjury.

Signed:                                                   Respectfully submitted,

                                                          _____/
                                                          D. George Sweigert, *pro se*

D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85211
Spoliation-notice@mailbox.org