**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND VIRGINIA**

ROBERT DAVID STEELE,

               Plaintiff,

    -against-

JASON GOODMAN,

               Defendant.

**17-CV-00601-MHL**

**MOTION REQUESTING LEAVE OF
COURT TO FILE MOTION FOR
INJUNCTIVE RELIEF BY
INTERVENOR-APPLICANT**

**MOTION REQUESTING LEAVE OF COURT TO FILE MOTION FOR INJUNCTIVE
RELIEF BY INTERVENOR-APPLICANT**

      D. GEORGE SWEIGERT is seeking the LEAVE OF THE COURT TO MOTION FOR

INJUNCTIVE RELIEF pursuant to Fed. R. Civ. Proc. Rule 65(d)(c) and Va. Code Ann. § 18.2-

500.

      A MEMORANDUM OF LAW accompanies this MOTION.

      Pursuant to Local Rule 83.1(M) I swear that no attorney assisted in the preparation of the

attached materials.  Dated this 26th day of April, 2019.

Respectfully submitted,

*Pro Se Party* D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85211
Spoliation-notice@mailbox.org

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................2

TABLE OF AUTHORITIES..........................................................................................................3

PROCEDURAL HISTORY ...........................................................................................................5

INTRODUCTION...........................................................................................................................5

BACKGROUND.............................................................................................................................8

SUPPORTING RATIONALE FOR INJUNCTIVE RELIEF ......................................................10

SUMMARY ..................................................................................................................................16

RELIEF REQUESTED .................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

. *Dr. Barry Eppley v. Lucille Iacovelli,* 2010 WL 3282574 (S.D. Ind. Aug. 17, 2010).............. 12

42 Am.Jur.2d, Injunctions § 13 (1969) ............................................................................ 9

*Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) .......... 10

*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, the California Supreme Court

.................................................................................................................. 14, 15

*Bingham v. Strave,* 184 A.D.2d 85, 89-90 (1st De't 1992) ............................................... 8

*Burfoot v. May4thCounts.com* (Va. Cir. Ct. Apr. 22) (Poston, J.)..................................... 9

*Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)............................. 10

*Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ........... 11

*Garrison v. State of Louisiana,* 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)......... 10

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 338, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ............. 11

*Hartzler v. Goshen Churn & Ladder Co.,* 55 Ind.App. 455, 104 N.E. 34, 37 (1914) .................... 9

*Hustler Magazine v. Falwell,* 485 U.S. 46, 51, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) ................ 11

*Hyland v. Raytheon Tech. Servs. Co.,* 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009)...................... 9

*New York Times Co. v. Sullivan,* 376 U.S. at 265, 84 S.Ct. 710..................................... 11

*O'Brien v. Univ. Cmty. Tenants Union,* 327 N.E.2d 753, 755 (Ohio 1975)................................. 13

*Pennington v. Dollar Tree Stores, Inc.,* 28 Fed.Appx. 881*881 482, 488 (6th Cir.2002) ........... 13

*San Antonio Cmty. Hosp. v. S. cal. Dist. Council of Carpenters* .................................... 12

*Shupe v. Rose's Stores,* 213 Va. 374, 375-76, 192 S.E.2d 766, 767 (1972) ................................. 14

*West Willow Realty Corp. v. Taylor,* Appellate Division of the Supreme Court of the State of

New York, Second Department. 10 A.D.2d 1002...................................................... 13

**Statutes**

AMENDMENT I ................................................................................................ 7, 10

**Other Authorities**

U.S. Department of Defense, Directive 8570 ............................................................... 8

**Rules**

Fed. Rule. Civ. Proc. Rule 65(d)(C) .......................................................................... 4

## PROCEDURAL HISTORY

1.      As the Court is aware, the undersigned filed several "DECLARATIONS" between May

and June 2017 in this Court.  (ECF nos: 51, 54, 55, 56, 58, 59 & 60 [incorporated as if fully

restated herein]).  By ORDER (ECF No. 97) all parties to this instant lawsuit are to reply and/or

answer the intervenor-applicant's Second Amended (SA) Motion to Intervene (ECF No. 93).

