IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

ROBERT DAVID STEELE, et al.,

      Plaintiff,

vs.

JASON GOODMAN, et al.,

      Defendant

Case No.: 3:17-cv-00601-MHL

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE



FILED
MAY - 1 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE

      Defendant Jason Goodman, Pro Se, opposes intervention by Intervenor Applicant D. George Sweigert (herein after SWEIGERT), both as of right and permissively. Each of Sweigert's three Motions to Intervene are based on fundamentally false premises, materially misleading statements and libelous conclusions made with no basis in fact and no valid supportive evidence. Sweigert's intervention cannot prevail under Fed. R. Civ. Proc. Rule 24 because he fails to assert any valid claim germane to the subject matter of this proceeding and his intervention would unduly delay and prejudice the adjudication of the original parties' rights. Sweigert's fundamentally false premise, false claims and false statements do not give him standing to intervene in this matter. Sweigert's frequent and vexatious filings do not make any legitimate claims for which relief may be granted. Video, audio and other evidence, presently in the public domain refute statements made by Sweigert to this court under penalty of perjury and

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 1

in violation of 18 U.S. Code § 1001.  Sweigert's multiple, lengthy and fundamentally false

applications to intervene have already unduly delayed these proceedings.  His inappropriate

interactions with co-Defendant Lutzke and parties directly related to and in continuous contact

with Plaintiff, including his own brother George Webb Sweigert (herein after WEBB), would

undoubtedly prejudice the adjudication of Defendant Goodman's rights and Sweigert should be

denied intervention under Fed. R. Civ. Proc. Rule 24(b)(3).

I hereby attest that the pleadings herein are accurate and true under penalties of perjury.

Further, I hereby attest that the attached exhibits are accurate and true copies of source

documents as described.  Video and telephone recording transcripts may contain typos due to

voice to text transcription software.  True and accurate copies of original video and audio

recordings can be provided should it please the court.


Signed this _3̶0̶_ day of April 2019



Defendant, Pro Se Jason Goodman

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 2

## I.   FACTUAL BACKGROUND

Intervenor Applicant Sweigert was unknown to Defendant Goodman prior to May or June 2017.  Goodman had begun working with Sweigert's brother, Webb, in April of 2017.  Goodman and Webb produced a series of news broadcasts on YouTube.  These broadcasts drew the attention of Sweigert and he began making his own YouTube broadcasts focused on taunting, disparaging, threatening and harassing Goodman.  Sweigert falsely claims he was dragged into this situation by Goodman.  Sweigert initially antagonized the conflict with Goodman with false public statements and direct calls to Goodman but has now deleted the video evidence of this from May and June 2017, denying Defendant and the court access to view it.

Goodman was not aware of Sweigert until members of Goodman's audience brought Sweigert's disturbing, seemingly psychotic and threatening broadcasts to Goodman's attention.  Viewers alerted Goodman to these broadcasts out of concern for his personal safety.  The common theme in Sweigert's broadcasts was juvenile disparagement, taunting, threatening and other methods of harassing and provoking Goodman.  It is impossible to provide many of these broadcasts as evidence because Sweigert is in an ongoing regular practice of deleting his videos to eliminate evidence of his statements.  Sweigert uses these videos to transmit messages to a network of viewers and then removes the videos after the message has been received.  Defendant did not initially realize the videos were being removed, but has since taken to downloading, screen capturing, and otherwise recording the videos in an effort to preserve them as evidence. In doing this, Sweigert demonstrates a deliberate effort to spoliate evidence.  Sweigerts's pattern and practice of covering his actions greatly complicates defensive legal measures that might otherwise stop his persistent cyber harassment, and Defendant believes this is a deliberate abuse of the legal system.

In his applications to intervene, Sweigert falsely claims Goodman has targeted him and relentlessly pursued him. But in fact, it is Sweigert persistently antagonizing Goodman with multiple daily public broadcasts, filled with false statements and taunting accusations frequently directly soliciting a response up to and including today as this opposition is bring written.

Sweigert has also persistently harassed numerous guests of Goodman's talk show, discouraging anyone who experiences or observes this harassment from participating. This has directly damaged Goodman's ability to host show guests and build his business. Sweigert's persistence and dedication to these activities is so overt and goes so far beyond seeking to cure any alleged damages, it compels an observer to consider what could motivate such behavior.

