

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ROBERT DAVID STEELE,

Plaintiff,

-against-

JASON GOODMAN,

Defendant.

17-CV-00601-MHL

REPLY IN OPPOSITION TO
DEFENDANT'S OPPOSITION BY
INTERVENOR-APPLICANT

REPLY IN OPPOSITION TO DEFENDANT'S
OPPOSITION BY INTERVENOR-APPLICANT

1.     TO ALL PARTIES, the on-attorney intervenor-applicant now serves this REPLY IN

OPPOSITION s a response to ECF Doc. No. 106 [05/01/19].

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this 5th day

of May 2019.

D. Sm

*Pro Se* D. George Sweigert

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**
**Spoliation-notice@mailbox.org**

1

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................2

POINTS AND AUTHORITIES .......................................................................................3

PROCEDURAL HISTORY ............................................................................................6

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................7

BACKGROUND............................................................................................................7

LAW AND ARGUMENT ...............................................................................................13

CONCLUSION.............................................................................................................30

EXHIBITS ...................................................................................................................33

## POINTS AND AUTHORITIES

**Cases**

*Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207-09 (4th Cir. 2006) .................................. 29

*Brody ex. rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992) ......................................... 25

*Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) ........................................................... 29

*Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995) 25

*Foster v. Gueory*, 655 F.2d 1319, 1324-25 (D.C. Cir. 1981) ......................................... 28

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ............................... 29

*In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) ...................................................... 29

*Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308-09

    (8th Cir.1995) ..................................................................................... 19

*Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) ......................................... 23

*Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534 ................................................. 5

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 934 F.2d

    1092, 1095 (9th Cir. 1991) ................................................................ 23

*Pennsylvania v. President, United Sates of America*, 888 F.3d 52, 58-59 (3d Cir. 2018) 25

*Phillips v. CSX Transp., Inc.* 190 F,3d 285, 287 (4th Cir. 1999) ..................................... 15

*SOSA V DIRECT TV*, No. 04-55036 (9th Cir. 2006) ....................................................... 20

*Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) ................................... 23

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ................. 29

*Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002)...................................15

*United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1180-81 & n. 9 (3d Cir.1994).................19

*United States v. Amaral,* 488 F.2d 1148, 1152 (9th Cir. 1973)........................................13

*United States v. Basham,* 561 F.3 302, 325 (4th Cir. 2009)...........................................14

*United States v. Hassan,* 742 F.3d 104......................................................................5

*United States v. Union Electric,* 64 F.3d 1152.........................................................23

*Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir .1976)....................................24

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)...........................................15

**Statutes**

18 U.S.C. § 1001.............................................................................................14

42 U.S.C. § 1985(c) .........................................................................................24

**Rules**

Fed. R. Civ. Proc. 24(a)(2)..................................................................................9

Fed. R. Civ. Proc. Rule 24(a)(2) ..........................................................................11

Fed. R. Evid. 24(a) .........................................................................................29

Fed. R. Evid. 401 ...........................................................................................13

Fed. R. Evid. 403 ...........................................................................................13

Fed. R. Evid. 404(a).........................................................................................14

Fed. R. Evid. Rule 401 ......................................................................................13

Federal Rules of Evidence (Fed. R. Evid.) Rules 401, 402, 901(A), 902(11) and 902(12).............5

Local Civil Rule 7(K)(3)....................................................................................14

Rule 24(a)(2).........................................................................................18, 19

Rule 404(b) ...................................................................................................... 14

**Treatises**

*"Live From the Capitol Building"*, 6/13/2017 .............................................................. 20

*"Retired US Army Four Star General William F. Kernan Destroys Robert David Steele's*

   *Ridiculous Claims"*, May 1, 2019 ........................................................................ 12

*"Robert David Steele"*......................................................................................... 22

4 Candidates campaign for District 2 Councilmember Position Up For Election by Julia

   Trowbridge.................................................................................................... 8

Wright & Miller, Federal Prac. & Pro. § 1908.2 ....................................................... 28

## PROCEDURAL HISTORY

1.      Via ECF Doc. No. 66 [9/6/18] the Court posted an ENTRY OF DEFAULT stating that "the defendant, Susan A. Lutzke, has failed to appear..".

2.      Between May and June 2018 the movant filed seven (7) declarations with this Court (ECF.Nos 51, 54, 55, 56, 58, 59 & 60).

3.      Via ECF Doc. No. 81 [3/18/19] the movant advised the Court and Jason Goodman (Defendant) that: "4. Presently, all the attached exhibits attached to document number 78 are lacking authentication by written oath given under perjury that such exhibits and affidavits are accurate." The communication also addressed Federal Rules of Evidence (Fed. R. Evid.) Rules 401, 402, 901(A), 902(11) and 902(12). The document cites *Lorraine v. Markel American Ins. Co.,* 241 F.R.D. 534 and *United States v. Hassan,* 742 F.3d 104.

4.      Movant's (ECF Doc. No. 93 [4/11/2019]) AMENDED MOTION to Intervene by D. George Sweigert. (Attachments: # 1 Exhibit Cover Sheet, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 1C, # 5 Exhibit 1D, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6A, # 11 Exhibit 6B, # 12 Exhibit 6C, # 13 Exhibit 6D, # 14 Exhibit 7, # 15 Exhibit 8, # 16 Local Rule 83.1)

5.      By ORDER (ECF Doc. 105) the movant-undersigned is responding to the Response In Opposition by Jason Goodman (ECF Doc. 106). Goodman files his Response to undersigned's motion (ECF Doc. No. 93). Quoting ECF docket entry (in relevant part):

> ORDER - Sweigert SHALL file a reply to Goodman's response to the Amended Motion to Intervene by May 22, 2019. Additionally, also by May 22, 2019, Sweigert SHALL file a reply to each party's response to the Amended Motion to

Intervene. SEE ORDER FOR DETAILS. Signed by District Judge M. Hannah

Lauck on 05/01/2019.

6.      The above documents are cited and incorporated herein as if fully restated herein.

## INTRODUCTION AND SUMMARY OF ARGUMENT

7.      The movant now comes to seek intervention and reply to the Defendant's answer (Do.

No. 106) pursuant to the four-part test as articulated in Fed. R. Civ. Proc. Rule 24(a)(2).  The

following law and argument demonstrate that the movant (undersigned) as met this four-part test

for intervention.

8.      In lieu of complete status as an intervenor-plaintiff, and in the interests of judicial

efficiency, the movant is willing to be granted the status of **limited intervenor-plaintiff** for the

limited purposes of pursuing injunctive relief against the Defendant (Def) Goodman and his co-

conspirators.

## BACKGROUND

9.      As the Court will learn the Defendant (Def) fondly relies on acting as a dramatized

"victim' to engender sympathy from Crowdsource The Truth (CSTT) social media followers,

audience members, patrons, etc.  Attacking the movant has become an obsession for the Def.

10.     To illustrate.  As the Court is aware, the Def requested an undetermined delay in

answering the undersigned's motion citing interference with "religious observances" (ECF Doc.

