

MAY 1 3 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| ROBERT DAVID STEELE, | |
| Plaintiff, | **17-CV-00601-MHL** |
| -against- | **ANSWER TO DEFENDANT** |
| JASON GOODMAN, | **NEGRON'S RESPONSE IN** |
| | **OPPOSITION BY INTERVENOR-** |
| Defendant. | **APPLICANT** |

**ANSWER TO DEFENDANT NEGRON'S RESPONSE IN OPPOSITION BY**
**INTERVENOR-APPLICANT**

1.     **TO ALL PARTIES,** the non-attorney intervenor-applicant now serves this REPLY IN

OPPOSITION s a response to ECF Doc. No. 104 [04/30/19].

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this **10**

day of May 2019.

*Pro Se* D. George Sweigert

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**
**Spoliation-notice@mailbox.org**

1

## TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................................2

POINTS AND AUTHORITIES..................................................................................................3

PROCEDURAL HISTORY .........................................................................................................6

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................7

BACKGROUND ...........................................................................................................................7

LAW AND ARGUMENT............................................................................................................13

CONCLUSION ............................................................................................................................22

EXHIBITS ....................................................................................................................................25

2

## POINTS AND AUTHORITIES

**Cases**

*Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207-09 (4th Cir. 2006)................................... 21

*Dimond v. Dist. Of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) ............................................... 17

*Dimond*, 792 F.2d at 192 ..................................................................................................... 17

*Donaldson v. United States*, 400 U.S. 517 (1971) ......................................................... 13

*Donaldson v. United States*, 400 US 517, 531 (1971) .................................................. 14

*Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)........................................................... 22

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995)................ 16

*Foster v. Gueory*, 655 F.2d 1319, 1324-25 (D.C. Cir. 1981)........................................... 20

*Francis v. Chamber of Commerce of the United States*, 481 F2d 192, 195 n 7 (4th Cir 1973) 14, 15

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).......................................... 16

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)................................................. 21

*In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) ...................................................... 22

*Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534...................................................... 5

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.* 72 F.3d 361, 366 – 67 (3rd Cir.

    1995).................................................................................................................................. 17

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ................................... 21

*Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)..................................................... 14

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972)............................................. 15

*Trbovich v. United Mine Workers*, 404 U.S. at 538 ....................................................... 17

*Trbovich*, 404 U.S. at 538 n.10.................................................................................................. 17

*Trbovich*, 404 U.S. at 538 n.10 (1972)....................................................................................... 17

*United States v. Hassan*, 742 F.3d 104 ...................................................................................... 5

*Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) ...................................... 14

## Statutes

42 U.S.C. § 1985(c)................................................................................................................ 15, 16

Article III ........................................................................................................................ 13, 15, 16

Virginia Code Ann. § 18.2-152.7 .............................................................................................. 16

Virginia Code Ann. § 8.01-45 ................................................................................................... 16

Virginia Code Ann. §§ 18.2-499 and 18.2-500 ............................................................................ 16

## Rules

Code of Conduct for United States Judges.................................................................................. 12

Fed. R. Civ. Proc. Rule 24....................................................................................................... 13

Fed. R. Civ. Proc. Rule 24(a)(2)................................................................................................ 13

Fed. R. Evid. 24(a) ................................................................................................................... 22

Federal Rules of Evidence (Fed. R. Evid.) Rules 401, 402, 901(A), 902(11) and 902(12) .............. 5

Rule 24(a)(2) ........................................................................................................................... 15

Rule 24(b)................................................................................................................................ 13

under Rule 24(a)....................................................................................................................... 14

## Treatises

89 Harv L Rev at 1316 ............................................................................................................ 18

Krislo, 72 Yale L J at 721......................................................................................................... 18

Restatement (Second) of Torts, section 570 (Tent. Draft No. 20, 1974) ........................................ 15

Weinstein, 13 U.C. Davis L Rev at 232 ...................................................................................... 18

Weinstein, 13 UC Davis L Rev at 232 ......................................................................................... 18

Wright & Miller, Federal Prac. & Pro. § 1908.2.......................................................................... 20

## PROCEDURAL HISTORY

1.     Via ECF Doc. No. 39 [04/13/18] Plaintiff filed an Amended Compliant.

2.     Between May and June, 2018 the Movant filed seven (7) declarations with this Court
(ECF.Nos 51, 54, 55, 56, 58, 59 & 60).

3.     Via ECF Doc. No. 66 [9/6/18] the Court posted an ENTRY OF DEFAULT stating that
"the defendant, Susan A. Lutzke, has failed to appear..".

4.     Via ECF Doc. No. 81 [3/18/19] the Movant advised the Court and Jason Goodman
(Defendant) that: "4. Presently, all the attached exhibits attached to document number 78 are
lacking authentication by written oath given under perjury that such exhibits and affidavits are
accurate." The communication also addressed Federal Rules of Evidence (Fed. R. Evid.) Rules
401, 402, 901(A), 902(11) and 902(12). The document cites *Lorraine v. Markel American Ins.
Co.,* 241 F.R.D. 534 and *United States v. Hassan,* 742 F.3d 104.

5.     Movant's (ECF Doc. No. 93 [4/11/2019]) AMENDED MOTION to Intervene by D.
George Sweigert. (Attachments: # 1 Exhibit Cover Sheet, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4
Exhibit 1C, # 5 Exhibit 1D, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit
6A, # 11 Exhibit 6B, # 12 Exhibit 6C, # 13 Exhibit 6D, # 14 Exhibit 7, # 15 Exhibit 8, # 16 Local
Rule 83.1)

6.     By ORDER (ECF Doc. 105) the Movant-undersigned is responding to the Response In
Opposition by Jason Goodman (ECF Doc. 104). Goodman files his Response to undersigned's
motion (ECF Doc. No. 93). Quoting ECF docket entry (in relevant part):

> ORDER - Sweigert SHALL file a reply to Goodman's response to the Amended
> Motion to Intervene by May 22, 2019. Additionally, also by May 22, 2019,

> Sweigert SHALL file a reply to each party's response to the Amended Motion to
> Intervene. SEE ORDER FOR DETAILS. Signed by District Judge M. Hannah
> Lauck on 05/01/2019.

