1              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2                     RICHMOND DIVISION

3

          _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
4                                          )
                                           )
5      ROBERT DAVID STEELE, et al.         )
                                           )
6      v.                                  )   Civil Action
                                           )   No. 3:17CV601
7      JASON GOODMAN, et al.               )
                                           )   July 31, 2019
8      _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _)

9

10    COMPLETE TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
          BEFORE THE HONORABLE M. HANNAH LAUCK
11              UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     Steven S. Biss, Esquire
       300 West Main Street
15     Suite 102
       Charlottesville, Virginia    22903
16
               Counsel for the Plaintiffs
17
       Richard Johan Conrod, Jr., Esquire
18     Kaufman & Canoles
       150 W. Main Street
19     P.O. Box 3037
       Norfolk, Virginia    23510
20
               Counsel for the Defendant Patricia Negron
21
       Jason Goodman, *Pro se*
22     252 7th Avenue
       New York, NY   10001
23
                   DIANE J. DAFFRON, RPR
24                OFFICIAL COURT REPORTER
                UNITED STATES DISTRICT COURT
25

1          THE CLERK:  Case No. 3:17CV601, Robert David

2    Steele, et al. versus Jason Goodman, et al.

3          The plaintiffs are represented by

4    Steven Biss.  Mr. Jason Goodman is *pro se*.  And

5    Patricia Negron is represented by Johan Conrod.

6          Are counsel ready to proceed?

7          MR. BISS:  Yes, Your Honor.

8          MR. CONROD:  Yes, Your Honor.

9          MR. GOODMAN:  Yes, Your Honor.

10          THE COURT:  All right.  I want to confirm how

11   we're going to proceed.  This is an initial pretrial

12   conference, and what we do in this conference is

13   discuss any issues that we need to have prior to

14   scheduling a trial in the case.  And so I want to go

15   over a series of things because obviously we've had a

16   lot of motions practice in this court in this case so

17   far, and I want to be sure that everybody understands

18   the ground rules of how we're going to go forward in

19   proceeding with the case?

20          Now, initially, I want to be clear we are

21   conducting this on the record.  So we're in a

22   courtroom.  We're in a federal courtroom.  We are

23   going to be very formal.  Any time you talk, you're

24   going to approach the podium.  There are two reasons

25   for that.  That is because we do that.  That's how we

1   practice unless we have somebody who needs

2   interpretation because they speak a different

3   language.

4        You're also going to do that because that way

5   the microphone can transmit what you say readily to my

6   court reporter who can only hear it from the

7   microphone.  It is much harder to do that from counsel

8   table.  It also assures that people do not talk over

9   each other.  So one person talks at a time.  Not only

10  is that courteous, it is also literally impossible to

11  transcribe two people talking at once.  So we will not

12  do that.

13       If you have something that you want to

14  interject, the proper thing to do is to just stand

15  where you are, and either I will recognize you or I

16  will not recognize you, but you do not start talking

17  while someone else is at the podium.  So that is where

18  we will begin.

19       Now, the other reason we're doing this is

20  that we have a court reporter here, and that's going

21  to create our official record.  I understand that the

22  nature of this case involves communications that are

23  purportedly going over the Internet about what folks

24  have said and what folks have not said.  We are only

25  having one record in this case, and it is the record

1   that Ms. Daffron is creating for us.

2          Now, part of what we're doing here is we're

3   going to be establishing discovery rules and a trial

4   date.  Now, as far as discovery rules, I am well aware

5   that the parties have had difficulty communicating

6   with each other in a productive manner.  And so the

7   first thing I want for you all to understand is that

8   the only way that discovery will go forward where

9   anybody records what somebody else has done is through

10   either a deposition with a court reporter or through a

11   trial action.

12          So what I'm saying is to the extent there has

13   been interaction with each other where clearly

14   emotions have run strong, I want everybody here to

15   tell me whether or not they consent to being recorded

16   by any other party or any other representative of a

17   party during the course of this case.  You can stand

18   up and say it, because what that will mean is if that

19   begins, it is automatically inadmissible.

20          So I'm going to have you speak first,

21   plaintiff.  Mr. Biss, you can approach the podium.

22          MR. BISS:  May I approach the podium?

23          THE COURT:  Yes.

24          MR. BISS:  Judge, just to clarify, when you

25   say recorded by another party, do you mean if I

1  telephone Mr. Goodman, do I consent to him recording

2  that conversation?

3          THE COURT:  Correct.

4          MR. BISS:  Judge, I do not consent to that.

5  I have two concerns, if I may.

6          THE COURT:  If you don't consent to it, you

7  don't consent to it.  That's all I'm asking.  That

8  includes for your client; correct?

9          MR. BISS:  It's true, Judge.  We prefer to

10 have it limited solely to a deposition or to in court

11 testimony.

12         THE COURT:  Which is normally how a court

13 operates.

14         MR. BISS:  Yes.

15         THE COURT:  All right, Mr. Conrod.

16         MR. CONROD:  May it please the Court.  Johan

17 Conrod for Ms. Negron.

18         We do not consent to recording other than

19 through the deposition or trial process.  Thank you.

20         THE COURT:  So that includes counsel and that

21 includes your client; correct?

22         MR. CONROD:  It does.  Thank you, Your Honor.

23         THE COURT:  And it's audio or visual;

24 correct?

25         MR. CONROD:  Correct.

1    THE COURT:  All right.  Have a seat, please.

2    Mr. Goodman.

3    MR. GOODMAN:  Good day, Your Honor.

4    I suppose I don't consent to being recorded,

5 but to the extent that recordings exist, I'm a bit

6 confused as to what the implications of what you're

7 asking are.

8    THE COURT:  So, we're going to address about

9 anything that is already either on the Internet or in

10 the video.  That's separate.  What I'm saying now is

11 during the course of this litigation, are you

12 objecting to either Mr. Biss, or his client, or an

13 agent, Mr. Conrod, or his client, or an agent

14 recording you either audio or visually at all?  Unless

15 it's in a deposition or it's in court like we're

16 recording this right now.

17    MR. GOODMAN:  I apologize for equivocating,

18 but I don't want to relinquish any rights, and since

19 the opposition has objected, I tend to think I should

20 object as well, but I don't say anything that is

21 untrue, and I don't have any fear of anything that

22 I've said being recorded and played back for the

23 Court.

24    THE COURT:  I mean, you can not object.  This

25 is really meant to protect everybody.

1        MR. GOODMAN:  If they object, then I will

2   object for the reason that they have, and I will

3   consent to have all future communications go through

4   the official channels that the Court requests.