These documents are herein referenced in their entirety as if fully restated herein.

## INTRODUCTION

1.      This MOTION is sought pursuant to the leave of the Court and Fed. Rule. Civ. Proc. Rule

65(d)(C).

2.      As the accompanying MEMORANDUM OF LAW AND ARGUMENT (MLA) has

clearly demonstrated, David Charles "Sherlock" Hawkins is a community theater actor with a

hobby interest in Sherlock Holmes murder mysteries.  Hawkins has leveraged this interest into

something called "Reverse CSI scripts [crime scene investigation]" to commercialize his novel,

non-vetted investigative theories and unproven and generally unaccepted CSI techniques.

Hawkins began his social media career with a 9/11 conspiracy theorist named Field McConnel

(Plum City, Wisconsin) in approximately 2009.  Hawkins has consistently referred to himself as

a Cambridge (England) educated individual who is a "*forensic economist*".  See the entry

"2009/04/21 · 8:12 pm  Field McConnell and David Hawkins connect 9/11 to the real culprits.

Field McConnell and David Hawkins have traced 9/11 to the PROMIS software that borders on

artificial intelligence and a global revolutionary movement headquartered in Chicago at the law

firm where Michelle Obama worked." (Internet URL:

http://radio.rumormillnews.com/podcast/tag/captainsherlockcom/ )

3.      An entry at the AbelDanger.Org web-site states, "David Hawkins: Bio, January 4, 2010,

David Hawkins, <u>Forensic Economist at Hawks CAFÉ</u>, Vancouver, B.C., Canada Tel: 604 542-

0891, Focus: <u>Forensic Economics</u> for Disaster Analysis and Virtual-Reality Prototyping,

**Academic Record,** First Class Honours Degree in Mechanical Engineering, Cambridge

University, Diploma in Industrial Management, Cambridge University, Foundation Scholarship,

Queens' College, Cambridge University, **Current Projects:**

> Hawks CAFE – David Hawkins launched the 'Citizens Association of Forensic
>
> Economists' in British Columbia in 2003 as an asset tracking network to monitor impact
>
> of government laws and programs on public debt, personal assets and individual rights.
>
> Hawks CAFE brings a scientific discipline to help local experts expose 'off-book' debt,
>
> combat crime and fraud and optimize the use of assets in water, energy, transport, shelter,
>
> defence, food, forestry and fisheries industries."
>
> (Internet URL: https://www.abeldanger.org/source-hawkscafe ) [emphasis added]

4.      In another AbelDanger.org entry (one of thousands that litter the Internet) Hawkins

proclaims, "In 2006, David Hawkins is a world authority on the use of applied mathematics,

thermodynamics and deductive logic to analyze anisotropic (disordered) effects caused by

natural disasters, accidents or violent crime and – in the latter case – <u>identify weapons,</u>

<u>opportunities and motives of perpetrators</u> " (Internet URL:

https://abeldanger.blogspot.com/2010/01/source-hawkscafe.html ).  [emphasis added]

5.      In a federal lawsuit filed **5/1/2007** both McConnel and Hawkins appear as plaintiffs, U.S.

District Court, District of North Dakota (Eastern), CASE #: 3:07-cv-00049-RRE-KKK.

Demand: $8,888,000.  Nature of Suit: 470 Racketeer/Corrupt Organization.  Defendants

included: Global Guardians, George Herbert Walker Bush, William Jefferson Clinton, Albert

Gore, Hillary Rodham Clinton, <u>Kristine Marcy</u>, and over 100 other individuals. Date

Terminated: 02/04/2008. The case was dismissed for failure to prosecute by U.S.D.J. Ralph R.

Erickson.