On page 5 of his second Amended Motion to Intervene (ECF No. 93) Sweigert states *"The seminal event in this saga was the infamous Port of Charleston (South Carolina) dirty bomb hoax on June 14 2017. This "dirty bomb hoax" led to the closure of the Waldo* (sic) *Marine Terminal for over eight (8) hours while several federal, state and local response agencies conducted a Type-III radiological response (equivalent to a jetliner crash) to the event."* In May 2018, Sweigert self-published a softcover 28 page "book" on this topic entitled "Report: The Port of Charleston Dirty Bomb Hoax and Social Media Liability" https://www.amazon.com/Report-Charleston-Dirty-Social-Liability/dp/1717056792/ref=sr_1_fkmrnull_1?keywords=port+of+charleston+dirty+bomb&qid=1556457795&s=gateway&sr=8-1-fkmrnull **(EXHIBIT A)**

This book is more accurately described as a bloated propaganda pamphlet and is notably, considerably terser than the majority of Sweigert's filings in this legal matter. In the book, Sweigert makes a succession of patently false statements and arrives at false conclusions intended to damage Goodman's worldwide reputation and serve as false, fabricated evidence in

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 4

Sweigert's vexatious legal actions. The title itself indicates the author has arrived at the conclusion that this incident was a hoax.

As Sweigert points out, multiple government agencies including the FBI and U.S. Coast Guard have investigated this incident and these agencies did not determine the incident was caused by a hoax. For reference, we can look to another alleged hoax in recent news, the report of a hate crime by actor Jussie Smollet to the Chicago Police Department. (https://chicago.suntimes.com/news/petition-investigate-jussie-smollett-case-dropped-2nd-request-continue/). Upon the rapid determination that the report was a hoax, CPD immediately sought criminal charges against Smollet for filing a false report. After almost two years and a complete investigation, no such charges have been brought by FBI, USCG, Charleston PD, NYPD or any other law enforcement agency against Goodman or anyone else related to the incident in Charleston. In fact, the only people claiming the incident was a hoax are Plaintiff, Intervenor Applicant and their co-conspirators. Steele first introduced the idea of a false report in an email sent to Defendant Goodman and Sweigert's brother Webb. **(EXHIBIT B)**. Steele warns Goodman he is to be arrested by NYPD for calling in a hoax, but no arrest occurred.

Sweigert further claims that Goodman deliberately used false information in furtherance of a scheme to close the Port of Charleston Wando Welch Terminal (incorrectly referenced by Sweigert as Waldo terminal) to publicize his YouTube show and make money, but this is false. The information presented to Goodman about a potentially deadly alleged public threat in Charleston SC was provided by Webb, Sweigert's brother and frequent collaborator. Despite statements to the contrary, the two can been seen in videos together dating back years, and most recently on February 8, 2019 (https://www.youtube.com/watch?v=NNlxpqJrsCA). The duo can be observed laughing and reminiscing as Sweigert asks Webb a series of leading questions,

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 5

possibly attempting to evoke testimony to be used in this or other legal action. Webb provided

Goodman with the information regarding the alleged "dirty bomb" even introducing that specific

term, and he did it with the intent to convince Goodman it was true and correct. Goodman

remains unaware of what, if anything, Coast Guard or FBI discovered as a result of inspecting

the ship or what was discussed during their interrogation of Webb. Goodman has reason to

believe something unusual was found, or for some other reason FBI disagrees with Sweigert

regarding any false report because they have not charged anyone with filing a false report. Law

enforcement typically demonstrates no reluctance whatsoever in prosecuting individuals for such

infractions. (https://www.washingtonpost.com/news/arts-and-

entertainment/wp/2018/04/10/former-silicon-valley-actor-t-j-miller-has-been-charged-with-

calling-in-a-fake-bomb-threat/?utm_term=.3ba4c3636412).

      Sweigert's insistence that someone be "held accountable" for what appears to have been

a good Samaritan acting out of an abundance of caution, could be a factor in his maniacal,

incessant and vexatious litigation of this matter. Contrary to claims made in the second amended

motion to intervene, Sweigert's applications to intervene are in fact attempts to relitigate the

same exact claims raised in Sweigert's equally vexatious actions brought first in South Carolina

and then SDNY where judge's final orders remain pending. Sweigert has shown he is adept at

abusing the legal system and coming up with creative ways to venue shop his punitive legal

actions, including his multiple applications to intervene in this instant action.

      Sweigert's book further describes *"a panic that bordered on mass hysteria"* but no

evidence of mass hysteria has been shown. It appears most of the general public, even those in

close proximity of the port where totally unaware of the incident until after the port closure was

reported in the news. Webb was questioned by the FBI and Coast Guard immediately following

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 6

the closure and was not arrested or charged with perpetrating a hoax. This causes Defendant to believe the FBI and USCG did not determine that a hoax had occurred.

Sweigert's book repeatedly refers to Defendant Goodman as an actor. This echoes the claim made by Plaintiff in his Amended Complaint (ECF No. 39 page 10 subheading 6). Sweigert's book was published on May 1, 2018, while Plaintiff's Amended Complaint containing this identical false statement was docketed on April 13, 2018. Goodman has never worked as an actor, never claimed to be an actor and is not an actor. Sweigert's book and his applications to intervene attempt to conflate the actions of unrelated third parties with those of Goodman, just as Plaintiff's Amended Complaint does.