No. 100 [4/25/2019]).  However, during the time April 19th to April 27th (religious holiday

period) the Def continued in a hearty fashion to produce **15** Patreon.Com video podcasts and

nine (9) YouTube.Com video podcasts.  Of these **24** productions, nine **(9)** featured content about

the undersigned (slanderous, libelous defamation *per se*).

7

## DEFENDANT CREATES TRI-PARTE CONSPIRACY NARRATIVE

11.     The Def has amplified his attacks on movant by creating a purported **tri-parte** conspiracy

involving the undersigned, the Plaintiff (Robert David Steele [RDS]) and Susan Homes, aka

Susan Lutzke, aka Queen Tut.  The newer **tri-parte** narrative is exposed widely on at least

twelve (12) social media **CSTT** controlled platforms in a widely disseminated manner.  The **tri-**

**parte** conspiracy assumes (as stated by Def) that the undersigned, Plaintiff (RDS) and Queen Tut

(Holmes) have been plotting a conspiracy against the Def for over a year.  The Def claims he has

*evidence* to demonstrate a **tri-parte** conspiracy.  This *evidence* is the gossipy speculations of

Queen Tut (Holmes/Lutzke) on a **CSTT** podcast video show.  **[EXHIBIT ONE]**

12.     As stated by Def in ECF Doc. No. 106:

> "Richards actual identity was not known to Goodman until it was revealed by
>
> Sweigert on Sweigert's You Tube channel as he describes in his Amended Motion
>
> to Intervene.  Sweigert has publicly stated this information was provided to him
>
> by co-Defendant Lutzke and Lutzke confirmed in a phone call she placed to
>
> Defendant on April 3, 2019 that she has conspired with Sweigert conducting
>
> research and cooperating to defeat Defendant in this instant lawsuit.  Lutzke
>
> claimed Sweigert "was working with Robert David Steele" and Sweigert offered
>
> to help her "work this case out".  [ECF Doc. No. 106-3, Exhibit C contains
>
> unauthenticated transcript]  Caveat: The transcript provided to the court of the
>
> Queen Tut phone call does not identify who is stating what; it reflects a continual
>
> word stream that apparently has not been proofed against the actual phone call to
>
> identify who said what.

13.     Lutzke apparently telephoned the Def (4/3/2019) to make the recording for broadcast about the **tri-parte** conspiracy (broadcast 4/30/2019) the day after Lutzke/Holmes lost an election in Fort Collins, Colorado for city council.

14.     Meanwhile, according to the local newspaper *Collegian* March 27, 2019 article "*4 Candidates campaign for District 2 Councilmember Position Up For Election* by Julia Trowbridge", "Holmes is running because her son was shot by a Colorado State University police officer July 2017 and aims to end police violence and corruption in Fort Collins...In her effort, Holmes has drafted legislation, called the "Jeremy Holmes Act," to mandate that unredacted body camera footage from an officer-involved homicide should be released within five days of an incident." The city election was held April 2, 2019 in Fort Collins, Colorado. Holmes/Luzke lost. Queen Tut (Holmes) telephoned the Def the net day.

*15.*     The video description of the Lutzke phone call production of 4/30/2019 is entitled, " *Susan "Queen Tut" Lutzke/Holmes Reveals David Sweigert – Robert David Steele Lawsuit Conspiracy",4/30/2019* (Internet URL: **Internet URL:**

**https://www.youtube.com/watch?v=WwyRPFhW-HE&t=6s**). The video description states, "Susan Lutzke aka Queen Tut is a horrible but frequent liar. She recently called me, revealing a long suspected conspiracy between her, D. George "Acton" Sweigert and Robert David Steele. While nothing she says can be believed at this point, how else would David Sweigert know the true identity of Oakey Marshall Richards were this particular admission not true?"

**[EXHIBIT ONE]**

16.     The actions of the Def to litigate these issues on his social media podcasts, rather than in this Court, has done nothing more than fortify the undersigned's right of intervention into this

lawsuit (perhaps as a limited scope intervenor-plaintiff for the purposes solely of injunctive relief) pursuant to Fed. R. Civ. Proc. 24(a)(2).

17.     From the very beginning of this litigation the Def is the person who marketed Queen Tut to prominence, displaying her "research" which promoted Robert David Steele to be a fraud, among other unfounded allegations.

18.     The Def's **tri-parte** conspiracy narrative is touted as "evidence based" as Queen Tut (Holmes) implicates the intervenor-applicant in a conspiracy with the Plaintiff.  [**EXHIBIT ONE**]  As the Court will learn, Rule 24(a)(2) recognizes different outcomes as a legitimate criterion to allow for intervention.  There is no motivation for the Plaintiff (RDS) to clear up this vicious rumor concerning the undersigned – which he could with a simple denial. Simultaneously, the Plaintiff (RDS) shows a remarkably lack of prosecution of this litigation, as the case laid dormant for almost five (5) months. See ECF Doc. No. 65 [9/3/2018], 66 [9/6/2018] and then 67 [1/29/2019] five (5) months later.

19.     The hallmark of CSTT smear campaigns are repetitive, recurring, repeating and open-ended slurs, insinuations, slander, trade libel and defamation *per se* based on si,ilair gossipy speculations as proffered by Queen Tut (Holmes).  The **tri-parte** narrative is yet another social media meme fashioned by the Def to embarrass, humiliate, and cause financial injury to the movant and worse.

20.     Within just the last few days, the Def has begun an incitement campaign to link the **tri-parte** conspiracy (an initiative of conspirators working closely with the Plaintiff – RDS) with dangerous *deep state* operatives.  In the absence of (1) denials from the Plaintiff (RDS), or (2) declarations from this Court to the contrary, the public will assume that the Def is telling the

truth (based on the '*evidence*" of Susan Holmes [Queen Tut]) and seek out the undersigned for

revenge, retribution and "*pay-back*". This is the end game of the Def.

HOW THE DEFENDANT USES GAS-LIGHTING

21.     This type of revenge attack is an *Information Operations* environment is known as "gas-

lighting" or "gas-lightening an audience". The Def has become a master of this war propaganda

technique and uses it against his rivals, enemies, and/or targets.  The distribution of slander,

falsehoods, slander, trade libel is legitimized in the minds of **CSTT** followers, patrons and

subscribers as the target (movant) is a deep state operative..  All based on a false narrative

constructed to drive action (Call To Action [**CTA**]).  Quoting Wikipedia (in relevant part):

> **Gaslighting**
>
> From Wikipedia, the free encyclopedia
>
> *For other uses, see Gaslight (disambiguation).*
>
> **Gaslighting** is a form of psychological manipulation that seeks to sow seeds of doubt in a
>
> targeted individual or in members of a targeted group, making them question their own
>
> memory, perception, and sanity. Using persistent denial, misdirection, contradiction, and
>
> lying, it attempts to destabilize the victim and delegitimize the victim's belief.[1][2]
>
> Instances may range from the denial by an abuser that previous abusive incidents ever
>
> occurred up to the staging of bizarre events by the abuser with the intention of
>
> disorienting the victim. The term owes its origin to the 1938 Patrick Hamilton play
>
> *Gaslight* and its 1940 and 1944 film adaptations, in which a man dims the gas lights in
>
> his home and then persuades his wife that she is imagining the change. The term has been

11

used in clinical and research literature,[3][4] as well as in political commentary.[5][6]

**[EXHIBIT TWO]**

22.     Gas-lighting techniques such as these represent a deception perpetrated on members of the general public. The Def, via the twelve (12) CSTT platforms, openly solicits monies from the public. These solicitations are based on the narrative that *"deep state operatives"* are trying to "shut down CSTT" because of the superb exposure of conspiracies by the Def and CSTT. This speaks to the need to protect the public from such deception and hoaxes, which provides yet another justification to intervenor pursuant to Fed. R. Civ. Proc. Rule 24(a)(2).  See public policy right of intervention.