7.      The undersigned filed a REPLY (ECF Doc. No 110) to Def Goodman's OPPOSITION
(ECF Doc. No. 106). ECF Doc. No. 110 contained Exhibit Three which the alleged plan of the
Def Goodman to have the undersigned seriously hurt or killed.

8.      The above documents are cited and incorporated herein as if fully restated herein.

## INTRODUCTION AND SUMMARY OF ARGUMENT

9.      The Movant now comes to seek intervention and reply to the Defendant's answer (Do. No.
104) pursuant to the four-part test as articulated in Fed. R. Civ. Proc. Rule 24(a)(2). The
following law and argument demonstrate that the Movant (undersigned) as met this four-part test
for intervention.

10.     In lieu of complete status as an intervenor-plaintiff, and in the interests of judicial
efficiency, the Movant is willing to be granted the status of **limited intervenor-plaintiff** for the
limited purposes of pursuing injunctive relief against the Defendant (Def) Goodman and his co-
conspirators.

## BACKGROUND

### LINKAGE OF INTERVENOR
### APPLICANT WITH PARTIES

11.     On June 13, 2017 (a day before the Port of Charleston dirty bomb hoax) Plaintiff [RDS]
was anxious to have the undersigned's brother ("George Webb") join the Plaintiff's UNRIG

campaign for the purposes of raising money via a cross country tour in a recreational vehicle (RV). George Webb displays a certain social media charisma that induces people to donate money to causes (see $38,000 raised for former F.B.I. agent Robyn Gritz for *"legal expenses"* via GoFundMe.com).

12.     On 6/15/2017 Plaintiff [RDS] published a blog entitled, "Robert Steele with George Webb: #UNRIG UPDATE 2: Continue to Support George Webb – the Facts of the Matter" (Internet URL:  https://phibetaiota.net/2017/06/robert-steele-with-george-webb-unrig/ ). **[EXHIBIT ONE]**. RDS made it very clear in several blog posts that he appreciated "George Webb" (undersigned's brother); "My door is always open for George. I consider George an unwitting (innocent) patsy in this dirty bomb matter." **[EXHIBIT ONE]**. Caveat: Mr. George Webb Sweigert is mentioned on page 28, ECF Doc. No. 39 [Amended Complaint].

13.     On page 64 of ECF Doc. No. 39 [Amended Complaint] the *"Deep State Dunces Attack George Webb and CSTT – Bitcoin Challenge Response,"* 11/27/2017. (Internet URL: https://www.youtube.com/watch?v=GNxCk6nqFJg ) **[EXHIBIT TWO]** The focus of the video is the display of a tri-parte conspiracy of the undersigned, the Plaintiff and Manuel Chavez, III (who Plaintiff's attorney assisted with legal advice and apparent arrangement to appear on "Manny's" YouTube show). See footnote 14:

> "14 The other persons depicted in the picture are Manuel Chavez (the pig) and Dave
>
> Acton (in the straight-jacket). Dave Acton a/k/a David Sweigert is the brother of George
>
> Webb. [https://steemit.com/youtube/@reallygraceful/navigating-the-tangled-webb-or-part-
>
> one-george-webb-and-dave-acton-reveal-they-re-brothers]. "George Webb" is an
>
> individual who appears with Goodman and Negron in several of the videos at issue in this
>
> acrtion. [sic] ECF Doc. No. 65. " **[EXHIBIT THREE]**

8

14.     Manual Chavez, III aka "DEFANGO" received a draft electronic defamation complaint (file) to be printed and filed in the Arizona state courts. The ghost-writing author for this Arizona complaint for DEFANGO was the attorney for Plaintiff-RDS. Additionally, the Plaintiff-RDS appeared in person twice on a DEFANGO YouTube show. **[EXHIBIT FOUR]**

15.     In a bizarre twist, Defango calls the Plaintiff's counsel (Mr. Biss, esq.) discusses a situation on a YouTube livestream. The subject of the call was about a fellow YouTube channel named "UNIROCK". When Biss answers the phone, Manual Chavez III identifies himself as "This is manual Chavez". Biss replied "Hi, many". **[EXHIBIT FIVE]**

16.     Concerning Queen Tut. It is instructive to note that at page 67 of ECF Doc. 39, it is stated that the apparent conspiracy between Def Goodman and Def Lutzke (Queen Tut) ended sometime around December 27, 2017. Obviously, Def Goodman has sought to revive this conspiracy with fresh attacks on the undersigned in cooperation with Holmes/Lutzke (Queen Tut).

17.     As explained in Exhibit Three to ECF Doc. No. 110, Queen Tut advised that the undersigned's life "was in grave danger". Shortly thereafter, between May and June 2018, the Movant filed seven (7) declarations with this Court (ECF.Nos 51, 54, 55, 56, 58, 59 & 60). These declarations were filed as a protective measure to obstruct Def Goodman's plan to injure or kill the undersigned. **[EXHIBIT SIX]**

18.     It is instructive to note that the same behavior complained about by the Plaintiff in ECF Doc. No. 39 is now applied by Def Goodman to the undersigned. Terminology used in Amended Complaint (ECF Doc. No. 39) parallels fresh allegations of a conspiracy involving the Movant: use of crowdstalking trolls (page 30), publishing false information from fake troll accounts (page 31) for the purpose of reputational damage of the target (Plaintiff and/or undersigned).

19.     It is interesting to note page 35 of the Amended Complaint (ECF Doc. 39) which includes a long description of a video featuring both Def Goodman and Queen Tut (Holmes/Lutzke), which speaks to their relationship (Goodman/Lutzke).  This prior relationship appears to be the driver behind the recent series of smear videos directed at the undersigned featuring Goodman and Queen Tut (Holmes) on 4/30/2019.