5        THE COURT:  What I'm trying to do, and just

6   so you understand, I register what you're saying as an

7   objection.

8        MR. GOODMAN:  I object.

9        THE COURT:  There are state laws that allow

10  one party to record another party, and if that one

11  party knows it and even if the other party doesn't

12  know it, it is not illegal.  There's no problem with

13  doing it.  I really haven't looked at the laws

14  wherever anybody lives, but I think it would create a

15  confusing record if somebody were to do that during

16  the course of this litigation.

17        So if Mr. Biss or Mr. Steele were to call you

18  and be recording it without telling you, that may be

19  legal.  It would be extremely messy, I think, for

20  purposes of this litigation, and I think we have

21  plenty of information about what the other sides are

22  doing or not doing without that.

23        The same would be true for you.  You could

24  not call Mr. Conrod.  You're not allowed really to

25  call their clients, necessarily.  You should think

1   about that.  But you can't record anybody even if you

2   say "I want to record it.  I'm okay with recording

3   it."  Some places require both parties to consent.

4         What I'm saying here is:  I am asking whether

5   you all just want to go on the official record that

6   we're creating for this court, which, honestly, I'm

7   not trying to trick anybody.  I think it's in

8   absolutely everybody's best interest.  It's in yours.

9   It's in Mr. Steele's.  It's in Ms. Negron's.  It's in

10  everybody's best interest.  That's why I'm asking.

11        MR. GOODMAN:  I agree to conduct myself in

12  accordance with your advice.

13        THE COURT:  I'm not giving you legal advice.

14  I can't give legal advice.

15        MR. GOODMAN:  Sorry.  Your preference.  I

16  apologize.  Really, I would like to apologize for

17  my -- sorry.  Let me strike that.  I will object and

18  agree to conduct this on the official record if it

19  pleases the Court.

20        THE COURT:  Right.  Well, you can do whatever

21  you want to do.  I'll lodge it as an objection now.

22  You can do research later on and change it any time

23  you want to.  You just have to do it on the record

24  before you change your position.  All right?

25        MR. GOODMAN:  Yes.  My intention is to

1   cooperate with the Court.

2           THE COURT:  All right.  Okay.

3           All right.  So, Mr. Biss, I directed you in

4   my last ruling to address how you anticipated that we

5   would go forward as far as discovery, because clearly

6   it has not been tremendously successful to date, and

7   I'd like to hear your thoughts on that, please.

8           MR. BISS:  Yes, Your Honor.

9           Judge, when I received from CM/ECF your

10  order, I sent out an email the same day to all counsel

11  in the case outlining a what I'll call a three-step

12  plan, if you will, for improving the quality of

13  communications in this case in order to address the

14  very issues that Your Honor highlighted.

15          So, number one, it is the pledge of the

16  plaintiffs and plaintiffs' counsel that they will

17  avoid the vitriol that Your Honor observed in your

18  order, and, quite frankly, in two of the pleadings

19  that I did file, I will -- I will acknowledge that

20  some of the language was unnecessary.  It certainly

21  wasn't my intention to cause Mr. Goodman any

22  heartache, but obviously it did.

23          So our number one point is that plaintiffs

24  and myself pledge that no more language that might be

25  provocative.  We're going to stick to legal issues.

1  We're going to stick to facts in the case.  If we have

2  an issue that we think cannot be resolved by the

3  parties through communication, we're going to bring

4  that to Your Honor's attention in the form of a motion

5  with an appropriate memorandum.  We're going to do so

6  civilly, and we're going to do so with adequate legal

7  support.  That's number one.

8          Number two, I reversed my decision to

9  eliminate telephone communications with Mr. Goodman,

10  and I pledge to reverse that in its entirety.

11          There are a couple of areas in the case where

12  the parties need to communicate, and one of those is

13  to resolve any disputes over discovery, and so

14  telephone communications need to occur.

15          I have again, in light of Your Honor's

16  ruling, and, I think, common sense, I will communicate

17  with Mr. Goodman via telephone.  I have concerns about

18  that.  I think Your Honor's addressed one of those

19  concerns already with the decision not to have

20  recordings.

21          One of the things that I was concerned about

22  was that these telephone communications would be

23  livestreamed on the Internet.  And I spoke with Mr.

24  Conrod about that, and it just -- it's very unsettling

25  to me.  When I speak with somebody and try to resolve

1   something, I want to have a large sense of trust.   I

2   want to say what I need to say to get it done.   I

3   don't want to have YouTube videos being made.   It's

4   just never -- in 30 years, it's never happened.   It's

5   a concern, but I think we really have resolved that.

6         The telephone communications regarding

7   discovery I think are necessary to resolve disputes,

8   but I will call to the Court's attention, I don't want

9   to get into any telephone communications with Mr.

10  Goodman where he threatens criminal prosecution or he

11  accuses me of crimes and things like that, Judge.

12  This is extremely unproductive and not helpful.

13        So I will tell the Court in view of the new

14  policy, Mr. Goodman and I did have a conversation --

15        THE COURT:  I'll acknowledge you in a little

16  bit, Mr. Goodman.   Thank you.

17        MR. BISS:  Mr. Goodman and I did have a

18  conversation on Monday, Monday afternoon, after

19  one o'clock.  And we went through the ongoing disputes

20  regarding, among other things, the Rule 26(a)(1)

21  documents that haven't been produced, and then the

22  plaintiffs are -- the plaintiffs have some concerns

23  about Mr. Goodman's responses to the request for

24  production of documents.

25        We had a conversation about that.  We,

1   unfortunately, weren't able to resolve anything.  And

2   so -- but I will continue to communicate via telephone

3   until it becomes futile.  At some point it becomes

4   futile.

5        Number three, Judge, is I continue to be a

6   proponent of email and, to a lesser extent, text

7   message communication.  The reason being is that

8   there's no misunderstanding with an email.  You can

9   set forth your position, your views, on just about

10  anything.  You can do it either in a lengthy email or

11  you can do it succinctly.  So I will continue to

12  communicate with Mr. Goodman at his

13  truth@crowdsourcethetruth.org email address only.

14       Mr. Goodman has indicated that he has another

15  email address.  I've been using both, but he's got

16  another email address, ProtonMail, that he doesn't use

17  or he doesn't know the password to.  So I'm not going

18  to use that ProtonMail account anymore.  And,

19  actually, I stopped doing that maybe a few weeks ago.