6.     To learn more about the obsession Hawkins has for <u>Kristine Marcy</u> it is instructive to

note the September 26, 2018 entry on the AbelDanger.org web-site, "David "Sherlock" Hawkins

has reverse engineered the curious case of the stolen Mercedes Benz S280 which was returned in

pristine condition prior to the wrongful death of Princess Diana in Paris on 31 August 1997 but

for the apparent replacement of the on-board chip with Micron Technology Inc's *RFID system in*

*communication with vehicle on-board computer US6112152A* Priority date 1996-12-06 Grant

2000-08-29 which allegedly allowed SWAT team psychopaths rewarded with upgraded

privileges by <u>Kristine 'Con Air' Marcy</u> (sister of Marine Corps whistleblower <u>Field McConnell</u>)

and <u>Nicholas Soames</u> (White's Club-gambling grandson of Winston Churchill and brother of

Serco CEO Rupert Soames)." The entry continues, "Hawkins is investigating Serco's apparent

development of fuzzy logic algorithms in the Lemelson patent to reward <u>Marcy</u> SWAT teams for

spot fixing high-value-target or mass-casualty events on the <u>federal bridge certification authority</u>

<u>PKI network</u> invented at GCHQ in the early 70s, where psychopaths procure children for an

online pedophile ring established by Jimmy Savile and Jeffrey Epstein for Serco's investment

banker N M Rothschild, investment banker for U.S. President Donald Trump and Queen

Elizabeth II." The entry continues, " Hawkins uses storyboards and <u>reverse CSI scripts</u> for

prospective production companies <u>to help injured communities develop wrongful death claims</u>

<u>associated with the negligent, reckless, wilful or fraudulent use of patented devices</u> in the

custody of Serco agents and shareholders including the British and Saudi Arabian

Governments." (Internet URL: https://www.abeldanger.org/sherlock-hawkins-con-air-marcys ).
[emphasis added]  This is only one of thousands of such entries on the Internet.

7.      During the summer of 2018 Hawkins began to transition away from the YouTube
podcasts of Field McConnell ("Abel Danger") and increased his involvement with the
Defendant's (Def's) Crowdsource The Truth (CSTT) social media empire (consisting of 12
(twelve) social media platforms [e.g. YouTube, GAB, Instagram, Facebook, Twitch, Steemit,
etc.]).  Presently Hawkins is featured on two (2) CSTT shows per week (broadcast to tens of
thousands in a worldwide audience).  Since 1/1/2019 the twice weekly shows (approximately six
(6) hours of video content) focus on the undersigned as he is a former employee of EnTrust
Technologies, Ltd (Ottawa, Canada) that provided enabling technology to the federal bridge
certification authorly (FBCA) network (more fully explained in the accompanying
MEMORANDUM OF LAW AND ARGUMENT).

**BACKGROUND**

8.      Mr. Hawkins is an extraterritorial resident of Canada who is NOT a United States and has
no expectation of AMENDMENT I protection pursuant *United States v. Verdugo-Urquidez*, 494
U.S. 259.  Nevertheless, Hawkins has crossed the bright line test for protected free speech
(AMENDMENT I of the U.S. Constitution) by widely distributing (at times ten [10] instances
per week in separate blog posts, Twitter tweets, and YouTube videos announcing 5-6 hours of
weekly video content) slanderous, defamatory and libellous speech which serves only one
purpose: to harm, injure, disrupt, defame and slander the movant-undersigned.  Hawkins has a
long reputation of behaving in an identical manner with the half-sister of Field McConnell –
Kristine Marcy (retired Senior Executive Service federal employee).  Hawkins is now applying

his decade old defamation *per se* death march to slander professional career of the movant-undersigned.

9.      As Mr. Hawkins cannot state that he has solved a crime the last decade with his junk science *"reverse CSI scripts"*, he has acquired a new "Kristine Marcy" equivalent) scape-goat (the movant).  According to post 1/1/2019 video productions (featured by the Def's CSTT) Hawkins states he has not been able to solve these crimes as the movant has destroyed and spoliated crime scene evidence to foil his "reverse CSI scripts" efforts.  Hawkins stands behind his highly questionable *"Cambridge educated forensic economist"* title and merely blames the undersigned for the spoliation of evidence that was likely the key puzzle piece to solve a Hawkins cold case  – while receiving hearty approval from the Def in these CSTT podcasts.  Such behavior is an instantiation of the complete reckless disregard and willful ignorance of the legitimate facts of these "cold cases" by Hawkins (the video sidekick of Def on CSTT podcasts).