The final point of note emphasized in Sweigert's book relates to an individual known as O. Marshall Richards (herein after RICHARDS). Richards was introduced to Goodman by intervenor applicant's brother Webb and was referred to on Goodman's programs as both Deep Uranium and Mr. Hudson. These alternate names were given to Richards to protect his identity as a journalistic source in essentially the same way Sweigert operates online under the self assigned stage name "Dave Acton". Richard's actual identity was not known to Goodman until it was revealed by Sweigert on Sweigert's YouTube channel as he describes in his Amended Motion to Intervene. Sweigert has publicly stated this information was provided to him by co-Defendant Lutzke and Lutzke confirmed in a phone call she placed to Defendant on April 3, 2019 that she has conspired with Sweigert conducting research and cooperating to defeat Defendant in this instant lawsuit. Lutzke claimed Sweigert was "working with Robert David Steele" and Swiegert offered to help her "work this case out."

https://www.youtube.com/watch?v=WwyRPFhW-HE **(EXHIBIT C)**

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 7

The court should also take note that Sweigert's research into the Port of Charleston matter is so poor, he refers to the site of the closure as the "Waldo" terminal when the actual name is WANDO terminal.  Despite Sweigert's claims of expertise in critical infrastructure and diligent attention to detail in filing notices of harmless errors, he fails to provide the correct name of the central location in what he describes as the seminal event around which this entire lawsuit has emerged.  This error shows how little attention Sweigert pays to facts in this matter, rather focusing attention on vexatious legal challenges.  This is a telling clue when evaluating Sweigert's motivations as well as his flawed conclusions.  Sweigert's inability or refusal to acknowledge facts leads him to false conclusions on foundational points in this matter and his legal footing rests in quicksand.

Sweigert's Amended Motion to Intervene also states that he has sent his report to congress and any alleged dissatisfaction Defendant may have with this would be a violation of 18 U.S.C. § 1505.  However, Sweigert has no authority to initiate official acts of Congress and the report may well reside in Congressional waste bins where it belongs.  Sweigert's alignment with Plaintiff in motive and actions is further evidenced by Plaintiff's recent association with U.S. Congressman Devin Nunes in the widely publicized, ill-conceived law suit Plaintiff encouraged Nunes to initiate against Twitter.  Despite the protection of CDA section 230, which shields Twitter and other social media networks from liability related to content posted by users of their network, Plaintiff has aggressively pursued Nunes and personally recommended Biss to bring a suit that legal experts across the political spectrum have derided as guaranteed to fail.

Sweigert's Amended Application to Intervene openly states his plan to badger Congress members with mailings and repeated calls to open an investigation into the port incident.  Sweigert has made multiple video broadcasts in which he boasts of his letter writing campaigns,

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 8

his attempts to intervene in this legal action as well as his intention to bring the incident in the Port of Charleston to Nunes' attention, utilizing his connections to this instant lawsuit. While it seems unlikely that Steele, Biss or Sweigert could have any influence over Congress, this is yet another clear attempt to intimidate Goodman.

Sweigert's self-published book is a tool created to further the goals of threatening, intimidating and harassing Goodman on a daily basis via social media, false claims made to law enforcement and military agencies, and now the civil legal system for nearly two full years. The book is a fabrication from start to finish and in it, Sweigert manipulates the facts surrounding an incident initiated by his brother Webb, and other associates, after Webb had spent months gaining Goodman's confidence. The primary claim in the book is that Goodman engaged in sophisticated cyber warfare techniques in which he has no experience or training, and "weaponized" social media to stage an attack on the U.S.C.G. According to Sweigert this was done to earn money and Goodman's activities as a documentary filmmaker and journalist, are covers for ulterior motives. Sweigert's absurd work of fiction goes on to categorize a single tweet as a DDoS cyber-attack on the Coast Guard. The tweet allegedly made a total of 8,000 "impressions" during the two-hour broadcast. Although this statement is made in absence of evidence, it is irrelevant because Twitter can process over 143,199 (one hundred forty-three thousand one hundred ninety nine) messages per second according to its own informational blog post of August 2013 https://blog.twitter.com/engineering/en_us/a/2013/new-tweets-per-second-record-and-how.html **(EXHIBIT D)** Twitter is not the primary mechanism of communication utilized by the U.S.C.G. Eight thousand messages would be an inconsequential event, and the FBI / Coast Guard investigation supports this conclusion.

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 9

Sweigert has conspired together with other parties to this legal action, including co-Defendant Lutzke and Plaintiff Steele both directly and via third party intermediaries for more than one year and in an ongoing fashion. Sweigert entered an agreement to create and monetize a harassment campaign (The Campaign) intended to disrupt the Defendant's business, personal life and worldwide reputation, and chill Defendant's journalistic investigations.