23.     To understand the end-game of *gas-lighting* the Court should note the affidavit of the undersigned **[EXHIBIT THREE]**. This affidavit explains how Susan Holmes contacted the movant in early May 2018 to warn him of an organized plot coordinated by the Def to incite a CSTT follower to find the movant in Mount Shasta, California and cause grave bodily injury and/or death to movant. This matter was brought to the attention of the Police Chief of Mt. Shasta and the Sheriff serving Siskiyou County.

24.     In **EXHIBIT THREE** it is reported that "Queen Tut" explained to movant that the "STOP THE SACRIFICE" social media meme created in May 2018 by the Def and his side-kick Quinn Michaels [Korey Atkin] was a call to action (**CTA**). As explained by Susan Holmes, the end game was to locate the movant and direct a "gang stalking" team to meet movant (to include CSTT Facebook administrator "Casey Whalen", believed to be Joe Napoli (a previous friend of George Webb) of Orange County, California).

25.     Susan Holmes advised the movant that his life was in danger and he must take action to effectively employ counter-speech to neutralize the meme. Shortly thereafter the movant began

filing the declaration with the Court (ECF.Nos 51, 54, 55, 56, 58, 59 & 60 [incorporated as if fully restated herein]).  **[EXHIBIT THREE]**

26.     The Def has initiated a new social media meme – **Tri-Parte Conspiracy** -- which is identical in objectives as **STOP THE SACRIFICE**; to humiliate, embarrass and endanger the undersigned.  This time it is the unholy **tri-parte** conspiracy, which offers guilt by association.

27.     To illustrate, Def interviewed a retired Amy General (former commander of NATO) to inquire about a NATO publication on Open Source Intelligence, to which apparently Plaintiff-RDS claims to have written (at least 85% of said document).  As shown in **EXHIBIT FOUR** the Def displays the photograph of the undersigned in an authorized manner (without written permission).  In the context of the video, it is obvious that the Def is showing the photographs of the Plaintiff-RDS, Queen Tut (Ms. Holmes) and the undersigned for some type of confirmation of the **tri-parte** conspiracy.  See YouTube production, entitled, *"Retired US Army Four Star General William F. Kernan Destroys Robert David Steele's Ridiculous Claims"*, May 1, 2019 (Internet URL: https://www.youtube.com/watch?v=aUeNLLWikiM ).  Video description: "Streamed live on May 1, 2019

> Robert David Steele has boasted of "writing 85%" of the NATO Open Source
> Intelligence Handbook. However, the retired Four Star U.S. Army General who oversaw
> the project at SACLANT says Robert David Steele's claim is not only false, but
> ridiculous. '

## LAW AND ARGUMENT

### ESTABLISHING ADMISSABILITY OF SO-CALLED EVIDENCE

28.     As a preliminary matter the undersigned DENIES all the inflammatory conclusions presented by the Defendant (Def) in ECF Doc. 106.  It appears that the Def is attempting to introduce prejudicial allegations and claims of evidence that do not meet the criteria of the Federal Rules of Evidence (Fed. R. Evid.) Rules 401 and 403.

29.     Def must demonstrate that his claims as to his "evidence" comply with Fed. R. Evid. Rule 401.  Rule 401 posits that evidence is deemed relevant only if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining action."  Accordingly, "only facts having a rational probative value are admissible," i.e., only where it is "[e]vidence which has any tendency in reason to prove any material fact[.]" *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973).  The requirement of materiality is unqualified – the proposed evidence must go to "a matter properly provable in the determination of the action." Fed. R. Evid. 401 advisory committee's notes to 1972 Proposed Rules.

30.     This frame work (F.R.E.) invalidates the gossipy speculation type of *"evidence"* proffered by Queen Tut to the Def, which amounts to slurs, character assassinations and more outlandish allegations to support a call to action (**CTA**).

31.     These evidentiary issues and rules were explained to the Def by letter from the movant. ECF Doc. No. 81 [3/18/19].  In open defiance to the rules of evidence, in his response (ECF Doc. No. 106) the Def attempts to slur the undersigned with nothing more than inflammatory speculations and prejudicial allegations.

32.     The Def's claims that the Queen Tut (Holmes) gossipy speculation is some kind of evidence of a **tri-parte** conspiracy stands Fed. R. Evid. 403 on its head.  This rule authorizes a trial court to "exclude relevant evidence if its probative value is substantially outweighed by a

14

danger of ... unfair prejudice or needlessly presenting cumulative evidence"). Queen Tut's slurs are not evidence, they are unfairly prejudicial – even if true (which they are not).

33. "Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Basham,* 561 F.3 302, 325 (4th Cir. 2009) at 327.

34. The above is amplified by Fed. R. Evid. 404(a) which provides a general prohibition of character evidence to prove an action. The exception to admissibility under Rule 404(b) prohibits proof of a defendant's [movant] character to show conduct in conformity therewith because evidence of a person's character supplies an inadequate causal link between it and the specific conduct sought to be established.

### PROCEDURAL FLAWS

35. The entire document presented by the Def (ECF Doc. 106) fails to conform to Local Civil Rule 7(K)(3), which states in relevant part:

> (3) The *pro se* party must identify all facts stated by the moving party with which the *pro se* party disagrees and must set forth the *pro se* party's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury); and

36. The Def's response in opposition (ECF Doc. No. 106) is simply a jumble of irrelevancies that do not cite: (1) any specific facts in contention, (2) any statutes, laws, regulations, policies, [except 18 U.S.C. § 1001 when Def accuses movant of lying to government agencies], etc. and (3) contains conclusionary speculations and rhetoric. In this context Fed. R. Civ. Proc 8(a)(2) provides guidance, this rule "requires more than labels and conclusions...". The Def does not

provide any foundation to support his conclusions and speculations in ECF Doc. No. 106 [response].

37.     This Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

38.     The non-moving opposing party (Def) should produce evidence that goes beyond "[c]onclusory or speculative allegations" and relies on more than "a mere scintilla of evidence" (quoting *Phillips v. CSX Transp., Inc.* 190 F,3d 285, 287 (4th Cir. 1999) (internal quotation marks omitted). *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002).