20.     As stated by Def Goodman, "[a]mong the co-conspirators are Intervenor Applicant's [undersigned] brother George Webb Sweigert, **Manual Chavez III aka Defango (Chavez),** ... co-Defendant Susan Lutzke aka Susan Holmes aka Queen Tut (Lutzke)...".  [page 10, ECF Doc. No. 106] [emphasis added].

21.     Again, Def Goodman claims, "[i]n fact, the only people claiming the incident was a hoax are Plaintiff, Intervenor Applicant and their co-conspirators." [page 5 of ECF Doc. No. 106].  See, "Lutzke claimed Sweigert was "working with Robert David Steele" and Sweigert offered to help her "work this case out." [page 7, ECF Doc. No. 106].

22.     Clearly, Def Goodman believes there is a conspiracy involving parties to this lawsuit.  In fact, Goodman believes that counsel Biss and DEFANGO (Chavez) played a role in this conspiracy.  This is amplified by Def Goodman's Exhibit 15 [ECF Doc. No. 78-15], quoting in relevant part (page 7 of 7):

> "7/7/17  Robert Steele  To: George Webb.  George, for information.  A massive law suit is about to be filed against Jason Goodman by a lawyer who specializes in defamation cases.  Manny is the one who will be in front, my case will simply be in support."

23.     This supports the unpleasant thought that Plaintiff's counsel Biss ghost wrote a Complaint for Manual Chavez III [Manny] to be filed as a *pro se* litigant in the courts of the State of Arizona.

24.     The foregoing indicates the existence of several interlocking relationships that have

nothing to do with the undersigned.  For example, (1) Goodman and Lutzke, (2) Plaintiff and

DEFANGO, (3) Plaintiff's counsel and DEFANGO, etc.  Yet, Def Goodman is pushing a new

social media narrative (4/30/2019 video see **[EXHIBIT SEVEN]**) implicating the undersigned in

a conspiracy with the Plaintiff.  To amplify an apparent contradiction, Def Goodman admits he

communicated with Lutzke in the preparation of legal materials for this Court.  **[EXHIBIT**

**EIGHT]**.

25.     Unfortunately, the foregoing represents potential breaches of professional ethics for some

of the counsel involved in this case.  Further, the integrity of this very Court is tarnished by the

amount of behind the scenes "monkey business" involving DEFANGO, Biss and Queen Tut.  In

this regard the comments of the Plaintiff are of concern as he stated in a message to George Webb

that **"Manny is the one who will be in front, my case will simply be in support."**  The close

relationship between "Manny" [DEFANGO] and the Plaintiff is also seen in **EXHIBIT ONE**

commentary; quoted in relevant part:

> "I was just told that another hidden agenda item with Jason is that I did an interview with
>
> a guy named Manny, this was a favor to a friend that wanted to help a young talent get
>
> started, and completely unbeknownst to me, have now been told that Manny did a really
>
> ugly hateful takedown of George Webb that I do not endorse and Jason (that I somewhat
>
> sympathize with)."

26.     In ECF Doc. No. 109 Def Goodman has accused the Movant of felony crimes, and a

conspiracy with the Plaintiff – RDS and Queen Tut; quoting in relevant part:

> On page 5 and 6, Goodman declares, "Plaintiff and Intervenor Applicant, by their own
>
> admission, are both retired members of the military and clandestine services with

specialties in deceptive psychological and information/disinformation

operations. Defendant has repeated the allegation that both parties are cooperating to use

this instant legal action as a burdensome weapon of harassment against Defendant and to

chill Defendant's journalistic investigations into alleged criminal activity. Plaintiff has

asserted that "no evidence" exists to support Defendant's claim."

And

"It is Defendant's belief that the coordinated effort between the Plaintiff, Intervenor

Applicant, Holmes and third parties has been carefully crafted in a specific manner so as

to circumvent standard civil legal procedures and has been executed in absence of any

overt, discoverable communications. Coded messages sent in public via steganographic

techniques, including YouTube videos and social media comments and the use of third-

party intermediaries, deliberately avoid leaving a discoverable trail of evidence and

sufficiently frustrate civil legal procedures."

27.      Because of incredible allegations like the above, like it or not, this lawsuit receives

extensive coverage in social media circles. As an example, the web-site "Tracking the Leopard

Meroz" publishes a commentary about this web-site. Additionally, Def Goodman is constantly

hyping this lawsuit as a "fake lawsuit" a dozen times a week on the CSTT social media empire (at

least twelve (12) properties and/or platforms). **[EXHIBIT SEVEN]**.

28.      Discussions about this lawsuit is watched by literally hundreds of interested parties via

social media. Recently, a YouTube video that discusses this lawsuit accumulated almost 18,500

views **[EXHIBIT NINE]**. The video shows "Titus Frost", who is one of the four (4) non-parties

drawn into this lawsuit in recent months by Goodman's "co-conspirators and felony crimes"

narrative. In fact, Def Goodman casts a very wide net over Internet competitors and rivals, labeling these individuals as "co-conspirators". [ECF Doc. No. 109].

> "Defendant has alleged a conspiracy between Plaintiff, Intervenor Applicant, co-Defendant Queen Tut aka Susan Lutzke aka Susan Holmes (herein after HOLMES) and **non-party co-conspirators.**" [ECF Doc. No. 109]

29.    This indicates that this lawsuit has become a matter of public interest. Therefore, the tarnished reputation of the Court is showcased in a widely disseminated manner on social media. This is amplified by the following:

> **Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary**
>
> An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
>
> **COMMENTARY**
>
> Deference to the judgments and rulings of courts depends on public confidence in the integrity and independence of judges.
>
> (Internet URL: https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges#b )
>
> Code of Conduct for United States Judges

## LAW AND ARGUMENT

30.     To sum up the issues of Fed. R. Civ. Proc. Rule 24 intervention the Court can rely on three

words: **interest, impairment, and inadequate representation** (the three "I"s).  By evaluating

the Movant's arguments against the three **"I"**s the Court will easily be able to see the scales tip in

the Movant's favor.  Additionally, Rule 24(b) allows intervention upon the court's discretion

"when an applicant's claim or defense and the main action have a question of law or fact in

common."  Rule 24(b).