20       So all email communication will go to the one

21  that he acknowledges is active and he uses.  And,

22  again, I do think that third form of communication

23  should help the parties avoid emotion.  I think it's

24  good because it avoids emotion except when you leave

25  the all caps on, which sort of never really happens,

1    but email is a somewhat emotionless technology.

2          And then, Judge, the fourth point that I

3    would raise is if these parties -- if the parties are

4    unable to resolve their differences, courts are

5    perfectly well equipped -- magistrate judges are

6    perfectly well equipped to referee if there's any

7    dispute that can't be resolved.

8          My experience is there is really virtually no

9    dispute that can't be resolved.  And so I think that

10   applies certainly to the discovery context in this

11   case.  There are cases, legal cases, that can't be

12   resolved.  My experience in the Eastern District is

13   just about every case gets resolved.  Very few trials.

14   In fact, I think the last trial I had was with Judge

15   Novak as a magistrate judge.

16         So that, Judge, is my pledge to the Court in

17   response to your order, my pledge to Mr. Goodman, and

18   of course I will say this:  I've had nothing but good

19   luck with Ms. Negron's counsel in terms of

20   communicating, in terms of resolving issues that come

21   up, discussing issues.  I have not spoken with Mr.

22   Conrod.  My main contact has been with Mr. Wills,

23   Benjamin Wills, but either counsel.  It doesn't

24   matter.  I copy all three of the counsel on all the

25   emails.

1      Judge, if the Court has any questions, I'll

2  be happy to answer them.

3      THE COURT:  No, that's fine.  I'll hear from

4  Mr. Conrod and then from you, Mr. Goodman.

5      MR. CONROD:  Your Honor, I really don't have

6  very much to add other than, you know, we -- to the

7  extent I don't -- frankly, I don't even think there

8  have been any issues that involved us directly, you

9  know.  And that's not to say there won't be.  I'm sure

10  we'll object to something eventually.  But at this

11  point we haven't been involved in these issues and

12  certainly heed the Court's direction on this and read

13  very carefully your opinion the other day about how to

14  conduct -- how everybody should conduct themselves in

15  this case, and we're going to -- have been trying to

16  do that and are going to continue to try to do that.

17      And as Mr. Biss pointed out, my colleague

18  Mr. Wills has been carrying the heaviest burden on

19  that and does a very good job, but we're doing

20  everything we can to get this case through to where --

21  a posture that it can be decided and represent our

22  clients as effectively as -- or our client -- as

23  effectively as we can, Your Honor.

24      And so I don't have anything to add other

25  than that.  Thank you.

1        THE COURT:  All right.

2        So, Mr. Goodman, now you can speak.

3        MR. GOODMAN:  Thank you, Your Honor.

4        I was not going to bring this up today, but

5   to answer a point that Mr. Biss brought up with regard

6   to this ProtonMail address, I have never indicated to

7   him that that was an active email address for me.

8   That is an address that he extracted from a 2017

9   communication with a third party, the Elusive Queen

10  Tut, Susan Lutzke.  I never indicated that that was an

11  active address.

12       ProtonMail, just to familiarize the Court, is

13  an encrypted email service.  And the issue that I have

14  with it is when you lose the password or forget the

15  password, you are not able to retrieve email from it.

16  The only way to proceed is to create a new password

17  which deletes all emails there to preserve the

18  security of the account.

19       So at some point in 2017 or '18 I abandoned

20  use of that.  I do not use that Proton email account.

21  I have never emailed Mr. Biss from that account.  I

22  have never responded to an email from him on that

23  account.  I have never seen an email from him on that

24  account.

25       And, curiously, as I look through all of my

1    emails with Mr. Biss, he's communicated with me both

2    on truth@crowdsourcethetruth.org, my current email

3    address from my current business, which I am the only

4    employee of.  I am the only person who reads that

5    email.  I'm the only person who sends from that email.

6    And that is my email address of record with respect to

7    this legal action.  And I was very disturbed to learn

8    on May 2nd when I sent Mr. Biss a communication

9    through the normal channels that we have used,

10   primarily because he's refused to speak with me on the

11   phone, that I had said to him "I haven't heard

12   anything from you in a week.  So I presume this

13   conference is not confirmed."

14          The message I had sent to Mr. Biss said, "I

15   will be available after May 1st."  The confirmation

16   that he sent into an email hole, to an email address

17   that I don't get, said, "Okay, Jason.  We're confirmed

18   for May 3rd."

19          Now, I don't want to speculate, but in the

20   absence of a response from me, I can't explain why Mr.

21   Biss did not send another email to confirm or call me

22   to confirm.  It is my speculation that Mr. Biss

23   intended for me to miss that meeting, and I believe

24   that Mr. Biss has gone out of his way to make it

25   difficult for he and I to resolve disputes before we

1  came here and utilized the time and resources of this

2  Court.

3      THE COURT:  Okay.  So, Mr. Goodman, I'm going

4  to interrupt you for a couple of reasons.  One is Mr.

5  Biss said he's not going to use that email address

6  anymore.  So it's certainly not an issue going

7  forward.

8      It is a bad idea to speculate.  So I'm just

9  going to tell you that generally.  Ultimately, facts,

10  what has happened, is what I determine.  So what is

11  very interesting is in a court, you know, say, in a

12  criminal case, somebody comes in and with all their

13  heart they believe that they have not run a red light,

14  and with all heart and good faith on the other side an

15  officer believes they have run a red light.  Two

16  people testify.  One says, you know what?  It was

17  green.  The other says, Nope, it was red.

18      And everybody knows it is illegal to run a

19  red light.  And so what gets decided by the judge or

20  the jury is whether it was green or red.  It's a fact.

21      So I will hear the case, determine the facts,

22  and the law.  And so usually somebody loses.  Like

23  maybe 100 percent of the time somebody loses in court.

24  Right?

25      MR. GOODMAN:  Yes.

1          THE COURT:  So what I am trying to do is have

2     you all adhere to the process, the process, because

3     that's what makes it fair.  Due process.  The Federal

4     Rules of Civil Procedure, the local rules, the rules

5     of evidence.  Those are the rules of the road.  They

6     create and they maintain due process.  It is extremely

7     important.

8          But as far as what Mr. Biss intended or what

9     you intended or even sometimes what you said, he could

10    say he said something, and I could find otherwise, and

11    that's a fact of the case.  That's why you have an

12    appeal.

13         You could say you said something, and I could

14    say otherwise.  That's a fact of the case.  I have to

15    support it.  Either the appellate court says I was

16    appropriate, what I did, or they reverse me.