10.     Hawkins' seven to ten (7-10) year Abel Danger career is a monument to slanderous, libellous and offensive communications.  The "offensive communication" of Hawkins is "capable of injuring [movant's] standing and reputation in all aspects of [his] personal and professional life, and inflicting serious psychological and emotional damage to movant]" See *Bingham v. Strave,* 184 A.D.2d 85, 89-90 (1st De't 1992).

11.     Since 1/1/2019 Hawkins has launched an open-ended and continuous smear campaign directed at the movant, that directly attacks the unblemished professional credentials and reputation of the undersigned, whose three credentials under consideration (Certified Ethical Hacker, Certified Information Systems Security Professional and Certified Information Systems Auditor **[CEH, CISSP, CISA]**) are all recognized by the U.S. Department of Defense, Directive 8570.  The allegations made by Hawkins as to evidence destruction/spoliation (and worse) by the

9

movant place all these industry credentials in jeopardy for alleged professional misconduct and malpractice.

12.     Hawkins has published over  false statements on his Internet blogs (and via CSTT) since 1/1/2019 that accuse the movant of crimes, aiding and abetting crimes, hacking federal computer networks, professional malfeasance, incompetence, etc.  *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009).  Hawkins statements are communicated in a reckless disregard for the truth and with willful ignorance of basic facts concerning the topics he enjoys lecturing about (e.g. FBCA network, security of networks, security of computer systems, the industry of "ethical hacking", etc.).

## SUPPORTING RATIONALE FOR INJUNCTIVE RELIEF

13.     ***Hawkins overriding purpose is to injure the victim (movant).***  The movant is a private citizen, holds no public office and is not in a position to influence official public agency policy. The movant is seeking a temporary restraining order (TRO) from this Court, directed at an extra territorial resident Hawkins, to preserve the movant's business and property interests.  *Burfoot v. May4thCounts.com* (Va. Cir. Ct. Apr. 22) (Poston, J.)

14.     Hawkins continues to invade the property interests of the movant's professional, technical, trade career and business reputation with unprotected speech that easily meets the defamation *per se* threshold (see accompanying documents [Memo of Law).  Preliminary injunctions are designed to protect the property and rights of parties from any injury until the issues and equities in a case can be determined after a full examination and hearing.   42 Am.Jur.2d, Injunctions § 13 (1969).  It has long been recognized that a business' reputation and goodwill are property rights.  *Hartzler v. Goshen Churn & Ladder Co.*, 55 Ind.App. 455, 104 N.E. 34, 37 (1914).

15.     As described in the accompanying MEMORANDUM OF LAW AND ARGUMENT there is evidence in the record that movant would suffer irreparable harm in terms of damages to his reputation in the eyes of the community if Hawkins is not enjoined from uttering further slanderous, defamatory *per se* and trade libellous statements.  A business flourishes or folds on its reputation in a community, and the movant has cultivated a very good reputation in the cyber security industry.  The record indicates that Hawkins' outlandish statements have eroded the movant's professional technical reputation, and equitable relief is the most efficient and practical means of ensuring that the good will of the movant is not destroyed pending the resolution of this case.

16.     Hawkins enjoys no rights to AMENDMENT I protections, as he is an extraterritorial resident and non-U.S. citizen living in Canada, therefore any injunctive relief ordered by this Court does not have to be examined under the scrutiny of AMENDMENT I.  However, in abundance of caution, this issue is addressed below.