Sweigert has persistently engaged in numerous counts of tortious interference directly mailing, emailing and contacting through various methods sending numerous letters to Patreon.com CEO Jack Conte as well as Redbubble.com directly impacting Goodman's ability to transact business and his financial well being. In addition to disrupting Defendant's business and personal relationships, The Campaign is also intended to impact the outcome of this legal action. Sweigert and Plaintiff have published numerous threats to members of the public who might choose to subscribe to Goodman's show, falsely claiming that they could be named as defendants in this widely publicized legal action. Steele has published a list of people he's dubbed "crowdstalkeers" alleged to work for and / or finance Goodman at their own peril and risk of legal repercussions.

Among the co-conspirators are Intervenor Applicant's brother George Webb Sweigert (Webb), Manuel Chavez III aka Defango (Chavez), Frank Bacon, believed to be Tyroan Simpson (Simpson), Nathan Stolpman (Stolpman), co-Defendant Susan Lutzke aka Susan Holmes aka Queen Tutt (Lutzke), Steve Outtrim (Outtrim), Dean Fougere aka Titus Frost (Fougere), Kevin Allen Marsden (Marsden), Mari Rapp aka Sugar Shine (Rapp), Jacquelyn Weaver (Weaver) and other unknown parties operating under various online aliases.

On or around December 2017, in a multiparty video chat that included Simpson, Sweigert, Chavez, Stolpman and two unknown parties, Simpson and Sweigert agreed to engage

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 10

1  in a harassment for pay Campaign against Defendant Goodman.

2  (https://www.bitchute.com/video/Ez5xgxUk8daU/).  Transcript of this chat was included with

3

4  Defendant's Opposition to the Motion to Intervene (ECF No. 78 EXHIBIT A) The conspirators

5  agreed that the monetary component of The Campaign would be transacted via the

6  cryptocurrency backed social media network Steemit.com (Steemit).  Defendant's investigations

7  have revealed evidence that Steemit.com is a ponzi scheme intended to absorb Bitcoin or other

8  payments from the public when they join the network and purchase "Steem Power" tokens to

9  gain voting leverage on the network.  Steemit enables a covert method of compensating co-
10
   conspirators in this pay for harassment scheme and is also a money laundering mechanism
11
12  intended to hide the source of funds and transform an essentially worthless digital currency into

13  U.S. Dollars.  Simpson is an aggressive proponent of Steemit and actively promotes it online and

14  elsewhere. (https://steemit.com/steemit/@frankbacon/block-frank-bacon-on-austin-texas-radio-

15  tonight-89-1-fm)
16
17        Simpson called Goodman on or about June 27, 2017 (https://youtu.be/-JqDBOusiF8 )

18  (ECF No. 78 EXHIBIT B) to attempt to convince Goodman to join Steemit.com.  After

19  Goodman refused, Simpson called again to leave a threatening voicemail

20  (https://youtu.be/_NoCXRvFwVI ) in which he specifically names Chavez and states "guys like
21
22  Defango and myself and about 50 other people that really know how to do this shit are gonna

23  make it a lot more difficult for you to do really about anything" directly referencing the

24  harassment campaign (ECF No. 78 EXHIBIT C).

25        The original video broadcast has been deleted but was preserved as evidence by

26  Defendant (https://www.bitchute.com/video/Ez5xgxUk8daU/).  In the video, Sweigert insists on
27
28  a "unified effort" (see transcript ECF No. 78 EXHIBIT A)  time stamp 00:01:52,860) in response

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 11

to Simpson's suggestion for "the best way to get JG" (see attached transcript ECF No. 78

EXHIBIT A)  time stamp 00:01:48,479) referring to Goodman as "JG".  The two agree to a plan

to initiate a letter writing campaign intended to disrupt Goodman.  Simpson offers to get

Sweigert "paid for it in a way that's not connected to the government at all" suggestive of a tax

avoidance scheme and referring to the harassment campaign being financed via Steemit.

Sweigert agrees to do it. (see attached transcript ECF No. 78 EXHIBIT A) time stamp

00:03:29,430).  At another point in the video, Sweigert boasts "**I VOLUNTEER TO BE THE**

**LIAISON TO FUCK WITH THESE GUYS THROUGH GOVERNMENT PROCESSES,**

**THROUGH MILITARY PROCESSES, THROUGH LAW ENFORCEMENT**

**PROCESSES**" [emphasis added] (see attached transcript ECF No. 78 EXHIBIT A time stamp

00:02:26,909).  Simpson insists on monetizing the effort with Steemit, and since that call, both

them and their co-conspirators have been carrying out this calculated, money making plan.

The Campaign remains in effect to this day and includes this lawsuit as well as separate

suits brought by Sweigert on June 14, 2018 in District of South Carolina (2:18-cv-01633-RMG)

which was transferred to SDNY on September 17, 2018 at the order of Judge Richard Marc

Gergel.  Now relocated to USDC SDNY (Case 1:18-cv-08653-VEC) U.S. District Court Judge

Valeri Caproni has ordered Sweigert not to "file any further motions or pleadings except in

response to this Order to Show Cause."