## DEFENDANT'S AVOIDANCE OF FACT-BASED EVIDENCE

39.     Without explanation the Def describes **Exhibit A** (ECF Doc. 106) (the undersigned's publication of the Port of Charleston incident) as a "bloated propaganda pamphlet.". (pg.4, ECF Doc. 106). Def then compares the **EXHIBIT A** report on the Port of Charleston bomb hoax to Jussie Smollet and the Chicago Police Department.

40.     To correct the Def, the "port hoax" euphemism was a term coined by the mainstream press in a widespread manner – not the movant-intervenor (as claimed by Def).

- *False claims lead to real problems, Conspiracy theory shuts down port*, 6/20/2017, The Journal Gazette ( http://journalgazette.net/news/local/frank-gray/20170620/false-claims-lead-to-real-problems ). "A man going by George Webb went onto a website he runs and claimed that a source had told him there was a <u>dirty bomb</u> planted in a major American city, possibly Memphis. He said the source had gotten his information from other "sources.""

16

- *How a conspiracy theory closed part of a major US seaport*, 6/16/2017, CNN ( https://money.cnn.com/2017/06/16/media/port-of-charleston-dirty-bomb-conspiracy-theory-shutdown/index.html ) " Webb's allegations were broadcast on "Crowdsource the Truth," a conspiracy theory YouTube channel with a relatively modest 11,000 subscribers. ... After Webb mentioned the "Memphis Maersk," the audience quickly sprung into collective action through a "Crowdsource the Truth" Facebook group and the live comments section that accompanied the YouTube broadcast. . . . About an hour later, Webb's onscreen counterpart, Jason Goodman, who runs "Crowdsource the Truth," called a number he said was the Coast Guard while still live streaming. Goodman identified himself to the person on the other end of the line as a "reporter with an independent news agency," and began telling them about the alleged threat before he was interrupted. "Is this the 'dirty bomb?'" the person asked — someone had already called it in — perhaps someone watching the live stream. "

- *How a Conspiracy Theorist's Call About a Dirty Bomb Shut Down Port of a Port*, 6/15/2017, New York Times ( https://www.nytimes.com/2017/06/15/us/port-dirty-bomb-south-carolina.html ) " The episode began around 8 p.m. on Wednesday when the Coast Guard said it received two phone calls about a potential dirty bomb — a crude explosive rigged to spray radioactive material — aboard the container ship Maersk Memphis, Lt. James B. Zorn, a Coast Guard spokesman, said on Thursday. "

<u>IRRELEVANT FAMILY RELATIONSHIPS TWISTED TO FIT DEF'S NARRATIVE</u>

41.    On pg. 5 of ECF Doc. 106, the Def assumes that there is significance in the fact that the undersigned and "George Webb" Sweigert are brothers – there isn't. As Def states, "The

17

information presented to Goodman about a deadly alleged public threat in Charleston SC was provided by Webb, Sweigert's brother and frequent collaborator".

42.     The last phrase *"frequent collaborator"* is untrue, foundationless and designed to prejudice the undersigned unfairly. As the undersigned has stated publicly – many times – he may speak to his brother 3-4 times a year via telephone and perhaps exchange 7-8 e-mail messages per year. The implication of "frequent collaborator" is denied by the undersigned.

43.     It was the Def's sole decision (as a business owner of Multimedia Systems Designs, Inc. , a New York corporation) to broadcast George Webb. The movant had no knowledge of the events leading up to the broadcasting of the Port of Charleston warnings (as pointed at in the Def's EXHIBIT A, Goodman requested the 2,000+ individuals watching his live stream to Tweet (Twitter) "DIRTY BOMB ... MEMPHIS MAERSK .... PLEASE INVESTIGATE" directed at the Seventh District Coast Headquarters (Incident Command) Twitter account. This was the decision of the Def and no one else.

## DEFENDANT'S JUMBLE OF IRRELEVANCES

44.     A typical example of the Def's prejudicial slurs occurs on pg. 6, ECF Doc. 106, ".. maniacal, incessant and vexatious litigation of this matter..". Def then accuses the undersigned of some kind of forum shopping and relitigating. However, prior to any formal litigation commenced on the part of the movant (June 14, 2018 in Charleston, S.C.) the undersigned filed seven (7) declarations in **this** Court (ECF.Nos 51, 54, 55, 56, 58, 59 & 60 [incorporated as if fully restated herein]). In many respects, this Court is the court of original jurisdiction in the matter of the Def's defamation *pro se*, slander and trade libel, as it has been alleged that the Def conducts these actions against the undersigned in retaliation for filing the seven (7) declarations.

45.     For unknown reasons, in his reply the Def addresses a lawsuit filed by Congressman Devin Nunes against Twitter (counsel for the Plaintiff is apparently also the counsel for the "Twitter lawsuit"). No matter, this information has nothing to do with the case at bar. Def attempts to create an "alignment with Plaintiff in motive and actions is further evidence by Plaintiff' recent association with U.S. Congressman Devin Nunes...". What exactly is the DEF trying to say?

46.     What the Def describes on pgs. 8 -9 (ECF Doc. 106) is a history of his own poor management of the Crowdsource The Truth (CSTT)"truth engine" and associated personalities (George Webb, Rock Hudson). The issues between the Def and George Webb, or the Plaintiff, have nothing to do with the undersigned. These are troublesome problems of the Def's own making.

47.     The Def, a self-avowed 9/11 conspiracy theorist, believes that the undersigned "conspired together with other parties to this legal action, including co-Defendant Lutzke and Plaintiff Steele both directly and via third party intermediaries for more than one year in an on-going fashion". If true, such an assertion supports the intervention of the undersigned so that a proper discovery investigation can restore the integrity of the Court which has been tarnished by the Def's repeated public statements "this is a fake lawsuit" (see #fakelawsuit Twitter hashtag).

48.     The statements by Susan Holmes aka Susan Lutzke on the Def's April 30th, 2019 video podcast regarding "Dave is working with Robert David Steele" are untrue, meritless, unfounded and at best are mere speculation and guess work by Holmes/Lutzke. But, nevertheless such claims require adjudication to protect the movant's interests (see Rule 24(a)(2)). The movant simply cannot allow the *hanging chad* of the **tri-parte conspiracy** to serve as on-going innuendo

used by the Def to further destroy the business, technical trade and career of the movant (see defamation *per se*).

49.      The failure of prosecution by the Plaintiff (five (5) months of inactivity between ECF Doc. Nos. 65 and 67) indicates **RDS** will not adequately protect the movant's interests. The Plaintiff could easily deny this **tri-parte** conspiracy – but hasn't. Therefore, the movant must protect his own interests pursuant to Rule 24(a)(2). Inadequate representation by existing parties allows for intervention under Rule 24(a)(2). *Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308-09 (8th Cir.1995) (placing on intervenor the burden of showing that its interest is not adequately protected by existing parties). See also *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1180-81 & n. 9 (3d Cir.1994).