INTERVENOR'S SIGNIFICANT

PROTECTABLE INTEREST

31.     The Supreme Court has determined that the Rule 24(a) requirement of an "interest relating

to property or transaction which is the subject of the action" means a "significantly protectable

interest."  *Donaldson v. United States*, 400 U.S. 517 (1971).

32.     As discussed at length in ECF Doc. No. 93 (Amended Motion), the Movant-undersigned

has a vital significant property interest in his technical, trade, business and professional reputation

(see Article III standing).  As shown in the Amended Motion Movant holds the Certified Ethical

Hacker, Certified Information Systems Security Professional and Certified Information Systems

Auditor credentials **[CEH, CISSP, CISA]**.

33.     Unfounded and meritless accusations of professional malpractice and misconduct by Def

Goodman are a direct threat to the Movant's ability to perform his duties as an independent

auditor free from conflicts of interests, etc.  Def Goodman's slander, defamation and trade libel

(defamation *per se*) are a direct threat to the Movant and meet the criteria for establishing an

Article III injury.  This is a protectable interest in logic and law and represents a *litigable interest*

under Fed. R. Civ. Proc. Rule 24(a)(2).  A "litigable" interest is one that would support an

independent lawsuit, which in-turn requires constitutional standing (see Movant's Article III

14

arguments in Amended Motion). In fact, the Movant's ability to bring an independent lawsuit provides one measure of the significance of the Movant's interest under Rule 24(a). See *Francis v. Chamber of Commerce of the United States*, 481 F2d 192, 195 n 7 (4th Cir 1973). ("impair or impede its ability to protect its interests").

34.     The Federal Rules do not define what "interest" is required to support intervention of right. In the Fourth Circuit, for an interest to be "protectable" it must be a "significantly protectable interest." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (citing *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). These requirements should be interpreted broadly, as "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process.: *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).

35.     According to the Supreme Court, an intervenor's interest must be one that is "significantly protectable". *Donaldson v. United States*, 400 US 517, 531 (1971).

36.     Here, unquestionably, Movat-undersigned has a significant protectable interest in the subject matter of this lawsuit and the behind the scenes court "monkey business" that has spilled over into the Movant's business, trade, technical and professional reputation. Accordingly, Movant "stands to lose" more of his professional reputation as Def Goodman acts out in what is seemingly a consequence free environment. Fearing nothing of consequence from this Court, Def Goodman is emboldened to act as if he has complete immunity in the matter of destroying the business, technical, trade and professional reputation of the undersigned. Meanwhile, the Plaintiff seeks no injunctive relief or gag orders to quash the Def Goodman's toxic social media slander against him (**RDS**). The casual foot-dragging and lack of prosecution by the Plaintiff and his counsel underscores the Movant's concern. The Movant is militant about his business and

professional reputation and is attempting to quash the Crowdsource The Truth (CSTT)

defamation *per se* and trade libel in an active legal manner in this lawsuit – unlike the Plaintiff.

37.     In *Trbovich v. United Mine Workers of America,* 404 U.S. 528 (1972), the Court allowed

intervention of a union leader even though a statute gave the Secretary of labor an exclusive right

to bring suit, reasoning that intervention in a lawsuit poses different concerns from initiation of a

lawsuit. *Id* at 536 and 7.  Initiating a suit imposes much greater burdens on the court and the

defendant, and raises Article III concerns.  See text at notes 52-55.

38.     The presence of a litigable interest is especially significant in statutory cases (as the

Movant raised allegations pursuant to 42 U.S.C. § 1985(c)) because Congress's creation of a

cause of action indicates its intent that the courts protect that interest.

39.     Additionally, as the Def Goodman has accused the undersigned of felony crimes the

Movant's rights are fortified.  In tort law, slanderous publication imputing to another a criminal

offense subjects the defamer to liability without proof of special harm.  Restatement (Second) of

Torts, section 570 (Tent. Draft No. 20, 1974).

DISPOSITION OF THIS CASE

COULD IMPAIR MOVANT FURTHER

40.     The shorthand standard *"impair or impede its ability to protect its interests"* was

articulated in *Francis v. Chamber of Commerce of the United States*, 481 F2d 192, 195 n 7 (4th Cir

1973) and is helpful here.

41.     To intervene as a matter of right under Rule 24(a)(2) an applicant must claim an interest

the protection of which may, as a practical manner, be impaired or impeded if the lawsuit

proceeds without the applicant. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489,

1493 (9th Cir. 1995). See also, *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 731 (D.C. Cir. 2003).

42.     At the outset, the Movant now has defamation and libel claims against Queen Tut due to the 4/30/2019 CSTT video podcast. [**EXHIBIT SEVEN**]. Movant can now bring legal action against Queen Tut. However, prosecution of separate legal actions against the Defendants Goodman and Lutzke/Holmes (Queen Tut) would create risk of inconsistent or varying adjudications which would also establish incompatible standards of conduct for the Defendants. This is an impairment of Movant's rights.

43.     Meanwhile, Movant's vital property interest in a good business, technical and trade reputation and subsequent CSTT (Goodman) and Queen Tut slander and defamation is supported by Article III standing, 42 U.S.C. § 1985(c) and various Commonwealth of Virginia defamation *per se* laws and jurisprudence (see Amended Motion [ECF Doc. No. 93] which has articulated several Commonwealth of Virginia laws that provide the undersigned with legally protected interests ( violation of Virginia Code Ann. § 8.01-45), business conspiracy (in violation of Virginia Code Ann. §§ 18.2-499 and 18.2-500), common law conspiracy, intentional infliction of emotional distress, personal trespass by computer (in violation of Virginia Code Ann. § 18.2-152.7) and computer harassment (in violation of Virginia Code Ann. § 18.2-152.7:1). At the present time, Movant's interests in these legally protected areas are hindered, obstructed and impeded by the care-free foot-dragging of the Plaintiff (who stated this instant lawsuit was secondary to "Manny in the lead" with the never filed ghost written lawsuit by Plaintiff's counsel for Manuel Chavez III). It seems very unlikely that Plaintiff RDS will protect the Movant's interests in this regard.