17         So I really want to focus on how we're going

18    to go forward in a fair and efficient manner because

19    we are not going to have 20 filings for everything

20    that comes in front of the Court.  There are rules

21    about that.

22         And I can tell you there are probably 500

23    things right now, and I'm really not trying to

24    exaggerate, that the two of you could raise that the

25    other disagrees with about what's happened in the

1  past.  It may be more.

2          So what we are going to do is assure that I

3  have a record that allows me to make an informed and

4  legally proper decision.

5          So, first of all, the Proton email, not

6  happening anymore.  We are establishing the rules

7  about how you will communicate with each other in a

8  manner that creates a record that I can review and

9  make an informed and impartial decision.

10          So, I don't have a dog in your fight.  And so

11  that's why you're in front of me.  That's what I

12  intend to do in the case.  But it's clear to me, as

13  you can see based on my previous ruling, my last

14  memorandum and order, that I don't think you guys are

15  even looking at the rules, and that can't happen.  If

16  you were looking at them, you need to look at them

17  better because they were completely disregarded.  All

18  right?

19          MR. GOODMAN:  Yes.  And I appreciate

20  everything you're saying, Your Honor.  I would like to

21  reiterate for the record, I sincerely apologize for my

22  failure to adhere to the rules.  I assure you that I

23  have looked at them, and I know that you know that I'm

24  *pro se* and not a lawyer, and this is not an excuse,

25  simply a statement.  It's frequently difficult for me

1   to know what those rules are telling me to do, and I

2   will absolutely make an even greater effort to do

3   that.  I do not mean to make your court my crash

4   course in how to be a lawyer.

5        I think it was important to put these

6   statements into the record.  I apologize for

7   speculating.  I will leave it to Mr. Biss if it

8   becomes relevant for him to explain why that was the

9   only email --

10       THE COURT:  That's not even at issue today.

11  We're not even talking about that.  All we are doing

12  is figuring out how we're going to talk to each other

13  so you can do on-the-record discovery.  We're looking

14  forward.  We're going forward.

15       Now, let me tell you this:  As far as being

16  *pro se*, I have given you tremendous breadth as far as

17  what I've allowed you to file in this court and say

18  and do.  Tremendous breadth.  The law requires me to

19  read *pro se* filings liberally, but it doesn't allow

20  you to violate the rules.

21       And so one of the reasons I'm making this so

22  clear, as I did with Mr. Biss, is this is your

23  warning.  I have told you.  I took a lot of time

24  telling you what you did wrong so far.  Right?  I went

25  through the motions.  I told you why they were wrong.

1    I told you about the rules that were potentially

2    violated.  That's it.

3           If you don't understand it, hire a lawyer.

4    And that's all I can tell you.  You don't have a right

5    to counsel in a civil case, so you have to hire a

6    lawyer.  And there are plenty of lawyers that might be

7    able to help you, but I don't have any input into that

8    as far as that's concerned because you only have a

9    right to counsel in a criminal case.

10           So what I want to be sure that you

11   understand, and I'm saying this to Mr. Biss, and I'm

12   saying it to the extent it's necessary to Mr. Conrod,

13   there are sanctions for failing to follow the rules.

14   All right?

15           So under Rule 11, if you do not follow the

16   rules or the directive of the Court, and this doesn't

17   actually pertain to discovery, and you sign a

18   document, you can pay money to the Court, and you can

19   pay money for fees to the other side.  So that's one

20   place where you can get sanctioned.

21           Rule 26(g) it requires that -- so this is

22   what we're going into, and I'm saying this to all of

23   you, you have to sign the discovery, and when you do,

24   though, when you produce discovery and you sign it,

25   you are saying that you have made a reasonable inquiry

1  into what you are turning over or saying.  It's a

2  reasonable inquiry.

3          So it can't be the case that you don't really

4  look for things.  It can't be the case that you think

5  this is the answer.  Now you're in front of a Court,

6  and when you sign a document, it has legal

7  consequences.  You have to say, This is really, really

8  all I think I can find.  And if later somebody points

9  out otherwise, there can be sanctions.  There has to

10  be a substantial justification for having missed

11  stuff.  And that's under 26(g)(3).

12          So, I'm telling you the rules.  They are all

13  on the Internet.  Most courts have them available on

14  their websites.

15          MR. GOODMAN:  (Indicting.)

16          THE COURT:  Good.  That's great.

17          So if you make an improper certification,

18  either the signer or the party, which basically you

19  would be both because you're *pro se*, can incur

20  reasonable expenses or fees or both.

21          So regarding interrogatories, you have to

22  sign under Rule 33(b)(3), Federal Rule of Civil

23  Procedure 33(b)(3), and you have to provide documents

24  under Rule 34(2)(B) and (C).  So they go in order.

25  Depositions, interrogatories, and production of

1 documents.

2       Now, if you don't do it right, and by that

3 that means legally correctly, which you are obligated

4 to learn enough to understand, under Rule 37, either

5 if you fail to disclose what you're required to, under

6 26(a), which I think you all have had discussions

7 about or 26(e), or if you fail to supplement, and so

8 that means as soon as you know something -- you've

9 found something else or you know something else, you

10 have to tell the other side.  Basically, as quickly as

11 you can.  And if you don't do that, if you don't

12 supplement or you don't answer, there are pretty

13 serious sanctions for that that don't just go to

14 money.

15       So it could be the case that you're not

16 allowed to use the information you come up with at

17 trial or at a hearing.  Even if it's true, it doesn't

18 go in, because it's not fair.  You don't let the other

19 side know.  And I make the determination of what the

20 sanctions are.

21       Most of these have some kind of exception

22 like unless it's substantially justified.  Someone

23 would have to say why you couldn't possibly have known

24 earlier or why you forgot to turn it over.

25       You could also have to pay, and this is all

1  under Rule 37, pay fees and expenses.  It can be the

2  case if it's a jury trial that the jury could be told

3  that you failed to disclose it, and they can infer

4  whatever they want to from that, or I can impose any

5  other sanction, and that includes, and this is under

6  37(b)(2)(A)(i) through (vi), the sanctions can include

7  that I direct that whatever is improperly turned over

8  or improperly disclosed, that the prevailing party,

9  the other side, those facts, the facts that they want

10 in evidence or that matter, it's just is a fact of the

11 case.  That's one sanction.

12         It can be determined that you've given up

13 your right to challenge it because you didn't do it

14 fairly, essentially.

15         Under 37(b)(2)(ii), I can prohibit the

16 disobeying party from supporting or opposing any claim

17 or defense, or from seeking to introduce something

18 into evidence.