17.     ***Restricting Hawkins is not "prior restraint".***  Setting aside the fact that Hawkins enjoys no AMENDMENT I protections, the term "prior restraint" describes orders forbidding certain communications that are issued before the communications occur.  *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993); see, e.g., *Near,* 283 U.S. at 697, 51 S.Ct. 625.  It is well established that not all speech is afforded the same protection under AMENDMEXT I.  "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. State of Louisiana,* 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).  "In contrast, speech on matters of purely private concern is of less First Amendment concern." *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

18.     Hawkins discusses no matters of "public concern" in his podcasts.  Unless the public is

concerned with slanderous information that Kristine Marcy is a lesbian, and that she was most

likely raped by the grandson of Winston Churchill (Nicholas Soames, Member of the British

Parliament), to enable her to establish a consortium of lesbians operating with the U.S.

Department of Justice PRIDE LGBTQ organization, etc., etc.

19.     A preliminary injunction from this Court to enjoin Hawkins from making slanderous

statements and defamatory falsehoods of a primarily private person is not an issue of

Constitutionally protected speech – protections Hawkins does not qualify for.  The United States

Supreme Court has stated that there is "no constitutional value in false statements of fact."

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 338, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).  The

intentional lie does not materially advance society's interest in "uninhibited, robust, and wide-

open" debate on public issues.  *New York Times Co. v. Sullivan,* 376 U.S. at 265, 84 S.Ct. 710.

Falsehoods belong to that category of utterances that "are no essential part of any exposition of

ideas, and are of such slight social value as a step to truth that any benefit that may be derived

from them is clearly outweighed by the social interest in order and morality."  *Chaplinsky v.*

*New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).  The Court has further

stated that "[f]alse statements of fact are particularly valueless; they interfere with the truth-

seeking function of the marketplace of ideas, and they cause damage to an individual's reputation

that cannot easily be repaired by counterspeech, however persuasive or effective."  *Hustler*

*Magazine v. Falwell,* 485 U.S. 46, 51, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

20.     ***Slanderous, libelous and defamatory speech is part of a continuing course of conduct***

***by Hawkins***.  Hawkins has more than a decade of perfecting his industrial grade smear tactics.

Using Kristine Marcy as a digital punching bag Hawkins has accused her of almost every

imaginable crime one could think of. In fact, Hawkins is fond of saying that, "Kristine Marcy is the most dangerous woman in America". Other Hawkins' slurs include that Marcy created the National Center for Missing and Exploited Children database to select snuff film victims to black mail government officials that are pedophiles. This statement is merely a representative sample of literally hundreds of such vile and reprehensible statements.

21.     This Court should note that Hawkins slanderous defamation against the movant is part of a continuing course of tortious conduct to destroy the movant's career. Hawkins has given the Court clear indications that he has developed a pattern and practice of reputation destruction techniques over the past decade (see career with Abel Danger). See, e.g. *San Antonio Cmty. Hosp. v. S. cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1238 (9th Cir. 1997). The continuing conduct of Hawkins is enough justification to issue a temporary restraining order to forbid continuing slanderous and libelous remarks against the movant that are defamatory *per se.*

22.     Hawkins' publication of slanderous and defamatory remarks against movant is part of a civil conspiracy to intimidate the movant. As alleged in movant's Second Amended (SA) Motion to Intervene (ECF No. 93), Hawkins is participating in a civil conspiracy with the Def and should be restrained. For example, in *Eppley v. Iacovelli*, the court relied on the defendant's very act of publishing websites and videos accusing the plaintiff doctor of causing her ailments in concluding that injunctive relief was proper because the defendant had "engaged in an intentional 'smear campaign' through defamatory Internet publications. *Dr. Barry Eppley v. Lucille Iacovelli,* 2010 WL 3282574 (S.D. Ind. Aug. 17, 2010).