Sweigert has interfered with officers of the court in unrelated matters by contacting the

criminal defense attorney of Michael J. Barden.  Barden appeared on Goodman's show to speak

about a wrongful arrest and his distress at the notion of a plea deal being forced on him despite

his requests for Police body camera footage being denied and the prosecutor and his lawyer's

failure to demand this exculpatory evidence.  Sweigert took it upon himself to contact Barden's

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 12

Attorney (ECF No. 78 EXHIBIT D) and tell him "Barden has told this worldwide audience that he does not trust you as an attorney." Barden's distrust was appropriate given the failure to follow instructions and insist prosecutors produce Brady materials in the arrest. Sweigert's deliberately vexing letter reached the attorney the day Barden was to appear before the judge regarding the plea and put Barden at odds with his Attorney. Additionally, Sweigert contacted the AZ Bar Association and filed a complaint alleging Goodman engaged in unauthorized practice of law suggesting Barden shouldn't plead guilty to a crime he didn't commit. The complaint was dismissed by the Bar Association with no penalty. (ECF No. 78 EXHIBIT E)

On Febrary 22, Sweigert sent a letter to the U.S. Coast Guard Sector New York Captain Jason Tama (ECF No. 78 EXHIBIT F). In the letter, Sweigert makes false claims alleging Goodman intended to do crime. Sweigert's incompetence is underscored by his inability to properly name a corporation owned by Goodman, instead attributing the fictitious and false name Multimedia Systems Designs, Inc. to Defendant along with fictitious plans of a "dirty bomb hoax" targeting the port of New York. Prior to the mailing, Defendant was unaware of any such hoax plan which was invented by Sweigert solely for this letter.

Perhaps the most brazen act on the part of Sweigert with regard to his legal filings is his use of a false address as his official mailing address with the court in his action in SDNY. On Oct 2, 2018, Sweigert filed a change of address. This was the third address Sweigert utilized in that legal action in less than one year. When five of Goodman's pleadings were returned by the USPS as "ATTEMPTED NOT KNOWN UNABLE TO FORWARD" Defendant called the USPS and was told by an employee that PO Box 152 was not owned by Sweigert and therefore the USPS did not consider it a legal address for him. On Oct 26, 2018 Defendant filed a Motion For Ruling To Show Cause For Providing False Address in an effort to get Sweigert to explain

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 13

what seemed to be a fraudulent address and attempted fraud on the court.  On Nov 7, 2018

Defendant filed a Supplement to the Motion For Ruling to Show Cause that included photo

evidence of the returned mail (ECF No. 78 EXHIBIT G).  Goodman traveled to the USPS in

Mesa AZ on January 7, 2019 and spoke with employees there.  They told Goodman that

Sweigert appeared in the post office on Dec 1, 2018 with the owner of the Box and signed a form

to be added officially.  Further investigation has revealed the owner of PO Box 152 to be Mari

Rapp aka Sugar Shine, a frequent contributor to Sweigert's social media activities.  Sweigert did

not alert the Court in SDNY that he had traveled to Mesa AZ on December 1, 2018 to make this

change, but rather made false written testimony to cover this action. This is further evidence of

Sweigert's intent to commit fraud on the court in SDNY and elsewhere.  Sweigert sent

Defendant a U.S. Postal Money Order for one dollar on Dec 1, 2018 and made a video of himself

doing so (ECF No. 78 EXHIBIT H).

In addition to his harassment for pay letter writing campaign, Sweigert is in the daily

practice of engaging in various cyber stalking and cyber harassment efforts.  On November 25,

2017 in coordination with Chavez, Sweigert called in to a live YouTube broadcast titled

"11.25.17.Solving.rar" hosted on a YouTube channel controlled by Chavez

(https://youtu.be/jK73oCxCGOE).  This video is monetized on Steemit.com.

(https://steemit.com/news/@defango/red-triangle-zodiac-sevens-exposed-cicada-3301-qanon-

twitter-progress-update-11-25-17).  Transcript of the conversation between Chavez and Sweigert

is attached (ECF No. 78 EXHIBIT I).  During that conversation Sweigert tells Chavez "I saw

Robert David Steele (Plaintiff) about three days ago four days ago he was being interviewed but

some lady on a show Deborah still I think or something like that and he did talk about that he

thought Jason was a Mossad operative and a handler and he was hoping all this was going to

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 14

come out of discovery and everything so it's really interesting". This conversation between Chavez and Sweigert appears to be a pre-planned, staged event specifically intended to propagate the false claim put forward by Plaintiff. This particular false claim associating Goodman with Mossad was persistently repeated by Chavez, Sweigert, Plaintiff, Fougere and others including Webb in an effort to turn public opinion against Defendant and defund Defendant's subscription-based business. Fougere republished the report from Chavez and when contacted by Defendant to take the report down and issue a retraction, Fougere maliciously posted childish insults along with Goodman's private phone number on a monetized post on Steemit, furthering the harassment for pay scheme, inviting additional cyber harassment and rendering the phone number nearly useless. (https://steemit.com/jasongoodman/@titusfrost/threatened-by-jason-goodman-with-criminal-harassment-what-do-you-think). Fougere persists in his role in this campaign, profiting from false statements and misleading suggestions about Defendant.