50.      As the Def is fond of using Queen Tut's video podcast comments (recorded call video 4/30/2019) as the evidentiary cornerstone of the **tri-parte** conspiracy the undersigned has a right to defend himself. Already (in a matter of a few days) the Def has once again shown a complete lack of respect for the judicial processes of this Court, which affords a fair hearing of the facts. Choosing, in the alternative, to widely disseminate the **tri-parte** conspiracy theory (based on "*evidence*") to assert that the undersigned has been plotting with the Plaintiff against the Def. This type of speculation is unfounded, meritless and nothing more than continued slander, trade libel and defamation *per se*. Such narratives permanently injure the business, technical trade and career of the movant. The Court should stop the Def's conduct as the Plaintiff could care less about this situation.

## DEF'S CONFUSION ABOUT TORTIOUS INTERFERENCE VS. LITIGATION PRIVILEGE.

51.      Def is fond of citing the undersigned's communications to the RedBubble merchandising web-site (coffee cups, tote bags, T-shirts) as tortious interference. However, RedBubble had

published, on Def's orders, photographs with the likeness of the undersigned in a straight jacket

with a dunce cap in an unauthorized manner. Demands conforming to the practices of litigation

privilege (as articulated in the Ninth Circuit) were made upon RedBubble by the movant to cease

and desist (C&D) the availability of the unauthorized likeness of the undersigned on coffee cups,

tote bags and T-shirts. As RedBubble is in New Zealand it would be difficult to define what

litigation privilege practices might be in play regarding a foreign corporation. However, in the

case of Jack Conte of Patreon.Com (a California corporation) the prevailing rules for litigation

privilege are articulated in *SOSA V DIRECT TV*, No. 04-55036 (9th Cir. 2006) were followed by

the movant. The Def's spurious allegations of "tortious interference" do not involve entities

within the Commonwealth of Virginia where rules regarding litigations privilege may differ

between the sister Circuit Courts. This would be a thorny issue for this Court to adjudicate – but,

it is just mere vague speculation by the Def – so there is no need for such a review.

### DEFENDANT'S INTRODUCTION TO INTERVENOR-APPLICANT

52.     In a video production featuring "George Webb" and produced by the Def on June 13th,

2017 the undersigned's brother begins to discuss the undersigned with the Def (on a live

YouTube broadcast). Broadcast is entitled, *"Live From the Capitol Building"*, 6/13/2017 [day

before Port of Charleston dirty bomb hoax]. (Internet URL:

https://www.youtube.com/watch?v=0yF5a6Wmecw )

53.     George Webb begins at timemark 17:50 to state, "Well, first on my brother [undersigned]

I definitely think he has a full deck of cards. He is smarter than I am. But, there is a few jokers

thrown in there. Because he likes to be the joker. He's been that way all my life, so it is nothing

new. Uh, you now he worked for N.S.A. he worked for C.I.A. .. he worked for .. uh .. uh.. you

know ..a lot of the different agencies .." [See **EXHIBIT FIVE**]

21

54.     Then at 18:09 the Def interrupts and chimes in, "Wait, wait, wait. Back-up, back-up. Your brother did what?". George Webb responds, "My brother worked at N.S.A. and I believe he was in Annapolis and worked in Army intelligence .. he worked .."

55.     Then at 18:22, the Def interrupts again, "I did not know any of this!". Webb states, "Iran-Contra. You know he's got quite a ... he was shot down .. you know .. in Iran-Contra .. I mean he is no spring chicken. He was Air Force .."

56.     Then at 18:36 Def (excitedly) interrupts, " This is all true what your telling us right now? Your brother was involved in Iran-Contra?" George Webb responds, "Yeah, yeah. You know, Delta Force came and got him. They went down in a .. they did a lot of cross border work and ..ummm .. in El Salvador and Honduras and Guatemala."

57.     This represents the moment that the Def seized on these disparaging narratives and has relied upon them to slander the undersigned ever since. The Def has never ceased with nefarious sounding conspiracy theories that involve the undersigned, which are supposedly backed up by "*evidence*". (See DECLARATIONS May – June 2018, (ECF.Nos 51, 54, 55, 56, 58, 59 & 60 [incorporated as if fully restated herein]). The Def continues (to this day) to broadcast and distribute video podcasts that implicant the undersigned in Iran-Contra, although the undersigned has advised the Def of the proper facts on a dozen occasions.

58.     The foregoing is a prima facia case that speaks to the wholesale reckless disregard, or willful blindness to the truth, that is exhibited by the Def in his video podcasts, which allegedly are based on evidence. Caveat: one the one hand Def calls Queen Tut a miserable liar, on the other hand Def uses her "*testimony*" against movant. This speaks to regardless disregard to the truth and willful blindness.

59.     Regarding the often-stated claim that the undersigned has accused the Def of being some

type of Mossad operative (foreign intelligence organization) [pg.10, ECF No. 106]. The Def has

never provided evidence to support this allegation as it is untrue. The undersigned has

circumspectly and intentionally avoided any insinuations concerning the Def's religious heritage

or links to such intelligence groups. The undersigned has never made statements to the effect

that the Def is a "Mossad agent" or "paid by the Mossad". To refresh the Def's memory, it was

the video podcast featuring defendant Trish Negron, the Plaintiff, George Webb and the Def

(June 13, 2017) when Goodman reported there were persons accusing him of being in the

Mossad (at apprx. Time mark 3:13). [Attached as **EXHIBIT SIX**].

60.     In Def's video production, entitled "*Robert David Steele*", 6/13/2017, Def admits it is

other people that accuse him and George Webb of being Mossad agents. At time-mark 3:39 the

Def states, "a lot of people have accused myself and George of being Mossad agents…". The

movant denies that he ever said, reported or broadcast that the Def was a "Mossad agent".

**[EXHIBIT SIX]**.

<u>INTERVENTION SUPPORTED BY LINKAGE OF MOVANT CONSPIRACY</u>

61.     As the Court has no doubt observed in ECF No. 106, the Def is fond of repetitious,

recurring and repeating statements to apply ritualistic defamation *per se* to the undersigned. One

of these false narratives is that the undersigned has conspired with the Plaintiff in some manner

to harm the Def. To be blunt, none of this is true and is an unfounded, meritless and frivolous

claim. This claim is pushed by the Def from the Holmes/Lutzke performance in a 4/30/2019

video with the Def (phone call) in which she has accused the undersigned of "working with

Robert David Steele". This statement is false, devoid of truth, meritless and denied by the

undersigned. Based upon his past pattern and practice, the Def will now rebroadcast several

dozen times the claim that he has "evidence" [Holmes/Lutzke] that the undersigned conspired with the Plaintiff. Therefore, the outcome of this instant lawsuit has a DIRECT impact on the reputation, business and technical trade of the undersigned.

62.     This Court has the inherent power to inquire into the outlandish claims that bring great discredit upon the administration and efficiency of justice. The integrity of this Court is tarnished if the Court allows litigants to launch public smear campaigns in an extra-judicial fashion (under the unsuspecting eyes of the Court).