17

44.     Further, the Movant may win award monies and compensatory damages from the Def Goodman.  When an intervenor and a party both have an interest in the same limited source of funds, this sufficiently shows competing interests such that intervention of right should be allowed.  See *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.* 72 F.3d 361, 366 – 67 (3rd Cir. 1995).  Movant meets this "minimal burden" of showing theres a possibility his interests will not be adequately represented by the Plaintiff – RDS.

EXISTING PARTIES DO NOT ADEQUATELY

REPRESENT MOVANT'S INTERESTS

45.     *Trbovich v. United Mine Workers,* 404 U.S. at 538, is the only Supreme Court decision to squarely address the requirement of inadequate representation under Rule 24(a).  The Court noted that an applicant need only show that "representation of his interest *'may be'* inadequate; and the burden of making that showing should be treated as minimal." *Id.* At 538 n 10.  The court reasoned that potential conflicting duties could be imposed on the Secretary of Labor.

46.     It is well established that, to show an absence of adequate representation by existing parties, an applicant for intervention need only show that their representation of interests "*may be*" inadequate, not that their representation will in fact be inadequate.  *Trbovich,* 404 U.S. at 538 n.10 (1972); *Dimond v. Dist. Of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986).  This burden has been described as "minimal" (*Trbovich,* 404 U.S. at 538 n.10) and "not onerous" (*Dimond,* 792 F.2d at 192).

47.     Similarly, the Movant can hardly trust the care-free foot dragging Plaintiff's counsel to watch out for the Movant's interests.  Indeed, Plaintiff-RDS could care less about the destruction to the professional reputation of the brother of UNRIG's potential money-maker George Webb.

Obviously, the Plaintiff is biased to the undersigned's brother George Webb – and not the undersigned. In addition, the thorny issue of behind the scenes "monkey business" casts a shadow on the Plaintiff's abilities to fairly represent the interests of the undersigned.

ECONOMY RATIONALE AND PUBLIC POLICY

SUPPORTS LITIGATING COMON INTERESTS

48.    This case represents widespread public interest issues about the use of social media memes, smear campaigns and reputation destruction campaigns. The Movant has a legitimate interest in ensuring that the Court consider the full impact of its decision. The legitimacy of judicial action depends partly on the appearance of fairness. "[J]udicial ation only achieves [] legitimacy by responding to . . . the demand for justice in our society." 89 Harv L Rev at 1316 (cited in note 4). Judicial decisions that affect widespread interests may be more likely to be iewed as illegitimate when courts fail to provide persones affected by the decision with a right to be heard "before their fate is sealed". Weinstein, 13 U.C. Davis L Rev at 232. Giving outsiders a sense of participation in the process is important; "[a]ccess to the legal process . . . is a logical extension of realistic awareness of law as a process of social choice and policy making." Krislo, 72 Yale L J at 721 (cited in note 14). See also Weinstein, 13 UC Davis L Rev at 232.

49.    There are three factors for a court to consider when an intervenor-applicant claims a public policy rationale for intervention: (1) efficiency of adjudication, (2) the interests of the parts in the litigation, (3) the effect the outcome of the action might have on public policy.

50.    While the Plaintiff drags his feet, the public is still susceptible to the onslaught of deception pushed by the Def. Public policy issues intersect with this case. Public policy does not favor the continuing drum-beat of **Info Ops** styled smear campaigns aimed at critical infrastructure [**C.I.**] (Federal Bridge Certification Authority [**FBCA**] network, private companies

19

and institutions interconnected with the **FBCA network**, and the undersigned who is a Subject

Matter Expert (SME) on issues such as C.I. protection and the **FBCA network**. Again, the

Plaintiff has no interest in these issues.

51.     The Court would be well advised to consider the "public interest" purpose of the Movant's

Motion to Intervene (ECF Doc. No. 93). The Def has demonstrated by his Port of Charleston

dirty bomb hoax that he and Crowdsource the Truth are a public menace. The subsequent two

years since that incident have only confirmed that the Def engages in deception, collection of

monies form the public under false pretenses, wide-scale defamation *per se*, slander, trade libel

etc. In fact, the Def is skilled at recruiting despicable slander mongers like Queen Tut (Holmes)

and David Charles Hawkins of Surrey, British Columbia, Canada and Queen Tut – aka Susan

Holmes and/or Susan Luzke – Fort Collins, Colorado to enhance and amplify smears. While this

litigation quietly stagnates (without the Movant) innocent corporations, boards of directors,

government employees and private parties will endure the non-stope defamation and slander of

the Def and Hawkins conspiracy theories (see SERCO, Inc., Lockheed-Marin, National Center for

Missing and Exploited Children, EnTrust Technologies, N.M. Rothchild, the national Science

Foundation, to name a few). By attempting to intervene in this case at bar, the Movant is

attempting to reform the slander machine known as Crowdsource The Truth (CSTT) and protect

innocent members of the public that must deal with the onslaught of the Def's hoaxes, fake news,

trade libel, slander, etc.

52.     The Movant is a party that has personally experienced the slanderous and libelous abuse

of the Def and his side-kicks. The Movant intervention will help others break free from the

ritualistic defamation practiced by the Def on innocents. Plaintiff cannot fully represent the

interests of the Movant-intervenor because he will advance an interest in litigation that is significantly different from, and possibly adverse to, that of the Movant-intervenor.

## THE IMPACT OF STARE DECISIS

53.    Without some type of remedial gag order to squelch the constant defamation *per se*, slander and trade libel broadcasts of the Def, the Court should strongly consider the interests of the intervenor-applicant in the *stare decisis* impact a decision in this case may have on a companion case (if filled by the undersigned). Certain circumstances may entitle a party to intervene as of right to protect its interests that would be affected by the *stare decisis* effects of a decision by this Court. Indeed, "[t]he central purpose of the 1966 amendment [to rule 24] was to allow intervention by those who might be practically disadvantages by the disposition of the action and to repudiate the view, expressed in authoritative cases under the former rule, that intervention must be limited to those who would be legally bound as a matter of res judicata." Wright & Miller, Federal Prac. & Pro. § 1908.2 (footnotes omitted). *Stare decisis* may justify either intervention as of right or permissive intervention.