19         Under Section (iii), I can strike a whole

20 pleading.  I can strike part of a pleading.

21         And (iv), I can just stay the case until

22 anything is obeyed.

23         Under (v), I can dismiss the action in whole

24 or in part.  On the other side, I can render default

25 judgment, a judgment against the disobeying party.

1          So it's not just the case that it can cost

2    money.  It means that you can win or lose the case if

3    things go too far awry.

4          And so I'm telling you this, I'm telling Mr.

5    Biss this, that I have rarely seen so contentious a

6    record before I even have an initial pretrial

7    conference.  And I don't care whose fault it is.  What

8    I am saying to both of you is it must stop.  It must

9    stop.

10          And, Mr. Goodman, I appreciate that you're

11   saying you're not an attorney and that you're doing

12   the best you can, but even if you're not an attorney

13   and you disobey the rules, with warning, which I'm

14   giving you right now, you suffer sanctions.  Do you

15   understand that?

16          MR. GOODMAN:  I do.

17          THE COURT:  All right.  Is there something

18   else you wanted to say?

19          MR. GOODMAN:  There is.  I'm very aware of

20   the jeopardy that you're describing that I could put

21   myself in, or the case in, and I am committed to

22   following the rules.

23          I may have to find a lawyer.  The reason I do

24   not have a lawyer is I don't have the funds, and I

25   understand that I'm not guaranteed the right for a

 1   lawyer.

 2            There is information that has come to me,

 3   because one of the most important things you just said

 4   to me, Your Honor, is that we need to have a fair and

 5   honest process so that we can have due process.  There

 6   is a very important matter that has been brought to my

 7   attention only days ago that I hope I'll have an

 8   opportunity to share with you.  I'm happy to share it

 9   with all parties.  And it speaks directly to the

10   genesis of this matter and the propriety of the whole

11   entire case.

12            May I share the information with you

13   verbally?

14            THE COURT:  I fear it's going to be totally

15   irrelevant.  I'm just going to warn you in advance.

16   Does either party object here?  At least you can

17   answer to it when he raises it.

18            MR. BISS:  I think I know what he's going to

19   be talking about.  I object.  I don't think it's

20   relevant at all to this case.

21            MR. GOODMAN:  How do you know what I'm going

22   to say?

23            THE COURT:  So, you don't talk to each other

24   like that in the courtroom.  Each of you talks to me

25   and you only talk with permission.  If it's not

1    relevant, I can rule on it not being relevant.

2              MR. BISS:  Yes, Your Honor.

3              THE COURT:  Any objection on behalf of

4    Ms. Negron?

5              MR. CONROD:  I don't have a position either

6    way, Your Honor.

7              THE COURT:  So, let me tell you, Mr. Goodman.

8    I'm saying in advance, my sense is it's probably

9    irrelevant, and to the extent you think it's going to

10   be incendiary, you should really, really be careful

11   because we cannot make accusations against each other

12   party to party, lawyer to lawyer, lawyer to *pro se*,

13   without a firm basis in this court.  All right?

14             MR. GOODMAN:  Yes.

15             THE COURT:  Okay.  Go ahead.

16             MR. GOODMAN:  The information I'd like to

17   share with you pertains to emails a former client of

18   Mr. Biss has sent to me and a narrative that this

19   client, Manuel Chavez, III, who has been discussed

20   throughout the pleadings, the totality of what he has

21   explained to me and the emails that he has shared with

22   me and other documents that he has shared with me

23   indicate that Mr. Biss was in communication with

24   Manuel Chavez during a time period that Mr. Biss's

25   wife, Tanya Cornwell, was in communication with Manuel

1   Chavez and had paid Manuel Chavez $1,500 through a

2   service called Patreon and was aggressively trying to

3   convince Manuel Chavez to bring a lawsuit against me

4   concurrent with the lawsuit from the plaintiff.

5        The plaintiff is also in email communication

6   with Chavez during this time.  They discuss how they

7   should not share with anyone various parties that

8   they're communicating with.  And Mr. Chavez has

9   provided me with extensive email communications that I

10  believe do provide extremely strong evidence, you

11  might even say prima facie evidence, of the conspiracy

12  that I allege to defame me, to harass me, to destroy

13  my worldwide reputation, and to interfere with my

14  business.

15       I believe that the intervenor applicant was

16  involved with this as he is also in direct

17  communication with Manuel Chavez during this period,

18  and I have extensive evidence that I intend to share

19  with the Court throughout the course of this trial

20  that I believe will prove that Mr. Biss, his wife, the

21  plaintiff, and various third parties were in a

22  conspiracy to commit barratry.  I believe they are in

23  a regular practice of doing this.

24       A second client of Mr. Biss, who I am not in

25  communication with, made a public Internet broadcast

1  accusing Mr. Biss, and this is a gentleman named

2  David Seaman, who I have not spoken to about this

3  matter.   I've spoken to him once in 2016 at a public

4  event where I met him.

5        Mr. Seaman, without any input from me, took

6  it on his own accord to produce a broadcast in which

7  Mr. Seaman alleges that the plaintiff, Robert David

8  Steele, aggressively pursued Mr. Seaman to retain Biss

9  for the sum of $15,000 to bring a lawsuit against an

10 Internet company.  I believe it was Twitter.  I would

11 have to check.  And then Mr. Biss, according to

12 David Seaman, did not show up at the court hearing.

13 He told Mr. Seaman he would have to --

14        THE COURT:  Okay.  So, here, I'm going to

15 interrupt you.  Okay.  What about that is not

16 incendiary?  What about what you just said is not

17 incendiary?

18        MR. GOODMAN:  Well, I feel it's relevant

19 because --

20        THE COURT:  No, that's not the question.

21 What about that is not likely to incite another side

22 to anger?

23        MR. GOODMAN:  It's factual.

24        THE COURT:  Even if it were correct, do you

25 think the other side would like it?

1          MR. GOODMAN:  Probably not.

2          THE COURT:  Probably not?

3          MR. GOODMAN:  I don't know.

4          THE COURT:  Would you like it if somebody

5    said it about you?

6          MR. GOODMAN:  I would never do it.

7          THE COURT:  Listen.  You have to answer the

8    questions I am asking you.