23.     Similarly, in *West Willow Realty Corp. v. Taylor,* the court held that the defendant's picketing of plaintiffs' business with signs and pamphlets complaining that it had sold him a home with defects was sufficient to justify an injunction because the defendant's actions were

"designed and put into effect for the purpose of intimidating plaintiffs and coercing a settlement of the claims of and the action brought by defendant against [plaintiffs' business]. *West Willow Realty Corp. v. Taylor*, Appellate Division of the Supreme Court of the State of New York, Second Department. 10 A.D.2d 1002.

24. *Hawkins' speech meets the criteria for Defamation Per Se in Virginia*. The damaging slander and trade libel that Hawkins broadcasts almost every day are direct hits on the fragile balance of a professional's career when accused of malpractice. Hawkins has already met the defamation *per se* test in the context of the abusive slander concerning the movant's **Certified Ethical Hacker** credential (see accompanying Memo of Law). Hawkins repeats allegations over and over that movant is hacking into systems, breaching network security, corrupting encryption certificates, etc. Hawkins also accused of the movant of causing the death of 343 New York Fire Fighters by sabotaging their public safety two-way radios on 9/11. The facts clearly indicate that the collapse of one of the World Trade Towers destroyed the normal fire department radio repeater operations. This has nothing to do with the movant – who was directly accused of murder by Hawkins (with Def's approval) on a CSTT podcast). *Pennington v. Dollar Tree Stores, Inc.,* 28 Fed.Appx. 881*881 482, 488 (6th Cir.2002) stating that falsely imputing criminal acts to another is *per se* defamatory (citation omitted). The falsity of a defamatory *per se* statement is presumed. *Id.* at 795-96. The burden is upon the defendant (Hawkins) to prove the truth of the defamatory statements by a preponderance of the evidence. *Id.*

25. "Once speech has judicially been found libelous, if all the requirements for injunctive relief are met, an injunction for restraint of continued publication of that same speech may be proper." *O'Brien v. Univ. Cmty. Tenants Union,* 327 N.E.2d 753, 755 (Ohio 1975).

26.    Acknowledging that an injunction directed at defamatory speech raised significant

constitutional concerns, the California Supreme Court distinguished a recurring and repetitive

smear campaign from earlier decisions invalidating injunctive relief by citing: "[p]rohibiting a

person from making a statement or publishing a writing *before* that statement is spoken or the

writing is published is far different from prohibiting a defendant from *repeating* a statement or

*republishing* a writing that has been determined at trial to be defamatory and, thus, unlawful."

*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, the California Supreme Court.

[no emphasis added]

27.    The wisdom of the California Supreme Court is relied upon by the movant-undersigned

who is seeking a narrowly scoped temporary injunctive order against Hawkins (a proposed

ORDER is attached to this document).  Some courts refer to this as a Type IV injunction.

Narrowly focused to prohibit speak speech.

28.    *Hawkins plays a key role in a civil conspiracy violative of Va. Code Ann. § 18.2-499*

*and 18.2-500.*  As the Court will learn the Defendant Goodman (herein Def) is NOT the subject

of this *pendente lite* relief request.  It is the Def's co-conspirator (a Canadian citizen) who is the

subject of this injunctive relief request.  Both individuals have conspired to commit misconduct

that satisfies the criteria for defamation *per se* in accordance with the jurisprudence of the

Commonwealth of Virginia.  At common-law defamatory words are *per se* defamatory if they

are: "(4) Those which prejudice such a person in his profession or trade," *Shupe v. Rose's*

*Stores,* 213 Va. 374, 375-76, 192 S.E.2d 766, 767 (1972)

29.    *The Def an Hawkins have damaged the undersigned's business in a willful and*

*malicious manner.*  In a recurring, repetitive, open-ended and on-going manner, Hawkins/Def

litter the Internet with blog posts, video content, show announcements, etc. that meets the

criteria of defamation per se.  "Prohibiting a person from making a statement or publishing a

writing *before* that statement is spoken or the writing is published is far different from

prohibiting a defendant from *repeating* a statement or *republishing* a writing that has been

determined at trial to be defamatory and, thus, unlawful."  *Balboa Island Village Inn, Inc. v.*

*Lemen* (2007) 40 Cal.4th 1141, the California Supreme Court.  [no emphasis added]


## SUMMARY

30.     Hawkins shows no sign of de-escalating his reprehensible and stunning allegations,

accusations and insinuations – all are damaging to the technical trade, reputation and career of

the undersigned.  Mr. Hawkins is unqualified to make any allegations concerning "hacking

activities" that purportedly rely on the FBCA network.