Approximately one year ago, Chavez posted an article on Steemit titled https://steemit.com/news/@defango/crowdsource-the-truth-live-reseach-on-mossadywood. In the article, Chavez claims falsely and definitively "Jason Goodman is on the payroll of a man named Arnan Milchan. Arnan has Jason doing work partly out of blackmail. Jason was at parties with a producer named Brian Singer and there were underaged boys and girls. Jason was being paid $2.788 a week and its (sic) now up to $3500 a week." This mirrors statements made by Plaintiff in video interviews that have since been deleted from YouTube. No evidence is offered to support these claims, and the insinuation is made that Defendant is fraternizing with or otherwise cooperating with an accused child rapist. This is yet another persistent theme propagated by the conspirators involved in the Campaign. This article remains on Steemit.com allegedly having earned Chavez $12.29 and has been shared by numerous other users in the indelible blockchain on

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 15

Steemit earning additional untold sums (ECF No. 78 EXHIBIT J).   Chavez and other co-conspirators have demonstrated a penchant for using numerous alternate accounts under false and misleading names such as "Brain Trust" or "OFA_ASU" so the true scope of the conspiracy is not yet known (ECF No. 78 EXHIBIT K).

Defendant Goodman is not and has never been associated in any way with Mossad, Arnan Milchan or the film director and accused rapist Singer.  Neither Plaintiff, Intervenor Applicant, nor any of their co-conspirators have any evidence whatsoever to support these outlandish claims, yet they continue to promote these false statements publicly and aggressively with the express intent of damaging Defendant's worldwide reputation and depriving Defendant of business and financial opportunities.  The rumor was started by the co-conspirators in order that their network could spread this information to earn money on Steemit and through other methods, and to play upon rampant, hateful, anti-Jewish sentiment among their fans and viewers. The Campaign has allowed them to persecute Defendant based solely on his Jewish heritage, denying him of his constitutional right to presumption of innocence, retarding his financial and psychological well-being and inciting hate speech and foul threats in live comments from viewers.  The Campaign leverages this totally false claim to defame Goodman and engender hatred for Defendant throughout the world via the internet.

Sweigert, Steele and their co-conspirators engage in a form of acting they call Live Action Role Playing (LARP).  Defendant was initially introduced to this term and its practice by the co-conspirators in the Campaign.  They are in a regular practice of accusing their adversaries of doing this in a weak effort to deflect attention from their own actions.  Through these staged LARP conversations, false information is planted within seemingly normal live streamed talk show conversation about current events or other topics, mixing truth with fiction in a manner that

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 16

makes their false claims seem factual to the uninitiated.  These video broadcasts are monetized on the Steemit network and through other methods including online donations and merchandise sales, earning money for Sweigert's co-conspirators and making them appear unaffiliated to the outside observer or investigators by concealing payments and obfuscating direct connections.

Goodman has revealed evidence indicating suspicious activity with regard to Steemit, including a visit to the main corporate office in New York City which consists of only a PO Box and no actual office or employees despite a market capitalization of over $400,000,000.00 (four hundred million U.S. Dollars) at the time of the visit. (https://www.youtube.com/watch?v=EDMvR2qTtFY&feature=youtu.be&t=70). Accountingweb.com includes this practice in their list of Top 10 Red Flag Warnings of Fraud. (https://www.accountingweb.com/aa/auditing/top-10-red-flag-warnings-of-fraud).

Defendant Goodman also conducted an interview with professional derivatives trader and cryptocurrency commentator Tone Vays in which Vays indicated his evaluation of Steemit's software white paper revealed problems with the core functionality which amounted in Vays' estimation to misrepresentation on the part of the founders Daniel Larimer and Ned Scott, and Vays considered additional evidence of fraud.  Vays describes deficiencies in the design which he claims could easily be used by the designers or others who might be made aware of these deficiencies, to exploit the system, deceive users and siphon money from the network. (https://youtu.be/7Cax1CDEcd4).

On August 4, 2018, Defendant revealed evidence including a public internet post by Chavez which included a typo laden set of instructions for automating Steemit posts and driving upvotes to increase ponzi scheme style revenue growth on the Steemit network as well as instructions for moving the cryptocurrency Steem dollars out of the network through a variety of

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 17

machinations to convert it to "fiat" currency such as U.S. Dollars or Euros (ECF No. 78

EXHIBIT L).  This overall process provides content in the form of false and defamatory

statements contained in videos about Defendant as well as tactics and methods to enable anyone

interested in joining the Campaign to earn cryptocurrency on Steemit.com by spreading the false

information, and then laundering that digital currency into actual U.S. Dollars.