## *THE FOUR-PART INTEREST TEST OF RULE 24(a)(2)*

63.     Rule 24(a)(2) permits intervention as of right if: (1) the application is timely; (2) the party has a recognized interest in seeking intervention, (3) that interest might be impaired by the disposition of the litigation; (4) the applicant's interests are not adequately represented by the existing parties. See *United States v. Union Electric*, 64 F.3d 1152 at 1160. This four-part test is addressed in Houston Gen. Ins. V. Moore, 193 F.3d 838, 839 (4th Cir. 1999).

TIMELINESS OF MOVANT

64.     In analyzing timeliness, the "focus is on the date the person attempting to intervene should have been aware his `interest[s] would no longer be protected adequately by the parties,' rather than the date the person learned of the litigation." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,* 934 F.2d 1092, 1095 (9th Cir. 1991) (quoting *Legal Aid Soc'y v. Dunlop,* 618 F.2d 48, 50 (9th Cir. 1980)).

65.     "Mere passage of time is but one factor to be considered in light of all the circumstances" when considering an application for either permissive intervention or intervention by right. *Spring Constr. Co. v. Harris,* 614 F.2d 374, 377 (4th Cir. 1980).

DIFFERENTIATED INTERESTS OF PLAINTIFF AND MOVANT

24

66.     The United States Supreme Court has held that an applicant must make only a minimum

showing that the parties in the action may not represent adequately the applicant's interest to

fulfill the requirements of the Rule 24(a)(2) four-part test.

67.     For example, there is no motivation on the part of Plaintiff (RDS) to clear up the **tri-
parte** conspiracy rumor concerning the undersigned – which he could with a simple denial.  As

noted in *interest prong* no. (4) there is an "adversity of interest, collusion, or nonfeasance." (quoting

*Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir .1976) ) between the Plaintiff's claims

against the Def and the movant's objectives.  The goals of the Plaintiff and movant are not the

same.

68.     This is illustrated by the movant pursuing claims consistent with 42 U.S.C. § 1985(c)

against the Def and a third party (David Charles Hawkins of Surrey, British Columbia, Canada)

for civil conspiracy (ECF Doc. No. 93).

69.     The undersigned relies on his reputation as a Certified Ethical Hacker, Certified

Information Systems Security Professional and Certified Information Systems Auditor (CEH,

CISSP, CISA).  The Plaintiff is a public figure celebrity who publishes books and regularly

visiting radio talk shows and YouTube news shows.  This is not the case for the movant.

<u>LACK OF INTEREST BY PLAINTIFF</u>

70.     The Court should recall that the movant depends on his information technology

certifications as a Certified Ethical Hacker, Certified Information Systems Security Professional

and Certified Information Security Auditor [**CEH, CISSP, CISA**] for employment within the

government and defense contracting industry.  This is not the case with the Plaintiff – who, like

the Def, is a social media celebrity that receives monies from books, YouTube shows,

appearances, etc.  The movant is not a YouTube celebrity and does not receive monies from

conspiracy books, interviews, donations or podcast shows. One of the key complaints of the Def is that Plaintiff's #UNRIG is a charity organization which raised considerable funds during a CSTT broadcast on 6/13/2017. This is not the case with the movant.

71.    The lack of prosecution by the Plaintiff (RDS) shows a casual foot-dragging, as this case laid dormant for almost five (5) months. See ECF Doc. No. 65 [9/3/2018], 66 [9/6/2018] and then 67 [1/29/2019] five (5) months later. Again, the movant is differentiated from Plaintiff as movant has been aggressively fighting to have slanderous, libelous and defamatory *per se* commentary removed form the social media empire of CSTT. The Plaintiff is not engaged in such activities to remove offending content.

72.    The Plaintiff does not have the incentive to prosecute the action vigorously. The applicant is meeting his requirements for the <u>fourth part</u> of the test by showing that the parties in the action do not have interest identical to the applicant's interest, "an applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without" the applicant. *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995).

<u>INTERVENOR-APPLICANT HAS SUFFICIENT INTEREST THAT COULD BE</u>
<u>IMPAIRED BY DISPOSITION OF SUIT.</u>

73.    Intervenor-applicant may intervene as of right is showing a "cognizable legal interest" that "may be affected or impaired [] as a practical manner by the disposition of the action." *Pennsylvania v. President, United Sates of America*, 888 F.3d 52, 58-59 (3d Cir. 2018). Intervention is appropriate when there is a"tangible threat to the applicant's legal interest." *Brody ex. rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992) at 1123.

74.    This lawsuit threatens the ability of the movant to maintain his technical, trade, business and professional reputation. In four (4) months this case will be two (2) years

old and has barely moved out of the pleading stages. The languishing activity of this lawsuit allows the Def to continue his non-stop industrial level smear campaign against the movant to invade his property rights in a good technical, trade and business reputation. These professional attacks, trade libel and slanderous allegations of the Def are not directed at the Plaintiff – but, directed at the movant.

75.     A ruling in favor of the Plaintiff will not help the movant at all. In fact, the Plaintiff may have grown weary of this litigation and may opt to a stipulated settlement with the Def at almost any time – leaving the movant out in the cold as the case is dismissed.

PUBLIC POLICY BASED INTERVENTION

76.     There are three factors for a court to consider when an intervenor-applicant claims a public policy rationale for intervention: (1) efficiency of adjudication, (2) the interests of the parts in the litigation, (3) the effect the outcome of the action might have on public policy.

77.     While the Plaintiff drags his feet, the public is still susceptible to the onslaught of deception pushed by the Def. Public policy issues intersect with this case. Public policy does not favor the continuing drum-beat of **Info Ops** styled smear campaigns aimed at critical infrastructure [**C.I.**] (Federal Bridge Certification Authority [**FBCA**] network, private companies and institutions interconnected with the **FBCA network**, and the undersigned who is a Subject Matter Expert (SME) on issues such as C.I. protection and the **FBCA network**. Again, the Plaintiff has no interest in these issues.

78.     The Court would be well advised to consider the "public interest" purpose of the movant's Motion to Intervene (ECF Doc. No. 93). The Def has demonstrated by his Port of Charleston dirty bomb hoax that he and Crowdsource the Truth are a public menace. The

27

subsequent two years since that incident have only confirmed that the Def engages in deception, collection of monies form the public under false pretenses, wide-scale defamation *per se*, slander, trade libel etc. In fact, the Def is skilled at recruiting despicable slander mongers like Queen Tut (Holmes) and David Charles Hawkins of Surrey, British Columbia, Canada and Queen Tut – aka Susan Holmes and/or Susan Luzke – Fort Collins, Colorado to enhance and amplify smears. While this litigation quietly stagnates (without the movant) innocent corporations, boards of directors, government employees and private parties will endure the non-stope defamation and slander of the Def and Hawkins conspiracy theories (see SERCO, Inc., Lockheed-Marin, National Center for Missing and Exploited Children, EnTrust Technologies, N.M. Rothchild, the national Science Foundation, to name a few). By attempting to intervene in this case at bar, the movant is attempting to reform the slander machine known as Crowdsource The Truth (CSTT) and protect innocent members of the public that must deal with the onslaught of the Def's hoaxes, fake news, trade libel, slander, etc.