54.    The Court should imagine the undersigned litigating a cousin lawsuit on a parallel track in another district court. This case and the cousin lawsuit will essentially be litigating identical issues – namely the industrial grade slander and smear machine operated by the Def. Intervention is proper where intervenors and plaintiffs "have each contended that their respective rights under Title VII and under 1981 have been violated by the same practices of the defendants"); *Foster v. Gueory,* 655 F.2d 1319, 1324-25 (D.C. Cir. 1981).

## THE UNDERSIGNED SHOULD BE GRANTED THE OPPORTUNITY TO PROTECT HIS INTERESTS.

55.     Assuming *arguendo*, that two cousin lawsuits proceed (the present lawsuit and a new

lawsuit filed by the undersigned) the remarkably similar legal issues – vital to both cases – will be

bifurcated with the practical effect of clogging the already limited resources of the federal courts.

The Movant may have to serve additional parties, like the Plaintiff, Queen Tut, the Def, etc.

56.     The Court should consider that the Movant (intervenor) has demonstrated that he has

Article III standing – which is not a requirement for intervention (unless relief sought is

significantly different from the original plaintiff). The Movant has demonstrated his standing in

this litigation. The subject of this litigation is germane to the Movant's interests. *Hunt v. Wash.*

*State Apple Advert. Comm'n*, 432 U.S. 333 (1977).

WISDOM OF THE FOURTH

CIRCUIT TO PROVIDE FOR APPEAL

*Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207-09 (4th Cir. 2006) (recognizing settled

"principle that denial of a motion to intervene is an appealable final order").

*Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 377 (1987) ("[W]hen an order

prevents a putative intervenor from becoming a party in any respect, the order is subject to

immediate review.")

**CONCLUSION**

In this Circuit, a court shall grant intervention as of right if an intervenor makes a timely motion

and can show (1) an interest in the subject matter of the action, (2) that the protection of this

interest would be impaired by the disposition of this action, (2) that the protection of this interest

would be impaired by the disposition of this action, and (3) that the interest is not adequately

22

represented by existing parties to the litigation.  See Fed. R. Evid. 24(a); *In re Sierra Club*, 945

F.2d 776, 779 (4th Cir. 1991) ("must show interest, impairment of interest, and inadequate

representation"); Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (citing Virginia v.

Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976).  These requirements should be

interpreted broadly, as "liberal intervention is desirable to dispose of as much of a controversy

involving as many apparently concerned persons as is compatible with efficiency and due

process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986).


The Movant's claims have questions of fact and law in common with those already before this

Court.  The Plaintiff is not an adequate representative of the Movant's claims and interests.


It is the responsibility of this Court to bring back judicial integrity to this litigation.  This cannot

be accomplished while the Def is free to roam the Internet spewing another unfounded and

meritless conspiracy theory to harm and injure interested parties (and potential litigants) to this

litigation.

This Court should consider allowing the intervenor-applicant to proceed as a limited intervenor-

plaintiff for the purposes of seeking injunctive relief.  In this manner, there will be no direct

impact to the tempo of this litigation due to the undersigned's participation in the lawsuit.


This Court has the inherent power to inquire into the outlandish claims that bring great discredit

upon the administration and efficiency of justice.  The integrity of this Court is tarnished if the

Court allows litigants to launch public smear campaigns in an extra-judicial fashion (under the unsuspecting eyes of the Court).

The United States Supreme Court has held that an applicant must make only a minimum showing that the parties in the action may not represent adequately the applicant's interest to fulfill the requirements of the Rule 24(a)(2) four-part test.  The applicant has met this burden.

The Movant (undersigned) has a direct, substantial, and legally protectable interest in the outcome of this litigation.

Respectfully submitted under oath that the foregoing is true and accurate.  Signed this ___ day of May, 2019.

**D. George Sweigert, c/o**
**P.O. Box 152**
**Mesa, AZ 85221**

**Spoliation-notice@mailbox.org**

24

# EXHIBITS

The undersigned certifies under penalties of perjury that the attached materials are true and accurate copies of the original source instances.

I hereby certify that the attached are true and accurate copies of the original source documents or Internet screen shots.

Certified this ___ day of May, 2019.

**EXHIBIT ONE**

**Internet URL:  https://phibetaiota.net/2017/06/robert-steele-with-george-webb-unrig/**



**UPDATE 1:** Since the above excellent interview was posted, in which I state with no reservation that I like George Webb and find what he does interesting (none of us are perfect), I am told that both George and Jason Goodman, his producer, have been under investigation by the FBI at the request of the USCG, for their unsourced (unfounded?) false alarm over a dirty bomb on a Mersck ship in Charleston Harbor. Shutting down the port and ensuring this was a false alarm probably cost the US taxpayer over one million dollars.

--

My bottom line: George is probably an unwitting (innocent) in a disinformation campaign organized by CIA and/or Mossad and Jason is probably a sayonim (helper) of the Mossad if not a paid agent. I will continue to support George Webb — as does Cynthia McKinney — I will never again have anything at all to do with Jason Goodman whom I consider unbalanced, untrustworthy, and toxic in the extreme. George Webb needs his own channel.

--

I am so glad to hear from you. Jason appears deranged. I have not turned on George Webb, nor did I turn on Jason other than to cancel my planned interview with him in NYC, mostly because I did not want to get to NYC and find that he was in a jail cell. I offered many respectful and clear comments at the YouTube video where I praised George during our live-streaming event, and Jason has gone in and systematically deleted them. I am including Cynthia McKinney in the cc because we both take this matter very seriously and I feel it is important that you know that what I am telling you is what I am telling Cynthia.