9          MR. GOODMAN:  I would not like it.

10         THE COURT:  Of course not.  So, here's the

11   issue, Mr. Goodman.  Whether or not that did or did

12   not happen, what you just gave me is boatloads, layers

13   of hearsay.  Under the rules of evidence, hearsay is

14   inadmissible unless there is an exception.  And to

15   bring information to the Court, you have to do it

16   under a rule.  You have to make a motion.  Under the

17   motion, you have to cite the rule that allows you to

18   bring the motion, and then you write a separate

19   memorandum about the motion, and there you would

20   address relevance.  Right?  You would say it's

21   relevant because of X, Y, and Z, and I am allowed to

22   tell you this because of X, Y, and Z.  And then the

23   other side responds.  And they respond however they

24   respond.  And then you reply.

25         If you bring the motion, you get the last

1    word.   You only get three of those, though; right?

2    One for you, one for the responder, one for you.

3          But there are rules about how you bring that

4    information to the attention of the Court.   And I

5    don't think you can cite a rule to me now because

6    there really isn't one right now for you to put forth

7    all of that information and hearsay to me orally.

8          So, I can see that you think it matters a

9    lot.   What I see in this record is that both, all the

10   parties, especially Mr. Steele, and especially you,

11   really believe the other is in a conspiracy and out to

12   get him.   You both believe that.   One of you thinks

13   the light is green and one of you thinks the light is

14   red.   That's what I see.   So I need a basis to make an

15   informed finding about whether or not it's green or

16   red.

17         So neither of you -- the reason I admonish,

18   including Mr. Biss, strongly, you can't put that kind

19   of junk in a filing in front of a federal court.   What

20   you do is you cite facts that you can support, and you

21   cite the law, and you do it under the rules that

22   exist.

23         I fully and completely understand that the

24   two of you think, meaning Mr. Steele and you, think

25   that the other is out to get you and ruin your

1  reputation.  That is clear.  I have hundreds of

2  documents that make that clear to me.  So we're beyond

3  that.  I know it about Mr. Steele relative to you.  I

4  know it about you relative to Mr. Steele.

5      Now you have to find a legal basis that I can

6  tie it into so that I can make the finding yes or no.

7  If you believe that somebody is defaming, it doesn't

8  matter.  I make the finding as to whether or not it's

9  defamatory.  And I do it based on admissible evidence

10  that is before the Court and the law.

11      Now, do you understand why that was not the

12  appropriate time to mention that issue?

13      MR. GOODMAN:  I understand your explanation,

14  and I believe I understand why it was not the

15  appropriate time to mention it.

16      THE COURT:  All right.  There's a process.

17  So what we are doing is we're going to establish a

18  trial date.  I'm going to enter an order that sets

19  forth all the pretrial deadlines.  My order will set

20  forth when discovery goes forward, when it stops, when

21  motions can be filed, dispositive motions can be

22  filed.

23      I have a discovery process that I'm not sure

24  it's going to work in this case, so I'm just going to

25  ask you all maybe to handle it a little differently.

1   And during the process, you all have to do written

2   discovery asking each other questions that are legally

3   viable and written production of documents, and if you

4   think it's unfair or inappropriate, you object under

5   the rules.  It has to be under the rules.  It can't be

6   that you think it's not fair.

7           So, I understand that as a *pro se* person you

8   asked for a protective order basically not to have to

9   do discovery and to stay the case, and I get why you

10  would want to do that, but you just can't.  You've

11  been sued.  And so I said no to that.  So we are

12  moving forward under the rules.

13          Now, I heard Mr. Biss say he's willing to

14  talk to you on the phone.  What I want you all back

15  and forth to do is something that is grown up.  You

16  all just have to start talking to each other without

17  such nasty allegations back and forth that the other

18  side loses his mind.  And I don't know how else to put

19  it.  That's not a legal finding, but that's really how

20  you have to start acting.  You're in court.

21          And so if it cannot happen on the telephone,

22  if tempers flare, email strikes me as the way to go.

23  I'll tell you, I don't really like text messaging

24  either because it's harder to put into evidence.  I

25  can't really say you can't text message each other,

1   but then if you want to rely on it, you have to put it

2   in evidence, and that's hard to do.

3          But we just have to get down to the facts of

4   what happened.  And we're going to do it, and we're

5   going to do it with a minimum of divergence, because

6   I've allowed you all to have about a year of

7   divergence.  And for us, that's a geologic age.  We

8   pretty much decide cases quickly.

9          So are you with me, Mr. Goodman?

10          MR. GOODMAN:  I am, Your Honor.

11          THE COURT:  All right.  Okay.  So you may

12   have a seat.

13          All right.  Now, I'm going to schedule a

14   trial date in this case, and the deadlines will work

15   back from there.  I would not think that this case

16   should go on for three full days, but I'm willing to

17   take three full days to try it.

18          Do counsel -- Mr. Goodman, I'm sure it's

19   pretty hard for you to figure out how many days this

20   case will take, but does counsel have any input into

21   that?

22          MR. BISS:  If it please the Court, I think

23   three days.  We have a significant number of

24   witnesses.  We have one expert at this point in time.

25   We have witnesses who are overseas.  So there will be

1  some video depositions probably.

2         THE COURT:  All right.  Counsel for Ms.

3  Negron.

4         MR. CONROD:  Your Honor, I have no idea how

5  long Mr. Biss plans to put it on.  If he thinks it

6  will take three full days, then I have no basis to

7  argue with him on that, Your Honor.  I don't

8  anticipate our case will be three full days.  That's

9  for sure.  Maybe a couple of witnesses.

10         THE COURT:  All right.  Now, I'm willing to

11  give a little extra time given Mr. Goodman's *pro se*

12  status.  I can schedule the case for March 18, 19, and

13  20.

14         MR. BISS:  That works for the plaintiffs,

15  Your Honor.

16         MR. CONROD:  That's fine with Ms. Negron,

17  Your Honor.

18         MR. GOODMAN:  It's fine for me.

19         THE COURT:  All right.  So the way the jury

20  trial works is that everybody here will come in at

21  nine o'clock ready to go.  Any witness, any piece of

22  evidence, you have to be completely ready to go.

23  Usually before a jury trial we have preliminary things

24  to take care of, and so that means like going over

25  final jury instructions, making sure that we know the

1     witness order or other issues.

2           So I don't bring the jury in until

3     ten o'clock, but we will start at nine o'clock.  We

4     will bring the jury in at ten o'clock, and we go full

5     days.  So we will go all day the 18th and the 19th

6     and the 20th.

7           It is not the case that -- Mr. Goodman, I'm

8     saying this for your benefit, but it happens with

9     counsel also, as I'm sure these gentlemen have seen.