31.     Mr. Hawkins has not been able to prove that it is even theoretically possible to "hack"

into the FBCA network.  Mr. Hawkins has the burden to demonstrate that he understands the

critical infrastructure of the FBCA network and that he has been able to determine flaws,

vulnerabilities, and weaknesses that could be exploited in the manner that he describes, namely

the payload transport of clandestine messages – or other hacks carried out by the undersigned.

32.     It is the insinuation, indirect attacks, and direct attacks of the undersigned by Mr.

Hawkins, who uses his expert witness classification as a "*Cambridge educated forensic*

*economist*", to disparage, destroy, harm, and injure the professional reputation of the

undersigned. Mr. Hawkins drives his slanderous sword directly into the professional heart of the

undersigned, by questioning professional ethics, professional practice and procedures, best

industry practices for his craft, accusations of professional malpractice and misconduct and other

slander related to the career and profession.

33.     These facts should be memorialized, ratified and verified by a court of competent

jurisdiction (this Court) and so stated in an authoritative court judgement. The reverse is true, if

no evidence can be presented to support these stunningly slanderous claims then that fact should

also be so stated.

## RELIEF REQUESTED

34.     Based on the foregoing, and the accompanying Memorandum of Law, this Court should

issue a temporary CEASE and DESIST (C&D) ORDER directed at the non-party David Charles

Hawkins. Conditions of such an ORDER should include:

   a. The immediate halt to any future appearances by Mr. Hawkins on the Def's CSTT

      podcast shows in any form and for any reason.

   b. The immediate halt to any future Internet blog posts, Patreaon.Com entries,

      Twitter tweets, GAB updates, Facebook entries, BitChute entries, or any other

      social media platforms, that discuss, comment or critique the intervenor-

      applicant's technical profession, computer security expertise, ability to conduct

      risk assessments, or any other facet connected, directly or indirectly, with

      allegations about hacking, installing back-doors, breaching of system security,

      allowing for vulnerabilities and weakness, etc.

   c. An immediate halt to any future podcast, distribution of opinions, or podcast

      shows that comment on any institution or corporation that is interconnected to the

      FBCA network. This includes any technical characterizations related to any facet

      connected, directly or indirectly, with allegations about hacking, installing back-

      doors, breaching of system security, allowing for vulnerabilities and weakness,

      etc.

   d.  The immediate halt to the expression of opinion, podcast broadcast, descriptions

       of activities, or any other commentary about the undersigned and any associated

       technical projects, former employers and technical journals published by the

       undersigned.  This includes commentary about the undersigned's involvement

       with the U.S. Air Force, Booz*Allen & Hamilton, EnTrust Technologies, U.S.

       Army STRICOM and the FBCA network.

   e.  The ORDER should include a request for the voluntary cooperation of all social

       media platform providers utilized by Mr. Hawkins, requesting that his channel

       content be reviewed for potential violations of any Terms of Service, User

       Acceptance Agreements, Terms of Use, etc.

35.    The relief requested only enables one private person [undersigned] to curtail the

broadcast of unqualified determinations of another private person [Hawkins] about a matter that

is not of public interest (Hawkins' Reverse CSI Engineering concepts).  The Court should note

that Mr. Hawkins is not a member of any media, advocacy, public interest or news-gathering

organization.


I certify that the foregoing information is truthful and not submitted for any other purpose than

for adjudication of the claims contained within.  This certification is provided under the penalties

of perjury on the 28th day of April 2019.

               Respectfully requested

*Pro Se* D. George Sweigert

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**
**Spoliation-notice@mailbox.org**