(https://youtu.be/B1ag_9sqmmk?t=6) Goodman's disruption of this pay for harassment and

money laundering scheme being carried out via Steemit may be the primary reason for the

organized harassment campaign.

Intervenor Applicant continues to grossly abuse the Federal civil legal system, court

shopping with various suits in multiple states in an attempt to utilize the Justice System as a

strategic weapon to intimidate, harass, defame and financially deprive the Defendant.  More

recently, Sweigert has sent a letter of intent to sue in a third district for substantially the same

claims.  It is Defendant's belief that this Maryland based intended action is utilizing the same

tactic as Plaintiff's original action by including co-Defendants who are in fact, conspiring with

the Plaintiff to enable the action and/or sabotage the defense.  Sweigert names his brother Webb

as Defendant, conveniently as Webb resides in Maryland.  Defendant Goodman is named in this

action as co-Defendant.  It is clear Sweigert has no actual intention to enforce any potential civil

judgement against Webb, but is merely using him as a tool to continue to harass Defendant

Goodman with baseless suits in additional Districts of the U.S. District Court system.  (ECF No.

78 EXHIBIT M)

Plaintiff Steele has knowingly and repeatedly published false and defamatory statements

intended to damage Defendant.  IRS filings and social media publications show that Plaintiff

Steele has paid third parties, many of which run popular YouTube channels, which have

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 18

coincidentally also published false and defamatory statements, absent sufficient evidence, and intended to damage Defendant and impact the outcome of this legal action (ECF No. 78 EXHIBIT N).

Recorded phone calls and voicemail messages show Simpson admitting in his own words direct contact with both Intervenor Applicant's Sweigert's brother George Webb Sweigert (Webb) Plaintiff Steele, Chavez and Stolpman.  Simpson states to Defendant Goodman in a phone call "he (Plaintiff Steele) sent me a text one night he's like hey you know cuz he knows I been buggin' George (Webb)" (see attached transcript ECF No. 78 EXHIBIT B) time stamp 00:05:51,945).  Incidentally this statement contradicts assertions made earlier in the call by Simpson that he is no longer in communication with Plaintiff Steele.  Email, SMS and other communications including in person meeting took place between Plaintiff Steele and Webb (ECF No. 78 EXHIBIT O)

Despite false claims of no contact and some form of adversarial relationship, email, text and other communications including video chat and personal meeting took place between Webb and his brother, Intervenor Applicant Sweigert (https://youtu.be/DqGlFBkx09Q).

Plaintiff and his accomplices have engaged in a persistent campaign of harassment and defamation against Defendant that has consisted of knowingly and deliberately spreading false information throughout various social media platforms on the internet, intended to damage Defendant's reputation, business, financial health and psychological well-being and to chill Defendant's investigative journalism activities which have revealed evidence of crimes.

DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the above described reasons, Defendant Goodman respectfully requrests that the

Court deny D. George Sweigert's Second Amended Motion to Intervene in this matter.

Defendant further requests the court recommend the Plaintiff, Intervenor Applicant and alleged

co-conspirators to the appropriate law enforcement agencies for criminal investigation and

prosecution if found guilty of the alleged criminal activities.


Respectfully submitted,



_____

Jason Goodman, Pro Se

252 7th Avenue Apt 6s

New York, NY 10001

truth@crowdsourcethetruth.org


DEFENDANT'S OPPOSITION TO THE SECOND AMENDED MOTION TO INTERVENE - 20

**Circuit Court for** _Eastern Division Virginia_        Case No. _3:17-cv-601-MHL_

City or County

| Robert David Steele and Earth Intelligence Networ | | | | | | | | Jason Goodman | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | | | | | | | | Name | | | | | |
| 11005 LANGTON ARMS CT | | | | | Apt.# | | **VS.** | 252 7th avenue | | | | | 6s |
| Street Address | | | | | | | | Street Address | | | | | Apt. # |
| OAKTON, | VA | 22124 | ( 571 ) 320-8573 | | | | | New York | NY | 10001 | (323 ) 744-7594 | | |
| City | State | Zip Code | Area Code | Telephone | | | | City | State | Zip Code | Area Code | Telephone | |

_Plaintiff_                      _Defendant_

# CERTIFICATE OF SERVICE

## (DOMREL58)

     I HEREBY CERTIFY that on this 30    day of _April_           , _2019_ , a copy

of the document(s) entitled _Motion for leave to extend time to responde to 2nd amended motion to intervene_

Title of Document(s)

was/were mailed, postage prepaid to:

     D. George Sweigert

**Opposing Party or His/Her Attorney**

PO Box 152

**Address**

     Mesa,            AZ          85211

City                  State          Zip

          April 30, 2019                            

          Date                     Signature

DR58- Revised 13 February 2001

**Circuit Court for** <u>Eastern Division Virginia</u>          Case No. <u>3:17-cv-601-MHL</u>
City or County

<u>Robert David Steele and Earth Intelligence Networ</u>          <u>Jason Goodman</u>
Name                                                        Name
<u>11005 LANGTON ARMS CT</u>          **VS.**          <u>252 7th avenue</u>                    <u>6s</u>
Street Address                                   Apt.#          Street Address                    Apt.#
<u>OAKTON,</u>  <u>VA</u>  <u>22124</u>  ( <u>571</u> ) <u>320-8573</u>          <u>New York</u>  <u>NY</u>  <u>10001</u>  ( <u>323</u> ) <u>744-7594</u>
City          State  Zip Code  Area  Telephone          City          State  Zip Code  Area  Telephone
                               Code                                                    Code

*Plaintiff*                              *Defendant*

# CERTIFICATE OF SERVICE
## (DOMREL58)

I HEREBY CERTIFY that on this <u>30</u> day of <u>April</u>, <u>2019</u>, a copy

of the document(s) entitled <u>Motion for leave to extend time to responde to 2nd amended motion to intervene</u>
Title of Document(s)

was/were mailed, postage prepaid to:

<u>Steven S Biss</u>

**Opposing Party or His/Her Attorney**
<u>300 West Main Street, Suite 102</u>

**Address**
<u>Charlottesville,</u>          <u>VA</u>          <u>22903</u>
City                    State          Zip

<u>April 30, 2019</u>          <u>[signature]</u>
Date                    Signature

Page 1 of 1

DR58- Revised 13 February 2001

**Circuit Court for** _Eastern Division Virginia_      Case No. _3:17-cv-601-MHL_

City or County

Robert David Steele and Earth Intelligence Networ

| | | | | | |
|---|---|---|---|---|---|
| **Name** | | | | | |
| 11005 LANGTON ARMS CT | | | | | |
| **Street Address** | | | | **Apt.#** | |
| OAKTON, | VA | 22124 | ( 571 ) | 320-8573 | |
| **City** | **State** | **Zip Code** | **Area Code** | **Telephone** | |

VS.

Jason Goodman

| | | | | | |
|---|---|---|---|---|---|
| **Name** | | | | | |
| 252 7th avenue | | | | 6s | |
| **Street Address** | | | | **Apt.#** | |
| New York | NY | 10001 | (323 ) | 744-7594 | |
| **City** | **State** | **Zip Code** | **Area Code** | **Telephone** | |

<em>Plaintiff</em>                                                 <em>Defendant</em>

# CERTIFICATE OF SERVICE
## (DOMREL58)

       I HEREBY CERTIFY that on this 30      day of _April_            , _2019_ , a copy

of the document(s) entitled _Motion for leave to extend time to responde to 2nd amended motion to intervene_

Title of Document(s)

was/were mailed, postage prepaid to:

     Terry C. Frank

     **Opposing Party or His/Her Attorney**

     1021 E. Cary Street, 14th Floor

     **Address**

     Richmond             VA        23219

     **City**                               **State**                       **Zip**

          April 30, 2019                             

          **Date**                               **Signature**

DR58- Revised 13 February 2001

**Circuit Court for** <u>Eastern Division Virginia</u>                  **Case No.** <u>3:17-cv-601-MHL</u>
City or County

Robert David Steele and Earth Intelligence Networr

**Name**                                                                      **VS.**      Jason Goodman

11005 LANGTON ARMS CT                                                          **Name**

**Street Address**                                   **Apt.#**                 252 7th avenue                                              6s

OAKTON,        VA    22124    ( 571) 320-8573                                  **Street Address**                         **Apt.#**

**City**          **State**  **Zip Code**  **Area   Telephone**               New York       NY   10001   (323 ) 744-7594
                                            **Code**
                                                                              **City**         **State**  **Zip Code**  **Area   Telephone**
                                                                                                                        **Code**
***Plaintiff***                                                          ***Defendant***

## CERTIFICATE OF SERVICE
### (DOMREL58)

    I HEREBY CERTIFY that on this <u>30</u>  day of  <u>April</u> , <u>2019</u> , a copy

of the document(s) entitled <u>Motion for leave to extend time to responde to 2nd amended motion to intervene</u>
Title of Document(s)

was/were mailed, postage prepaid to:

    <u>Susan Lutzke</u>

    **Opposing Party or His/Her Attorney**

    <u>2608 Leisure Dr Unit B</u>

**Address**

    <u>Fort Collins</u>          CO      80525
<br>City                              State              Zip

    <u>April 30, 2019</u>
<br>    Date                   Signature

Page 1 of 1

DR58- Revised 13 February 2001