79.     The movant is a party that has personally experienced the slanderous and libelous abuse of the Def and his side-kicks. The movant intervention will help others break free from the ritualistic defamation practiced by the Def on innocents. Plaintiff cannot fully represent the interests of the movant-intervenor because he will advance an interest in litigation that is significantly different from, and possibly adverse to, that of the movant-intervenor.

### *THE IMPACT OF STARE DECISIS*

80.     Without some type of remedial gag order to squelch the constant defamation *per se,* slander and trade libel broadcasts of the Def, the Court should strongly consider the interests of the intervenor-applicant in the *stare decisis* impact a decision in this case may have on a companion case (if filled by the undersigned). Certain circumstances may entitle a party to

intervene as of right to protect its interests that would be affected by the *stare decisis* effects of a decision by this Court. Indeed, "[t]he central purpose of the 1966 amendment [to rule 24] was to allow intervention by those who might be practically disadvantages by the disposition of the action and to repudiate the view, expressed in authoritative cases under the former rule, that intervention must be limited to those who would be legally bound as a matter of res judicata." Wright & Miller, Federal Prac. & Pro. § 1908.2 (footnotes omitted). *Stare decisis* may justify either intervention as of right or permissive intervention.

81.     The Court should imagine the undersigned litigating a cousin lawsuit on a parallel track in another district court. This case and the cousin lawsuit will essentially be litigating identical issues – namely the industrial grade slander and smear machine operated by the Def. Intervention is proper where intervenors and plaintiffs "have each contended that their respective rights under Title VII and under 1981 have been violated by the same practices of the defendants"); *Foster v. Gueory,* 655 F.2d 1319, 1324-25 (D.C. Cir. 1981).

**_THE UNDERSIGNED SHOULD BE GRANTED THE OPPORTUNITY TO PROTECT HIS INTERESTS._**

82.     Assuming *arguendo*, that two cousin lawsuits proceed (the present lawsuit and a new lawsuit filed by the undersigned) the remarkably similar legal issues – vital to both cases – will be bifurcated with the practical effect of clogging the already limited resources of the federal courts. The movant may have to serve additional parties, like the Plaintiff, Queen Tut, the Def, etc.

83.     The Court should consider that the movant (intervenor) has demonstrated that he has Article III standing – which is not a requirement for intervention (unless relief sought is significantly different from the original plaintiff). The movant has demonstrated his standing in

this litigation. The subject of this litigation is germane to the movant's interests. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977).

### *WISDOM OF THE FOURTH CIRCUIT TO PROVE FOR APPEAL*

*Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207-09 (4th Cir. 2006) (recognizing settled "principle that denial of a motion to intervene is an appealable final order").

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a putative intervenor from becoming a party in any respect, the order is subject to immediate review.")

### CONCLUSION

In this Circuit, a court shall grant intervention as of right if an intervenor makes a timely motion and can show (1) an interest in the subject matter of the action, (2) that the protection of this interest would be impaired by the disposition of this action, (2) that the protection of this interest would be impaired by the disposition of this action, and (3) that the interest is not adequately represented by existing parties to the litigation. See Fed. R. Evid. 24(a); *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) ("must show interest, impairment of interest, and inadequate representation"); Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (citing Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976). These requirements should be interpreted broadly, as "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).

30

The Def fails to provide any argument and/or legal points in his response [ECF Doc. No. 106], and alternatively relies on a smoke screen of slurs aimed at the undersigned's character with nothing more than conclusionary and vague statements.

The movant's claims have questions of fact and law in common with those already before this Court. The Plaintiff is not an adequate representative of the movant's claims and interests.

It is the responsibility of this Court to bring back judicial integrity to this litigation. This cannot be accomplished while the Def is free to roam the Internet spewing another unfounded and meritless conspiracy theory to harm and injure interested parties (and potential litigants) to this litigation.

This Court should consider allowing the intervenor-applicant to proceed as a limited intervenor-plaintiff for the purposes of seeking injunctive relief. In this manner, there will be no direct impact to the tempo of this litigation due to the undersigned's participation in the lawsuit.

This Court has the inherent power to inquire into the outlandish claims that bring great discredit upon the administration and efficiency of justice. The integrity of this Court is tarnished if the Court allows litigants to launch public smear campaigns in an extra-judicial fashion (under the unsuspecting eyes of the Court).

The United States Supreme Court has held that an applicant must make only a minimum showing that the parties in the action may not represent adequately the applicant's interest to fulfill the requirements of the Rule 24(a)(2) four-part test. The applicant has met this burden. The movant (undersigned) has a direct, substantial, and legally protectable interest in the outcome of this litigation.

Respectfully submitted under oath that the foregoing is true and accurate.  Signed this 5th day of

May, 2019.

_____/

D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85221

Spoliation-notice@mailbox.org

**EXHIBITS**

The undersigned certifies under penalties of perjury that the attached materials are true and accurate copies of the original source instances.

I hereby certify that the attached are true and accurate copies of the original source documents or Internet screen shots.

Certified this 5th day of May, 2019.



**EXHIBIT ONE**

**Internet URL:  https://www.youtube.com/watch?v=WwyRPFhW-HE&t=6s**



Susan "Queen Tut" Lutzke/Holmes Reveals David Sweigert – Robert David Steele Lawsuit Conspiracy

**Streamed live 22 hours ago**
**Susan Lutzke aka Susan Holmes aka Queen Tut is a horrible but frequent liar. She recently called me, revealing a long suspected conspiracy between her, D. George "Acton" Sweigert and Robert David Steele. While nothing she says can be believed at this point, how else would David Sweigert know the true identity of Oakey Marshall Richards were this particular admission not true?**

**The sinister plans of these malicious social engineers are being revealed before our eyes as the fraudulent and vexatious lawsuit brought by Steele continues to crumble.**

**EXHIBIT TWO**

**Internet URL: https://en.wikipedia.org/wiki/Gaslighting**

Not logged in  Talk  Contributions  Create account  Log in

Article  Talk

Read  Edit  View history  | Search Wikipedia

**WIKIPEDIA**
The Free Encyclopedia

Main page
Contents
Featured content
Current events
Random article
Donate to Wikipedia
Wikipedia store

Interaction

Help
About Wikipedia
Community portal

# Gaslighting

From Wikipedia, the free encyclopedia

*For other uses, see Gaslight (disambiguation)*

**Gaslighting** is a form of psychological manipulation that seeks to sow seeds of doubt in a targeted individual or in members of a targeted group, making them question their own memory, perception, and sanity. Using persistent denial, misdirection, contradiction, and lying, it attempts to destabilize the victim and delegitimize the victim's belief.[1][2]

Instances may range from the denial by an abuser that previous abusive incidents ever occurred up to the staging of bizarre events by the abuser with the intention of disorienting the victim. The term owes its origin to the 1938 Patrick Hamilton play *Gaslight* and its 1940 and 1944 film adaptations, in which a man aims the gas lights in his home and then persuades his wife that she is imagining the change. The term has been used in clinical and research literature,[3][4] as well as in political commentary.[5][6]

**Contents** [hide]

1 Etymology

2 Usage

## EXHIBIT THREE

**THE FOLLOWING AFFADAVITT is provided under the penalties of perjury.** Sometime
in early to middle May 2018 the undersigned was contacted via Twitter direct message by the
personage known as "Queen Tut" who operated an account "INTJ Fraud". Queen Tut was a
stage name of Susan Holmes/Susan A. Lutzke. In these communications Ms. Holmes warned
me that I was the targeted individual of a social media meme campaign designed to discover my
whereabouts for the purposes of third parties causing great bodily injury or death.