11 I have reached out to George both via email and text offering strong support, and not heard back from him  I hope he is well and reiterate my support for him and his potential role as our chronicler on the bus.

12 My door is always open for George.  I consider George an unwitting (innocent) patsy in this dirty bomb matter.

13 I was just told that another hidden agenda item with Jason is that I did an interview with a guy named Manny, this was a favor to a friend that wanted to help a young talent get started, and completely unbeknownst to me, have now been told that Manny did a really ugly hateful takedown of George Webb that I do not endorse and Jason (that I somewhat sympathize with).  As best I can tell, Jason has lost his mind and is projecting all his problems on me, I have had nothing to do with Jason other than the one interview and the cancellation of my interview and the phone call that he taped.

I have not lost my interest in George or my respect for George's value.  From this moment forward I will continue to praise George and support George and I will never mention Jason Goodman again.

## EXHIBIT TWO

### Internet URL:  https://www.youtube.com/watch?v=GNxCk6nqFJg



**Deep State Dunces Attack George Webb & CSTT - Bitcoin Challeng**



Jason Goodman

✓ Subscribed  🔔 81K                                                      15,311 views

➕ Add to    ➡ Share   ••• More                                          👍 674   👎 125

Streamed live on Nov 27, 2017
The dumbest affiliates of the Deep State simply will not give up their ludicrous attacks on the truth, while simultaneously offering no evidence to support their claims.

Become a sponsor of Crowdsource the Truth and support the effort

**EXHIBIT THREE**

Case 3:17-cv-00601-MHL   Document 39   Filed 04/13/18   Page 65 of 97 PageID# 406

video    may    be    accessed    by    clicking    the    following    hyperlink:

https://www.youtube.com/watch?v=GNxCk6nqFJg&feature=youtu.be.   The video opens

with the following insulting picture and words:[14]



Deep State Dunces Attack George Webb & CSTT - Bitcoin Challenge Response

At 14:20 of the video, Goodman reveals that "Red Bubble[15] is the website that all the

**Page 65 from Amended Complaint, ECF Doc. No. 39**

**EXHIBIT FOUR**

**Internet URL: https://www.youtube.com/watch?v=_Xtz_S0tH1g**





Interview with Robert David Steele - Crowdstalking, Crowdsourcing, and Talking about #UNRIG campaign



8,088 views

Streamed live on Jul 1, 2017
Today we are speaking with Robert David Steele about his #Unrig Campaign and how he plans to spend the next 90 days campaigning to educate AMericans across the country how to take the power back to the people. We need to take down the deep state and remove the pedofiles from power with the Help of Donald Trump leading the pack.

You can learn more about Robert at robertdavidsteele.com. The #UNRIG website is unrig.net. The fund-raiser is easily found by searching for IndieGoGo hyphen UNRIG. God Bless America, and may I say, God Bless Robert Steele, an American patriot who is incapable of telling a lie, who is devoted to the truth at any cost.

31

## EXHIBIT FOUR-con't

### Internet URL: https://www.youtube.com/watch?v=Pv_C1RUo7RA



**Robert David Steele - War, Peace, insults AMA**

Defango TV
✓ Subscribed  🔔 19K

7,130 views



➕ Add to  ↗ Share  ••• More          👍 230  👎 56

Streamed live on Dec 2, 2017
I reached out to Robert for an interview last night to see how things where going. I got a lot of things I couldn't ask or talk about and his answers to the questiosn were the same old sauce without any metal. To top it off he insulted my platform and entire following so I had to blow this guy out. I mean I have really gone out of my way to help get his message out but this draws the line. We won't be interviewing Robert anymore on this channel period.

## EXHIBIT FIVE

### Internet URL:  https://www.youtube.com/watch?v=pnmjKgFOxGA



Truth Convoy, Defango, and Steven Scott Biss

Published on Nov 16, 2018
Link to the story outlining Darren Morrison's threats against Denver International Airport:
https://www.westword.com/news/darren-...

**EXHIBIT SIX**

**THE FOLLOWING AFFADAVITT is provided under the penalties of perjury.** Sometime
in early to middle May 2018 the undersigned was contacted via Twitter direct message by the
personage known as "Queen Tut" who operated an account "INTJ Fraud". Queen Tut was a stage
name of Susan Holmes/Susan A. Lutzke.

In these direct messages, Queen Tut advised me that she was a close confident of Jason Goodman
and Laurel Everly. Laura Everly was a woman that rented a home from an individual convicted
of bank fraud in the summer of 2018. Jason Goodman spoke with Laura Everly about her
personal laptop and the story that the laptop may have been manipulated by "Imwan Awan", the
accused and supposed landlord of Everly. Goodman then accompanied Ms. Everly to the Capitol
Police Department (U.S. Congress) to surrender the laptop to Capitol Police. A few months
thereafter the laptop was sent to the defense attorney for the accused Chris Gowan.

In these communications Ms. Holmes warned me that I was the targeted individual of a social
media meme campaign designed to discover my whereabouts for the purposes of third parties
causing great bodily injury or death.

Ms. Holmes impressed upon me that it was imperative that immediate action be taken to
neutralize the meme "STOP THE SACRIFICE" of June 14, 2018 (the one-year anniversary of the
Port of Charleston dirty bomb hoax).

I took the information of Ms. Holmes (Queen Tut) very seriously and immediately began posting
a series of declarations to the federal court serving the Eastern District of Virginia in the lawsuit
Robert David Steele v. Jason Goodman. See ECF. Nos 51, 54, 55, 56, 58, 59 & 60.

34

During time the undersigned watched YouTube videos with Jason Goodman speaking with Quinn Michaels (aka Korey Atkin) illegally camping in the Mount Shasta, California vicinity.

The undersigned has substantial contacts in this community and relies on this area as a vacation residence and a conducive environment to pursue spiritual practices. Quinn distributed at least a dozen video podcasts on his personal YouTube channel advising the public that a satanic cult was planning a child sacrifice on June 14, 2018 and that the undersigned was coordinating and protecting the individuals involved. At one-point Quinn began interviewing people that knew the undersigned.