10    It's no excuse that you thought the case was going to

11    go longer and your client is not there.  Either your

12    witness is there on the day you present your case or

13    they're not.  So we're going to keep going.  So there

14    are no delays on those kinds of bases because we have

15    a jury.  Right?  We don't waste jurors' time like

16    that.  So I want to be sure you understand that.

17          All right.  We also schedule a final pretrial

18    conference.  And I'm going to schedule that for

19    February 20.  And that will be at one o'clock.

20          MR. BISS:  Judge, I am not available on

21    February 20.  I think I'm in trial that day.  I can

22    try to move that, Your Honor, because it's a lot of

23    months off.

24          THE COURT:  What about the 21st?

25          MR. BISS:  The only dates in the February I

1  have are the 24th and the 28th.

2         THE COURT:  Well, I have a jury both days.  I

3  don't want to go later than those days.  We can move

4  it back, but the issue is that's making your deadlines

5  worse because things fall from the final pretrial

6  conference.

7         MR. BISS:  I'm just not sure what to do.

8         THE COURT:  Well, how about the this:  I'll

9  schedule it for the 20th at one o'clock, and you can

10  let me know if there's any possibility of doing

11  anything else at another time.  It's only half a day.

12         So the final pretrial conference, that's in

13  the courtroom.  It's very formal.  It's very

14  substantive.  So that's where the Court decides what

15  is or is not going to go into evidence.  So, people

16  say it's not relevant, and I say yes, it is relevant,

17  or I say it's not relevant.  If I say it's not

18  relevant, the jury never hears about it.  We can't

19  even talk about it.  If I say it is relevant, it goes

20  in the trial.

21         So lots of decisions get made during that

22  conference.  It's pretty long, and you have to put

23  together information to submit to me, and usually that

24  is done collectively.

25         So, I'm going to ask you to sort of look and

1   read up on that.  You'll have to know about the jury

2   instructions.  Those are due at a certain date.

3   Designations of discovery.  Those are due at a certain

4   date.  Before trial there is a deadline for what are

5   called dispositive motions, motions for summary

6   judgment, and that's an important thing for you to

7   focus on, Mr. Goodman, because it is possible that

8   some or all of either side's case can go away just by

9   written motion.  And so you have to pay close

10  attention to what that deadline is.  And if you want

11  to try to make somebody else's part of their case go

12  away, you have to follow the rules about how to do

13  that.  If you file it late, I can't hear it, because

14  the rules say when it's going to happen.

15          So my pretrial order is really important.

16  And so all I can say to you is that you have to read

17  it and absorb it.  One of the things it does is that

18  it requires if there is a discovery dispute, that

19  folks fill out a chart about what the discovery

20  dispute is.

21          Now, I'm struggling to think that you all

22  will be able to do that.  It requires moving back and

23  forth for 14 days online saying whether you agree or

24  disagree with each other.  With a *pro se*, I'm not sure

25  how effective that can be regardless, because it's

1   pretty specific, and you're supposed to cite the rules

2   and the basis.

3          So what I'm going to ask that you all do is

4   that if either side has a discovery issue you want to

5   bring, any side, file a motion with a basis, per the

6   rule, per the law, make it clear, and then contact the

7   Court about how I'm going to handle it.

8          Once you filed the motion, contact the Court

9   within one business day about seeing what we can do

10  about how to handle any discovery issues.  So that

11  will be different in the motions practice itself.

12         MR. CONROD:  Your Honor, can I ask just one

13  logistical question?

14         THE COURT:  Yes.  And why don't you approach

15  the podium, please.

16         MR. CONROD:  It's, frankly, kind of a dumb

17  question, Your Honor, but normally the discovery

18  disputes will be handled by the magistrate judge.

19  When you say "contact the Court," do you mean contact

20  your chambers?

21         THE COURT:  Yes, I don't refer my discovery

22  disputes because I did so many as a magistrate judge.

23  Actually, this chart is usually very effective at

24  resolving them among the parties.

25         I also believe that I will try the case

1    better if I know what's going on in discovery anyhow.

2    So I don't refer them.

3          MR. CONROD:  Sure.  Thank you very much.

4          THE COURT:  Now, I'm going to admonish all

5    parties here, in the Eastern District of Virginia,

6    discovery disputes are extremely rare.  And so you

7    really are required, *pro se* or not, but counsel also,

8    you are required to make a really good faith effort to

9    resolve the dispute, and any resistance one way or the

10   other, Mr. Goodman, has to be based on the rules, not

11   whether you think it's fair.  It has to be based on

12   the rules.  And so it will be presented to me in that

13   fashion.

14         And because of the kind of motions practice

15   I've had to date, I'm going to tell you, I'm going to

16   be swift to issue sanctions, because I'm warning you

17   now, because I think it's over the top what has been

18   in front of the Court already, and we're just going to

19   move forward.  We're going to try this case.

20         If you have a defense, and the other side

21   thinks that they have a case, we'll just try it.

22   That's what we're here to do, but we're not here to

23   get stuck in the weeds of either inconsequential or

24   irrelevant issues.

25         My last thing, I told you that I would take

1    under advisement the motion for a protective order.

2    And two parties have agreed to the protective order.

3    I want to ask you first, Mr. Biss, there is a series

4    of paragraphs in the protective order that refer to

5    "for counsel's eyes only," and I want to ask you to

6    explain to me and to Mr. Goodman how that works in the

7    context of one of the parties being *pro se*.

8            MR. BISS:  Yes, Your Honor.  What I tried to

9    build into the protective order was for purposes of

10   that particular designation, the *pro se* litigant would

11   be considered counsel.  So if there were, for

12   instance, a sensitive financial document that we did

13   not want Mr. Goodman sharing with a third party, we

14   would indicate that for counsel's eyes only, meaning

15   for Mr. Goodman in his capacity as a *pro se* litigant,

16   for his eyes only.

17           THE COURT:  All right.  And where is that

18   built in?

19           MR. BISS:  Judge, I didn't bring the

20   protective order with me, but I believe it's in the

21   section that talks about for counsel's eyes only.  If

22   it's not, that would be what I would envision putting

23   in that section.

24           THE COURT:  All right.  It does say in

25   paragraph 2(g) on page five that for purposes of this

 1  paragraph only, paragraph only, any *pro se* party shall

 2  be deemed to be counsel.  I presume that you mean

 3  paragraph -- I think you have to be a little more

 4  clear about that.

 5         MR. BISS:  For purposes of that, that's a

 6  subparagraph.

 7         THE COURT:  Just can say, you know, it's

 8  paragraph 2 -- it's all in paragraph 2, right?