Ms. Holmes impressed upon me that it was imperative that immediate action be taken to
neutralize the meme "STOP THE SACRIFICE" of June 14, 2018 (the one-year anniversary of
the Port of Charleston dirty bomb hoax).

I took the information of Ms. Holmes (Queen Tut) very seriously and immediately began posting
a series of declarations to the federal court serving the Eastern District of Virginia in the lawsuit
Robert David Steele v. Jason Goodman. See ECF. Nos 51, 54, 55, 56, 58, 59 & 60.

During time the undersigned watched YouTube videos with Jason Goodman speaking with
Quinn Michaels (aka Korey Atkin) illegally camping in the Mount Shasta, California vicinity.

The undersigned has substantial contacts in this community and relies on this area as a vacation
residence and a conducive environment to pursue spiritual practices. Quinn distributed at least a
dozen video podcasts on his personal YouTube channel advising the public that a satanic cult
was planning a child sacrifice on June 14, 2018 and that the undersigned was coordinating and
protecting the individuals involved. At one-point Quinn began interviewing people that knew
the undersigned.

This included a wildland fire-fighter named "Kyle" who the undersigned had befriend a year early. The undersigned provided "Kyle" a field pack, $100 cash, a pre-paid disposable phone and several personal items. This act is merely a reflection of the brotherhood of veterans watching out for each other (as "Kyle" was a U.S. Marine Corp veteran that served in Iraq).

The undersigned states that during this time the business owners of the postal service box (originally listed on my declarations in the Steele v. Goodman court case) reported that a man with one eye-brow was visiting the postal counter and inquiring who owned the box in Greenbrae, Calif. 94904. Quinn Michaels produced at least two dozen videos where he appears with one eye brow.

I hereby attest that the foregoing statement is true. Sworn this 5th day of May, 2019.

D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85221

Spoliation-notice@mailbox.org

**EXHIBIT FOUR**

**Internet URL: https://www.youtube.com/watch?v=aUeNLLWikiM**



Retired US Army Four Star General William F. Kernan Destroys Rob



Jason Goodman
✓ Subscribed   🔔 81K

5,168 views

➕ Add to   ↗ Share   ••• More            👍 280  👎 15

Streamed live 22 hours ago
Robert David Steele has boasted of "writing 85%" of the NATO Open Source Intelligence
Handbook. However, the retired Four Star U.S. Army General who oversaw the project at
SACLANT says Robert David Steele's claim is not only false, but ridiculous.

A third individual, David George Sweigert, is a US Air Force veteran and former employee of numer interest including Booz Allen Hamilton and Entrust, a spin-off of the now defunct Nortell.  Sweigert i: proclaimed "ethical hacker" and expert in Public Private Key Infrastructure Certification Authorizes s Federal Bridge.



▶  ▶❘  🔊  8:12 / 13:39

## Retired US Army Four Star General William F. Kernan Destroys Rob

Jason Goodman

✓ Subscribed   🔔  81K

5,168 views

➕ Add to   ↪ Share   ••• More        👍 280   👎 15

A third individual, David George Sweigert, is a US Air Force veteran and former employee of numer interest including Booz Allen Hamilton and Entrust, a spin-off of the now defunct Nortell.  Sweigert i: proclaimed "ethical hacker" and expert in Public Private Key Infrastructure Certification Authorizes s Federal Bridge.



Sweigert claims to have worked as a contractor to various government agencies including DHS and volved in a Qui Tam law suit in the 1990s that involved an unsuccessful pro se suit against the CI woke a DOJ criminal investigation which resulted in the termination and incarceration of CIA em mello and a related CIA contract employee.

**EXHIBIT FIVE**

**Internet URL: https://www.youtube.com/watch?v=0yF5a6Wmecw**



# Live From the Capitol Building



Jason Goodman

✓ Subscribed 🔔

8,837 views

➕ ➤ •••

👍 343   👎 63

**Streamed live on Jun 13, 2017**

40

## EXHIBIT SIX

### Internet URL:  https://www.youtube.com/watch?v=hMJoAO5OZY8



have accused myself and George of being
Mossad agents and not speaking about

▶  ▶│  🔊   3:43 / 51:30                    CC  ⚙  ⬜  ⛶

## Robert David Steele

Jason Goodman
✓ Subscribed  🔔 81K

➕ Add to   ↪ Share   ••• More

58,838 views

👍 1,391   👎 168

**Streamed live on Jun 13, 2017**
**We have officially withdrawn our endorsement of Robert David Steele and his organization**
**due to his disingenuous behavior and numerous complaints from the Crowdsource**
**community.**

**Become a sponsor of Crowdsource the Truth and support the effort**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| ROBERT DAVID STEELE, | 17-CV-00601-MHL |
| Plaintiff, | |
| -against- | LOCAL RULE 83.1(M) |
| JASON GOODMAN, | CERTIFICATION |
| Defendant. | |

## LOCAL RULE 83.1(M) CERTIFICATION


1.      **GHOST WRITING CERTIFICATION.  I (the undersigned) declare under penalty of perjury that: NO ATTORNEY HAS PREPARED, OR ASSISTED IN THE PREPARTION OF THE <u>REPLY IN OPPOSITION.</u>**

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this 5th day of May 2019.



*Pro Se* D. George Sweigert

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**
**Spoliation-notice@mailbox.org**

5×5×19

RECEIVED
MAY - 8 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

1

It is hereby certified that the accompanying materials have been placed in the U.S. Postal Service

with First Class mail postage affixed and addressed to the following parties:

| | | |
|---|---|---|
| **Clerk of the Court** | **Jason Goodman** | **Susan Homes,** |
| **U.S. District Court** | **252 7th Avenue** | **aka Susan A. Lutzke** |
| **701 E. Broad St.** | **Suite 6-S** | **2608 Leisure Drive** |
| **Richmond, VA 23219** | **New York, NY 10001** | **Apt. B** |
| | | **Fort Collins, CO 80525** |

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this 5th day

of May 2019.

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**

5 × 5 × 19