This included a wildland fire-fighter named "Kyle" who the undersigned had befriended a year earlier (2017). The undersigned provided "Kyle" a field pack, $100 cash, a pre-paid disposable phone and several personal items. This act is merely a reflection of the brotherhood of veterans watching out for each other (as "Kyle" was a U.S. Marine Corp veteran that served in Iraq). Nonetheless, Quinn Michaels was able to establish contact with "Kyle" and gathered information about the undersigned. Quinn Michaels had touted several video productions which where co-hosted by Jason Goodman in this matter.

The undersigned states that during this time the business owners of the postal service box (originally listed on my declarations in the Steele v. Goodman court case) reported that a man with one eye-brow was visiting the postal counter and inquiring who owned the box in Greenbrae, Calif. 94904. Quinn Michaels produced at least two dozen videos where he appears with one eye brow.

I hereby attest that the foregoing statement is true.  Sworn this ___ day of May, 2019.

D. George Sweigert, c/o
P.O. Box 152
Mesa, AZ 85221

Spoliation-notice@mailbox.org

## EXHIBIT SEVEN

**Internet URL:  https://www.youtube.com/watch?v=WwyRPFhW-HE&t=6s**



**Streamed live 22 hours ago**
**Susan Lutzke aka Susan Holmes aka Queen Tut is a horrible but frequent liar. She recently
called me, revealing a long suspected conspiracy between her, D. George "Acton" Sweigert
and Robert David Steele. While nothing she says can be believed at this point, how else
would David Sweigert know the true identity of Oakey Marshall Richards were this
particular admission not true?**

**The sinister plans of these malicious social engineers are being revealed before our eyes as
the fraudulent and vexatious lawsuit brought by Steele continues to crumble.**





**Susan "Queen Tut" Lutzke Reveals David Sweigert – Robert David St...**

CrowdsourcetheTruth @csthetruth

        9              13           ♡   23

  **CrowdsourcetheTruth** @csthetruth · 23h
explosive development in the #fakelawsuit as Queen Tut reveals elements of a
conspiracy between herself, David Sweigert & Plaintiff Robert David Steele
youtu.be/WwyRPFhW-HE

become a sponsor of CSTT

patreon.com/crowdsourcethe...
subscribestar.com/crowdsourcethe...

**Pay Crowdsource The Truth using PayPal.Me**

# EXHIBIT EIGHT

Case 3:17-cv-00601-MHL    Document 71    Filed 02/13/19    Page 2 of 6 PageID# 806

1  Cause which remains unresolved at this time.  Upon further consideration and review of emails

2  from October 2017 related to the filing of Defendant's Answer (ECF No. 14), Defendant would

3  like to amend the Ghost Writing Form associated with the filing of the Defendant's Answer

4  (ECF No. 14).

5

6      1.  Defendant had communications via telephone and email with Susan Lutzke, aka Susan

7          Holmes, aka Queen Tut (Lutzke).  Lutzke worked with Defendant Goodman to formulate

8          and write the Answer (ECF No. 14).  In addition to Lutzke, an individual known to

9          Defendant as William McGill (McGill) also communicated by email and telephone with

10         regard to writing the Answer (ECF No. 14).  No money was exchanged among any of the

11         parties or Defendant.  Defendant has not ever met either of the two parties.  Defendant

12         has only communicated with Lutzke and McGill by telephone and email.  To the best of

13         Defendant's knowledge Lutzke is not an attorney and Lutzke never told Defendant that

14         she was an attorney.  To the contrary, Lutzke specifically told Defendant she was not an

15         attorney.  McGill did tell Defendant by email and / or telephone that he was an attorney,

16         but Defendant did not verify this nor did Defendant retain McGill as his attorney in any

17         matter at any time.  No retainer agreement oral or written has been entered or signed.  No

18         money has been exchanged between Defendant and McGill.  To the best of Defendant's

19         knowledge, McGill does not practice law in VA.  McGill offered his time and input as

## EXHIBIT NINE

**Internet URL:  https://www.youtube.com/watch?v=BAgScrjo7Ag&t=595s**



#KnowMoreNews    #Censorship

● Know More News LIVE w/ Titus Frost

Know More News

✓ Subscribed    🔔 98K

+ Add to    ➔ Share    ••• More

18,498 views

👍 1,424    👎 100

Streamed live on May 4, 2019
Know More News with Adam Green
https://www.knowmorenews.org/

**END**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| ROBERT DAVID STEELE, | |
| Plaintiff, | **17-CV-00601-MHL** |
| -against- | **LOCAL RULE 83.1(M)** |
| JASON GOODMAN, | **CERTIFICATION** |
| Defendant. | |

## LOCAL RULE 83.1(M) CERTIFICATION

## WITH CERTIFICATE OF SERVICE

1. **GHOST WRITING CERTIFICATION. I (the undersigned) declare under penalty of perjury that: NO ATTORNEY HAS PREPARED, OR ASSISTED IN THE PREPARTION OF THE ANSWER TO DEFENDANT NEGRON.**

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this *10* ___ day of May, 2019.

*Pro Se* D. George Sweigert

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**
**Spoliation-notice@mailbox.org**

1

It is hereby certified that the accompanying materials have been placed in the U.S. Postal Service

with First Class mail postage affixed and addressed to the following parties:

| | | |
|---|---|---|
| **Clerk of the Court** | **Jason Goodman** | **Susan Homes,** |
| **U.S. District Court** | **252 7th Avenue** | **aka Susan A. Lutzke** |
| **701 E. Broad St.** | **Suite 6-S** | **2608 Leisure Drive** |
| **Richmond, VA 23219** | **New York, NY 10001** | **Apt. B** |
| | | **Fort Collins, CO 80525** |

I hereby attest that the foregoing is true and accurate under the penalties of perjury on this _10_

day of May, 2019.

**D. GEORGE SWEIGERT, C/O**
**P.O. BOX 152**
**MESA, AZ 85211**