 9  Because you have 2(d)(i) through (iv).  Then you have

10  (e), (f), (g).  So please write it like a layperson

11  could understand it.

12         MR. BISS:  All right.

13         THE COURT:  All right.  Let me tell you this,

14  Mr. Goodman.  I've said in my past order that this

15  protective order, Ms. Negron has agreed to be bound by

16  it.  This protective order, except for this one issue,

17  I want to be clear that when it talks about "counsel's

18  eyes," it means also you as *pro se*, and I think Mr.

19  Biss did try to put it in.  Because it's in the middle

20  of a paragraph, and it says "this paragraph," and it's

21  paragraph 2(g), I think it can be cleaned up a little

22  bit.  But I think you're hearing now that that

23  designation "for counsel's eyes only" means that only

24  the lawyers can see it and only you can see it, and

25  they can't turn it over even to their own client.

1          Is that what you mean by that, Mr. Biss?

2          MR. BISS:  Yes, Your Honor.  He is his own

3    client, so that's --

4          THE COURT:  Right.  But I'm saying it

5    couldn't go to Mr. Steele or Ms. Negron if it's marked

6    that.

7          MR. BISS:  That's correct.

8          THE COURT:  All right.  So, I don't see this

9    as particularly troublesome, but I am not your lawyer.

10   So you cannot rely on anything I say one way or the

11   other.  I'm saying it to all of you.  I'm expressing

12   or asking a question with respect to Mr. Biss about

13   how it's worded.  But this is meant to protect the

14   papers for everybody.

15          If you mark it that it's confidential or it's

16   for counsel's eyes only, then this order says you can

17   only do certain things with it.  It cannot be marked

18   for counsel's eyes only or for confidentiality by

19   anybody irresponsibly.  It's not the case that

20   everything is confidential.

21          But the parties generally agree to this.  And

22   I don't know why, it doesn't matter why, there's been

23   no input from you as to this protective order.  And so

24   what I'm going to order as your first test is that in

25   seven days I want a written filing in this court as to

1  whether or not the protective order, as filed,

2  whatever version it is, is agreed to or not agreed to.

3       If it is not agreed to, I want the party that

4  is not agreeing to explain why in writing.  Seven

5  days.

6       Do you understand that, Mr. Goodman?

7       MR. GOODMAN:  May I --

8       THE COURT:  It's yes or no.

9       MR. GOODMAN:  Well, I can answer it now

10  without filing.

11       THE COURT:  Okay.

12       MR. GOODMAN:  If Mr. Biss will agree to

13  modify the language such that anything marked

14  confidential can be seen by me as my own client, then

15  I'm fine with it, and we can agree to that now.  I

16  will accept it now.

17       I also want to add that I have never

18  live-streamed a phone call with anyone without telling

19  them, and I have substantially all of the requested

20  discovery material that doesn't include photographs of

21  myself naked.  I've got all the emails with both

22  co-defendants, the plaintiff, and the counsel for the

23  plaintiff ready to deliver to the Court, copies to

24  both sides, and I just want to clarify that the only

25  issue with the discovery was the noncommunication.

1   And if we can communicate, I'm happy to provide

2   discovery materials that are reasonable, not based on

3   hearsay, and I believe the Court will agree that me

4   naked has nothing to do with this case.  That's

5   certainly irrelevant.

6        THE COURT:  I'm not going to make any ruling

7   on any discovery matter that I don't have both sides

8   on and understand what question it pertains to, what

9   request for production it pertains to.  There is a

10  process to raise those issues.  And so I'm just not

11  answering that.

12       As far as the protective order, I think that

13  Mr. Biss just said that if it's marked confidential or

14  for counsel's eyes only, that you can see it as your

15  counsel and as being the client.  I believe he

16  answered that question in the affirmative.

17       Is that correct, Mr. Biss?

18       MR. BISS:  That's correct, Your Honor.

19       MR. GOODMAN:  I understood it was pertaining

20  just to the paragraph that you were talking about, so

21  perhaps that was a misunderstanding on my part.

22       THE COURT:  I do think, Mr. Biss, you should

23  be clear about exactly what it covers.  So just work

24  with Mr. Conrod to make the language crystal clear for

25  a human being that hasn't been spoiled by having a

1    legal education.  All right?

2            MR. BISS:  Yes, Your Honor.

3            THE COURT:  So, I'm going to give you seven

4    days, and you have to submit the statement with the

5    protective order on that date.

6            I believe that you all can do that.  You can

7    submit the protective order.  If it is jointly

8    submitted, I will enter it.  If it is not jointly

9    submitted, you have to submit the order that is

10   disagreed upon, and the party that doesn't like

11   something about it has to tell me why in writing,

12   succinctly, no more than three pages, because the

13   protective order itself is 10 pages.

14           So we can't go into much.  Just say I don't

15   like it for this reason.  I think it's not appropriate

16   under this rule or this law or this case.  But I

17   actually think you can submit it.  It is meant to

18   assure that all parties are bound to handle discovery

19   in a fair way.  It goes without saying there's no

20   live-streaming of any conversation.

21           And as with you, you shouldn't insinuate, and

22   Mr. Biss, although he said he was fearful it would go

23   live-stream, I just can't take that into account.  You

24   guys are not going to do that.  I'm not weighing that

25   against you any more than I'm weighing against Mr.

1    Biss what you suggest may have happened with

2    scheduling because of the email that it was sent to.

3    All right?  Blank slate for everybody.

4            Is there anything else I need to address?

5    Mr. Goodman?

6            MR. GOODMAN:  I'm fearful that anything I say

7    is going to be inappropriate at this time, so I won't

8    say it.

9            THE COURT:  Okay.  We're only here to

10   schedule the trial date, so that's probably true.

11           All right.  Mr. Biss?

12           MR. BISS:  Nothing from our side, Your Honor.

13           THE COURT:  All right.  Mr. Conrod?

14           MR. CONROD:  Nothing further, Your Honor.

15           THE COURT:  All right.  Well, I look forward

16   to having your filings.  And I really do encourage you

17   all to -- you just have to put a little bit of steam,

18   water on the fire.  Just try the case that I am able

19   to try.  And it's way more limited than what I've been

20   getting filings about.  All right?

21           So that's all we have for today.  I'll enter

22   an order accordingly.  Thank you.

23           (The proceedings were adjourned at 3:54 p.m.)

24

25

1          I, Diane J. Daffron, certify that the foregoing is

2     a correct transcript from the record of proceedings

3     in the above-entitled matter.

4                              /s/

5          _____    _____

6               DIANE J. DAFFRON, RPR, CCR        DATE